RECORD NO. 17-1574

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

**EQUITRANS, L.P.,**
**a Pennsylvania Limited Partnership,**
*Plaintiff-Appellee,*

**v.**

**JEFFERY J. MOORE and**
**SANDRA J. MOORE,**
*Defendants-Appellants.*

0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED
IN MARION COUNTY, WEST VIRGINIA,
*Defendant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG

OPENING BRIEF OF DEFENDANTS-APPELLANTS

Patrick Craig Timony
Kenneth Eugene Webb, Jr.
BOWLES RICE, LLP
600 Quarrier Street
P.O. Box 1386
Charleston, West Virginia 25325
(304) 347-1100 (Telephone)
ptimony@bowlesrice.com
kwebb@bowlesrice.com

Counsel for Defendants-Appellants

THE APPELLATE LINK    •    (804) 698-9471

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.      Does party/amicus have any parent corporations?                           YES     NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                         YES     NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                              (date)

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE

TABLE OF CONTENTS ……………………………………………………..i

TABLE OF AUTHORITIES……………………………………………….. iii

JURISDICTIONAL STATEMENT…………………………………………… 1

STATEMENT OF ISSUES………………………………………………….. 3

STATEMENT OF THE CASE AND FACTS……………………………… 4

SUMMARY OF ARGUMENT…………………………………………… 12

REQUEST FOR ORAL ARGUMENT…………………………………….. 16

STANDARD OF REVIEW…………………………………………… 16

ARGUMENT………………………………………………………….. 17

    A.    Equitrans failed to satisfy the statutory prerequisites of
           15 U.S.C. § 717f(h) to invoke condemnation power
           against the Moores…………………………………………… 17

    B.    Rule 13(a) of the Federal Rules of Civil Procedure
           required Equitrans to file its condemnation claim
           as a compulsory counterclaim in the First Civil Action…………….. 21

           1.    The Moores' claims and Equitrans' condemnation
                  claim arise from essentially the same fact –
                  the location of Pipeline H-557………………………….. 22

           2.    Res judicata precludes Equitrans' condemnation claim…….. 23

           3.    The same evidence supports both the Moores' claims
                    and Equitrans' condemnation claim……………………… 25

i

4.  A logical relationship exists between the Moores' claims and Equitrans' condemnation claim……………........ 26

C.  Alternatively, Equitrans is estopped from pursuing its condemnation claim because it took a factually inconsistent position to gain an unfair advantage…………………………........ 29

D.  Equitrans' condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property for purely private reasons………………………………………... 36

E.  Equitrans' condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property in excess of its needs……………………………………………….. 39

CONCLUSION…………………………………………………………….. 42

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)(i)

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

Cases (by jurisdiction)                                                pages

United States Supreme Court

*Chi, B & Q. J.A. Co. v. Chi.*,
    166 U.S. 226 (1897)……………………………………………….. 36

*City of Cincinnati v. Vester*,
    281 U.S. 439 (1930)……………………………………………….. 42

*Davis v. Wakelee*,
    156 U.S. 680 (1895)………………………………………………… 35

*Microsoft Corporation v. Baker*,
    -- S. Ct. --, 2017 WL 2507341 (U.S. June 12, 2017)……………… 15, 33 - 35

*Mo. Pac. Ry. Co. v. Neb.*,
    164 U.S. 403 (1896)……………………………………………….. 36

*Thompson v. Consolidated Gas Corp.*,
    300 U.S. 55 (1937)………………………………………………… 36

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948)……………………………………………….. 16

Fourth Circuit

*Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*,
    846 F.3d 716 (4th Cir. 2017)……………………………………… 16

*Capital One Fin. Corp. & Subsidiaries v. C.I.R.*,
    659 F.3d 316 (4th Cir. 2011)……………………………………… 16

*Cnty. Vinter of N.C., LLC v. E & J Gall Winery, Inc.*,
    718 F.3d 249, 258 (4th Cir. 2013)………………………………… 18

iii

*Havird Oil Co. v. Marathon Oil Co.*,
    149 F.3d 283 (4th Cir. 1998)…………………………………………………… 30

*King v. Herbert J. Thomas Mem'l Hosp.*,
    159 F.3d 192 (4th Cir. 1998)………………………………… 29-30, 32-33

*Nat'l Lead Co. v. Kanawha Block Co.,*
    288 F. Supp. 357 (S.D. W. Va. 1968)
    *aff'd,* 409 F.2d 1309 (4th Cir. 1969)………………………………… 20

*Painter v. Harvey*,
    863 F.2d 329 (4th Cir. 1988)………………………………………… 21

*Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*,
    816 F.2d 273 (4th Cir. 2016)………………………………………… 23

*Pueschel v. United States¸*
    369 F.3d 345 (4th Cir. 2004)………………………………………… 23

*Q Intern. Courier, Inc. v. Smoak*,
    441 F.3d 214 (4th Cir. 2006)………………………………………… 21

*Tatum v. RJR Pension Inv. Comm.*,
    855 F.3d 553 (4th Cir. 2017)………………………………………… 16

*United States v. Murphy*,
    35 F.3d 143 (4th Cir. 1994)………………………………………... 18

*United States v. Serafini*,
    826 F.3d 146 (4th Cir. 2016)………………………………………… 18

*Zirkand v. Brown*,
    478 F.3d 634 (4th Cir. 2007)………………………………… 29, 32

<u>Other Circuit Courts of Appeal</u>

*Transwetern Pipeline Co. v. 17.19 Acres of Prop.*
    *Located in Maricopa Cnty.*, 550 F. 3d 770 (9th Cir. 2008)………………... 17

## District Courts & States

*99 Cents Only Stores v. Lancaster Redevelopment Agency*,
  237 F. Supp. 2d 1123 (C.D. Cal. 2001)………………………………… 36-37

*Banks v. Underwood*,
  190 S.E.2d 438 (W. Va. 1972)…………………………………………... 22

*Fifth Third Bank v. McClure Props., Inc.*,
  724 F. Supp. 2d 598 (S.D. W. Va. 2010)…………………………………... 19

*Hark v. Mountain Fork Lumber Co.*,
  345 S.E.2d 348 (W. Va. 1945)…………………………………………... 22

*Moore v. Equitrans, L.P.*,
  49 F. Supp. 3d 456, 473 (N.D. W. Va. 2014)………………………… *passim*

*O'Dell v. Stegall*,
  703 S.E.2d 561 (W. Va. 2010)………………………………………….. 26

*State Highway Comm'n v. Chapman*,
  446 P.2d 709 (Mont. 1968)…………………………………………… 40

*State ex rel. State Highway Dept. v. 9.99 Acres of Land,*
*More or Less, in New Castle Hundred, New Castle Cnty.*,
  253 A.2d 509 (Del. 1969)…………………………………………….40

*State ex rel. Wash. State Convention & Trade Ctr. v. Evans*,
  966 P.2d 1252 (Wash. 1998)……………………………………………41

*Van Scyoc v. Equitrans*,
  – F. Supp. 3d --, 2015 WL 1346872 *1 (W.D. Pa. Mar. 23, 2015)………... 26

*Washington-Summers, Inc. v. City of Charleston*,
  430 F. Supp. 1013 (S.D. W. Va. 1977)……………………………………36

*Williams v. Transcontinental Gas Pipe Line Corp.*,
  89 F. Supp. 485 (W.D.S.C. 1959)……………………………………….. 20

v

United States Constitution

U.S. CONST. amend V ………………………..……………………….. *passim*

U.S. CONST. amend XIV ………………………...……………….. *passim*

Federal Rules and Code

Fed. R. Civ. P. 13 …………….…..…………………………………… *passim*

Fed. R. Civ. P. 23 ……………………………………………………... 33

15 U.S.C. § 717a ……...…………………………………………… 18

15 U.S.C. § 717f ……...…………………………………………….. *passim*

28 U.S.C. § 1291……………………………………………………… 1, 34

Other Authorities

BLACK'S LAW DICTIONARY, Necessary (10th ed. 2014)………………………… 18

MERRIAM-WEBSTER DICTIONARY, Necessary (11th ed.)………………………… 18

6 Arthur R. Miller, May Kay Kane & A. Benjamin Spencer,
FEDERAL PRACTICE & PROCEDURE § 1409 (3d ed.)……………………………… 28

Robert C. Bird & Lynda J. Oswald,
*Necessity and Excess Condemnation Under Eminent Domain*,
38 REAL EST. L.J. 304, 305 (Winter 2009)…………………………………… 40-41

# Jurisdictional Statement

This Court possesses jurisdiction over the appeal of Appellants, Jeffery J. and Sandra J. Moore ("the Moores"), under 28 U.S.C. § 1291. Specifically, the Moores appeal the United States District Court for the Northern District of West Virginia's ruling that Equitrans possessed authority under 15 U.S.C. § 717f(h) to condemn portions of the Moores' property. Under 15 U.S.C. § 717f(h), the District Court had jurisdiction because the dispute involved a condemnation action involving an interstate pipeline in excess of Three Thousand Dollars ($3,000.00). On November 18, 2015, the District Court denied the Moores' challenges to Equitrans' condemnation authority and the matter proceeded for a determination of the fair market value of the Moores' property subject to condemnation.

On January 19, 2017, the United States District Court for the Northern District of West Virginia entered judgment for the Moores against Equitrans for Five Thousand Dollars ($5,000.00). On February 9, 2017, the Moores moved to amend ("Motion to Amend") the January 19, 2017 judgment to reflect an award of prejudgment interest. On February 17, 2017, the Moores noticed this Appeal, which this Court held in abeyance pending the District Court's ruling on the Moores' Motion to Amend. On April 21, 2017, the District Court granted the Motion to Amend, and the Clerk entered an Amended Judgment. The Moores promptly

1

notified the Court of this Amended Judgment and, on May 2, 2017, this Court docketed the instant Appeal.

## Statement of the Issues

1.      Equitrans failed to satisfy the statutory prerequisites of 15 U.S.C. § 717f(h) to invoke condemnation power against the Moores.

2.      Rule 13(a) of the Federal Rules of Civil Procedure required Equitrans to file its condemnation claim as a compulsory counterclaim in the First Civil Action.

3.      Equitrans is estopped from pursuing its condemnation claim because it took factually inconsistent positions in successive litigation to gain an unfair procedural advantage.

4.      Equitrans violated the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property for purely private purposes.

5.      Equitrans violated the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property in excess of its needs.

# Statement of the Case and Facts

### A.    Statement of Undisputed Facts

Sometime prior to 1960, Equitable Gas Company ("Equitable Gas"), the predecessor in interest to Appellee, Equitrans, L.P. ("Equitrans"), began planning the construction of a sixteen inch (16") high pressure natural gas transmission line – designated Line 557 ("Pipeline H-557" or "Pipeline") from Downs to Blackville.  [J.A. at 133.]  Equitable Gas surveyed the proposed route of Pipeline H-557 and the selected route crossed the real property owned by John R. and Dorothy G. Moore, Appellant Jeffery J. Moore's ("Mr. Moore") parents.  [J.A. at 134-35.]  Following negotiations, on January 27, 1960, Equitable Gas and Mr. Moores' parents entered a Pipe Line Right of Way Grant, which dictated the precise location of the route for the Pipeline and Equitable Gas's limited use of the Moores' property.  [J.A. at 134-35.]  Equitable Gas Company similarly obtained Pipe Line Right of Way Grants from the neighbors of Mr. Moore's parents -- the Coffmans and Burlines.  [J.A. at 136-39.]  Unbeknownst to Mr. Moores' parents at the time, during the initial construction of the Pipeline, Equitable Gas deviated from the surveyed route set forth in the right-of-way grant and constructed a portion of the Pipeline off the right-of-way.[1]  [J.A. at 175, 198-99.]  On June 10, 1990, the

---

[1] As stated *infra*, Equitable Gas constructed the Pipeline off of the Moores' right-of-way at or near point 4 of the June 19, 2013 survey.

Appellants acquired the real property from John R. and Dorothy G. Moore. [J.A. at 140-43.] Like Mr. Moore's parents, the Appellants never knew that Equitable Gas initially constructed a portion of Pipeline H-557 off the route contained in the right-of-way grant and on to their property.

Sometime before August 11, 1994, Equitrans discovered potential corrosion and pitting in the walls of Pipeline H-557. [J.A. at 144.] As "the most important transmission and storage line in West Virginia[,]" the corrosion and pitting in the Pipeline threatened Equitrans' profitability. [J.A. at 144.] To maintain maximum operating pressure and utilize the Pipeline's full potential, Equitrans decided to replace the corroded and pitted sections of Pipeline H-557. [J.A. at 144.] One section of Pipeline H-557 that needed to be replaced crossed the Moores' property. In order to maximize its use of Pipeline H-557, during the replacement of the corroded and pitted sections, Equitrans chose to lay new pipe **beside** the old pipe.[2] [J.A. at 198, 203.] Equitrans then took sections of Pipeline H-557 out of service for brief intervals to tie in the new sections of pipe. In so doing, Equitrans placed the new pipe off of the route provided in the right-of-way grant and on to the Moores' property. [J.A. at 198-99, 203.] Equitrans unilaterally decided to relocate

---

[2] This deviation from the right-of-way occurred between point 1 and point 3 of the June 19, 2013 survey.

5

the Pipeline and neither informed the Moores about the relocation nor asked the Moores for their consent.  [J.A. at 199, 204.]

On or around March 2012, Mr. Moore began questioning representatives of Equitrans and EQT Production Company about the location of the Pipeline.[3]  In response, Equitrans marked the location of Pipeline H-557 and informed the Moores that the location matched the terms of the Right-of-Way.  [J.A. at 146-47.]  The Moores disagreed and, ultimately, this disagreement culminated in the Moores filing a Complaint against Equitrans in the Circuit Court of Marion County, West Virginia (the "First Civil Action").[4]

**B.    Procedural History of the First Civil Action**

The Moores initiated this case by filing a complaint against Equitrans on June 26, 2012.  [J.A. at 145-52.]  In the Complaint, the Moores set forth three (3) causes of action: (1) breach of contract; (2) ejectment; and (3) trespass.  On July 27, 2017, Equitrans removed the First Civil Action to the United States District Court for the Northern District of West Virginia (Civil Action No. 1:12-cv-00123).  [J.A.

---

[3] This inquiry resulted from Mr. Moore's strained relationship with EQT Production Company, a sister company to Equitrans, concerning the discharge of frac water on to his property from their horizontal well pad on a neighboring tract.

[4] Initially, the Moores named EQT Production Company and EQT Corporation as the defendants.  Pursuant to an agreement, Equitrans was substituted as a party for EQT Production Company and EQT Corporation.

at 153-59.]  Critically, in its Notice of Removal, Equitrans asserted that it met the amount in controversy requirement of diversity jurisdiction because "[i]f the pipeline were ordered to be removed, there would be a substantial expense to [Equitrans]. Likewise, there would be a loss of ability to transport natural gas.  The costs of removal and value of such lost rights are far in excess of $75,000."  [J.A. at 157.] On August 8, 2012, Equitrans answered the Moores' Complaint and denied liability on all claims.  [J.A. at 160-67.]  Equitrans insisted that, at all times, it complied with the terms of the right-of-way and, therefore, no causes of action existed for ejectment, breach of contract or trespass.[5]  [J.A. at 160-67, 169, 181-83.] Throughout the First Civil Action, Equitrans maintained this factual position.

On May 31, 2013, following an initial exchange of discovery, Equitrans moved the District Court for leave to file a Counterclaim for a prescriptive easement, which the District Court granted.[6]  [J.A. at 168-74.]  In making this request, Equitrans limited its Counterclaim to a prescriptive easement and never made any allegations about condemning the Moores' property.  [J.A. at 172-74.]  Instead, Equitrans continued to maintain that it initially placed and replaced Pipeline H-557

---

[5]  Indeed, the District Court acknowledged Equitrans' factual position: "Equitrans maintained that it constructed all portions of the pipeline within the 1960 right-of-way."  [J.A. at 265.]

[6]  The Moores did not object to Equitrans' motion to amend its Answer to include the Counterclaim.

7

on the Moores' property along the route specified in its right-of-way grant or, in the alternative, the statute of limitations applied and/or Equitrans received a prescriptive easement.

On June 19, 2013, Smith Land Surveying – surveyors hired by Equitrans in the First Civil Action – produced a survey of the Moores' property, showing the actual location of Pipeline H-557 and the location of the route specified in the right-of-way grant ("Survey"). [J.A. at 175.] This Survey showed that Pipeline H-557 was off of the route specified in the right-of-way grant in two (2) locations along the Moores' property: (i) from Point 1 to 3; and (ii) at Point 4 of the Survey. [J.A. at 175.] Notwithstanding its receipt of this Survey, review of its construction file and review of the Moores' right-of-way, Equitrans defiantly maintained that Pipeline H-557 was on the right-of-way or, alternatively, that the statute of limitations and/or doctrine of prescriptive easement prohibited the Moores' claims in the First Civil Action. Equitrans deliberately decided to argue these factual positions, rather than owning up to its trespass and seeking condemnation under the Natural Gas Act.

On December 18, 2013 and following the completion of discovery, Equitrans and the Moores filed competing Motions for Summary Judgment. In these Motions, both the Moores and Equitrans advocated that the location of the pipeline

and right-of-way conclusively proved their claims or defenses.  Importantly, in

Equitrans' supporting Memorandum of Law, Equitrans stated that "to the extent that

this Court is inclined to deny Equitrans' motion for summary judgment, Equitrans

asks this Court to grant it leave to file a counterclaim for condemnation."[7]  [J.A. at

194.]

On September 22, 2014, the District Court denied both the Moores' and

Equitrans' Motions for Summary Judgment.  Relying on Equitrans' factual

arguments on the location of the Pipeline, the District Court ruled that issues of fact

existed for the jury to resolve.  The District Court also found that ejectment could be

a proper remedy for the Moores:

> In this action, it appears that ejectment is a possible
> equitable remedy pursuant to West Virginia law as the
> plaintiffs believe that a monetary remedy may not make
> them whole.  Additionally, for the reasons provided in this
> order's discussion regarding condemnation and primary
> jurisdiction, this Court finds that the issue of ejectment
> may be a proper remedy.

*Moore v. Equitrans, L.P.*, 49 F. Supp. 3d 456, 473 (N.D. W. Va. 2014).

Notwithstanding its assertions in the Memorandum of Law, Equitrans **never** sought

---

[7] Additionally, in a separate footnote, Equitrans argued that it "could file a
separate action seeking condemnation, but . . . the interest of judicial economy
warrants the same to be considered in this case should this Court deny Equitrans the
relief otherwise requested in the Motion and determine a condemnation action is
necessary."  [J.A. at 194.]

leave to file its counterclaim for condemnation in the First Civil Action following the September 22, 2014 Order, which denied Equitrans' (and the Moores') Motion for Summary Judgment.

On March 24, 2015, the Circuit Court conducted a two (2) day trial on the First Civil Action, and the jury found for the Moores on every issue.  [J.A. at 198-99.]  The jury unanimously held that Equitrans initially constructed Pipeline H-557 in violation of the right-of-way at or near point 4 of the Survey and held that Equitrans, again, deviated from the Moores' right-of-way when it replaced portions of the Pipeline at or near point 1 to point 3 on the Survey.  [J.A. at 198.]  Likewise, the jury unanimously held that the Moores timely commenced all their claims against Equitrans.  [J.A. at 199.]  These findings should have entitled the Moores to an ejectment of the trespassing sections of the Pipeline.

On May 6, 2015, this Court entered a Judgment Order which adopted the jury's findings; however, the District Court deferred ruling on the Moores' remedy of ejectment.  [J.A. at 200-05.]  Thereafter, the District Court stayed the First Civil Action and allowed Equitrans to proceed with its Complaint in Condemnation.[8]

---

[8] Despite the Moores' requests, the District Court continued its stay of the First Civil Action.  While this Court is not considering any of the legal issues presented in the First Civil Action, the First Civil Action is intertwined with the issues before this Court on appeal.

### C.  Procedural History of the Second Civil Action

On June 18, 2015, Equitrans filed its Complaint in Condemnation with the District Court (the "Second Civil Action").  [J.A. at 17-20.]  Following service on the Moores, the Moores answered and moved to dismiss the Complaint in Condemnation.[9]  [J.A. at 3, 218-33.]  Specifically, the Moores contended that: (1) Equitrans failed to satisfy the prerequisites of the Natural Gas Act to invoke the power of condemnation; (2) Equitrans abused the Federal Rules of Civil Procedure to gain a second opportunity to mitigate its damages; (3) Equitrans took factually inconsistent positions in successive litigation to, again, gain an unfair advantage; and (4) Equitrans' taking violated the Fifth and Fourteenth Amendments of the United States Constitution as Equitrans took the Moores' property for purely private reasons and in excess of its needs.  On November 18, 2015, the District Court entered its Order denying the Moores' Motion to Dismiss and allowed Equitrans to proceed with its action in condemnation.  [J.A. at 256-79.]

On January 19, 2017, the District Court held a one (1) day trial on the Second Civil Action.[10]  Following the presentation of evidence, the jury awarded the

---

[9] The Moores also filed a Counterclaim against Equitrans for trespass and vexatious litigation.  [J.A. at p. 222-31.]  This Counterclaim is not an issue on appeal.

[10] At the Moores' request, this Court twice continued this trial based on health concerns for Appellant Sandra Moore.  Prior to this January 19, 2017 trial, the Moores and Equitrans engaged in discovery and several motions *in limine*

Moores Five Thousand Dollars ($5,000.00) as the fair market value for the .56 acres being condemned by Equitrans. [J.A. at 283.] The Clerk entered this judgment the same day; however, the judgement failed to award the Moores' prejudgment interest. [J.A. at 284.] On February 9, 2017, the Moores filed a Motion to Amend the January 19, 2017 Judgment to include an award of prejudgment interest. [J.A. at 285-87.] Thereafter, on February 17, 2017, the Moores noticed this appeal, which this Court held in abeyance until the District Court adjudicated the issue of prejudgment interest. [J.A. at 288-90.]

On April 21, 2017, the District Court granted the Moores' Motion to Amend the January 19, 2017 Judgment, and the Clerk entered an Amended Judgment. [J.A. at 291-96.] On May 2, 2017, this Court reinstated the Moores' appeal.

## Summary of the Argument

This appeal raises five (5) distinct legal challenges to Equitrans' condemnation of the Moores' property, any one of which requires the reversal and vacation of the November 18, 2015 Order and April 21, 2017 Amended Judgment. Notwithstanding, these challenges arise from a central premise: Equitrans misused

---

concerning evidentiary issues in the Second Civil Action. These motions *in limine* and the District Court's rulings therefore are not issues on appeal.

the Natural Gas Act and the Federal Rules of Civil Procedure to obtain a second opportunity to mitigate damages from its misconduct of constructing and replacing Pipeline H-557 off of the right-of-way and onto the Moores' property. Throughout the First Civil Action, Equitrans maintained that it complied with the right-of-way and that its compliance defeated the Moores' claims. Equitrans put the Moores to their burden of proof and the jury found for the Moores on all issues. Following this sobering realization, Equitrans performed an about-face. It conceded that it placed the Pipeline outside of the permissible bounds of the right-of-way and, therefore, Equitrans asserted its taking powers under the Natural Gas Act. Equitrans' abuse of its condemnation power and the Rules of Civil Procedure justifies this Court reversing and vacating the November 18, 2015 Order and April 21, 2017 Amended Judgment.

First, Equitrans failed to satisfy the statutory prerequisites under the Natural Gas Act to initiate a condemnation action against the Moores. The Natural Gas Act requires that Equitrans prove that its taking occurred out of "necessity" and because it could not agree to a "contract" or "right-of-way" with the Moores. Equitrans cannot prove any of these elements, because Equitable Gas, obtained a right-of-way on January 27, 1960 to construct, maintain and operate Pipeline H-557 on the Moores' property. To maintain this Pipeline, Equitrans simply needed to place the Pipeline along the route specified in the right-of-way. Because Equitrans

13

already has a right-of-way with the Moores to operate and maintain Pipeline H-557 on the Moores' property, it lacks authority to condemn additional land for the same Pipeline under 15 U.S.C. § 717f(h).

Second, Equitrans' failure to file the condemnation claim as a compulsory counterclaim in the First Civil Action waived the condemnation claim in the subsequent civil action. Rule 13(a) of the Federal Rules of Civil Procedure required Equitrans to file its condemnation as a compulsory counterclaim as it arose from the same occurrence as the Moores' claims against Equitrans in the First Civil Action. Both the Moores and Equitrans' claims rely on a critical mutual fact: the location of Pipeline H-557 on the Moores' property. Consequently, Equitrans' failure to file the condemnation claim as a compulsory counterclaim in the First Civil Action constitutes a waiver of the claim in the Second Civil Action.

Third, the doctrine of estoppel precludes Equitrans from condemning the Moores' property, because Equitrans took factually inconsistent positions in successive litigation to gain a procedurally unfair advantage. Specifically, in the First Civil Action, Equitrans maintained that it routed the pipeline across the Moores' property in accordance with right-of-way grant. The District Court accepted this factual position and, subsequently, denied the Moores' summary judgment based on the alleged factual dispute Equitrans created. Equitrans

14

intentionally took this factual position to gain a strategic advantage. It allowed Equitrans to proceed to a jury and argue in the First Action that its conduct, at all times, was entirely lawful. When that position lost, Equitrans turned around and took the complete opposite factual position, that its Pipeline was off the route specified in the right-of-way grant and, therefore, Equitrans should be able to condemn. Under *Microsoft Stores v. Baker*, estoppel applies when litigants take a position contrary to prior positions to gain an advantage. The doctrine of judicial estoppel precludes Equitrans from condemning the Moores' property.

Finally, Equitrans' condemnation violated the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution. No public purpose supported Equitrans' taking, because the right-of-way already provided Equitrans with a portion of the Moores' property on which to construct, operate and maintain Pipeline H-557. Instead, the condemnation allowed Equitrans to avoid the costs of complying with its prior agreement. Under the Constitution, no amount of just compensation allows for a taking for private reasons. Additionally, Equitrans took the Moores' property in excess of its needs as the right-of-way, if followed, provided Equitrans more than enough property to operate its Pipeline. No limited circumstances exist to support an excess taking.

A finding in favor of the Moores on any one (1) of these legal challenges requires that this Court reverse and vacate the November 18, 2015 Order and April 21, 2017 Amended Judgment.

## Request for Oral Argument

Pursuant to Local Rule 34(a), the Moores respectfully request oral argument before this Court.

## Standard of Review

The issues presented in this appeal require that this Court consider and apply several different standards of review.  This Court reviews interpretation of statutes and the Federal Rules of Civil Procedure *de novo*.  *See Capital One Fin. Corp. & Subsidiaries v. C.I.R.*, 659 F.3d 316, 321 (4th Cir. 2011); *Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 729 (4th Cir. 2017).  Notwithstanding, this Court reviews the District Court's factual findings under a clearly erroneous standard.  *See Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 (4th Cir. 2017).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

16

# Argument

### A. Equitrans failed to satisfy the statutory prerequisites of 15 U.S.C. § 717f(h) to invoke condemnation power against the Moores.

Section 717f(h) of the Natural Gas Act affords a gas company a right

of condemnation as follows:

> [w]hen any holder of a certificate of public convenience and necessity **cannot acquire by contract**, or is unable to agree with the owner of property to the compensation to be paid for, **the necessary right-of-way to construct, operate, and maintain a pipe line** or pipe lines for the transportation of natural gas, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the States courts.

15 U.S.C. § 717f(h) (1998) (emphasis added). Courts strictly construe eminent

domain statutes "to exclude those rights not expressly granted." *Moore*, 49 F. Supp.

3d at 474 (quoting *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in

Maricopa Cnty.*, 550 F. 3d 770, 774-75 (9th Cir. 2008)). Indeed, in the First Civil

Action, the District Court recognized that "if strictly construing the language 'cannot

acquire by contract, or is unable to agree with the owner of property,' the contract at

issue here [the Moores' right-of-way] would disqualify the defendant [Equitrans]

from being granted the right to condemn the plaintiffs' [the Moores'] property for

the use of the pipeline." *Moore*, 49 F. Supp. 3d at 474. The District Court's previous

conclusion is still correct and, for this reason, Equitrans cannot meet the statutory

prerequisites of 15 U.S.C. § 717f(h) to invoke condemnation power against the Moores.

To invoke the awesome power of condemnation under the Natural Gas Act, Equitrans must show that it "cannot acquire by contract the necessary right of way to construct, operate and maintain a pipe line . . . for the transportation of natural gas. . ." 15 U.S.C. § 717f(h). "To determine a statute's plain meaning, [this Court] not only look[s] to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." *See United States v. Serafini*, 826 F.3d 146, 149 (4th Cir. 2016) (quoting *Cnty. Vinter of N.C., LLC v. E & J Gall Winery, Inc.¸* 718 F.3d 249, 258 (4th Cir. 2013)). The Natural Gas Act fails to define "necessary," "contract" or "right-of-way". 15 U.S.C. § 717a (2005). Consequently, this Court construes the "words [] given their common usage." *See United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994).

Black's Law Dictionary defines "necessary" as "[t]hat is needed for some purpose or reason; essential." BLACK'S LAW DICTIONARY, Necessary (10th ed. 2014). This definition of "necessary" comports with Merriam-Webster's Dictionary, which similarly defines "necessary" as "absolutely needed." MERRIAM-WEBSTER DICTIONARY, Necessary (11th ed.). Therefore, for Equitrans to condemn the Moores' property under the Natural Gas Act, Equitrans must show that locating

18

its Pipeline off the right-of-way was absolutely needed and that it was essential for it to condemn the Moores' property to relocate Pipeline H-557. Equitrans cannot make this showing. Equitable Gas, Equitrans' predecessor, previously obtained a Right-of-Way to use portions of the Moores' property to construct, operate and maintain Pipeline H-557. [J.A. at 134-35.] Nothing prevented Equitrans from placing the pipeline along the route specified in the right-of-way previously purchased. *See Moore*, 49 F. Supp. 3d at 467. Under the plain language of 15 U.S.C. § 717f(h) of the Natural Gas Act, Equitrans cannot condemn the Moores' property because condemnation was not necessary to operate and maintain its Pipeline. Consequently, Equitrans cannot satisfy the statutory prerequisites of 15 U.S.C. § 717f(h) and, therefore, cannot condemn the Moores' property.

Additionally, 15 U.S.C. § 717f(h) requires that Equitrans prove that it could not acquire a "right-of-way" or "contract" with the Moores. While the Natural Gas Act fails to define these terms, their usage is well known. West Virginia, like many states, concludes a contract exists when there are "competent parties, legal subject-matter, valuable consideration and mutual assent." *See Fifth Third Bank v. McClure Props., Inc.,* 724 F. Supp. 2d 598, 603 (S.D. W. Va. 2010). The right-of-way Equitable Gas obtained from John R. and Dorothy G. Moore on January 27, 1960 satisfies these contractual elements. Equitable Gas, Equitrans' predecessor in interest, paid Mr. Moore's parents for the limited right to use portions of the Moores'

19

property to construct, maintain and operate Pipeline H-557.  [J.A. at 134-35.]
Therefore, the Pipe Line Right-of-Way Grant is a "contract" and "right-of-way"
under the Natural Gas Act.  The existence of the 1960 Right-of-Way Grant precludes
Equitrans from condemning the Moores' property under 15 U.S.C. § 717f(h).

      While the District Court recognized that Equitrans had a right-of-way
over the Moores' property to construct, operate and maintain Pipeline H-557 in its
November 18, 2015 Order, the District Court ignored its prior reasoning and justified
the condemnation because federal law provides entities, like Equitrans, with broad
discretion to choose the route of its pipelines.  [J.A. at 260-61 (citing *Williams v.
Transcontinental Gas Pipe Line Corp.*, 89 F. Supp. 485, 489 (W.D.S.C. 1959)).]
This analysis ignores that Equitrans, specifically its predecessor Equitable Gas,
previously exercised its discretion when it picked the precise location of Pipeline H-
557 and described this location in the Moores' right-of-way.  [J.A. at 134-35.]
Where a right-of-way is created by express grant, the use of the right of way must
be confined to the terms of the grant.  *See Nat'l Lead Co. v. Kanawha Block Co.,*
288 F. Supp. 357, 363 (S.D. W. Va. 1968), *aff'd,* 409 F.2d 1309 (4th Cir. 1969).
Again, the January 27, 1960 Right-of-Way allows Equitrans to construct, operate
and maintain Pipeline H-557 on the Moores' property and, consequently, divests
Equitrans of any condemnation power under the Natural Gas Act for this Pipeline.

20

For these reasons, this Court should reverse and vacate the November 18, 2015 Order

and April 21, 2017 Amended Judgment.

**B.** **Rule 13(a) of the Federal Rules of Civil Procedure required Equitrans to file its condemnation claim as a compulsory counterclaim in the First Civil Action.**

Rule 13(a) of the Federal Rules of Civil Procedure provides that:

[a] pleading must state as a counterclaim any claim that -- at the time of its service -- the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

FED. R. CIV. P. 13(a)(1)(A)-(B).  In determining when a counterclaim is compulsory,

this Court considers four (4) factors: "(1) whether the issues of fact and law in the

claim and counterclaim are essentially the same; (2) whether res judicata would bar

a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3)

whether the same evidence would support or refute the claim and the counterclaim;

and (4) whether there is a logical relationship between the claim and the

counterclaim."  *See Q Intern. Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir.

2006).  Not all four inquires must be met; instead, the inquires "are less a litmus,

[and] more a guideline."  *See Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).

21

1.    *The Moores' claims and Equitrans' condemnation claim arise from essentially the same fact -- the location of Pipeline H-557.*

Assuming *arguendo* that Equitrans satisfied the criteria to invoke condemnation under 15 U.S.C. § 717f(h), Equitrans' condemnation claim arose from the same facts and occurrences as the Moores' claims in the First Civil Action.  The Moores' claims for breach of contract, ejectment and trespass and Equitrans' condemnation claim rely on a determination of the location of Pipeline H-557 to succeed.  For instance, in the First Civil Action, to succeed on their claims the Moores had to show that Equitrans' initial construction and later replacement of sections of Pipeline H-557 placed the pipeline off the route specifically designated in the express terms of the right-of-way, otherwise the Moores' claims would have failed as a matter of law.  Syl. pt. 2, *Banks v. Underwood*, 190 S.E.2d 438 (W. Va. 1972) (under West Virginia law, "[t]o entitle a plaintiff in ejectment to recover, it is essential not only that **he prove good title**, but also that he locate this land and **show that the boundaries thereto include the land in controversy**.") (emphasis added); *Hark v. Mountain Fork Lumber Co*., 345 S.E.2d 348, 352 (W. Va. 1945) ("Trespass is defined in its limited sense as: '* * * **an entry of another man's ground without lawful authority**, and doing some damage, however inconsiderable, to his real property.'") (emphasis added).  Likewise, Equitrans would not have needed to invoke its condemnation power under the Natural Gas Act if it had placed and

22

replaced Pipeline H-557 along the route set out in the right-of-way. [J.A. at 181-83, 198-99.] Consequently, this factor weights in favor of a finding that Equitrans' condemnation claim qualified as a compulsory counterclaim under Rule 13(a).[11]

### 2. *Res judicata precludes Equitrans' condemnation claim.*

*R*es *judicata* precludes Equitrans' untimely claim for condemnation. This Court considers three (3) elements to determine when *res judicata* applies: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privities in the two suits." *See Pueschel v. United States*¸ 369 F.3d 345, 354-55 (4th Cir. 2004). Additionally, this Court considers "whether the party or its privy knew or should have known of its claims at the time of the first action [and] . . . whether the court that ruled in the first suit was an effective forum to litigate the relevant claim." *See Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.2d 273, 276 (4th Cir. 2016) (internal quotations omitted). These elements and policy considerations demonstrate that *res judicata* applies and, therefore, this factor also

---

[11] The District Court weighed this factor against the Moores because "the [Ejectment] action did not resolve any factual issues pertinent to this case other than a determination that the relevant portions of the pipeline are outside the 1960 right-of-way or are trespassing." *Equitrans*, 145 F. Supp. 3d at 629. **This fact is the most important fact to Equitrans' condemnation claim** because, without it, the condemnation claim would have failed as a matter of law and demonstrates the District Court clearly erred with respect to this finding.

23

supports a finding that Equitrans' condemnation claim qualified as a compulsory counterclaim.

A final judgment on the merits occurred in the First Civil Action. On March 25, 2015, a jury found Equitrans violated the Moores' right-of-way and trespassed on the Moores' property though its initial placement and later replacement of portions of the Pipeline. [J.A. at 198-99.] In its May 6, 2015 Order, the District Court entered judgment on these findings and stayed further proceedings. [J.A. at 200-05.] Equitrans identified its condemnation claim in the First Civil Action. In its December 18, 2013, Memorandum of Law in Support of its Motion for Summary Judgment in the First Civil Action, Equitrans twice acknowledged that it possessed a potential claim for condemnation and requested leave to file this Counterclaim if the District Court denied their Motion for Summary Judgment. [J.A. at 194.] Finally, both the First and Second Civil Actions involve the same parties -- Equitrans and the Moores. These factors demonstrate that the doctrine of *res judicata* applies to Equitrans' condemnation claim.

The two (2) policy considerations also support a finding of *res judicata*. Again, Equitrans knew, or should have known, of its condemnation claim before the Moores filed their Complaint. Equitrans marked the physical location of Pipeline H-557 and allegedly reviewed the Right-of-Way. Additionally, more than a year

24

before the trial, Equitrans obtained and reviewed the Survey, which showed that it initially placed and later replaced portions of Pipeline H-557 off the right-of-way. [J.A. at 175.] Finally, the same District Court adjudicated both the First and Second Civil Actions. In sum, all the elements and policy considerations of *res judicata* support a finding that Equitrans' condemnation action qualifies as a compulsory counterclaim and, therefore, this factor should weigh in the Moores' favor.

3.    *The same evidence supports both the Moores' claims and Equitrans' condemnation claim.*

Substantially similar evidence supports both the Moores' claims and Equitrans' condemnation claim. Indeed, a cursory review of the surveys in the Joint Appendix shows the similarity of the evidence. In support of its Complaint in Condemnation, Equitrans provided the District Court with an April 8, 2015 survey, which depicted the area Equitrans wanted condemned. [J.A. at 49.] This survey is nearly identical to the June 19, 2013 Survey submitted in the First Civil Action, and which the Moores relied on to prove their claims against Equitrans. [J.A. at 175.] As stated *supra*, both the Moores' claims in the First Civil Action and Equitrans' condemnation claim rely on the location of Pipeline H-557 as an essential element to the claims. Therefore, this factor supports a finding that Equitrans' condemnation action qualifies as a compulsory counterclaim.

25

4.    *A logical relationship exists between the Moores' claims and Equitrans' condemnation claim.*

A logical relationship exists between the Moores' claims and Equitrans' condemnation claim.  Again, both claims rely on the same fact: the location of Pipeline H-557.  However, Equitrans' Counterclaim for a prescriptive easement and its conduct in other civil actions underscore the logical relationship between Equitrans' claim for condemnation and the Moores' claims.[12] [J.A. at 172-74.]  "In the context of prescriptive easements, an 'adverse use' of land is a wrongful use, made without the express or implied permission of the owner of the land."  Syl. pt. 5, in part, *O'Dell v. Stegall*, 703 S.E.2d 561 (W. Va. 2010).  In requesting leave from the District Court to file this Counterclaim, Equitrans argued that the Moores "have repeatedly suggested that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement. . . .  Stated simply, either the pipeline is in the correct location or Equitrans is entitled to a prescriptive easement." [J.A. at 169.] This Court should not treat Equitrans' condemnation claim with any different rationale than Equitrans treated its claim for a prescriptive easement.

---

[12]  In *Van Scyoc v. Equitrans*, plaintiffs, like the Moores, alleged claims for illegal trespass and unlawful taking. -- F. Supp. 3d --, 2015 WL 1346872 *1 (W.D. Pa. Mar. 23, 2015).  Equitrans denied these allegations, however, Equitrans alleged a counterclaim for condemnation under the Natural Gas Act.  *Id.* at *2.  Again, nothing prevented Equitrans from asserting a condemnation claim under the Natural Gas Act in the First Civil Action.

26

In its November 18, 2015 Order, the District Court mistakenly concluded that "Equitrans' condemnation claim is logically dependent on the underlying claim only to the extent that it could not seek condemnation until it was determined that the relevant portions of the pipeline are outside the 1960 right-of-way" in weighing this factor against a finding of a compulsory counterclaim. [J.A. at 266.] This finding misconstrues the facts, as **Pipeline H-557 never physically moved between the Ejectment and Condemnation Actions**. [J.A. at 49, 133-35, 144, 175.] At all times during these proceedings and irrespective of the jury's verdict, the Pipeline remained affixed to the Moores' property beyond the metes and bounds of the route described in the right-of-way grant and, consequently, nothing prevented Equitrans from pursuing condemnation as a compulsory counterclaim. Equitrans alluded to this condemnation claim in the First Civil Action. [J.A. at 194.] Additionally, the prescriptive easement counterclaim required a finding of adverse use of the Moores' property, which is an acknowledgement that Equitrans located the Pipeline off the right-of-way. Lastly, Equitrans filed its Counterclaim for a prescriptive easement **before** it even received the results of the Survey. [J.A. at 168-74.] This shows that Equitrans' ability to raise counterclaims in its pleadings was not depended on the jury's specific findings. Clearly, a logical relationship exists between the Moores' and Equitrans' claims, and this logical relationship weighs in

favor of finding that the condemnation claim qualified as a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure.

Finally, Rule 13(a) fulfills an important public policy. "The reason for compelling the litigant to interpose compulsory counterclaims is to enable the court to settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence." 6 Arthur R. Miller, May Kay Kane & A. Benjamin Spencer, FEDERAL PRACTICE & PROCEDURE § 1409 (3d ed.). Here, the Moores filed their initial Complaint against Equitrans on June 26, 2012. [J.A. at 145-52.] Because Equitrans delayed filing a condemnation claim, Equitrans subsequent initiation of the Second Civil Action caused two (2) more years of litigation between these parties on the same issues. [J.A. at 145-52, 283, 296.] This litigation tactic unnecessarily expended judicial resources and unfairly allowed Equitrans to flex its superior financial power to prolong the litigation against the Moores as a punishment for their initial complaint. Unless this Court prohibits this practice by enforcing Rule 13(a)'s compulsory counterclaim waiver rule, Equitrans, and its sister entities, will have an incentive to treat other property owners in a like fashion. This Court's precedent and the facts of this case provide this Court with a sufficient basis to curb Equitrans' impermissible litigation tactics. Therefore, this Court should reverse and vacate the November 18, 2015 Order and April 21, 2017 Amended Judgment.

**C.    Alternatively, Equitrans is estopped from pursuing its condemnation claim because it took a factually inconsistent position to gain an unfair procedural advantage.**

Certainty, Equitrans' failure to satisfy the requirements of 15 U.S.C. § 717f(h) and failure to allege its condemnation as a compulsory counterclaim justify this Court awarding the Moores their requested relief.  However, additional reasons support reversing and vacating the Court's November 18, 2015 Order and the April 21, 2017 Amended Judgment.  Throughout the First Civil Action, Equitrans forced the Moores to litigate the location of Pipeline H-557, because Equitrans insisted that it complied with the Right-of-Way.  [J.A. at 160-67, 169, 181-83.]  Following the March 25, 2015 verdict, Equitrans withdrew from this fight and, instead, charged ahead with its condemnation claims.  [J.A. at 17-20.]  Equitrans' tactic resulted in an unfair procedural advantage.  It allowed Equitrans to avoid the litigation consequence of the choices it made in the First Civil Action.  The principles of estoppel should preclude Equitrans' condemnation claim and these equitable principles also provide this Court with authority to reverse and vacate the November 18, 2015 Order and April 21, 2017 Amended Judgment.

"Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court."  *See Zirkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007).  "Acting on the assumption that there is only one truth about a given set of circumstances, **the**

**courts apply judicial estoppel to prevent a party from benefiting itself by**

**maintaining mutually inconsistent positions regarding a particular situation**."

*See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998)

(emphasis added).  In assessing whether to invoke the doctrine of judicial estoppel,

this Court examines four (4) factors:

> (1) the party to be estopped must be advancing an assertion
> that is inconsistent with a position taken during previous
> litigation; (2) the position must be one of fact, rather than
> law or legal theory; (3) the prior position must have been
> accepted by the court in the first proceeding; and (4) the
> party to be estopped must have acted intentionally, not
> inadvertently.

*See Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998).

Application of the doctrine of judicial estoppel precludes Equitrans' condemnation

claim against the Moores.

No question exists that Equitrans advanced a factual position during the

First Civil Action inconsistent with its factual position in the Second Civil Action.

Specifically, in the First Civil Action, Equitrans vigorously maintained that it placed

and replaced the pipeline within and along the route described in the Moores' right-

of-way.  [J.A. at 160-67, 169, 181-83.]  Conversely, in the Second Civil Action,

Equitrans admitted that it placed Pipeline H-557 on the Moores' property in violation

of the Moores' right-of-way.  [J.A. at 17-20, 49.]  These factually inconsistent

positions in successive civil actions supports application of the doctrine of judicial estoppel.

With respect to the third factor, the District Court did rely on Equitrans' factual arguments in the First Civil Action.[13]  In its September 23, 2014 Order in the First Civil Action, the District Court expressly relied on Equitrans' factual position to conclude that an issue of fact existed for the jury to consider concerning the location of the pipeline vis-á-vis the Moores' Right-of-Way:

> This Court finds that the contract term "approximately" is ambiguous in the context of this case.  However, this finding is not based on the contract term per se.  **This Court makes that finding because of the factual disagreement of the parties as to what would fulfill the obligation of the defendant [Equitrans] to place the pipeline "approximately" along the route of the right-of-way agreement. . . .**  Thus, as here, where the parties disagree as to how far the replaced pipeline is from the original designation of the right-of-way agreement, there could be differential findings by a trier of fact as to what constitutes "approximately."  As such, this Court may not grant summary judgment for either party.

---

[13] In its November 18, 2015 Order, the District Court refused to apply the doctrine of judicial estoppel, in part, because it claimed that it never accepted Equitrans' factual position.  [J.A. at 268.].  As demonstrated *infra*, the District Court accepted Equitrans' factual position.

*See Moore*, 49 F. Supp. 3d at 467 (emphasis added).  Consequently, the District Court clearly accepted Equitrans' factual position, and this acceptance supports application of the doctrine of judicial estoppel.

Finally, Equitrans acted intentionally because it chose to take the initial factual position in the First Civil Action despite: (1) actually locating the Pipeline on the Moores' property; (2) actually locating the route for the pipeline specified in the right-of-way; and (3) reviewing the Survey, which clearly showed that sections of the Pipeline were **not** located on the right-of-way.  Notwithstanding, in its November 18, 2015 Order, the District Court rejected the Moores' judicial estoppel argument because it concluded that "there is no indication that Equitrans intended to intentionally mislead this Court in defending itself in the underlying civil action." [J.A. at 267-68 (citing *Zirkand*, 478 F.3d at 638).]  Respectfully, the District Court misanalysed this factor.  A review of the *King* decision and the United States Supreme Court's recent decision in *Microsoft Corporation v. Baker* illustrate that the doctrine of judicial estoppel applies to Equitrans' conduct.  -- S. Ct. --, 2017 WL 2507341 (U.S. June 12, 2017).

In *King*, plaintiff pursued a civil action against the defendant employer for age discrimination under the West Virginia Human Rights Act.  159 F.3d at 194. To succeed on this claim, plaintiff needed to show that "she was 'able and competent

to perform the services required' of her employment." *Id.* Prior to commencing this suit, plaintiff received an award from Social Security which found that she suffered from a disability, which precluded her previous employment. *Id.* at 195. The Fourth Circuit found judicial estoppel applied to the subsequent age discrimination suit because plaintiff intentionally took a factually inconsistent position in the earlier Social Security proceedings. *Id.* at 198 ("**To allow [plaintiff] to obtain benefits from two sources based on two incompatible positions, simply because the positions aid her claims for remuneration, would reduce truth to a mere financial convenience and would undermine the integrity of the judicial process**.") (emphasis added).

In *Baker*, plaintiffs, in 2009, attempted to bring a class action based on allegations that their Xbox 360 gaming systems inadvertently destroyed gaming discs through normal play. *Id.* at *8. The United States District Court for the Western District of Washington denied class certification. Under Rule 23(f) of the Federal Rules of Civil Procedure, plaintiffs requested leave to appeal the interlocutory class-certification denial, but the Court of Appeals for the Ninth Circuit denied the requested relief. *Id.* Thereafter, plaintiffs settled their claims individually with Microsoft.

33

Two (2) years later, in 2011, a different set of plaintiffs, represented by some of the same counsel as the previous Xbox litigation, again attempted to create a nationwide class action of Xbox 360 owners based on alleged design defects. Like they had done previously, the United States District Court for the Western District of Washington denied the requested class certification and the Ninth Circuit denied the requested interlocutory appeal. *Id.* at *8-9. However, rather than individually litigating plaintiffs' claims against Microsoft, these plaintiffs, instead, entered a voluntary dismissal order, with the stipulation that allowed plaintiffs to appeal the District Court's denial of class certification. *Id.* at *9. Over Microsoft's object, the District Court permitted the voluntary dismissal and the Ninth Circuit accepted the stipulation as a final order to confer jurisdiction on the appellate court. *Id.* at *9-10. The United States Supreme Court granted certiorari to determine the validity of plaintiffs' tactic.

While most of the United States Supreme Court's opinion focuses on finality and 28 U.S.C. § 1291, the Supreme Court also relied on estoppel principals for disapproving of plaintiffs procedural maneuvers. The Supreme Court observed that the plaintiffs' impermissibly attempted to change their position to gain a strategic advantage in the litigation. *Id.* at *12. Critically, the Supreme Court noted that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have

34

changed, assume a contrary position." *Id.* at *12, n.10 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). For this reason, among others, the United States Supreme Court concluded that plaintiffs could not fabricate jurisdiction though changing procedural strategies. The same reasoning applies to Equitrans' procedural maneuvers through the First and Second Civil Actions. Equitrans' inconsistent factual positions in the two (2) proceedings allowed it to gain an unfair procedural advantage, which it could not have obtained otherwise. The doctrine of judicial estoppel precludes this type of litigation tactic.

In sum, the Moores satisfied the elements of judicial estoppel. Equitrans took factually inconsistent positions in the First and Second Civil Actions in an effort to gain an unfair strategic advantage – Equitrans got to try two (2) factually inconsistent positions to defeat the Moores' claims. The District Court accepted Equitrans' initial factual position, and this acceptance allowed Equitrans to avoid summary judgment. Finally, Equitrans intentionally implemented this strategy. Indeed, Equitrans' December 18, 2013 Memorandum of Law evidences Equitrans' intentions. [J.A. at 181-83, 194.] In this Memorandum of Law, Equitrans twice alludes to a future condemnation action and, yet, maintained that it properly constructed its Pipeline within the meets-and-bounds description of the right-of-way grant. [J.A. at 181-83, 194.] These actions allow this Court to invoke the doctrine of judicial estoppel. For these reasons, this Court should reverse and

vacate the District Court's November 18, 2015 Order and April 21, 2017 Amended Judgment.

**D.** **Equitrans' condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property for purely private reasons.**

Equitrans condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution. The Fifth Amendment provides a **limited** right to take the private property of another under the takings clause. U.S. CONST. amend V; U.S. CONST. amend XIV; *see also Chi, B & Q. J.A. Co. v. Chi.*, 166 U.S. 226 (1897) (incorporating the Fifth Amendment's taking clause). Long ago, the United States Supreme Court held that no matter the compensation, the Fifth Amendment's taking clause precludes any taking for purely private reasons. *See Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80 (1937); *see Washington-Summers, Inc. v. City of Charleston*, 430 F. Supp. 1013, 1015 (S.D. W. Va. 1977) (citing *Mo. Pac. Ry. Co. v. Neb.*, 164 U.S. 403 (1896)). In *99 Cents Only Stores v. Lancaster Redevelopment Agency*, the United States District Court for the Central District of California illustrates this fundamental constitutional concept. 237 F. Supp. 2d 1123 (C.D. Cal. 2001)

In *99 Cents Only Stores*, plaintiff, a discount store, challenged a public entity's attempt to invoke condemnation for private reasons. In 1983, the public

entity developed a regional shopping center known as the "Power Center" using limited eminent domain to rectify blighted real property. *Id.* at 1125. The public entity entered into lease agreements with Costco and plaintiff, among others, and the shopping center reinvigorated the economically depressed area. *Id.* at 1123. In 1999, plaintiff renewed its lease for a five (5) year period, with an exclusive option to extend the lease for another fifteen (15) years. *Id.* at 1126. Shortly thereafter, Costco, the anchor store in the Power Center, informed the public entity that it needed more space to continue its commercial operations. Costco threatened to relocate its store, unless the public entity found Costco this additional retail space. *Id.* In an effort to appease Costco's demands, the public entity and developer attempted unsuccessfully to buy plaintiff's lease. When these efforts failed, the public entity threatened condemnation efforts, which led plaintiff to initiate the lawsuit. *Id.* at 1127.

The United States District Court for the Central District of California quickly rejected the public entity's condemnation attempt. *Id.* at 1128-89. The District Court noted that the United States Constitution required a public use to take a private person's land. While the United States Supreme Court has broadly defined this public use requirement, the condemning entity still needed to establish public use as a prerequisite to any taking. *Id.* at 1129. The public entity argued that the threatened condemnation action served a public purpose because, without Costco

37

anchoring the Power Center, a threat of future blight existed for the city. *Id.* The District Court rejected this argument and noted that "the sole reason for condemning the [plaintiff's] property was Costco's unilateral demand for expansion into the space being occupied by [plaintiff]." *Id.* at 1130. Equitrans' taking suffers from the same logical fallacy.

Equitrans took the Moores' property solely for a private purpose. Equitrans wanted to avoid the costs and expenses associated with moving Pipeline H-557 to comply with the Moores' right-of-way.[14] As evident in the First Civil Action, Equitrans possesses the ability to temporarily place its pipelines out-of-service without causing a permanent reduction of significant services. *See Moore*, 49 F. Supp. 3d at 476. For this reason, the United States Constitution precludes Equitrans' condemnation action.

To be clear, the Moores acknowledge that Equitrans holds certificates of public necessity and further acknowledge that condemnations often occur under 717f(h) for permissible public purposes. If the Moores' right-of-way did not exist, Equitrans would have compelling arguments that its condemnation benefits the public. However, the right-of-way exists and dictates the location of Pipeline H-557

---

[14] Unfortunately, Equitrans never submitted any evidence, whatsoever, in the First or Second Civil Actions as to what its costs or expenses would be to move the Pipeline. This was Equitrans burden and, as a result of its failure, this Court is left with no evidence on this issue.

on the Moores' property.  [J.A. at 134-35.]  This Court should preclude Equitrans from wielding its potential condemnation authority as a means to achieve its business interests – minimizing the length of time H-557 is out of service – at the expense of the Moores' constitutional rights.  This Second Civil Action and the additional taking of the Moores' property only benefited Equitrans, not the public.  Because Equitrans condemned for solely private reasons, this Court should reverse and vacate the November 18, 2015 Order and April 21, 2017 Amended Judgment.

**E.     Equitrans' condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property in excess of its needs.**

Finally, Equitrans' condemnation violates the Moores' Fifth and Fourteenth Amendment rights under the United States Constitution, because Equitrans took the Moores' property in excess of its needs.  "Excess condemnation does not go to the question of how much land is necessary *for the public project*, but rather whether the land being taken is in excess to the physical requirements of the project as determined by the condemnor.  Thus, the question in such cases is whether the excess land is being taken for any public use authorized by the statute under which the condemnor is proceeding."  Robert C. Bird & Lynda J. Oswald, *Necessity and Excess Condemnation Under Eminent Domain*, 38 REAL EST. L.J. 304, 305 (Winter 2009) (italics in original).  Courts permit an excessive condemnation in

39

**limited** circumstances and only under three (3) theories: (1) remnant; (2) protective; and (3) recoupment. None of these circumstances exist in this case and, therefore, Equitrans exceeded its condemnation authority in taking the Moores' property in excess of its needs.

Under the remnant theory, a condemnor may take excess property only if it would become valueless because of the purposed taking. *See, e.g.*, *State Highway Comm'n v. Chapman*, 446 P.2d 709 (Mont. 1968) (discussing physical and financial remnant theory); *State ex rel. State Highway Dept. v. 9.99 Acres of Land, More or Less, in New Castle Hundred, New Castle Cnty.*, 253 A.2d 509, 511-12 (Del. 1969) (discussing remnant theory). Here, the remnant theory fails to apply because no prior condemnation action occurred. Instead, Equitrans' right to place Pipeline H-557 stemmed from an agreed right-of-way grant with the Moores' predecessor in title. [J.A. at 134-35.] Without a prior condemnation, no remnant, physical or financial, remained and, therefore, the remnant theory fails to justify the excessive condemnation.

Likewise, the protective theory does not apply. Under the protective theory, an entity can condemn in excess of its needs to enhance the integrity of its project. *See* Bird & Oswald, *supra* at 308 ("The *protective theory* states that municipalities may take additional land in order to secure the public project's

40

surroundings, to protect the integrity of the project, or to enhance the values of surrounding properties impacted by the project.") (italics in original). Here, Equitrans undertook its construction work on Pipeline H-557 in 1960's and in 1996. [J.A. at 133, 144.] Consequently, at the time of this taking in 2015, no project existed to protect. Without a project, the protective theory fails to apply and, therefore, fails to justify the excessive condemnation.

Finally, the recoupment theory is inapplicable. The recoupment theory justifies excessive condemnation to assist the condemnor in avoiding additional ancillary costs associated with their project. *See State ex rel. Wash. State Convention & Trade Ctr. v. Evans*, 966 P.2d 1252, 1259-60 (Wash. 1998) (en banc).[15] Again, like the protective theory, no active project existed to justify this taking theory. Further, as stated *supra*, Equitrans never provided the District Court or the Moores with any information concerning the costs of relocating Pipeline H-557 to comply with the right-of-way.[16] In sum, no theory supports an excessive condemnation.

---

[15] In a dissenting opinion, Justice Sanders correctly described the recoupment theory as "the worst of all possible eminent domain worlds since (1) it delivers condemned property to private use and (2) necessarily represents a seizure of property which is excess to legitimate public use." *Id.* at 1267 (Sanders, J., dissenting).

[16] *See supra* note 14 and accompanying text.

41

To be sure, Equitrans' condemnation constitutes an excessive condemnation.[17]  The right-of-way grant provided Equitrans sufficient property to construct, maintain and operate its Pipeline.  [J.A. at 134-35.]  As stated *supra*, the District Court, in the First Civil Action, acknowledged that Equitrans possessed the ability to place its pipeline along the route specified in the right-of-way without causing a permanent disruption of service.  *See Moore*, 49 F. Supp. 3d at 476.  For all these reasons, Equitrans' excessive taking violates the Moores' constitutional rights and allows this Court to reverse and vacate the District Court's November 18, 2015 Order and April 21, 2017 Amended Judgment.

## Conclusion

For the reasons stated in this Brief and for any reasons apparent to this Court during oral argument, the Moores respectfully request that this Court reverse and vacate the District Court's November 18, 2015 Order and April 21, 2017 Amended Judgment.

---

[17] In its November 19, 2015 Order, the District Court never analyzed whether Equitrans' condemnation resulted in a taking beyond its needs.  Instead, the District Court asserted that the *City of Cincinnati v. Vester*, 281 U.S. 439 (1930), dealt with Ohio constitutional language and, therefore, failed to apply to these proceeding.  Admittedly, little federal authority exists on excessive taking under the United States Constitution, however, the amendment must implicitly limit the size of the taking to the need.  To hold otherwise would create an unchecked taking power and would violate the spirit of the Bill of Rights to limit the power of government.

.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA
JEFFERY J. MOORE and SANDRA J.
MOORE,

By Counsel,

s/ Patrick C. Timony
Kenneth E. Webb, Jr. (WVSB #5560)
Patrick C. Timony (WVSB #11717)
BOWLES RICE LLP
Post Office Box 1386
Charleston, West Virginia   25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 347-1756
Email: kwebb@bowlesrice.com
Email: ptimony@bowlesrice.com
*Counsel for Appellants John and Sandy Moore*

43

9026985.4

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### Effective 12/01/2016

No. _____     Caption: _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

      [ ]   this brief or other document contains _____ [*state number of*] words

      [ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

      [ ]   this brief or other document has been prepared in a proportionally spaced typeface using
            _____ [*identify word processing program*] in
            _____ [*identify font size and type style*]; **or**

      [ ]   this brief or other document has been prepared in a monospaced typeface using
            _____ [*identify word processing program*] in
            _____ [*identify font size and type style*].

(s)_____

Party Name_____

Dated:_____

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**EQUITRANS, L.P.,**
**a Pennsylvania limited partnership,**

      **Appellee,**

**v.**                             **No. 17-1574**

**0.56 ACRES MORE OR LESS OF**
**PERMANENT EASEMENT LOCATED IN**
**MARION, COUNTY, WEST VIRGINIA,**
**JEFFERY J. MOORE and**
**SANDRA J. MOORE,**

      **Appellants.**

## Certificate of Service

    I, Patrick C. Timony, hereby certify that the foregoing document has been served this **26th day of June, 2017**, via the CM/ECF system:

        David K. Hendrickson, Esquire
        Barbara Allen Samples, Esquire
        HENDRICKSON & LONG, PLLC
        Post Office Box 11070
        Charleston, West Virginia   25339

        s/ Patrick C. Timony
        Patrick C. Timony (WVSB #11717)

9058315.1