# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

## EQUITRANS, L.P.,
## a Pennsylvania Limited Partnership,
### *Plaintiff-Appellee,*

### v.

## JEFFERY J. MOORE and
## SANDRA J. MOORE,
### *Defendants-Appellants.*

**0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED
IN MARION COUNTY, WEST VIRGINIA,**
*Defendant*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG

### JOINT APPENDIX

Patrick Craig Timony
Kenneth Eugene Webb, Jr.
BOWLES RICE, LLP
600 Quarrier Street
P.O. Box 1386
Charleston, West Virginia 25325
(304) 347-1100 (Telephone)
ptimony@bowlesrice.com
kwebb@bowlesrice.com

Counsel for Defendants-Appellants

David K. Hendrickson
Barbara Allen Samples
HENDRICKSON & LONG, PLLC
214 Capitol Street
P. O. Box 11070
Charleston, West Virginia 25301
(304) 346-5500 (Telephone)
daveh@handl.com
bsamples@handl.com

Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS

Relevant Docket Entries ..........................................................................1

(Doc. No. 1) – Complaint filed 6-18-15 ...........................................17
  with attachments:

  Exhibit 2 – Certificate of Public Conveyance and Necessity ................21

  Exhibit 3 – Plat of Survey  - 4-18-15 .................................................49

  Exhibit 4 – Description of Survey ...................................................50

  Exhibit 5 – Emails between Ken Webb and Steve Hastings ...............52

  Exhibit 6 – Appraisal – 5-18-15 ......................................................55

  Exhibit 7 – Notice of Condemnation ..........................................125

(Doc. No. 7) – Certain Attachments to Moores' Memorandum of
  Law in Support of their Motion to Dismiss filed 7-15-15 –

  Exhibit 1 – 1960 Equitable Gas Construction plans .............................133

  Exhibit 2 – Right of Way between John and Dorothy Moore
    and Equitable Gas – 1-27-60 .......................................................134

  Exhibit 3 – Right of Way between George and Mary Burline
    and Equitable Gas – 1-21-60 .......................................................136

  Exhibit 4 – Right of Way between Keith and Bessie Coffman
    and Equitable Gas ........................................................................138

  Exhibit 5 – Deed between John R. and Dorothy G. Moore and
    J.  John and Sandra Moore – 11-21-90 ...................................140

i

Exhibit 6 – Correspondence between J. T. Egler and
   W. M. Hostutler  Re:  Main Line  Renewal dated 8-11-94..............144

Exhibit 7 – Complaint (First Civil Action) filed 6-26-12 ...................145

Exhibit 8 – Notice of Removal (First Civil Action) – 7-27-12...........153

Exhibit 9 – Answer to Complaint by Defendant Equitrans,
   L.P. (First Civil Action) – filed 8-3-12  ...................................160

Exhibit 12 – Equitrans, L. P.'s Motion for Leave to File Counter-
   Claim for Prescriptive Easement and Counter-Claim (First
   Civil Action) filed 5-31-13 .........................................................168

Exhibit 14 – Survey of 6-19-13 ......................................................175

Exhibit 15 – Memorandum of Law in Support of Equitrans
   L.P.'s Motion for Summary Judgment (First Civil Action)
    filed 12-18-13 ..........................................................................176

Exhibit 16 – Verdict (First Civil Action) – 3-25-17 ............................198

Exhibit 17 – Judgment (First Civil Action) filed 5-6-15 ....................200

Exhibit 18 – Memorandum Opinion (First Civil Action)
   filed 5-6-15 ......................................................................206


(Doc. No. 8) – Defendants' Moores Answer to the Complaint
   filed 7-15-15 .................................................................218

(Doc. No. 12) – Attachments to the Moores' Response in
   Support of their Motion to Dismiss filed  8-4-15

   Exhibit A – Excerpt of Transcript of 1-21-14 – Van Sycoc .............238

Exhibit B -  Equitrans' Counterclaim for Condemnation –
   Van Sycoc ................................................................................................242

(Doc. No. 15) – Memorandum Opinion entered 11-18-15 .....................256

(Doc. No. 75) – Stipulation filed 7-20-16 .......................................................280

(Doc. No. 116) – Verdict filed 1-18-17 .............................................................283

(Doc. 117) – Judgment Order entered 1-19-17 ............................................284

(Doc. 118) – Defendants' Motion to Amend the 1-19-17
   Judgment filed 2-9-17 ........................................................................285

(Doc.  119) – Notice of Appeal filed 2-17-17 ...............................................288

(Doc. 125) – Memorandum Opinion filed 4-21-17 .....................................291

(Doc. 126) – Amended Judgment filed 4-21-17 ............................................296

iii

APPEAL,MAG

# U.S. District Court
# Northern District of West Virginia (Clarksburg)
# CIVIL DOCKET FOR CASE #: 1:15-cv-00106-FPS-JES

| | |
|---|---|
| Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia et al | Date Filed: 06/18/2015 |
| | Date Terminated: 01/19/2017 |
| Assigned to: Senior Judge Frederick P. Stamp, Jr | Jury Demand: Defendant |
| Referred to: Magistrate Judge James E. Seibert | Nature of Suit: 210 Condemnation |
| Case in other court: Fourth Circuit, 17-01574 | Jurisdiction: Diversity |
| Cause: 15:717 Natural Gas Act | |

**Plaintiff**

**Equitrans, L.P.**
*a Pennsylvania Limited Partnership*

represented by **David K Hendrickson**
Hendrickson & Long
P. O. Box 11070
Charleston, WV 25339
(304) 346-5508
Fax: (304) 346-5515
Email: daveh@handl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Barbara Allen Samples**
Hendrickson & Long, PLLC
214 Capitol Street
P.O. Box 11070
Charleston, WV 25301
(304) 346-5500
Fax: (304) 346-5515
Email: bsamples@handl.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia**

represented by **Kenneth E. Webb , Jr.**
Bowles, Rice, McDavid, Graff & Love - Charleston
PO Box 1386
600 Quarrier St.
Charleston, WV 25325-1386
(304) 347-1737
Fax: 304-347-1756
Email: kwebb@bowlesrice.com

*ATTORNEY TO BE NOTICED*

**Patrick Craig Timony**
Bowles, Rice, McDavid, Graff & Love
- Charleston
PO Box 1386
600 Quarrier St.
Charleston, WV 25325-1386
(304) 347-1752
Fax: (304) 347-1746
Email: ptimony@bowlesrice.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeffery J. Moore**                    represented by    **Kenneth E. Webb , Jr.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Patrick Craig Timony**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Sandra J. Moore**                     represented by    **Kenneth E. Webb , Jr.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Patrick Craig Timony**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Jeffery J. Moore**                    represented by    **Kenneth E. Webb , Jr.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**0.56 Acres More or Less of**          represented by    **Kenneth E. Webb , Jr.**
**Permanent Easement Located in**                         (See above for address)
**Marion County, West Virginia**                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sandra J. Moore**                     represented by    **Kenneth E. Webb , Jr.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

Equitrans, L.P.                                        represented by  **David K Hendrickson**
*a Pennsylvania Limited Partnership*                                  (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Barbara Allen Samples**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/18/2015 | 1 | COMPLAINT IN CONDEMNATION against 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore, filed by Equitrans, L.P.. Filing Fee $400.00 PAID. Receipt #0424-1912622. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A - Order, Sec. of State documents, FERC Order, # 3 Exhibit B - Plat of Survey, # 4 Exhibit C - Description of Survey, # 5 Exhibit D - Email from Webb to Hendrickson, # 6 Exhibit E - Email, Appraisal Report, # 7 Notice of Condemnation, # 8 Exhibit A - Plat of Survey, # 9 Exhibit B - Description of Survey)(cnd) (Entered: 06/18/2015) |
| 06/25/2015 | 3 | ORDER: Case reassigned to Senior Judge Frederick P. Stamp, Jr., for all further proceedings. District Judge Irene M. Keeley no longer assigned to case. Signed by District Judge Irene M. Keeley on 6/25/2015. (cmd) (Entered: 06/25/2015) |
| 07/09/2015 | 4 | SUMMONS Returned Executed as to Jeffery J. Moore served on 6/26/2015. (Hendrickson, David) (Entered: 07/09/2015) |
| 07/09/2015 | 5 | SUMMONS Returned Executed as to Sandra J. Moore served on 6/26/2015. (Hendrickson, David) (Entered: 07/09/2015) |
| 07/15/2015 | 6 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Webb, Kenneth) (Entered: 07/15/2015) |
| 07/15/2015 | 7 | MEMORANDUM *of Law in Support of* by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore re 6 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19)(Webb, Kenneth) (Entered: 07/15/2015) |
| 07/15/2015 | 8 | ANSWER to 1 Complaint,, , COUNTERCLAIM against Equitrans, L.P. by Jeffery J. Moore, 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Sandra J. Moore. (Attachments: # 1 Exhibit 1) (Webb, Kenneth) (Entered: 07/15/2015) |

| 07/28/2015 | 9 | Memorandum in Opposition re 6 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Equitrans, L.P.. (Attachments: # 1 Attachment Case Law)(Hendrickson, David)(Entered: 07/28/2015) |
|---|---|---|
| 07/30/2015 | 10 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Defendants' Counterclaim)* by Equitrans, L.P.. (Attachments: # 1 Attachment Case Law) (Hendrickson, David) (Entered: 07/30/2015) |
| 07/30/2015 | 11 | Memorandum in Support re 10 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Defendants' Counterclaim)* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/30/2015) |
| 08/04/2015 | 12 | RESPONSE in Support re 6 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Webb, Kenneth) (Entered: 08/04/2015) |
| 08/13/2015 | 13 | RESPONSE in Opposition re 10 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Defendants' Counterclaim)* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Webb, Kenneth) (Entered: 08/13/2015) |
| 08/20/2015 | 14 | REPLY to Response to Motion re 10 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Defendants' Counterclaim)* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 08/20/2015) |
| 11/18/2015 | 15 | MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND GRANTING PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS: It is ORDERED that Defendants' 6 Motion to Dismiss the complaint is DENIED and Plaintiff's 10 Motion to Dismiss the counterclaims is GRANTED. Signed by Senior Judge Frederick P. Stamp, Jr on 11/18/15. (cnd) (Entered: 11/18/2015) |
| 12/22/2015 | 16 | MOTION for Status Conference by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A)(Webb, Kenneth) (Entered: 12/22/2015) |
| 12/23/2015 | 17 | ORDER SETTING TELEPHONIC STATUS AND SCHEDULING CONFERENCE: It is ORDERED that Defendants' 16 Motion for a Status Conference is hereby GRANTED. The parties are DIRECTED to appear via telephone for a Status and Scheduling Conference on 1/5/2016 10:00 AM in Judge Stamp Chambers before Senior Judge Frederick P. Stamp Jr.. Signed by Senior Judge Frederick P. Stamp, Jr on 12/23/15. (cnd) (Entered: 12/23/2015) |
| 01/05/2016 | 18 | MINUTE ENTRY:<br><br>***NOTICE*** *THE ATTACHED DOCUMENT IS NOT ACCESSIBLE. IT IS FOR STATISTICAL PURPOSES ONLY.* |

| | | Proceedings held before Senior Judge Frederick P. Stamp, Jr: Scheduling/Status Conference held on 1/5/2016 via telephone. (Court Reporter Cindy Knecht.) (soa) (Entered: 01/05/2016) |
|---|---|---|
| 01/05/2016 | 19 | ORDER DIRECTING PARTIES TO FILE BRIEFS REGARDING PRACTICE AND PROCEDURE: It is ORDERED that the Plaintiff is DIRECTED to file a legal memoranda on or before 1/19/16 and the Defendants are DIRECTED to file a response on or before 2/2/16. Signed by Senior Judge Frederick P. Stamp, Jr on 1/5/16. (cnd) (Entered: 01/05/2016) |
| 01/19/2016 | 20 | MEMORANDUM *Regarding Applicable Procedural Law* by Equitrans, L.P. re 19 Order, . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Hendrickson, David) (Entered: 01/19/2016) |
| 02/02/2016 | 21 | MEMORANDUM by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore re 19 Order, . (Webb, Kenneth) (Entered: 02/02/2016) |
| 02/22/2016 | 22 | ORDER SETTING TELEPHONIC STATUS AND SCHEDULING CONFERENCE: It is ORDERED that the parties are DIRECTED to appear telephonically on 3/7/2016 10:30 AM in Judge Stamp Chambers before Senior Judge Frederick P. Stamp Jr. for a Status and Scheduling Conference. Signed by Senior Judge Frederick P. Stamp, Jr on 2/22/16. (cnd) (Entered: 02/22/2016) |
| 03/07/2016 | 23 | MINUTE ENTRY:<br><br>***NOTICE*** **THE ATTACHED DOCUMENT IS NOT ACCESSIBLE. IT IS FOR STATISTICAL PURPOSES ONLY.**<br><br>Proceedings held before Senior Judge Frederick P. Stamp, Jr: TelephonicStatus Conference/Scheduling Conference held on 3/7/2016. (Court Reporter Cindy Knecht.) (soa) (Entered: 03/07/2016) |
| 03/07/2016 | 24 | SCHEDULING ORDER: Discovery due by 5/13/2016. Proposed Pretrial Order due by 5/27/2016. Final Pretrial Conference set for 6/1/2016 01:15 PM in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr.. Settlement Conference set for 6/1/2016 01:15 PM in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr.. Jury Selection and Jury Trial set for 6/21/2016 08:30 AM in Clarksburg Bankruptcy Courtroom before Senior Judge Frederick P. Stamp Jr.. Signed by Senior Judge Frederick P. Stamp, Jr on 3/7/16. (cnd) (Entered: 03/07/2016) |
| 03/09/2016 | 25 | CERTIFICATE OF SERVICE by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore *First Set of Discovery to Equitrans, L.P.*. (Webb, Kenneth) (Entered: 03/09/2016) |
| 03/10/2016 | 26 | NOTICE of Appearance by Barbara Allen Samples on behalf of Equitrans, L.P. (Samples, Barbara) (Entered: 03/10/2016) |
| 03/21/2016 | 27 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Requests for Admission, Interrogatories and Requests for Production to Defendants Jeffery* |

| | | |
|---|---|---|
| | | *J. Moore and Sandra Moore (First Set)*. (Hendrickson, David) (Entered: 03/21/2016) |
| 04/11/2016 | 28 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Responses to Defendants' First Set of Discovery to Equitrans, L.P.*. (Hendrickson, David) (Entered: 04/11/2016) |
| 04/11/2016 | 29 | Other Document *Expert Witness Disclosure* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Webb, Kenneth) (Entered: 04/11/2016) |
| 04/20/2016 | 30 | CERTIFICATE OF SERVICE by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore *Answers and Responses to Plaintiff's Requests for Admission, Interrogatories and Requests for Production*. (Timony, Patrick) (Entered: 04/20/2016) |
| 04/25/2016 | 31 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Rule 26(a)(2)(A)&(B) Expert Disclosure*. (Hendrickson, David) (Entered: 04/25/2016) |
| 04/25/2016 | 32 | CERTIFICATE OF SERVICE by Equitrans, L.P. *(AMENDED) for Plaintiff's Rule 26(a)(2)(A)&(B) Expert Disclosure*. (Hendrickson, David) (Entered: 04/25/2016) |
| 04/29/2016 | 33 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Supplemental Responses to Defendants' First Set of Discovery to Equitrans, L.P.*. (Hendrickson, David) (Entered: 04/29/2016) |
| 05/02/2016 | 34 | MOTION for New Trial by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 05/02/2016) |
| 05/02/2016 | 35 | ORDER GRANTING DEFENDANT'S MOTION TO AMEND THE TRIAL DATE AND FIRST AMENDED SCHEDULING ORDER: It is ORDERED that the Defendant's 34 Motion to Amend the Trial Date is hereby GRANTED. FIRST AMENDED SCHEDULING ORDER: Discovery due by 5/13/2016, Proposed Pretrial Order due by 7/20/2016, Final Pretrial Conference/Settlement Conference set for 7/25/2016 10:00 AM in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr.., Jury Selection and Jury Trial set for 8/9/2016 08:30 AM in Clarksburg Bankruptcy Courtroom before Senior Judge Frederick P. Stamp Jr. Signed by Senior Judge Frederick P. Stamp, Jr on 5/2/16. (cnd) (Entered: 05/02/2016) |
| 05/09/2016 | 36 | MOTION to Compel by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Webb, Kenneth) (Entered: 05/09/2016) |
| 05/09/2016 | 37 | MEMORANDUM *of Law in Support* by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore re 36 MOTION to Compel . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Webb, Kenneth) (Entered: 05/09/2016) |
| 05/09/2016 | 38 | |

| | | |
|---|---|---|
| | | MOTION to Amend/Correct 35 Order on Motion for New Trial,,, Scheduling Order,, *(Motion to Modify Scheduling Order to Permit Plaintiff to Take the Depositions of Defendants)* by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Hendrickson, David) (Entered: 05/09/2016) |
| 05/10/2016 | 39 | ORDER OF REFERENCE: ORDERED that this action be referred to the Honorable James E. Seibert, United States Magistrate Judge, who is hereby designated and authorized to consider the record and do all things proper to conduct proceedings regarding the defendants motion to compel 36 and theplaintiffs motion to amend the scheduling order 38 . Signed by Senior Judge Frederick P. Stamp, Jr on 5/10/16. (jss) (Entered: 05/10/2016) |
| 05/12/2016 | 40 | ORDER REQUIRING DEFENDANTS TO RESPOND TO PLAINTIFF'S MOTION TO COMPEL AND PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER: It is ORDERED that Defendants shall respond to 36 MOTION to Compel, 38 MOTION to Modify Scheduling Order by 5/13/2016. Signed by Magistrate Judge James E. Seibert on 5/12/16. (cnd) (Entered: 05/12/2016) |
| 05/12/2016 | 41 | AMENDED ORDER REQUIRING THE PARTIES TO RESPOND TO MOTION TO COMPEL AND MOTION TO MODIFY SCHEDULING ORDER: It is ORDERED that the parties shall respond to 36 MOTION to Compel and 38 MOTION to Modify Scheduling Order by 5/13/2016. Signed by Magistrate Judge James E. Seibert on 5/12/16. (cnd) (Entered: 05/12/2016) |
| 05/13/2016 | 42 | RESPONSE to Motion re 38 MOTION to Amend/Correct 35 Order on Motion for New Trial,,, Scheduling Order,, *(Motion to Modify Scheduling Order to Permit Plaintiff to Take the Depositions of Defendants)* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Webb, Kenneth) (Entered: 05/13/2016) |
| 05/13/2016 | 43 | RESPONSE in Opposition re 36 MOTION to Compel filed by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hendrickson, David) (Entered: 05/13/2016) |
| 05/16/2016 | 44 | ORDER GRANTING IN PART AS FRAMED DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER: It is ORDERED that the parties' 36 Motion to Compel, 38 Motion to Amend/Correct are GRANTED IN PART. The parties shall file a Stipulation by 5:00 pm on 5/18/16. If the parties fail to file aforesaid Stipulation, the depositions of Jeffrey J. Moore and Sandra J. Moore shall take place on 5/26/16 at 9:30 am in the Jury Room of the Magistrate Judge Courtroom in Wheeling, WV. Signed by Magistrate Judge James E. Seibert on 5/16/16. (cnd) (Entered: 05/16/2016) |
| 05/18/2016 | 45 | STIPULATION re 44 Order on Motion to Compel,,, Order on Motion to Amend/Correct,,,,, *Regarding Depositions of Defendants* by Equitrans, L.P.. (Hendrickson, David) (Entered: 05/18/2016) |

| 05/18/2016 | 46 | NOTICE by Equitrans, L.P. *of Depositions of Jeffry J. Moore and Sandra J. Moore* (Hendrickson, David) (Entered: 05/18/2016) |
|---|---|---|
| 05/27/2016 | 47 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Second Supplemental Responses to Defendants' First Set of Discovery to Equitrans, L.P.*. (Hendrickson, David) (Entered: 05/27/2016) |
| 06/21/2016 | 48 | MOTION for Summary Judgment by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Hendrickson, David) (Entered: 06/21/2016) |
| 06/21/2016 | 49 | Memorandum in Support re 48 MOTION for Summary Judgment filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 06/21/2016) |
| 07/05/2016 | 50 | RESPONSE in Opposition re 48 MOTION for Summary Judgment filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Webb, Kenneth) (Entered: 07/05/2016) |
| 07/07/2016 | 51 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Opinion Testimony on the Value of the Subject Property by Defendants* by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Hendrickson, David) (Entered: 07/07/2016) |
| 07/07/2016 | 52 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Purchase Price for Other Properties* by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/07/2016) |
| 07/07/2016 | 53 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Damage to Defendants' Property Allegedly Caused by Neighboring Well Pad* by Equitrans, L.P.. (Attachments: # 1 Exhibit A) (Hendrickson, David) (Entered: 07/07/2016) |
| 07/07/2016 | 54 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence that the Value of the Property Exceeds $40,000* by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Hendrickson, David) (Entered: 07/07/2016) |
| 07/07/2016 | 55 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Jury's Finding of Breach of Contract or Trespass in the Prior Action* by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/07/2016) |
| 07/07/2016 | 56 | MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Alleged Criminal Conduct of Brandon Wise* by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/07/2016) |
| 07/12/2016 | 57 | REPLY to Response to Motion re 48 MOTION for Summary Judgment filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/12/2016) |
| 07/14/2016 | 58 | RESPONSE in Opposition re 55 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Jury's Finding of Breach of Contract or Trespass in the Prior Action* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. |

| | | |
|---|---|---|
| | | Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A)(Timony, Patrick) (Entered: 07/14/2016) |
| 07/14/2016 | 59 | RESPONSE in Opposition re 51 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Opinion Testimony on the Value of the Subject Property by Defendants* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Timony, Patrick) (Attachment 1 replaced on 7/14/2016) (soa). Modified on 7/14/2016 to attach Exhibit A and regenerate NEF (soa). (Entered: 07/14/2016) |
| 07/14/2016 | 60 | RESPONSE in Opposition re 56 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Alleged Criminal Conduct of Brandon Wise* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Timony, Patrick) (Entered: 07/14/2016) |
| 07/14/2016 | 61 | RESPONSE in Opposition re 52 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Purchase Price for Other Properties* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Timony, Patrick) (Entered: 07/14/2016) |
| 07/14/2016 | 62 | RESPONSE in Opposition re 54 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence that the Value of the Property Exceeds $40,000* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Timony, Patrick) (Entered: 07/14/2016) |
| 07/14/2016 | 63 | RESPONSE in Opposition re 53 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Damage to Defendants' Property Allegedly Caused by Neighboring Well Pad* filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Timony, Patrick) (Entered: 07/14/2016) |
| 07/15/2016 | 64 | CERTIFICATE OF SERVICE by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore *Rule 26(a)(3) Disclosures*. (Timony, Patrick) (Entered: 07/15/2016) |
| 07/15/2016 | 65 | CERTIFICATE OF SERVICE by Equitrans, L.P. *for Plaintiff's Rule 26(a)(3) Disclosures*. (Hendrickson, David) (Entered: 07/15/2016) |
| 07/18/2016 | 66 | REPLY to Response to Motion re 56 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Alleged Criminal Conduct of* |

| | | *Brandon Wise* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/18/2016) |
|---|---|---|
| 07/18/2016 | 67 | REPLY to Response to Motion re 53 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of Damage to Defendants' Property Allegedly Caused by Neighboring Well Pad* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/18/2016) |
| 07/18/2016 | 68 | REPLY to Response to Motion re 51 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Opinion Testimony on the Value of the Subject Property by Defendants* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/18/2016) |
| 07/18/2016 | 69 | REPLY to Response to Motion re 52 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Purchase Price for Other Properties* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/18/2016) |
| 07/18/2016 | 70 | REPLY to Response to Motion re 55 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence of the Jury's Finding of Breach of Contract or Trespass in the Prior Action* filed by Equitrans, L.P.. (Attachments: # 1 Exhibit A)(Hendrickson, David) (Entered: 07/18/2016) |
| 07/18/2016 | 71 | REPLY to Response to Motion re 54 MOTION in Limine *with Accompanying Memorandum of Law to Preclude Evidence that the Value of the Property Exceeds $40,000* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/18/2016) |
| 07/20/2016 | 72 | Proposed Pretrial Order by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/20/2016) |
| 07/20/2016 | 73 | STIPULATION *Concerning Property Examination/View and Photographs* by Equitrans, L.P.. (Attachments: # 1 Attachment Photographs, # 2 Attachment Plat of Survey, # 3 Attachment Aerial Map)(Hendrickson, David) (Entered: 07/20/2016) |
| 07/20/2016 | 74 | STIPULATION *Concerning Damage to Residue of the Property, Lost Profits and Loss of Income Caused by the Taking* by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/20/2016) |
| 07/20/2016 | 75 | STIPULATION *Concerning Equitrans' Right to Condemn Under the Natural Gas Act* by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 07/20/2016) |
| 07/22/2016 | 76 | Exhibit List by Equitrans, L.P..(Hendrickson, David) (Entered: 07/22/2016) |
| 07/22/2016 | 77 | MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT AS TO PLAINTIFF'S AUTHORITY TO CONDEMN: It is ORDERED that Plaintiff's 48 Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and Summary Judgment is GRANTED regarding the Plaintiff's |

| | | authority to condemn the subject right-of-way. Signed by Senior Judge Frederick P. Stamp, Jr on 7/22/16. (cnd) (Entered: 07/22/2016) |
|---|---|---|
| 07/22/2016 | 78 | MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE: It is ORDERED that Plaintiff's 51 Motion in Limine to Preclude Opinion Testimony is GRANTED IN PART AS FRAMED AND DENIED IN PART; 52 Motion in Limine to Preclude Evidence of the Purchase Price for Other Properties is DENIED AS FRAMED; 53 Motion in Limine to Preclude Evidence of Damage to Defendants' Property Allegedly Caused by Neighboring Well Pad is GRANTED; 54 Motion in Limine to Preclude Evidence that the Value of the Property Exceeds $40,000 is GRANTED AS FRAMED; 55 Motion in Limine to Preclude Evidence of the Jury's Finding of Breach of Contract or Trespass in the Prior Action is DEFERRED; and 56 Motion in Limine to Preclude Evidence of Alleged Criminal Conduct of Brandon Wise is DEFERRED. Signed by Senior Judge Frederick P. Stamp, Jr on 7/22/16. (cnd) (Entered: 07/22/2016) |
| 07/25/2016 | 79 | Proposed Jury Instructions by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 07/25/2016) |
| 07/25/2016 | 80 | Proposed Jury Verdict by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 07/25/2016) |
| 07/25/2016 | 81 | Proposed Voir Dire by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 07/25/2016) |
| 07/25/2016 | 82 | Exhibit List by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore.(Timony, Patrick) (Entered: 07/25/2016) |
| 07/25/2016 | 83 | MINUTE ENTRY: ***NOTICE*** THE ATTACHED DOCUMENT IS NOT ACCESSIBLE. IT IS FOR STATISTICAL PURPOSES ONLY. Proceedings held before Senior Judge Frederick P. Stamp, Jr.: Final Pretrial/Settlement Conference held on 7/25/2016. (Court Reporter C. Knecht.) (nmm) (Entered: 07/25/2016) |
| 07/25/2016 | 84 | PRETRIAL ORDER. Signed by Senior Judge Frederick P. Stamp, Jr on 7/25/16. (cnd) (Entered: 07/25/2016) |
| 07/25/2016 | 85 | Proposed Jury Instructions by Equitrans, L.P..(Hendrickson, David) (Entered: 07/25/2016) |
| 07/25/2016 | 86 | Proposed Jury Verdict by Equitrans, L.P..(Hendrickson, David) (Entered: 07/25/2016) |
| 07/25/2016 | 87 | Proposed Voir Dire by Equitrans, L.P..(Hendrickson, David) (Entered: 07/25/2016) |

| 07/25/2016 | 88 | Other Document *Biographical Sketch of Douglas C. Wise* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/25/2016) |
|---|---|---|
| 07/25/2016 | 89 | Other Document *Plaintiff's Proposed Stipulation of Facts* filed by Equitrans, L.P.. (Hendrickson, David) (Entered: 07/25/2016) |
| 07/28/2016 | 90 | MOTION for Order Directing Clerk to Provide Juror Questionnaires to Counsel by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 07/28/2016) |
| 07/29/2016 | 91 | ORDER GRANTING IN PART DEFENDANT'S MOTION FOR JURY QUESTIONNAIRES: It is ORDERED that Defendant's 90 Motion for Jury Questionnaires is GRANTED IN PART and the Defendant may obtain juror information pursuant to this Court's Standing Order. Signed by Senior Judge Frederick P. Stamp, Jr on 7/29/16. (Attachments: # 1 Standing Order)(cnd) (Attachment 1 replaced on 8/9/2016 to correct layout) (cnd). (Entered: 07/29/2016) |
| 07/29/2016 | 92 | Other Document *Plaintiff's Summary of Facts Regarding Pipeline Right of Way and Easement Agreements* filed by Equitrans, L.P.. (Attachments: # 1 Attachment)(Hendrickson, David) (Entered: 07/29/2016) |
| 08/01/2016 | 93 | Other Document *Plaintiff's Amended and Corrected Summary of Facts Regarding Pipeline Right of Way and Easement Agreements* filed by Equitrans, L.P.. (Attachments: # 1 Attachment)(Hendrickson, David) (Entered: 08/01/2016) |
| 08/01/2016 | 94 | OBJECTIONS to 76 Exhibit List by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Attachments: # 1 Exhibit A Part 1, # 2 Exhibit A Part 2, # 3 Exhibit B)(Timony, Patrick) (Entered: 08/01/2016) |
| 08/01/2016 | 95 | Second MOTION for New Trial by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 08/01/2016) |
| 08/01/2016 | 96 | OBJECTIONS to 82 Exhibit List by Equitrans, L.P.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Hendrickson, David) (Entered: 08/01/2016) |
| 08/02/2016 | 97 | ORDER GRANTING DEFENDANT'S SECOND MOTION TO AMEND THE TRIAL DATE AND SECOND AMENDED SCHEDULING ORDER: It is ORDERED that Defendants' 95 Motion for New Trial is hereby GRANTED; a Supplemental Pretrial Conference/Final Settlement Conference is set for 10/3/2016 10:00 AM in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr.; and Jury Selection and Jury Trial are set for 10/25/2016 08:30 AM in Clarksburg Bankruptcy Courtroom before Senior Judge Frederick P. Stamp Jr.. Signed by Senior Judge Frederick P. Stamp, Jr on 8/2/16. (cnd) (Entered: 08/02/2016) |
| 08/04/2016 | 98 | MOTION to Amend/Correct *Trial Date and Notice of Scheduling Conflict* by Equitrans, L.P.. (Hendrickson, David) (Entered: 08/04/2016) |

| | | |
|---|---|---|
| 08/08/2016 | 99 | ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE TRIAL DATE AND THIRD AMENDED SCHEDULING ORDER: It is ORDERED that Plaintiff's 98 Motion to Amend the Trial Date and Third Amended Scheduling Order is hereby GRANTED. Supplemental Pretrial Conference/Final Settlement Conference re-set for 10/17/2016 02:30 PM in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr., Jury Selection and Jury Trial re-set for 11/8/2016 08:30 AM in Clarksburg Bankruptcy Courtroom before Senior Judge Frederick P. Stamp Jr. Signed by Senior Judge Frederick P. Stamp, Jr on 8/8/16. (cnd) (Entered: 08/08/2016) |
| 09/21/2016 | 100 | ORDER RESCHEDULING SUPPLEMENTAL PRETRIAL CONFERENCE: It is ORDERED that the Supplemental Pretrial Conference/Final Settlement Conference scheduled for 10/17/16 at 2:30 PM be RESCHEDULED for 01:30 PM on 10/17/16 in Wheeling District Judge Courtroom, South before Senior Judge Frederick P. Stamp Jr. Signed by Senior Judge Frederick P. Stamp, Jr on 9/21/16. (cnd) (Entered: 09/21/2016) |
| 10/13/2016 | 101 | ORDER RESCHEDULING SUPPLEMENTAL PRETRIAL CONFERENCE: It is ORDERED that the Supplemental Pretrial Conference/Final Settlement Conference scheduled for 10/17/2016 be RESCHEDULED for 10/19/2016 11:00 AM in Judge Stamp Chambers before Senior Judge Frederick P. Stamp Jr. Signed by Senior Judge Frederick P. Stamp, Jr on 10/13/16. (cnd) (Entered: 10/13/2016) |
| 10/17/2016 | 102 | Joint MOTION to Participate in Pretrial Conference by Telephone by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 10/17/2016) |
| 10/18/2016 | 103 | ORDER GRANTING 102 JOINT MOTION TO PARTICIPATE IN THE PRETRIAL CONFERENCE BY TELEPHONE. Signed by Senior Judge Frederick P. Stamp, Jr on 10/18/16. (jss) (Entered: 10/18/2016) |
| 10/18/2016 | 104 | MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S REMAINING MOTIONS IN LIMINE: It is ORDERED that Plaintiff's 55 Motion in Limine to Preclude Evidence of the Jury's Finding of Breach of Contract or Trespass in the Prior Action is DENIED AS MOOT and Plaintiff's 56 Motion in Limine to Preclude Evidence of Alleged Criminal Conduct of Brandon Wise is GRANTED. Signed by Senior Judge Frederick P. Stamp, Jr on 10/18/16. (cnd) (Entered: 10/18/2016) |
| 10/19/2016 | 105 | MINUTE ENTRY: <br><br> ***_NOTICE_*** _THE ATTACHED DOCUMENT IS NOT ACCESSIBLE. IT IS FOR STATISTICAL PURPOSES ONLY._ <br><br> Proceedings held before Senior Judge Frederick P. Stamp, Jr: Telephonic Supplemental Pretrial Conference/Final Settlement Conference held on 10/19/2016. (Court Reporter Cindy Knecht.) (soa) (Entered: 10/19/2016) |
| 10/25/2016 | 106 | |

| | | Joint MOTION to Amend Trial Date by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 10/25/2016) |
|---|---|---|
| 10/25/2016 | 107 | VACATED PER 108 ORDER, ENTERED 10/27/16: ORDER SETTING TELEPHONIC STATUS AND SCHEDULING CONFERENCE: Telephonic Scheduling Conference and Status Conference set for 10/28/2016 at 10:00 AM before Senior Judge Frederick P. Stamp Jr. Signed by Senior Judge Frederick P. Stamp, Jr on 10/25/16. (jss) Modified docket text on 10/27/2016 (cnd). (Entered: 10/25/2016) |
| 10/27/2016 | 108 | ORDER VACATING TELEPHONIC STATUS AND SCHEDULING CONFERENCE, GRANTING JOINT MOTION TO AMEND TRIAL DATE AND FOURTH AMENDED SCHEDULING ORDER: It is ORDERED that the parties' 106 Joint Motion to Amend Trial Date is hereby GRANTED and the Telephonic Status and Scheduling Conference scheduled for 10/28/16 is VACATED. Jury Selection and Jury Trial are re-set for 1/18/2017 08:30 AM in Clarksburg District Judge Courtroom, 2nd Floor before Senior Judge Frederick P. Stamp Jr.. Signed by Senior Judge Frederick P. Stamp, Jr on 10/27/16. (cnd) (Entered: 10/27/2016) |
| 12/27/2016 | 109 | ORDER DIRECTING PARTIES TO RESPOND TO OBJECTIONS TO PROPOSED EXHIBITS: The parties are DIRECTED to file responses to each others objections 94 , 96 on or before January 10, 2017. Signed by Senior Judge Frederick P. Stamp, Jr on 12/27/16. (jss) (Entered: 12/27/2016) |
| 01/10/2017 | 110 | RESPONSE by Equitrans, L.P. to 94 Objections,. (Hendrickson, David) (Entered: 01/10/2017) |
| 01/10/2017 | 111 | RESPONSE by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore to 96 Objections. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Timony, Patrick) (Entered: 01/10/2017) |
| 01/11/2017 | 112 | MEMORANDUM OPINION AND ORDER REGARDING PARTIES' OBJECTIONS TO PROPOSED EXHIBITS: It is ORDERED that Defendants' 94 Objection is OVERRULED AS FRAMED, and Plaintiff's 96 Objection is OVERRULED. Signed by Senior Judge Frederick P. Stamp, Jr on 1/11/17. (cnd) Modified relationship on 1/11/2017 (cnd). (Entered: 01/11/2017) |
| 01/13/2017 | 113 | STIPULATION (*Agreed*) by Equitrans, L.P.. (Hendrickson, David) (Entered: 01/13/2017) |
| 01/18/2017 | 114 | MINUTE ENTRY: ***_NOTICE_*** *_THE ATTACHED DOCUMENT IS NOT ACCESSIBLE._* *_IT IS FOR STATISTICAL PURPOSES ONLY._* Proceedings held before Senior Judge Frederick P. Stamp, Jr. Jury Selection and Jury Trial completed on 1/18/2017. (Court Reporter C. Knecht.) (mh) (Entered: 01/18/2017) |

| 01/18/2017 | 115 | Exhibit and Witness List as to jury trial held on 1/18/17.(mh) (Entered: 01/18/2017) |
|---|---|---|
| 01/18/2017 | 116 | JURY VERDICT.(mh) (Additional attachment(s) added on 1/18/2017: # 1 Unredacted Verdict form (as to foreperson name)) (mh). (Entered: 01/18/2017) |
| 01/19/2017 | 117 | CLERK'S JUDGMENT in favor of Jeffery J. Moore and Sandra J. Moore against Equitrans, L.P. Signed by Clerk of Court on 1/18/17. (mh) (Entered: 01/19/2017) |
| 02/09/2017 | 118 | MOTION to Amend/Correct 117 Clerk's Judgment by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 02/09/2017) |
| 02/17/2017 | 119 | NOTICE OF APPEAL as to 15 Order on Motion to Dismiss for Failure to State a Claim,,,, Memorandum & Opinion, 117 Clerk's Judgment by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. Filing fee $; 505, receipt number 0424-2294522. Appeal Record due by 3/3/2017. (Webb, Kenneth) (Entered: 02/17/2017) |
| 02/17/2017 | 120 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 119 Notice of Appeal. (cnd) (Entered: 02/17/2017) |
| 02/17/2017 | 122 | LETTER from U. S. Court of Appeals re 118 MOTION to Amend/Correct 117 Clerk's Judgment, 119 Notice of Appeal. (cnd) (Entered: 03/01/2017) |
| 02/23/2017 | 121 | RESPONSE to Motion re 118 MOTION to Amend/Correct 117 Clerk's Judgment filed by Equitrans, L.P.. (Attachments: # 1 Exhibit A)(Hendrickson, David) (Entered: 02/23/2017) |
| 03/02/2017 | 123 | RESPONSE in Support re 118 MOTION to Amend/Correct 117 Clerk's Judgment filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Jeffery J. Moore, Sandra J. Moore. (Timony, Patrick) (Entered: 03/02/2017) |
| 04/20/2017 | 124 | MOTION to Deposit Funds by Equitrans, L.P.. (Attachments: # 1 Text of Proposed Order)(Hendrickson, David) (Entered: 04/20/2017) |
| 04/21/2017 | 125 | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MOTION TO AMENDTHE JUDGMENT AND AMENDING JUDGMENT: The Moores motion to amend thejudgment under Rule 59(e) 118 is GRANTED. Accordingly, the Clerk is DIRECTED to enter an amended judgment in the amount of $5,556.16. (copy 4CCA) Signed by Senior Judge Frederick P. Stamp, Jr on 4/21/17. (jss) (Entered: 04/21/2017) |
| 04/21/2017 | 126 | AMENDED CLERK'S JUDGMENT in favor of Jeffery J. Moore, Sandra J. Moore against Equitrans, L.P. Signed by Clerk of Court on 4/21/17. (jss) (Entered: 04/21/2017) |
| 04/21/2017 | 127 | Assembled Electronic Record Transmitted to Fourth Circuit re 119 Notice of Appeal. (sent documents 122 , 125 and 126 ) (jss) (Entered: 04/21/2017) |
| 04/21/2017 | 128 | ORDER GRANTING AS FRAMED PLAINTIFFS MOTION FOR LEAVE TO DEPOSIT MONEY WITH COURT: Order granting plaintiff's 124 Motion |

| | | |
|---|---|---|
| | | to Deposit Funds. The plaintiff may deliver to the Clerk of this Court the sum of $5,567.77. (copy E. Howell) Signed by Senior Judge Frederick P. Stamp, Jr on 4/21/17. (jss) (Entered: 04/21/2017) |
| 05/02/2017 | 129 | USCA NOTICE OF APPELLATE CASE OPENING re 119 Notice of Appeal, filed by 0.56 Acres More or Less of Permanent Easement Located in Marion County, West Virginia, Sandra J. Moore, Jeffery J. Moore. Fourth Circuit USCA Case Number: 17-1574. Case Manager: Cathy Herb. Telephone: 804-916-2724. (cnd) (Additional attachment(s) added on 5/2/2017: # 1 Copy of 122 Letter filed on 2/17/17) (cnd). (Entered: 05/02/2017) |
| 05/26/2017 | 130 | Registry Funds received per 128 Order dated 4/21/17 in the amount of $5,567.77. Receipt number E011051 (ejh) (Entered: 05/26/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/21/2017 13:58:23 | | |
| **PACER Login:** | br0032:2516834:0 | **Client Code:** z1000.00000 |
| **Description:** | Docket Report | **Search Criteria:** 1:15-cv-00106-FPS-JES |
| **Billable Pages:** | 12 | **Cost:** 1.20 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,**
**a Pennsylvania Limited Partnership,**

                    **Plaintiff,**                                          1:15-CV-106 (Keeley)

**v.**                                              **Civil Action No. _____**

                                                    Electronically filed: 06/18/2015

**0.56 ACRES MORE OR LESS OF**
**PERMANENT EASEMENT LOCATED IN**
**MARION COUNTY, WEST VIRGINIA;**
**JEFFERY J. MOORE; and, SANDRA J. MOORE,**

                    **Defendants.**

## <u>COMPLAINT IN CONDEMNATION</u>

For its Complaint in Condemnation pursuant to Rule 71.1 of the Federal Rules of Civil

Procedure, Plaintiff Equitrans, L.P. ("Equitrans") states as follows:

1.      This is an action to take 0.56 acres more or less of property located in Marion

County, West Virginia, for a permanent right-of-way under the power of eminent domain and to

determine just compensation to be paid to the owners of the property pursuant to the Natural Gas

Act, 15 U.S.C. § 717 *et seq.*

2.      The persons known to have an interest in the property to be taken are the

Defendants, Jeffery J. Moore and Sandra J. Moore.  Upon information and belief, no other

persons have an interest in the property.

3.      The authority for the taking is the Natural Gas Act, 15 U.S.C. § 717 *et seq.*

4.      Equitrans is the holder of a certificate of public convenience and necessity for the

operation of the pipeline known as the H-557 pipeline issued by the Federal Energy Regulatory

Commission (the "FERC") pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*  The H-557

pipeline was owned and operated by Equitable Gas Company until 1988, when Equitable Gas

Company transferred the pipeline, and Equitable Gas Company's other natural gas production, gathering, transmission, storage and wholesale facilities and properties, to Equitable Transmission Company.  The transfer was authorized by the Federal Energy Regulatory Commission ("FERC") on January 20, 1988.  Shortly thereafter, Equitable Transmission Company changed its name to Equitrans, Inc.  On October 20, 1998, FERC approved the transfer of all of Equitrans, Inc.'s jurisdictional facilities, including the H-557 pipeline, to Equitrans, L.P.  Since that time, Equitrans, L.P. has owned and operated the H-557 pipeline.  *See* Exh. A, collectively comprising documents reflecting the certificate of public convenience and necessity issued by FERC and the transfer history and approval described herein.  Sections of the H-557 pipeline are placed on Defendants' property.

5.      The property is to be used to maintain and continue the operation of a natural gas pipeline known as the H-557 pipeline that is necessary for Equitrans' transmission of natural gas in interstate commerce.

6.      The property to be taken is 0.56 acres more or less as is specifically identified in the Plat of Survey and Description of Survey attached hereto respectively as Exh. B and C, together with the right of ingress and egress to and from said easement/right-of-way by way of the right-of-way for all purposes necessary to maintain, repair, replace and/or operate the H-557 pipeline and related equipment.  Equitrans further requests that this Court direct that Defendants shall not construct nor permit to exist any house, structure or obstruction on or over, or within a distance of 25 feet on either side of the pipeline or that will interfere with the laying, maintenance, operation, replacement or removal of said pipeline or appurtenances installed in connection with the same.

7.     Equitrans has attempted, but has been unable, to acquire the necessary right-of-way through negotiation with Defendants, Jeffry J. Moore and Sandra J. Moore.  Defendants have placed a value in excess of $3000 on the right-of-way despite the fact that Equitrans has obtained an appraisal of the property sought to be taken which places its fair market value at $700.  In fact, Defendants have demanded well over this amount in exchange for a right-of-way. *See,* Exh. D, copy of correspondence from counsel for Defendants, Jeffry J. Moore and Sandra J. Moore, dated April 3, 2015, demanding the sum of $600,000.  Defendants also rejected a previous offer of $25,000 and a recent offer of $7000 in exchange for a right-of-way.  *See* Exh. E, copy of correspondence from counsel for Equitrans dated June 3, 2015, including an appraisal, offering Defendants, Jeffry J. Moore and Sandra J. Moore, the sum of $7000.00 in exchange for a valid right-of-way to operate and maintain the pipeline to which Plaintiffs did not respond and thereby rejected prior to the date of filing this Complaint.

8.     Jurisdiction for this proceeding in the Court derives from the Natural Gas Act, particularly 15 U.S.C. § 717f(h), in that this is an action to take property under the power of eminent domain where the amount claimed by the owners of the property to be condemned exceeds the sum of $3000.

9.     Venue is proper in this district pursuant to 15 U.S.C. § 717f(h) in that this is the district court of the federal judicial district where the real property to be condemned is located.

**WHEREFORE**, Plaintiff Equitrans, L.P. demands judgment:

a.     condemning the property identified herein;

b.     determining and awarding just compensation; and

c.     granting any other and further relief deemed proper by the Court.

3

**EQUITRANS, L.P.,**
**By Counsel.**


 */s/ David K. Hendrickson          06/18/2015*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (fax)
daveh@handl.com

Westlaw

▷
42 FERC P 61023, 1988 WL 243566 (F.E.R.C.)

*1 Commission Opinions, Orders and Notices

Equitable Gas Company, a Division of Equitable Resources, Inc. and
**Equitable
Transmission**
Company

Docket No. CP86-
**676**
-000

Order Issuing Certificate and Approving Abandonment

(Issued January 20, 1988)

Before Commissioners: Martha O. Hesse, Chairman; Anthony G. Sousa, Charles G. Stalon, Charles A. Trabandt
and C. M. Naeve.

On August 15, 1986, Equitable Gas Company (Equitable Gas) and **Equitable Transmission** Company ( **Equit-
able Transmission**) filed a joint application, pursuant to section 7 of the Natural Gas Act (NGA), for a certific-
ate of public convenience and necessity for **Equitable Transmission** to acquire and operate facilities and to sell
and transport natural gas and for permission and approval for Equitable Gas to abandon facilities and service.
The purpose of the application is to allow the implementation of a corporate restructuring. For the reasons set
forth below we will grant the authorization requested, subject to conditions.

*Proposal*
Currently, Equitable Gas is a Division of Equitable Resources, Inc. It is primarily engaged in the production,
transportation, storage and distribution of natural gas in Pennsylvania, Kentucky and West Virginia. Equitable
Gas sells gas at retail to approximately 255,000 customers in these three states, with its primary market being
Allegheny County, Pennsylvania. The rates charged for such sales are regulated by the public utility commis-
sions of the states in which Equitable Gas makes retail sales. Equitable Gas is also a natural-gas company within
the meaning of the NGA because of various transportation and storage arrangements and one jurisdictional sale
for resale to Revere Natural Gas Company under its Rate Schedule GS-1.

**Equitable Transmission** is a recently incorporated company formed as a wholly owned subsidiary of Kentucky
West Virginia Gas Company, which is a wholly owned subsidiary of Equitable Resources, Inc. It does not at
present conduct any operations. Upon issuance of the authorization requested, **Equitable Transmission** pro-
poses to acquire and operate Equitable Gas' facilities which are subject to the Commission's jurisdiction and
which Equitable Gas proposes to abandon; continue the sales and services previously authorized by the Commis-
sion to be performed by Equitable Gas and which Equitable Gas now proposes to abandon; initiate new sales for
resale to Equitable Gas so that Equitable Gas may continue to serve the full requirements of its distribution cus-
tomers; and conduct such other sales and services as may develop as a result of Order Nos. 436 and 500[FN1]

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

and **Equitable Transmission's** election to become an open-access transporter thereunder. [FN2]

In order to effectuate this restructuring, Equitable Gas proposes to transfer to **Equitable Transmission**, at net depreciated book cost, all of the natural gas production, gathering, transmission, storage and wholesale sales facilities and properties now owned and operated by Equitable Gas. Equitable Gas will retain all facilities and properties which are utilized exclusively in the conduct of Equitable Gas' natural gas distribution business. **Equitable Transmission** proposes to continue all interstate sales and services now rendered by Equitable Gas and to continue operation of the jurisdictional facilities to be acquired, in accordance with the terms of the existing certificates issued to Equitable Gas. **Equitable Transmission** further proposes, upon receipt of the authorization requested herein, to enter into a service agreement with Equitable Gas in order to supply the requirements of Equitable Gas' present and future customers.

*Interventions*

**\*2** Notice of the application was published in the *Federal Register* on September 3, 1986 (51 Fed. Reg. 31.363). Six timely unopposed motions to intervene [FN3] and three notices of intervention [FN4] were filed. Timely unopposed motions to intervene are granted by operation of Rule 214.

The Pennsylvania Public Utility Commission (PPUC) and the Pennsylvania Office of Consumer Advocate (POCA) independently filed interventions protesting the applicants' joint application. Both the PPUC and the POCA request an evidentiary hearing on the application, maintaining that the applicants' proposed restructuring would be contrary to the Commission's policy of promoting competition, would significantly affect the rates paid by retail customers of Equitable Gas, and would be in derogation of the public convenience and necessity.

Alternatively, the POCA requests that the application be rejected for failing to present any meritorious reasons justifying the restructuring. Futhermore, the POCA asserts that the proposed restructuring is merely an attempt to avoid state regulation and that Equitable Resources, the parent company of both Equitable Gas and **Equitable Transmission**, would be in violation of the Pennsylvania Public Utility Code if it undertakes the restructuring without prior approval of the PPUC.

The Public Service Commission of West Virginia (PSCWV) initially filed a notice of intervention in this proceeding without expressing any opposition to the application. On April 9, 1987, the PSCWV filed a response to the applicants' request for expedited consideration [FN5] in which it states many of the same concerns expressed in opposition to the application by the PPUC and the POCA. Among other things, the PSCWV maintains that resolving the issue of whether or not the proposed restructuring serves the public convenience and necessity requires a factual development, that the proposed restructuring may have anticompetitive effects, that *pro forma* service agreements between Equitable Gas and **Equitable Transmission** have not been filed and consequently the terms of service are relatively unknown, and finally that the potential (as a result of the restructuring) for impairment of current service agreements between Equitable Gas and its suppliers, which were negotiated pursuant to Part 284 transportation arrangements, should be explored. Consequently, PSCWV requests that the Commission deny the applicants' petition for expedited consideration, and set the application for an evidentiary hearing.

Finally, Denex Petroleum Corporation (Denex) filed a motion to intervene opposing the applicants' proposed restructuring. Denex maintains that the purpose of the applicants' restructuring is to frustrate state regulatory authority, specifically, to avoid the "least cost" gas purchase policies of the PPUC and the PSCWV.

The applicants filed an answer to the notices and motions to intervene of the PPUC, the POCA, and Denex,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN6] contending that their proposed corporate restructuring would be in the public convenience and necessity. The applicants assert that, because the utility regulatory agencies of Pennsylvania, West Virginia, and Kentucky separately allocate costs of all the facilities which are the subject of the proposed restructuring, in order to establish sales rates for Equitable Gas in their respective states, the possibility of imprecise and inconsistent cost allocation exists. The applicants contend that their proposed reorganization will mitigate the possibility of such regulatory disparity by consolidating the cost allocation functions under the Commission's exclusive jurisdic- tion.

*3 Moreover, the applicants maintain that the proposed transfer of facilities and services involved in this restructuring will assist in the continuing reorganization of the Equitable system along functional lines by assigning transmission and distribution functions to separate corporate entities. The applicants assert that this may lead to greater use of their facilities through the transportation of gas on behalf of others, thereby providing a reduction in transmission costs paid by consumers presently served by their system.

Finally, the applicants contend that no adverse impact will result from the restructuring because all natural gas supplies currently dedicated to Equitable Gas' customers will remain dedicated to them, the transfer of facilities will be made at net depreciated book cost and therefore no significant rate impact will occur as a result of the restructuring, and no change in the service presently provided to Equitable Gas' customers will occur.

In an effort to further develop the record and to resolve the differences between the applicants and the principal intervenors, the PPUC, the POCA, and the PSCWV, two informal conferences were held, on January 21 and February 4, 1987, to discuss various technical aspects and possible settlement of the proposal. The conferences produced no tangible agreement or reconciliation of the intervenors' opposition to the proposed restructuring.

*Discussion*

In the proceeding before us, we are faced with a situation with which we have dealt several times in the past, i.e., a local distribution company which, through the circumstance of geographical location or historical development, is functioning both as a distribution company subject to regulation by the public utility commissions of the several states in which it sells gas at retail and as a natural-gas company subject to the jurisdiction of this Commission.

The applicants request that the Commission authorize the restructuring of Equitable Gas into separate interstate and intrastate functional operations. The requested authorization would permit Equitable Gas to abandon its interstate transmission facilities and operations and would permit **Equitable Transmission** to then acquire those same facilities and to continue to operate them for the interstate transportation and sale of natural gas for resale. Equitable Gas would retain and continue to operate the facilities used in its local distribution and sale of gas in the states of Pennsylvania, West Virginia, and Kentucky. The proposed restructuring and concomitant transfer of facilities, operations, assets and liabilities will require no external or additional financing and will not cause the loss or disruption of service to any of Equitable Gas' existing customers.

Examination of the record before us, and evaluation of the relevant factors bearing on the public interest in this proceeding, make clear that the restructuring as proposed, subject to conditions, is required by the public convenience and necessity and is consistent with prior Commission decisions. In dealing with similar applications in the past, we have found that the public convenience and necessity would be served by granting the restructuring authorizations requested. [FN7] We reach a similar result in this case. Separating distribution and transmission into separate companies will result in a more efficient operation and delivery of services, [FN8] to the bene-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

fit of the customers of Equitable Gas as well as to the shareholders of Equitable Resources, the parent company of the applicants. [FN9] Furthermore, conflicting or duplicative determinations as to cost allocations will be eliminated.

**\*4** We turn now to examine the issues which the intervenors allege require an evidentiary hearing. First, the PO-CA and Denex allege that the proposed restructuring is merely an attempt to frustrate or avoid state regulation. [FN10] We find that these allegations are conclusory, and without foundation or support. In fact, the public utility commissions of Pennsylvania, West Virginia and Kentucky will continue to regulate the same aspects of Equitable Gas' operations after the proposed restructuring is completed as they did before, namely, the rates and purchasing practices of Equitable Gas as they apply to consumers of natural gas within their respective states. We have dealt with this same issue in prior reorganization cases. In *Consolidated Gas Supply Corporation et al.,* the PSCWV raised this issue in a similar context. In that proceeding, the presiding Administrative Law Judge found:

> The PSCWV presently exercises jurisdiction over the portion of Consolidated's business that affects West Virginia. Following the reorganization, the PSCWV will continue to exercise jurisdiction over Hope Gas, Inc., and all of its sales in West Virginia. Clearly, there will be no impairment of the PSCWV's ability to exercise its proper regulatory authority over matters concerning West Virginia. Therefore, West Virginia's legitimate regulatory powers will not in any way be diminished by the proposed reorganization.[FN11]

After the proposed restructuring is completed, the states will continue to regulate Equitable Gas and will continue to exercise their responsibility for assuring that Equitable Gas meets all applicable state regulatory standards, including regulations concerning least cost gas purchasing practices.

Under the restructuring as proposed, as conditioned herein, Equitable Gas will continue to have access to the large number of suppliers from which it currently receives system supply, as well as gas supplied by producers, marketers, brokers and others from whom Equitable Gas may buy gas as a result of the opportunities created by Order Nos. 436 and 500. The main intervenors contend that, as a result of the restructuring, Equitable Gas will become a "full requirements" customer of **Equitable Transmission** with only one source of supply. We can find no basis for this conclusory allegation, and the record indicates that just the opposite will in fact be true.

**Equitable Transmission** states that it intends to become a non-discriminatory open-access transporter. [FN12] As a result, Equitable Gas will be able to deal directly with producers, marketers, brokers, and others to purchase all or a portion of its gas at the lowest available price, and then transport this gas on **Equitable Transmission**. This ability to purchase directly from suppliers and transport gas on **Equitable Transmission** will allow Equitable Gas to "swing" purchases among the most competitively priced supplies. The proposed reorganization will therefore result in greater gas supply options being made available to Equitable Gas, as producers and suppliers will have direct access to Equitable Gas as a customer. The states will continue to have jurisdiction over Equitable Gas' purchasing practices, and will therefore be able to ensure that Equitable Gas follows a least cost purchasing strategy. Furthermore, the Commission will be able to exercise its jurisdiction over **Equitable Transmission** to ensure that it will operate without undue discrimination or preference and will charge Equitable Gas just and reasonable rates for services rendered.

**\*5** The POCA contends that the Commission's authorization of the proposed restructuring without prior approval of the PPUC would cause Equitable Resources, the parent company of applicants, to be in violation of the Pennsylvania Public Utility Code. We find that this allegation is without foundation and contrary to established Federal Court and Commission precedent. In affirming the Commission's holding in *Mountain Gas Co.*[FN13] that the transfer of facilities subject to NGA regulation was subject solely to this Commission's approval, the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fourth Circuit Court of Appeals stated:

> The subject with which we are concerned is the right to transport and to sell gas in interstate commerce. The right to acquire and the right to operate an interstate pipeline is an essential adjunct thereto. Under the Act, these matters are committed to the jurisdiction of the FPC. . . . If the acquisition of rights in an interstate transportation line were subject to the veto of every state regulatory agency along the line, a single agency could seriously impair interstate commerce and the interests protected by the Act and prevent the FPC from performing its statutory duties. [FN14]

Thus, with respect to the facilities subject to NGA regulation, authorization of the proposed restructuring requires only the approval of this Commission, and not that of its states.

The PPUC, POCA and PSCWV raise several concerns in their interventions regarding the rates and terms of service proposed by **Equitable Transmission**. We are also concerned by some of the proposals in the application.

First, it appears from exhibits filed in support of **Equitable Transmission's** proposed PLS Rate Schedule that **Equitable Transmission** proposes to charge its Pennsylvania and West Virginia customers two different gas rates, based on the cost of supplying customers in these two states. [FN15] The Commission has long followed a policy of requiring the rolling in of gas supply costs to all sales customers. [FN16] While exceptions to this policy do exist, they are based on findings that: (1) the pipeline is not an integrated system, i.e., that the system is geographically separated, or that sources of gas can be linked to a specific customer or class of customers; and (2) that the benefits of a particular source of gas supply accrue only to a particular customer or group of customers. [FN17] **Equitable Transmission** has made no showing in the record before us that would justify such an exception in this case. To the contrary, **Equitable Transmission** will be an integrated pipeline system with a common source of supply from several interstate pipelines that serve customers in both Pennsylvania and West Virginia. Therefore, we will condition the certificate issued to **Equitable Transmission** on its charging all resale customers a rate for service under Rate Schedule PLS based upon a single rolled-in gas cost.

Next, in its proposed Rate Schedule PLS **Equitable Transmission** has classified its return on debt and "other costs" in the gas supply function to the demand portion of its non-gas rates. It has been Commission policy to classify fixed and variable costs such as those associated with a pipeline's investment in production, gathering and supply to the commodity component. [FN18] Accordingly, we will condition **Equitable Transmission's** certificates on its rate schedule's reflecting a classification of all costs in its gas supply function to the commodity component, rather than the demand component.

**\*6 Equitable Transmission** proposes to include a 75% minimum bill in its PLS Rate Schedule. In our recent decision in Opinion No. 260-A, [FN19] we determined that a traditional fixed-cost minimum bill (like that proposed by **Equitable Transmission**) is an unjust and unreasonable restraint on trade. Such a minimum bill is presumptively anti-competitive and the burden is on the pipeline to justify its inclusion in its rate schedule. The only reason given by **Equitable Transmission** to justify its minimum bill is that its pipeline suppliers have minimum bills. [FN20] The mere fact that an upstream supplier has a minimum bill is not enough to justify the imposition of a similar minimum bill on a pipeline's downstream customers. [FN21] Accordingly, our authorization to permit implementation of the restructuring proposed by Equitable Gas and **Equitable Transmission** is conditioned on **Equitable Transmission's** not including a minimum bill in its rate schedule.

Furthermore, while no *pro-forma* service agreements were filed with the application in this proceeding, we are concerned by language in section 7.1 of the proposed rate schedule which provides for the delivery of at least a minimum annual volume which will be specified in the buyer's service agreement. Our concern with this lan-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

guage is that it may result in the inclusion of a minimum take provision in the service agreement. In Order No. 380-C,[FN22] we determined that minimum take provisions, like minimum bills, are restraints on competition. Accordingly, as with the proposed minimum bill, we will condition the certificate issued to **Equitable Transmission** on its not imposing a minimum take requirement on customers in either its rate schedule or service agreements.

Section 7.2 of **Equitable Transmission's** proposed Rate Schedule states that **Equitable Transmission** may offer to a customer gas available in excess of the customer's maximum daily contract quantity of gas. However, **Equitable Transmission** does not state what it will charge for such supplies. Accordingly, we will require it to charge its 100 percent load factor rate for any gas sold to a customer above that customer's maximum daily contract quantity.

Further, section 7.7 states that upon mutual agreement of **Equitable Transmission** and a customer, the customer can increase its maximum daily contract quantity. These changes, however, would represent a significant change in service. Such a change cannot be made without Commission approval under section 7 of the NGA. Accordingly, **Equitable Transmission** will need to seek further authorization under section 7(c) of the NGA in order to increase a customer's maximum daily contract quantity.

As part of the proposed restructuring, **Equitable Transmission** states that it will continue all interstate sales and services now rendered by Equitable Gas. In order to continue to perform the interstate sales, the certificates issued to **Equitable Transmission** are conditioned on its continuing to perform the currently existing interstate sales and services of Equitable Gas, and charging the same demand and commodity rates and charges at which Equitable Gas performs those services under its Rate Schedule GS-1.

**\*7** We note that **Equitable Transmission** failed to submit any general terms and conditions with its proposed PLS Rate Schedule. Therefore, we will require **Equitable Transmission** to file general terms and conditions in its tariff, which shall contain a purchased gas adjustment clause applicable to the proposed rate schedules contained in its tariff.

We also note that Equitable Gas was required to file a restatement of its base tariff rate under Rate Schedule GS-1 by March 1, 1987. Equitable Gas made a late filed restatement of its tariff without explanation on July 31, 1987. We rejected that filing for reasons of various deficiencies by a letter order dated August 28, 1987. Our actions in this order today which grant the authorizations necessary to implement the proposed restructuring will not relieve **Equitable Transmission** of the obligation to refile a restatement of the base tariff rate under Rate Schedule GS-1.

Finally, we find that the issues raised by the intervenors involve determinations of policy, not facts. These policy issues have been considered and resolved in our discussion above. The protests of the PPUC, the POCA, the PSCWV and Denex raise no issues of fact material to the decision before us, nor have the intervenors alleged any facts which, if true, would require denial of the applicants' request for authorization to implement restructuring of Equitable Gas Company along functional lines. Accordingly, we find that no useful purpose would be served by setting the matter for an evidentiary hearing.

Based on the foregoing, we find that the issuance of a certificate to **Equitable Transmission** authorizing the acquisition of Equitable Gas' interstate facilities and service, permission and approval for Equitable Gas to abandon facilities and services, and the transfer of certificates from Equitable Gas to **Equitable Transmission**, all for the purpose of effectuating a corporate restructuring, as modified herein, are required by the public conveni-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

ence and necessity.

At a hearing held on January 13, 1988, the Commission on its own motion received and made a part of the record in this proceeding all evidence, including the application and exhibits thereto, submitted in support of the authorization sought herein, and upon consideration of the record,

*The Commission orders:*

(A) Permission and approval for Equitable Gas to abandon the interstate natural gas facilities and services as described above and in the application, are granted.

(B) A certificate of public convenience and necessity is issued authorizing **Equitable Transmission** (1) to acquire and operate the interstate natural gas facilities, now owned and operated by Equitable Gas, (2) to render interstate sales and transportation services in accordance with outstanding certificates of public convenience and necessity previously issued to Equitable Gas, and (3) to make sales of natural gas in interstate commerce to Equitable Gas for resale in order for **Equitable Transmission** to serve the natural gas requirements of Equitable Gas' present customers, as described above and in the application.

**\*8** (C) The orders issuing currently effective certificates of public convenience and necessity to Equitable Gas, including Equitable Gas' blanket certificate issued pursuant to Part 284 of the Regulations, are amended by substituting **Equitable Transmission** in lieu of Equitable Gas as the certificate holder. In all other respects, said orders shall remain in full force and effect.

(D) The certificate authorizations issued in paragraphs (B) and (C) above, and the rights granted thereunder, are conditioned upon **Equitable Transmission's** compliance with paragraphs (a), (c)(3), (d)(2), (d)(3), and (e) of section 157.20 and Part 154 of the Commission's Regulations.

(E) Concurrently with the consummation of the acquisition contemplated by this order, **Equitable Transmission** shall file with the Commission in accordance with its Regulations, a Certificate of Adoption of Equitable Gas' FERC Gas Tariff, Volume No. 1, together with service agreements thereunder then in effect.

(F) The authorizations in paragraphs (B) and (C) above are conditioned on **Equitable Transmission's** charging all its resale customers the same rate under Rate Schedule PLS based upon rolled-in gas cost.

(G) **Equitable Transmission** shall cause its rate schedule to reflect a classification of all costs in its gas supply function to the commodity component, rather than to the demand component.

(H) As discussed in the body of this order, **Equitable Transmission's** Rate Schedule PLS shall not contain a minimum bill.

(I) As discussed in the body of this order, **Equitable Transmission's** Rate Schedule PLS and service agreements shall not contain a minimum take provision.

(J) **Equitable Transmission's** Rate Schedule PLS shall provide that all gas sold to a customer above that customer's maximum daily contract quantity shall be sold at a 100 percent load factor rate.

(K) **Equitable Transmission** shall file its general terms and conditions in its tariff, which shall contain a purchased gas adjustment clause which applies to all its jurisdictional sales rates.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(L) The adoption by **Equitable Transmission** of Equitable Gas' Rate Schedule GS-1, as authorized by Ordering Paragraphs (B) and (E) above, is conditioned on **Equitable Transmission's** deleting section 5(C) of the Rate Schedule GS-1 as it pertains to retail sales.

(M) **Equitable Transmission** shall refile a restatement of the base tariff rate under Rate Schedule GS-1, as required by section 154.38 of the Commission's Regulations.

(N) Within 10 days of the completion of the restructuring authorized by this order, **Equitable Transmission** shall file with the Commission a report clearly setting forth all of the natural gas transmission, production, storage, gathering and wholesale sales facilities acquired from Equitable Gas. The report shall also clearly set forth all such facilities, if any, retained by Equitable Gas.

FN1. See Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol, Order No. 436,*FERC Statutes andRegulations, Regulations Preambles 1982-1985* P 30,665 (1985), *modified,*Order No. 436-A,*FERC Statutes and Regulations, Regulations Preambles 1982-1985* P 30,675 (1985), *modified further,*Order No. 436-B,*FERC Statutes and Regulations* P 30,688, *reh'g denied,*Order No. 436-C, 34 FERC P 61,404,*reh'g denied,*Order No. 436-D, 34 FERC P 61,405,*reconsideration denied,*Order No. 436-E, 34 FERC P 61,403 (1986), *vacated and remanded, sub nom., Associated Gas Distributors v. FERC,* No. 85-1811 (D.C. Cir. June 23, 1987) (Generally upholding the substance of Order No. 436 and the procedures employed in adopting it, but findi ng problems with certain issues and vacating and remanding the matter for further proceedings). On August 7, 1987, we issued Order No. 500, which promulgated interim regulations in response to the Court's remand. *See* Interim Rule and Statement of Policy, Docket No. RM87-34-000,*FERC Statutes and Regulations* P 30,761 (1987), *granting extension of time for the submission of comments,*Order No. 500-A,*FERC Statutes and Regulations* P 30,770 (1987), *granting rehearing in part,*Order No. 500-B,*FERC Statutes and Regulations* P 30,772 (1987). These interim regulations became effective on September 15, 1987.

FN2. On February 13, 1987, the Commission granted Equitable Gas a blanket certificate to become an open-access transporter pursuant to Part 284 of the Regulations. 38 FERC P 62,165 (1987). The applicants have requested, as part of their joint application in this proceeding, that Equitable Gas' Part 284 blanket certificate be transferred to **Equitable Transmission** as part of the certificate requested here.

FN3. Columbia Gas Transmission Corporation, Denex Petroleum Corporation, Independent Oil and Gas Association of West Virginia, Philadelphia Electric Company, Texas Eastern Transmission Corporation, and the Pennsylvania Office of Consumer Advocate.

FN4. The Pennsylvania Public Utility Commission, the Kentucky Public Service Commission, and the Public Service Commission of West Virginia.

FN5. The applicants filed a request for expedited consideration on March 25, 1987.

FN6. On October 16, 1986, the PPUC filed a motion in this proceeding to strike the applicants' answer. On October 24, 1986, the applicants filed an answer to the PPUC's motion to strike its previous answer.

FN7. *Williston Basin Interstate Pipeline Company et al.,* 30 FERC P 61,143 (1985); *Mountain Fuel Supply Company et al.,* 27 FERC P 61.316 (1984); *Consolidated Gas Supply Corporation et al.,* 25 FERC P 61,397 (1983); *Iroquois Gas Corporation et al.,* 51 FPC 1507 (1974).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN8. *See Mountain Fuel Supply Company et al.,* 26 FERC P 63,047, at p. 65,164 (1984). In Mountain Fuel we stated that "logic supports the belief that any realignment that would eliminate any duplication of regulation of the same facilities is going to make for a more efficient and cheaper operation."That analysis applies equally here.

FN9. The interests of shareholders are one of the considerations within the ambit of the "public interest." *See Transcontinental Gas Pipe Line Corporation v. FPC* 488 F.2d 1325, 1330 (D.C. Cir. 1973).

FN10. POCA protest, motion to intervene, and motion to reject at 4-6; Denex motion to intervene at 5.

FN11. *Consolidated Gas Supply Corporation et al.,* 22 FERC P 63,039, (1983)at pp. 65,163-164,*settlement approved,*25 FERC P 61,397 (1983).

FN12. Joint application of Equitable Gas and **Equitable Transmission** at 10; Answer of Equitable Gas and **Equitable Transmission** to motion to intervene and requests for hearing, at 5. *See also supra* n.2.

FN13. 42 FPC 305 (1969), *aff'd on rehearing,*43 FPC 317 (1970).

FN14. *Public Service Commission of West Virginia v. FPC,* 437 F.2d 1234 (4th Cir. 1971) at 1238-1239. *See also Cabot Corp. v. Public Service Commission of West Virginia,* 332 F. Supp. 370 (S.D. W. Va. 1971); *Mountain Fuel Supply Company et al.,* 26 FERC P 63,047 (1984), at pp. 65,157-158,*aff'd*27 FERC P 61,316 (1984) (holding that the Fourth Circuit decision is controlling and resolves, in favor of exclusive Commission jurisdiction, the issue of whether state commission has authority to certificate the acquisition of a pipeline subject to NGA regulation and related facilities).

FN15. Exhibit P-1, Schedule N-10, sheet 6 of 7. **Equitable Transmission's** proposed Rate Schedule PLS is for sales for resale of natural gas to Equitable Gas, and all other new customers of **Equitable Transmission**.

FN16. *See Montana-Dakota Utilities Co. v. FERC,* 631 F.2d 557 (8th Cir. 1980); *Consolidated Gas Supply Corp.,* 52 FPC 454 (1974); *Battle Creek Gas Co. v. FPC,* 281 F.2d 42 (D.C. Cir. 1960).

FN17. *See, e.g., Panhandle Eastern Pipe Line Co. et al.,* 13 FPC 53, 107-108 (1954).

FN18. *Natural Gas Pipeline Company of America,* 25 FERC P 61,176, at p. 61,482 (1983).

FN19. *Transcontinental Gas Pipe Line Corporation,* 40 FERC P 61,188 (1987).

FN20. Equitable Gas Company and **Equitable Transmission** Company responses to question raised at January 21, 1987 conference at 1.

FN21. *See Algonquin Gas Transmission Company,* 35 FERC P 61,253 (1986).

FN22. Elimination of Variable Costs from Certain Natural Gas Pipeline Minimum Commodity Bill Provisions. Order No. 380-C,*FERC Statutes and Regulations, Regulations Preambles 1982-1985* P 30,607 (1984).

42 FERC P 61023, 1988 WL 243566 (F.E.R.C.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

```
                    CORPORATION UPDATE SCREEN                    SS01CCH

RECORD TYPE: C
  CORP NAME: EQUITRANS, INC.
   DBA NAME:
INCORPORATION DATE: 03 / 30 / 1988   TYPE: F   CLASS: P   CHARTERED STATE: DE

PRINCIPAL OFFICE STREET          CITY              ST ZIP
  1209 ORANGE STREET             WILMINGTON        DE 19801 -
LOCAL OFFICE STREET              CITY              ST ZIP
                                                       -

NOTICE OF PROCESS NAME AND ADDRESS: C T CORPORATION SYSTEM
  1200 CHARLESTON NATIONAL PLAZA       CHARLESTON          WV 25301 -

AUTH CAP STOCK:              .00 PAR VALUE:    0 . 00 EXCESS ACRES: 000000
TAX ID:             BUS PUR:       INACTIVE DATE:   /   /     REASON:

REFER TO:
COMM:

"PF18" = GO TO UPDATE OFFICERS        "PF16"  = GO TO BROWSE
"PF15" = RETURN TO MENU NO UPDATE     "PF22"  = ADD A CORPORATION
"PF23" = UPDATE & GO TO UPDATE AMENDS  "ENTER  = UPDATE & RETURN TO MENU
```

FILED  INITIALS  DATE
SC  MAR 3 1 1988



# State of West Virginia

## CERTIFICATE

*I, Ken Hechler, Secretary of State of the State of West Virginia, hereby certify that*

EQUITRANS, INC.

a corporation formed under the laws of                    DELAWARE                    ,
has applied for a Certificate of Authority to transact business in West Virginia
as required by the provisions of Chapter 3, Article 1, Sections 53 and 54 of
the West Virginia Code. I further certify that the application conforms to law
and is filed in my office.

THEREFORE, I issue this

### CERTIFICATE OF AUTHORITY

to the corporation authorizing it to transact business in West Virginia under the
name of                    EQUITRANS, INC.

and I attach to this certificate a duplicate original of the application.

*Given under my hand and the*
*Great Seal of the State of*
*West Virginia, on this*

THIRTIETH                    day of

MARCH                    19 88

Ken Hechler
*Secretary of State.*

See Fee Schedule

FILED
MAR 30 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

APPLICATION FOR
CERTIFICATE OF AUTHORITY
OF

EQUITRANS, INC.

To the Secretary of State
of the State of West Virginia:

    Pursuant to the provisions of Sections 53 and 54, Article 1, Chapter 31 of the Code of West Virginia, the undersigned corporation hereby applies for a Certificate of Authority to transact business in West Virginia, and for that purpose submits the following statement:

    The name of the corporation is _Equitrans, Inc._

    The name which it elects to use in West Virginia is Equitrans, Inc. _____ (Note 1)

    It is incorporated under the laws of _Delaware_

    The date of its incorporation is _February 14, 1986_ and the period of its duration is _perpetual_

    The address of its principal office in the state under the laws of which it is incorporated is _c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801._

    The address of its principal office in West Virginia (if any) is _Route 19 South, Clarksburg, WV 26341_

    If there is no principal office in West Virginia, recording will be made in _____ County.

    The name and address of the person to whom shall be sent all process served upon, or service of which is accepted by, the Secretary of State, is

| Name | Address |
|---|---|
| C T CORPORATION SYSTEM | 1200 CHARLESTON NATIONAL PLAZA |
| | CHARLESTON, WEST VIRGINIA 25301 |

    The purpose or purposes which it proposes to pursue in the transaction of business in West Virginia are _purchasing, gathering, producing, storing and transporting natural gas._

(W. VA. - 2469 - 1/15/81)    -1-

The names and respective addresses of its directors and officers are:

| Name | Office | Address |
|------|--------|---------|
| John C. Gangas | President and Director | 420 Boulevard of the Allies Pittsburgh, PA 15219 |
| Robert E. Daley | Treasurer | 420 Boulevard of the Allies Pittsburgh, PA 15219 |
| Audrey C. Moeller | Secretary | 420 Boulevard of the Allies Pittsburgh, PA 15219 |
| Donald I. Moritz | Director | 420 Boulevard of the Allies Pittsburgh, PA 15219 |
| | | |
| | | |
| | | |

The aggregate number of shares which it has authority to issue, itemized by classes, par value of shares, shares without par value, and series, if any, within a class, is:

| Number of Shares | Class | Series | Par Value per Share or Statement that Shares are without Par Value |
|------------------|-------|--------|-------------------------------------------------------------------|
| 3,000 | Common | | No Par Value |

(W. VA. - 2469)                    -2-

The aggregate number of its issued shares, itemized by classes, par value of shares, shares without par value, and series, if any, within a class, is:

| Number of Shares | Class | Series | Par Value per Share or Statement that Shares are without Par Value |
|---|---|---|---|
| 3,000 | Common | | No Par Value |

The amount of its stated capital, as defined in Section 6, Article 1, Chapter 31, of the Code of West Virginia, is $ 100.00                          .

An estimate of the value of all property to be owned by it for the following year, wherever located, is $ 130,000,000                          .

An estimate of the value of its property to be located within West Virginia during such year is $ 70,000,000                          .

An estimate of the gross amount of business to be transacted by it during such year is $ 200,000,000                          .

An estimate of the gross amount of business to be transacted by it at or from places of business in West Virginia during such year is $ 9,000,000          .

The number of acres of land it desires to hold in West Virginia is
         16,000                          acres.

(W. VA. - 2469)                    -3-

This application is accompanied by a copy of its articles of incorporation and all amendments thereto, duly authenticated by the proper officer of the state or country under the laws of which it is incorporated, together with Certificate of Good Standing properly authenticated.

Dated _____ March 21 _____, 19 88 .

                                        Equitrans, Inc. _____ (Note 2)

                                        By _____
                                           Its _____ President

                                        and _____ (Note 3)
                                            Its — Corporate — Secretary

STATE OF ___ PENNSYLVANIA _____
                                        ss
COUNTY OF ___ ALLEGHENY _____

I, ___ Judith Ann Crawford _____, a notary public do hereby certify that on this ___ 21st ___ day of ___ March ___, 19 88, personally appeared before me ___ John C. Gongas, Jr. and Audrey C. Moeller _____, who, being by me first duly sworn, declared that they are the ___ President and Corporate Secretary, respectively, of ___ Equitrans, Inc., _____,

that they signed the foregoing document as President and Corporate Secretary of the corporation, and that the statements therein contained are true.

                                        _____
                                        Notary Public
                                        JUDITH ANN CRAWFORD, NOTARY PUBLIC
                                        PITTSBURGH, ALLEGHENY COUNTY
(NOTARIAL SEAL)    My Commission expires: MY COMMISSION EXPIRES JAN. 23, 1991
                                        Member, Pennsylvania Association of Notaries

Notes: 1. If the name of the corporation does not contain the word "corporation", "company", "incorporated", or "limited", or an abbreviation of one of such words, insert the name of the corporation with the word or abbreviation which it elects to add thereto for use in this State.
       2. Exact corporate name of corporation making the application.
       3. Signatures and titles of officers signing for the corporation.
       4. This application for certificate of authority must be filed in duplicate.

(W. VA. - 2469)                    -4-

APPOINTMENT OF PERSON TO WHOM
NOTICE OR PROCESS
MAY BE SENT BY THE SECRETARY OF STATE

FILED

MAR 30 1988

IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

To the Secretary of State
of the State of West Virginia:

Pursuant to the provisions of Section 56 of the West Virginia Corporation Act, the undersigned corporation hereby appoints a person to whom notice or process may be sent by the Secretary of State, and for that purpose submits the following statement:

FIRST: The name of the corporation is _____Equitrans, Inc._____

SECOND: The state of its incorporation is ____Delaware____

THIRD: The present address of its principal office is __4955 Steubenville Pike,__ __Pittsburgh, Pennsylvania 15205__

FOURTH: The name and address of the person to whom notice or process shall be sent by the secretary of state under Section 15 of the West Virginia Corporation Act is:

| Name | Address |
|---|---|
| C T CORPORATION SYSTEM | 1200 Charleston National Plaza Charleston, West Virginia 25301 |

FIFTH: The secretary of state is hereby authorized to send to the person designated in article fourth, above, at the address given, all notices and process served upon the secretary of state or service of which is accepted by the secretary of state.

SIXTH: The appointment of C T CORPORATION SYSTEM to receive notice or process from the secretary of state was duly authorized by the board of directors of the corporation.

Dated_____March 21_____, 19_88_.

Equitrans, Inc.                           (Note 1)
By _____
Its President                             (Note 2)

STATE OF _PENNSYLVANIA_ )
                        ) SS
COUNTY OF _ALLEGHENY_ )

I, _____Judith Ann Crawford_____, a notary public, do hereby certify that on this _21st_ day of _March_, 19_88_, personally appeared before me _J. C. Gongas, Jr._, who, being by me first duly sworn, declared that he is the _President_ of _Equitrans, Inc._ that he signed the foregoing document as _President_ of the corporation, and that the statements contained therein are true.

JUDITH ANN CRAWFORD, NOTARY PUBLIC
PITTSBURGH, ALLEGHENY COUNTY
MY COMMISSION EXPIRES JAN. 23, 1989
Member, Pennsylvania Association of Notaries

Judith Ann Crawford
Notary Public

(NOTARIAL SEAL)

Notes:  1.  Exact corporate name of corporation making the appointment.
        2.  Signature and title of officer signing for the corporation
            (President, Vice-President, Secretary or Assistant Secretary).

(W. VA. - 2453 - 1/15/81)

State of Delaware

PAGE    1

**FILED**
MAR 3 ^ 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

## Office of Secretary of State

I, MICHAEL HARKINS, SECRETARY OF STATE OF THE STATE OF
DELAWARE DO HEREBY CERTIFY EQUITRANS, INC. IS DULY INCORPORATED
UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING
AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS
OFFICE SHOW, AS OF THE DATE SHOWN BELOW.

: : : : : : : : : : :

Michael Harkins, Secretary of State

AUTHENTICATION:      11634998

DATE:                03/24/1988

728084090



### State of Delaware

PAGE 1

**FILED**
MAR 3 0 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

### Office of Secretary of State

I, MICHAEL HARKINS, SECRETARY OF STATE OF THE STATE OF DELAWARE DO

HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE

OF INCORPORATION OF EQUITABLE TRANSMISSION COMPANY FILED IN THIS OFFICE

ON THE FOURTEENTH DAY OF FEBRUARY, A.D. 1986, AT 10 O'CLOCK A.M.



Michael Harkins, Secretary of State

728084089

AUTHENTICATION: 1634993

DATE: 03/24/1988

FILED
MAR 3 0 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

CERTIFICATE OF INCORPORATION

of

EQUITABLE TRANSMISSION COMPANY

1. The name of the corporation is:

EQUITABLE TRANSMISSION COMPANY

2. The address of its registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

3. The nature of the business or purposes to be conducted or promoted is to produce, purchase, gather, transport, store and sell natural gas and to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

4. The total number of shares of stock which the corporation shall have authority to issue is Three Thousand (3,000) all of such shares shall be without par value.

5. The board of directors is authorized to make, alter or repeal the by-laws of the corporation. Election of directors need not be by written ballot.

6. The name and mailing address of the incorporator is:

Herschel Jaffe
420 Boulevard of the Allies
Pittsburgh, Pennsylvania 15219

I, THE UNDERSIGNED, being the incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of Delaware, do make this certificate hereby declaring and certifying that this is my act and deed and the facts herein stated are true, and accordingly have hereunto set my hand this 10th day of February, 1986.

Herschel Jaffe



### State of Delaware



PAGE   1

**FILED**
MAR 30 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

### Office of Secretary of State

I, MICHAEL HARKINS, SECRETARY OF STATE OF THE STATE OF
DELAWARE DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT BEFORE PAYMENT FOR STOCK OF
EQUITABLE TRANSMISSION COMPANY FILED IN THIS OFFICE ON THE SECOND
DAY OF FEBRUARY, A.D. 1988, AT 9 O'CLOCK A.M.

: : : : : : : : : : :

_____
Michael Harkins, Secretary of State

AUTHENTICATION:     11634996

DATE:                03/24/1988

728084090

6 ,0330143

# FILED

FEB 2 1988 GAM

*[signature]*
SECRETARY OF STATE

CERTIFICATE OF AMENDMENT
OF
CERTIFICATE OF INCORPORATION
OF
EQUITABLE TRANSMISSION COMPANY

The undersigned, being the sole incorporator of Equitable Transmission Company, a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, does hereby certify:

FIRST: That Article 1 of the Certificate of Incorporation be and it hereby is amended to read as follows:

1. The name of the Corporation is:

EQUITRANS, Inc.

SECOND: That the corporation has not received any payment for any of its stock.

THIRD: That the amendment was duly adopted in accordance with the provisions of Section 241 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, I have signed this certificate this 10th. day of January, 1988.

*[signature]*

Herschel Jaffe

EG100



**LAW OFFICES**
**LOVE, WISE & WOODROE**
P O BOX 951
CHARLESTON, WEST VIRGINIA 25329

TELEPHONE (304) 343-4841
CHARLESTON NATIONAL PLAZA

March 30, 1988

**FILED**
MAR 3 0 1988
IN THE OFFICE OF
SECRETARY OF STATE
WEST VIRGINIA

Secretary of State's Office
Corporation Division
State Capitol Building
Charleston, West Virginia 25305

Attention: **Stephanie Fanning**

RE: EQUITRANS, INC.
(Delaware)
Job No. QU 21493-0

We enclose **application for Certificate of Authority**

for filing purposes on the above named company, and C T Corporation System

(**Pittsburgh**) Check No. **QU 48246** in the amount of $ **414.00**

for the filing fee.

After the document has been filed, please return to the under-

signed. Thank you for your kindness and attention to this matter.

Very truly yours,

LOVE, WISE & WOODROE

Jean L. Blair
Jean L. Blair

/jlb
Encl.

85 FERC ¶ 61,089

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: James J. Hoecker, Chairman;
Vicky A. Bailey, William L. Massey,
Linda Breathitt, and Curt Hébert, Jr.

| | | |
|---|---|---|
| Equitrans, L.P. and | ) | Docket No. CP96-532-000 |
| Equitrans, Inc. | ) | |

ORDER APPROVING ABANDONMENT
AND ISSUING CERTIFICATES

(Issued October 20, 1998)

On May 22, 1996, Equitrans, L.P. and Equitrans, Inc. jointly filed an application in which Equitrans, Inc. seeks Commission approval, pursuant to section 7(b) of the Natural Gas Act (NGA), to abandon all its jurisdictional facilities and services by transfer to Equitrans, L.P. and Equitrans, L.P. seeks authorization, pursuant to NGA section 7(c), to acquire and operate Equitrans, Inc.'s facilities and provide Equitrans, Inc.'s jurisdictional gas services.

We will conditionally approve the applicants' proposals, as discussed below.

BACKGROUND

Equitrans, Inc. is a corporation that owns and operates over 500 miles of natural gas pipeline and storage facilities in West Virginia and Pennsylvania. Equitrans, L.P. is a limited partnership composed of two corporations: ET Blue Grass Company is the sole general partner, holding a 1 percent interest in the partnership, and Equitable Resources, Inc. is the sole limited partner, holding a 99 percent interest in the partnership. 1/

The applicants state that the purpose of the joint application is to change the business structure of the owner and operator of the Equitrans, Inc. facilities from a corporation to a limited partnership. The applicants maintain that forming a partnership will create the opportunity to realize "substantial" tax savings. Other than the anticipated state tax savings, applicants assert they have no plans to employ the limited partnership structure as a means to raise new capital.

---

1/ Equitable Resources, Inc. is the parent corporation of Equitrans, Inc. and ET Blue Grass Company.

9810210536-2

FERC, DOCKETED
bL
OCT 20 1998

Docket No. CP96-532-000                                    - 2 -

Applicants state that the restructuring will not result in any change to existing facilities, services, rates, or terms and conditions of service.  Applicants explain that upon approval of this application, Equitrans, L.P. will adopt Equitrans, Inc.'s effective FERC Gas Tariff, as provided in section 154.603 of our regulations.  Applicants request that Equitrans, L.P. be substituted for Equitrans, Inc. in issued certificates and pending proceedings in which Equitrans, Inc. is a party.

The applicants state the assets of Equitrans, Inc. have been transferred to Equitrans, L.P. and request we grant abandonment approval and certificate authorization retroactively, effective November 28, 1995, to reflect the date of transfer.

## NOTICE AND INTERVENTIONS

Notice of Equitrans, L.P.'s and Equitrans, Inc.'s joint application was published in the Federal Register on May 31, 1996. 2/  Timely, unopposed motions to intervene were filed by The Brooklyn Union Gas Company; Columbia Gas Transmission Corporation; Eastern Energy Marketing, Inc.; Equitable Gas Company; the Independent Oil & Gas Association of West Virginia; New Jersey Natural Gas Company; NUI Corporation (Elizabeth Gas Division); PECO Energy Company; The Peoples Natural Gas Company; Public Service Electric and Gas Company; and Virginia Electric and Power Company. 3/

In addition, a motion to intervene out of time was filed by The South Jersey Gas Company.  Since it has demonstrated an interest in this proceeding, and the late intervention will not delay or otherwise prejudice resolution of this matter, we will grant the motion for good cause shown.  No other motions to intervene or protests were filed.

## DISCUSSION

Because Equitrans, Inc.'s request for abandonment approval pertains to facilities and services involving the transportation of natural gas in interstate commerce subject to the Commission's jurisdiction, Equitrans, Inc.'s requested abandonment is subject to the requirements of section 7(b) of the NGA.

Because Equitrans, L.P.'s request for authorization to acquire and operate facilities and provide services involving the transportation of natural gas in interstate commerce subject to

---

2/    61 FR 27,341-42.

3/    Timely, unopposed motions to intervene are granted pursuant to Rule 214 of the Commission's regulations.

Docket No. CP96-532-000                                              - 3 -

the jurisdiction of the Commission, Equitrans, L.P.'s request is
subject to the requirements of sections 7(c) and 7(e) of the NGA.

Public Convenience and Necessity

        The applicants' proposal to conduct business as a limited
partnership instead of as a corporation will not result in any
change in certificated facilities or services.  The proposed
restructuring involves no change in existing facilities,
services, rates, or tariff provisions.  Equitrans, Inc.'s
transfer of all its jurisdictional facilities and operations to
Equitrans, L.P. should assure that the partnership will have the
same capability as the corporation to meet all customers' service
expectations.  Certificates, rates, and tariff provisions will
remain in full force and effect, except as amended to redesignate
Equitrans, L.P. in place of Equitrans, Inc.  Thus, upon issuance
of the requested abandonment approval and certificate
authorization, Equitrans, L.P. will succeed to all of the
interests of Equitrans, Inc. and will be responsible for
providing the same services at the same rates under the same
tariffs as Equitrans, Inc.

        In view of the above, we find that Equitrans, Inc.'s
proposed abandonment, and Equitrans, L.P.'s proposed acquisition
and operation of Equitrans, Inc.'s certificated facilities and
services, are permitted and required by the public convenience
and necessity.

        The applicants request that approval and authorization be
granted retroactively, to reflect the date that Equitrans, Inc.
transferred its facilities to Equitrans, L.P.  The described
transfer can only be undertaken with our prior approval and
authorization.  We do not believe the applicants' earlier
transfer constitutes good cause to grant retroactive approval
authorization.  We will exercise our discretion and issue the
requested approval and authorization prospectively, effective the
date of issuance of this order.

        To assure the reorganization has no adverse impact on
existing customers, we will condition our approval and
authorization to require that Equitrans, L.P. continue to perform
all certificated services through the remaining terms of existing
customers' service agreements.

        Equitrans, L.P. initially will be owned entirely by two
corporate partners.  Although the applicants stress there are no
plans for any sale or transfer of partnership interests, there is
no bar to such action.  If such action does take place, in
accordance with the principle that there should not be an element
in a company's cost of service to cover costs that are not

Docket No. CP96-532-000                                    - 4 -

actually incurred, 4/ Equitrans, L.P. should not receive a
corporate income tax allowance with respect to income
attributable to partnership interests held by entities which are
not subject to the corporate income tax.  Consequently, we will
require that in the event Equitrans, L.P. sells or transfers
partnership interests to entities exempt from corporate income
tax, within a year of such sale or transfer, it must file a
report with the Commission describing the change in the
partnership's interest holders.  The percentage of partnership
interests owned by entities subject to corporate income tax and
the percentage owned by entities not subject to corporate income
tax will be taken into consideration in any future rate
proceeding.

Accounting

     Aside from the above-discussed corporate tax allowance,
Equitrans, L.P., as a limited partnership, will be treated for
accounting and rate purposes as if it were a corporation and
comprehensive interperiod tax allocation procedures will be
required. 5/  Comprehensive tax allocation procedures include
recording all income tax effects of temporary differences between
amounts on the books of Equitrans, L.P. and amounts reported for
income tax purposes on the tax returns of each corporate income
tax paying partner.

Environmental Issues

     Since neither the proposed abandonment nor the proposed
acquisition involve abandonment in place or abandonment by
removal, or the modification or construction of any facilities,
the proposal does not constitute a major federal action
significantly affecting the quality of the human environment.

---

4/   A regulated entity cannot collect through the tax component
     of its cost of service an amount greater than its actual tax
     liability.  See generally, Regulations Implementing Tax
     Normalization for Certain Items Reflecting Timing
     Differences in the Recognition of Expenses or Revenues for
     Ratemaking and Income Tax Purposes, Order No. 144, FERC
     Stats. & Regs. Regulations Preambles 1977-1981 ¶ 30,254
     (1981).

5/   See, e.g., Steuben Gas Storage Company, 72 FERC ¶ 61,102 at
     61,542 (1995), noting the Commission typically "regulates
     partnerships as though they are corporate subsidiaries of
     parent companies," and High Island Offshore System, 55 FPC
     2674 at 2688 (1976), ordering that "[f]or accounting and
     rate purposes ... a partnership, will be treated as if it
     were a corporation and comprehensive tax allocation
     procedures will be required."

Docket No. CP96-532-000                                    - 5 -

   At a hearing on October 14, 1998, the Commission on its own
motion received and made a part of the record in this proceeding
all evidence submitted, including the application and exhibits
supporting the approval and authorization sought, and after
consideration of the record,

The Commission orders:

   (A)  Permission and approval for Equitrans, Inc. to abandon
its facilities and services by transfer to Equitrans, L.P., as
more fully described in the application and in this order, are
granted, pursuant to NGA section 7(b), effective the date of
issuance of this order.

   (B)  Equitrans, Inc. shall notify the Commission upon
completion of the abandonment within 10 days thereof.

   (C)  As of the effective date of the reorganization
transferring Equitrans, Inc.'s facilities and service obligations
to Equitrans, L.P., all existing certificates currently held by
Equitrans, Inc. shall be amended individually to redesignate
Equitrans, L.P. in place of Equitrans, Inc.; Equitrans, L.P.
shall be substituted for Equitrans, Inc. in all proceedings
pending before the Commission as of date of issuance of this
order.

   (D)  The redesignated certificates of public convenience and
necessity described in Ordering Paragraph (C) are issued to
Equitrans, L.P., pursuant to NGA section 7(c), authorizing
Equitrans, L.P. to acquire and operate all of Equitrans, Inc.'s
jurisdictional facilities and to perform the jurisdictional
services presently performed by Equitrans, Inc., as more fully
described in the application and in this order.

   (E)  The Ordering Paragraph (A) abandonment approval and the
Ordering Paragraph (D) certificate authorizations are conditioned
on Equitrans, L.P. continuing to perform all certificated
services through the remaining terms of the existing customers'
service agreements.

   (F)  The Ordering Paragraph (D) certificate authorizations
are conditioned upon Equitrans, L.P. (1) complying with all
applicable Commission regulations, in particular Part 154 and
section 157.20(a), (d) and (e); (2) maintaining its books of
account based on the Commission's Uniform System of Accounts as
if it were a corporation, with comprehensive tax allocation
procedures applicable only to those partners that are
corporations; and (3) submitting a report to the Commission to
reflect changes in partnership interest holders, as more fully
described in this order.

Docket No. CP96-532-000                                    - 6 -

    (G)  Equitrans, Inc. must submit notice of cancellation of
its effective tariff an accordance with section 154.602 of the
Commission' regulations and Equitrans, L.P. shall file tariff
sheets reflecting Equitrans, Inc.'s abandonment by transfer of
its facilities and services in accordance with section 154.603 of
the Commission's regulations.  Equitrans, L.P. is to file these
tariff sheets in new tariff volumes designated as Original Volume
No. 1, No. 2, etc.

    (H)  Equitrans, Inc. and Equitrans, L.P. shall complete the
transfer of facilities and the assignment of services authorized
herein within one year of the date of issuance of this order.

    (I)  The South Jersey Gas Company's late motion to intervene
is granted.

By the Commission.

( S E A L )

                              David P. Boergers,
                              Secretary.



# PLAT OF SURVEY
## FOR
## EQUITRANS, L.P.

SITUATE NORTH OF MARION COUNTY ROUTE 17 AND EAST OF WEST VIRGINIA ROUTE 218 ON THE RIDGE BETWEEN RUSH RUN AND BENNEFIELD PRONG OF PAW PAW CREEK IN PAW PAW DISTRICT, MARION COUNTY, WEST VIRGINIA.

SHOWING AN AREA DEFINED AS LYING 25 FEET ON EACH SIDE OF AN EXISTING 16 INCH NATURAL GAS PIPELINE AS MARKED WITH PIN FLAGS BY EQT MIDSTREAM PERSONNEL ON JUNE 6, 2013. THIS SURVEY EXCLUDES AND DOES NOT INCLUDE ANY AREA LYING WEST PORTION OF THE WESTERN BOUNDARY, SAID LINE BEING THE WEST PORTION OF THE SAME TRACT OR PARCEL OF LAND CONVEYED FROM JOHN R. MOORE AND DOROTHY G. MOORE TO J. JOHN MOORE AND SANDRA J. MOORE BY A DEED DATED THE 10TH DAY OF JUNE, 1990 AND RECORDED IN DEED BOOK 902 AT PAGE 894 IN THE OFFICE OF THE COUNTY CLERK OF MARION COUNTY, WEST VIRGINIA.

## NOTES ON SURVEY

1. SEE DESCRIPTION OF SURVEY FOR MORE DETAILED INFORMATION ON CORNERS AND REFERENCES THERETO.

2. EASEMENTS AND/OR RIGHT-OF-WAYS WERE NOT ADDRESSED DURING THIS SURVEY OTHER THAN SHOWN HEREON.

3. NUMBERS CIRCLED IN RED INDICATE LOCATIONS OF PHOTOGRAPHS TAKEN AND INCORPORATED INTO SURVEY DATED JUNE 19, 2013 (PHOTOS OMITTED).

### LINE TABLE FOR BOUNDARY

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N 16°43'10" W | 49.97' |
| L2 | N 23°23'50" W | 45.30' |
| L3 | N 10°22'30" W | 118.14' |
| L4 | N 11°37'50" E | 77.07' |
| L5 | N 20°56'00" E | 20.92' |
| L6 | S 69°24'00" E | 50.00' |
| L7 | S 00°23'00" W | 22.29' |
| L8 | S 05°33'40" E | 44.29' |
| L9 | S 07°33'10" W | 19.74' |
| L10 | S 00°41'40" W | 21.10' |
| L11 | S 23°11'20" E | 29.50' |
| L12 | S 18°31'30" E | 25.46' |
| L13 | S 22°09'40" E | 54.08' |
| L14 | S 21°59'50" E | 51.41' |
| L15 | S 20°20'00" E | 24.14' |
| L16 | S 17°18'30" E | 53.05' |
| L17 | S 18°01'40" E | 69.84' |
| L18 | S 24°47'20" E | 41.12' |
| L19 | S 22°23'50" E | 53.63' |
| L20 | S 16°43'10" E | 78.76' |
| L21 | N 78°58'00" W | 56.50' |

FENCE CORNER POST (FOUND)

S 78°58'00" E
357.07' (TIE LINE)

2.5 ACRES± TRACT
FORMERLY TOBIAS HAUGHT
(PREVIOUS OWNER OF NEELY PROPERTY)

0.56 Acres±

J. JOHN MOORE AND
SANDRA J. MOORE
DB 902 PG 894
TM 9 PAR 40
121 ACRES± (LESS EXCEPTIONS)
83.604 (ASSESSED)

S 21°09'10" E
91.15'

N 16°52'30" W
511.50'

GATE

RBS

S 10°22'30" E
88.11' (TIE LINE)

N 78°58'00" W
16.07' (TIE LINE)

FRANK R. HOLLIS ET UX
DB 987/1
TM 09-15.1
PO 2.5 ACRES±
15 ACRES±

BEGINNING OF
DESCRIPTION

GATE

RBS

Al McPHERSON
DB 923/524
TM 09-2
37.008 ACRES±

FENCE CORNER
POST (FOUND)
FOR WHITE OAK
(GONE)
RBS AS MARKER

JOHN J. AND JAMES F. HLUSKO
DB 1004/938
TM 09-13
25 ACRES±
24.065 ACRES
(ASSESSED)

STANLEY HAUGHT, JR ET UX
DB 868/738
TM 09-14.1
20 ACRES±
19.16 ACRES± (ASSESSED)

### LEGEND

| | |
|---|---|
| ●——————● | SURVEYED LINE |
| —————— | NONSURVEYED LINE |
| ——R/W—— | RIGHT OF WAY LINE |
| ×——×——× | FENCE |
| ●——————● | GAS PIPELINE |
| △ | CALCULATED SURVEY POINT |
| ● | REBAR, PREVIOUSLY SET |
| ★ | PIN FLAG LOCATIONS |
| DB 000/000 | DEED BOOK/PAGE |
| T.M. 00 - PAR. 00 | TAX MAP-PARCEL |

—R/W—

DB 000/000
T.M. 00 - PAR. 00

NORTH MERIDIAN FOR THIS SURVEY
IS GRID NORTH OF THE WEST
VIRGINIA COORDINATE SYSTEM OF
1983 NORTH ZONE

APPROXIMATE DECLINATION 8°53'
WEST BASED ON INFORMATION
OBTAINED FROM THE NATIONAL
GEOPHYSICAL DATA CENTER.

GN

MN

### SCALE
1 INCH = 100 FEET

0'    100'    200'    300'

| PROJECT SURVEYOR: C. VICTOR MOYERS, P.S. #849 |
|---|
| DRAFTED BY: KEN SIMMONS 06/19/13 |
| FIELD SURVEY: JUNE, 2013 |
| SLS CADD FILE #: 8060—R2.dwg |

PS#849

0908

0909

04/08/2015

C. VICTOR MOYERS
LICENSED
NO. 849
STATE OF WEST VIRGINIA
PROFESSIONAL SURVEYOR

Professional Energy Consultants
SLS

PROFESSIONAL ENERGY CONSULTANTS

A DIVISION OF SMITH LAND SURVEYING, INC.

# Description of Survey

for

# Equitrans, L.P.

An area defined as lying 25 feet on each side of an existing 16-inch natural gas pipeline as marked with pinflags by EQT Midstream personnel on June 6, 2013 and located along the western boundary and inside a tract or parcel of land owned by J. John Moore (assessed as 83.604) acres located near the town of Fairview generally situate north of Marion County Route 17 and east of West Virginia Route 218 on the ridge between Rush Run and Bennefield Prong of Paw Paw Creek in **Paw Paw District, Marion County, West Virginia** more particularly described as follows:

Beginning at a point in the line of J. John Moore and a tract referred to as 2.5 acres (previously owned by Tobias Haught but current owner undetermined), said point being located 25 feet west of and perpendicular to the 16-inch pipeline referenced above from which a ¾-inch by 30-inch Reinforcing Rod with a yellow plastic cap stamped "SLS MONUMENT 462-5634" hereinafter referred to as a "Rebar" set during a survey of the pipeline in June 2013, thence through the Moore tract running 25 feet west of and parallel to said pipeline for two (2) lines;

N 16-43-10 W 49.97 feet to a point, thence;

N 22-23-50 W 45.30 feet to a point, in the line of Moore and Stanley Haught, Jr., thence with Haught;

N 10-22-30 W 118.14 feet to a Rebar previously set, thence with Haught and passing a corner of Haught with John T. and James F. Hlusko;

N 16-52-30 W 511.50 feet to a fence corner post found for a White Oak (gone) a Rebar set as a marker, corner to Hlusko and Al McPherson, thence with McPherson;

N 11-37-30 E 77.07 feet to a point located 25 feet west of and perpendicular to said 16-inch pipeline, thence through the Moore tract for the next nineteen (19) lines, the first line running 25 feet west of and parallel to said pipeline;

N 20-36-00 E 20.92 feet to a point, thence crossing said pipeline;

S 69-24-00 E 50.00 feet to a point located 25 feet on the east side of and perpendicular to said pipeline, thence running along the east side of said pipeline 25 feet east of and parallel to said pipeline for seventeen (17) lines;

S 20-36-00 W 79.67 feet to a point, thence;

S 00-32-00 W 22.29 feet to a point, thence;

S 05-32-40 E 44.29 feet to a point, thence;

S 07-33-10 W 19.74 feet to a point, thence;

S 00-41-40 W 21.10 feet to a point, thence;

S 14-29-20 E 67.63 feet to a point, thence;

S 21-09-10 E 91.15 feet to a point, thence;

P.O. Box 150, 12 Vanhorn Drive, Glenville, WV 26351   56065 Dilles Bottom Road, Shadyside, OH 43947
T: (304) 462-5634   F: (304) 462-5656   T: (740) 671-9911

S 23-11-20 E 29.50 feet to a point, thence;

S 18-31-30 E 25.46 feet to a point, thence;

S 22-09-40 E 54.08 feet to a point, thence;

S 21-59-50 E 51.41 feet to a point, thence;

S 20-20-00 E 24.14 feet to a point, thence;

S 17-18-30 E 53.05 feet to a point, thence;

S 18-01-40 E 69.84 feet to a point, thence;

S 22-47-20 E 41.12 feet to a point, thence;

S 22-23-50 E 53.63 feet to a point, thence;

S 16-43-10 E 78.76 feet to a point in the line of said Moore and the former Tobias Haught tract, thence crossing said pipeline diagonally with said boundary line;

N 78-58-00 W  56.50 feet to the place of beginning containing 0.56 acre, more or less, as surveyed in June 2013 by Smith Land Surveying, Inc. and as shown on a Plat of Survey dated April 8, 2015 attached hereto and made a part of the description.

Being a portion of the same tract or parcel of land conveyed from John R. Moore and Dorothy G. Moore to J. John Moore and Sandra J. Moore by a deed dated the 10th day of June, 1990 and recorded in Deed Book 902 at Page 894 in the Office of the County Clerk of Marion County, West Virginia.

Smith Land Surveying, Inc.
P.O. Box 150
Glenville, WV 26351

C. Victor Moyers
PS No. 849

CVM/jas



| | |
|---|---|
| **From:** | Ken Webb |
| **To:** | David K. Hendrickson |
| **Cc:** | Mark Adkins; Patrick C. Timony |
| **Subject:** | Moore - Judgment Order |
| **Date:** | Friday, April 3, 2015 11:32:06 AM |
| **Attachments:** | Judgment Order (Moore).pdf |

Dave,

Attached is the Judgement Order we've prepared for presentation to the Court for entry. Let me know if you have any questions or concerns about the form of the Order.

I did talk to Mr. Moore yesterday about resolving the case short of an ejectment of the pipeline. The Moores will grant Equitrans a new right of way allowing the pipeline to remain in its current location in exchange for the payment of $600,000.00 and correction of the drainage issues on the nearby well pad. As you know, Mr. Moore wants the run-off from the well pad to not drain onto his pasture field. The Moores recently entered into a right of way agreement with Equitrans for a 12 inch line that crosses the property. They would anticipate that the new right of way agreement for the 16 inch line would be substantially similar to the right of way agreement for the 12 inch line. The Moores would also agree -- as part of the settlement agreement -- to keep the settlement confidential.

I'm around today if you'd like to discuss the Judgment Order or settlement proposal.

Ken.


**Kenneth E. Webb, Jr.**
Bio   vCard   kwebb@bowlesrice.com

600 Quarrier Street
Charleston, WV 25301
(304) 347-1737

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (304) 347-1737 or by e-mail at kwebb@bowlesrice.com. Thank you.

| | |
|---|---|
| **From:** | Hastings, Stephen E. |
| **To:** | kwebb@bowlesrice.com |
| **Cc:** | Dave Hendrickson; Natalie Hollyfield; Combs, Haley; Withrow, Kimberly L. |
| **Subject:** | Moore v. Equitrans - Offer for ROW agreement |
| **Date:** | Wednesday, June 3, 2015 11:01:38 AM |
| **Attachments:** | 345-15 Moore Property.pdf |

Ken - Edited solely to correct spelling of Equitrans.

**From:** Hastings, Stephen E.
**Sent:** Wednesday, June 03, 2015 10:40 AM
**To:** kwebb@bowlesrice.com
**Cc:** daveh@handl.com; nhollyfield@handl.com; Combs, Haley; Withrow, Kimberly L.
**Subject:** Moore v. Equitant - Offer for ROW agreement

Ken –

Prior to trial and after trial, Equitrans offered $25,000 to settle all claims in this matter to resolve the question of whether there was a valid right-of-way for all portions of the pipeline on the Moore property.  Your clients have repeatedly rejected such offers and issued grossly excessive counter-demands.  I believe the last demand prior to trial was $197,500 and the most recent demand was $600,000.  Because of our inability to reach an agreement for a new right-of-way, we are prepared to move forward with the filing of an eminent domain action.  However, in accordance with the requirements of the Natural Gas Act, as well as an effort to avoid the time and expense of an eminent domain action, Equitrans will make one last effort to obtain a right-of-way from your clients.

We had Vic Moyers prepare a survey reflecting the area that the jury found that the pipeline did not comply with Mr. Moore's right-of-way.  The survey and description is set forth on pages 18-20 of the attached appraisal we had performed for this area.  You will note that the survey reflects an area for the pipeline as well as a 25' area on each side (to the extent on Moore property) for the right-of-way.  The total area at issue is 0.56 acres.  The total fair market value of the property is $700.00.  Despite this appraisal, EQT offers $7,000 (ten times the FMV) in exchange for a valid right-of-way to operate and maintain the pipeline.  Equitrans will consider any demands by your clients up to the $25,000 amount previously offered.  I ask that you respond on or before June 12, 2015.  Your clients have already confirmed they believe the value of the acreage Equitrans intends to condemn is in excess of $25,000.  Any rejection or failure to respond by June 12, 2015, will be construed as confirmation that your clients believe the value for the right-of-way exceeds the $7,000 offer.

Please contact Dave or me with any questions.

Thanks.  Steve

Stephen E. Hastings
Sr. Staff Attorney
EQT Corporation
1710 Pennsylvania Avenue

Charleston, WV  25302
Phone (304) 348-7614
Cell (304) 881-3540
Fax (304) 343-0363

# Professional Appraisal Corporation

*Real Property Appraisers*
**Residential\*Commercial**
**2031 Pleasant Valley Road Suite 4,  Fairmont, West Virginia 26554        304-366-8895**

**APPRAISAL REPORT**
**JUST COMPENSATION ANALYSIS OF**
**MOORE, JOHN & SANDRA J PROPERTY**
**TAX MAP 9 PARCEL 40**
**PAW PAW DISTRICT**
**MARION COUNTY**
**FAIRVIEW, WEST VIRGINIA**

**AS OF**
**May 18, 2015**

**PREPARED FOR**

**Equitrans, LP**
**Steven Hastings**
**Senior Staff Attorney**
**1700 Pennsylvania Avenue**
**Charlest, West Virginia 25302**

**PREPARED BY**

**Douglas C. Wise**
**SCGREA 053-WV**

**Brandon M. Wise**
**LR 1094-WV**
**Professional Appraisal Corporation**

*345-15*                                          i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii
LETTER OF TRANSMITTAL ...................................................................................- 1 -
EXECUTIVE SUMMARY ...........................................................................................- 4 -
SCOPE OF THE APPRAISAL ....................................................................................- 6 -
ASSUMPTIONS AND LIMITING CONDITIONS ...................................................- 10 -
ENVIRONMENTAL DISCLAIMER ........................................................................- 12 -
THE AMERICAN DISABILITIES ACT ..................................................................- 12 -
INTENDED USER AND USE OF THE APPRAISAL ............................................- 13 -
PROPERTY RIGHTS APPRAISED .........................................................................- 13 -
IDENTIFICATION OF APPRAISED PROPERTY .................................................- 14 -
STATEMENT OF OWNERSHIP ..............................................................................- 14 -
SALES HISTORY/OFFERINGS/CONTRACTS ......................................................- 14 -
REAL ESTATE TAXES AND ASSESSMENTS ......................................................- 15 -
SITE DATA ..................................................................................................................- 16 -
SUBJECT PHOTOGRAPH VIEWS .........................................................................- 17 -
DESCRIPTION OF SURVEY ....................................................................................- 18 -
DESCRIPTION OF SURVEY ....................................................................................- 19 -
PROPOSED SITE PLAN ............................................................................................- 20 -
LOCATION MAP ........................................................................................................- 21 -
AERIAL MAP ..............................................................................................................- 25 -
FLOOD MAP ...............................................................................................................- 26 -
NEIGHBORHOOD ANALYSIS .................................................................................- 27 -
PERTINENT MARKET AREA DATA .....................................................................- 28 -
MARION COUNTY MARKET DATA ......................................................................- 30 -
HIGHEST AND BEST USE ANALYSIS ...................................................................- 40 -
THE VALUATION PROCESS ...................................................................................- 43 -
SITE VALUATION ......................................................................................................- 45 -
COST APPROACH ......................................................................................................- 52 -
THE SALES COMPARISON APPROACH ..............................................................- 53 -
THE INCOME APPROACH .......................................................................................- 55 -
CORRELATION ..........................................................................................................- 57 -
CERTIFICATION ........................................................................................................- 58 -

EXHIBITS

Qualifications of Appraiser's

# Professional Appraisal Corporation

*Real Property Appraisers*
**Residential*Commercial**
**2031 Pleasant Valley Road Suite 4,  Fairmont, West Virginia 26554       304-366-8895**

## LETTER OF TRANSMITTAL

June 1, 2015

Equitrans, LP
Steven Hastings
Senior Staff Attorney
1700 Pennsylvania Avenue
Charlest, West Virginia 25302

>  RE: Appraisal Report
>       Just Compensation Analysis
>       Moore, John & Sandra
>       Paw Paw District
>       Tax Map 9 parcel's 40
>       83.604 +/- acres
>       0.56 +/- acre easement
>       Marion County, West Virginia

Dear Mr. Hastings:

Pursuant to your request, we have personally inspected the herein described real estate for the purpose of estimating the total just compensation of a proposed fee take for a high pressure gas line as of May 18, 2015. The appraiser did not enter onto the property and aerial maps were used to view the property. The fee simple estate is examined and reported in this analysis.

The subject property examined is an ***unimproved*** parcel and has a total of 83.604 +/- acres along Rush Run (CR 17/1). The purpose of this appraisal is to establish an opinion of current market value for property as a whole, any fee take areas and any permanent or temporary construction easements on the 83.604 +/- parcel. The property has a proposed fee take area of 0.56 +/- acres with no permanent or temporary construction easements or damages to the residue of the property.

This Appraisal Report is prepared under Standards Rule 2-2 (a) as a Complete Appraisal Analysis. It is intended to comply with the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation. This appraisal conforms to the provisions of

*345-15*                                - 1 -

the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Title XI (FIRREA).

The reader should be aware that there is information held in my files that is not included or made part of this report and that this information was utilized for the value conclusions stated in this appraisal. This appraisal is made as of an effective date and the appraiser has relied upon data as of that date to formulate the conclusions reported in this analysis. The value estimate reported in this appraisal is an objective opinion made by the appraiser based on the experience of the appraiser; the data collected; known economic, governmental, and social forces examined in this market; and the absence of material or competitive changes in the market after the effective date of this report. This report is intended for the sole use of the client and not intended for any other use or reader. This report has been furnished per the request of the client.

It should be understood that the definition of market value for this report is defined by the United States Treasury Department, Comptroller of the currency 12 CFR part 34 & 34.42 (f) as:

The most probable sales price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sales as of a specified date and the passing of title from seller to buyer under conditions whereby: 1) buyer and seller are typically motivated, 2) both parties are well informed or well advised and each acting in what he considers his own best interest; 3) a reasonable time allowed for exposure in the open market; 4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and 5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Value-influencing conditions are reported, whatever their nature and whenever they are found, because of their explained impact on the property's value. Explanations are given for each of the steps taken in the different techniques used to estimate the value reported along with comments on the reasoning employed in each case.

The property in question is appraised in fee simple title on the assumption that the presence of oil, gas, coal, or any other materials, if any, is such that its (or their) recovery is uneconomic.

The objective of this appraisal report is to determine the market value of the subject property in fee simple title.

Upon analyzing all available information, it is our opinion the market value estimate of the property herein described in ***fee simple title***, as of May 18, 2015 was:

**$ 100,000.00**

**ONE HUNDRED THOUSAND DOLLARS**

It is our opinion that the Total Just Compensation for the fee take area is:

**$ 700.00**

**SEVEN HUNDRED DOLLARS**

Respectfully Submitted,

Brandon M Wise
WV LR1094
Professional Appraisal Corporation

Douglas C. Wise
WV CG053
Professional Appraisal Corporation

## EXECUTIVE SUMMARY

| | |
|---|---|
| **LOCATION** | Rush Run (CR 17/1)<br>Fairview<br>Paw Paw District<br>Marion County, West Virginia |
| **TYPE PROPERTY** | The subject property consists of one unimproved parcel. The subject contains 83.604 +/- acres with a proposed easement area for a high pressure gas line containing 0.56 +/- acres. |
| **ZONING** | None |
| **PURPOSE OF THE APPRAISAL** | The purpose of this appraisal is to estimate the total just compensation of a proposed high pressure gas line. |
| **SITE SIZE** | Parcel 40 – 83.604 +/- acres<br>Proposed Easement area of 0.56 +/- acres |
| **DEED BOOK REFERENCE** | Deed book 902 page 894 |
| **FEE OWNERS** | Moore, John & Sandra J. |
| **ESTIMATED VALUE OF THE WHOLE** | $ 100,000.00 |
| **VALUE OF THE FEE TAKE** | $ 700.00 |
| **DATE OF APPRAISAL**<br>*Effective Date* | May 18, 2015 |
| **DATE REPORT SIGNED** | May 29, 2015 |
| **HIGHEST AND BEST USE** | The highest and best use of the subject has been determined to be for mixed use residential recreational lands. |
| **TAX MAP** | Tax Map 9 parcel 40 |
| **FLOOD ZONE** | Zone: X          Date: 6/19/2012<br>Map: 54049C0101D |

**INTENDED USER**             Equitrans, LP

**MARKETING TIME**            180-300 days

**EXPOSURE TIME**             180-300 days

**EXTRAORDINARY ASSUMPTIONS**   None

**HYPOTHETICAL CONDITIONS**   None

## SCOPE OF THE APPRAISAL

- The data contained in this appraisal included a personal inspection of the subject property on May 18, 2015 as well as the subject neighborhood by the appraiser.  The county tax map, tax assessments, legal description and the property rights are examined.  Data is obtained from public records, closing attorneys, investors, sales and rental agents, lenders, other appraisers and our own appraisal files.

- All plats and descriptions were supplied by Steven Hastings, representing Equitrans, LP and may be found in this report.

- The appraiser did not enter onto the property. Mr. Hastings, representing Equitrans, LP, advised the appraiser that we did not have permission to enter onto the property. The appraiser utilized aerial maps and topography maps to view the subject property.

- The appraiser has obtained information that is considered sensitive from other commercial developers in the area. This information in its entirety is held in the appraiser's work file but has been diluted and stated as ***confidential*** in parts of this report. The appraiser has a confidentiality agreement with the suppliers of some of the information used as well as being responsible to the confidential nature of information per USPAP requirements to other specific clients. The appraiser has made every attempt in this analysis to not have the reported information appear to be vague or misleading.

- The appraiser has reviewed the neighborhood as well as existing market conditions.

- The appraiser analyzed the site as vacant and as improved in conformity with appropriate Highest and Best Use Analysis.

- The assessor's office was contacted concerning potential tax assessments, and if there would be any anticipated changes in assessment procedure or the tax rate. Economic, demographic and development studies prepared by both Marion County and the City of Fairmont were used in this analysis.

- The value estimate stated in this report would be contingent upon the sub-soil being free of environmental contamination; and the soils being conducive to development.

- The data that was conformed and deemed to be reliable and applicable was incorporated into the recognized methods and techniques for estimating the market value of this property.  When sufficient information was available to complete each of the approaches, for a credible value indication, the approaches were then considered and given credence in the final estimate.

- Development of a complete valuation analysis considering the Cost, Income and Sales Comparison Approaches to value and appropriate consideration given to the nature and

type of development in conformity with the ***Scope of Work Rule.***

▪ Reconciliation and a final value estimate with the date of valuation being May 18, 2015.

▪ Terminology in this report is based on the definitions outlined in the ***The Appraisal of Real Estate, Fourteenth Edition and The Dictionary of Real Estate Appraisal, Fifth Edition.***

## DEFINITIONS PERTINENT TO VALUE

**"Market Value"** is defined as:

"the most probable price which a property should bring in competitive and open market under all condition requisite to a fair sale, the buyer and seller each acting prudently, knowledgeably, and assuming the price is not affected by undue stimulus."

Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

▪ Buyer and seller are typically motivated;
▪ Both parties are well-informed or well-advised, and each acting in what he considers his own best interest;
▪ A reasonable time is allowed for exposure in the open market;
▪ Payment is made in terms of cash in U.S. Dollars or in terms of financial arrangements comparable there to; and
▪ The price represents a normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**"Hypothetical Condition"** is defined as:

"that which is contrary to what exists but is supposed for the purpose of analysis. Hypothetical condition assumes conditions contrary to known facts about physical, legal, or economic characteristics of the subject property, such as market conditions or trends; or about the integrity of data used in an analysis."
A hypothetical condition may be used in an assignment only if:

▪ Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
▪ Use of the hypothetical condition results in a credible analysis; and
▪ The appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions.

**"Extraordinary Assumption"** is defined as:

*345-15*                                     - 7 -

"an assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis. An extraordinary assumption may be used in an assignment only if:

- It is required to properly develop credible opinions and conclusions;
- The appraiser has a reasonable basis for the extraordinary assumption;
- Use of the extraordinary assumption results in a credible analysis; and
- The appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumptions. (USPAP 2014-2015 edition)

**Market value "as is"** on appraisal date means as estimate of the market value of a property in the condition observed upon inspection and as it physically and legally exists without hypothetical condition, assumption, or qualification as of the date of the appraisal is prepared.

**Market value "as if"** complete or **"subject to" completion** on appraisal date means the market value of a property with all proposed construction, conversion, or rehabilitation hypothetically complete, or under other specified hypothetical conditions as of the date of the appraisal. If it is a proposed construction a "Prospective Value Opinion" is reported. This is opinion is a forecast of the value expected at a specified future date. A prospective value opinion is most frequently sought in connection with real estate projects that are proposed, under construction, or under conversion to a new use, or those that have not achieved sellout or a stabilization level of long-term occupancy at the time the appraisal report is written.

With regard to properties wherein anticipated market conditions indicate that stabilized occupancy is not likely as of the date of completion, this estimate of value shall reflect the market value of the property as if completed and prepared for occupancy by tenants.

**Liquidation Value** means the most probable price that a specified interest in real property is likely to bring under similar conditions to market value except 1,) Consummation of a sale will occur within a severely limited future marketing period specified by the client; 2.) The actual market conditions currently prevailing are those to which the appraised property interest is subject; 3.) The seller is under extreme compulsion to sell; and 4.) A limited marketing effort and time will be allowed for the completion of the sale.

**Prospective future value upon completion of construction** means the prospective future value of a property on the date that construction is completed, based upon market conditions forecast to exist as of that completion date.

**Prospective future value upon reaching stabilized occupancy** means the prospective future

value of a property at a point in time when all improvements have been physically constructed and the property has been leased to its optimum level of long term occupancy.

**Fee Simple Interest** means "Absolute ownership unencumbered by any other interest or estate; subject only to the limitations of eminent domain, escheat, police power, and taxation."

**Leased Interest** is defined as one of the real property interests that results from the division of the bundle of rights by a lease, i.e., the leased fee estate or the leasehold estate.

**Leased Fee Interest** is an ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the Lessor (the leased fee owner) and the lessee are specified by contract terms contained within the lease.

**Leasehold Interest** is defined as the interest held by the lessee (the tenant or renter) through a lease transferring the right of use and occupancy for a stated term under certain conditions.

**Cash Equivalent Value** is "A price expressed in terms of cash, as distinguished from a price expressed totally or partly in terms of the face amounts of notes or other securities that cannot be sold at their face amounts."

**Floor Area Ratio** is "The relationship between the above ground floor area of a building and the area of the plot on which it stands; e.g., a total of 2.0 indicates that the floor area of a building is twice the total land."

**Discounted Cash Flow (DCF) Analysis** is described as "A set of procedures in which the quantity, variability, timing, and duration of periodic income, as well as the quantity and timing of reversions, are specified and discounted to a specific yield rate."

## ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal conforms to the Uniform Standards of Professional Appraisal Practice.

The appraiser is aware of, understands and has correctly employed those recognized methods and techniques that are necessary to produce a credible appraisal. The author of this report is qualified to perform this type of real property appraisal.

This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

Typically, personal property items are considered to be short lived amenities. It is the opinion of the appraiser, unless otherwise stated, that the existence or non-existence of the personal property involved in this report would not have a bearing on the final value estimate of the subject.

The appraiser assumes no responsibility for the condition or adequacy of any mechanical items such as, heating, cooling, plumbing, electrical, fixtures or structural aspects of the property. Should concern arise, an inspection from a qualified person in this field should be obtained.

The appraiser assumes that there are no subsurface characteristics or environmental conditions that could cause an adverse market reaction to the subject property.

The compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

All direct and indirect information was supplied by the client, and is assumed to be reliable and correct. Professional Appraisal Corporation reserves the right to re-evaluate the conclusions stated herein should any pertinent information be brought forward after this appraisal has been delivered to the client.

It is assumed that the property is in full compliance with all applicable federal, state and local environmental regulations and laws unless the lack of compliance is stated, described and considered in the appraisal.
It is assumed that the property conforms to all applicable zoning and use regulations as well as any restrictions unless nonconformity has been identified and addressed in this report.

It is assumed that all required licenses, consents, and other legislative or administrative authority from any local, state, national government, private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based. It is further assumed that the use of the land and the existing improvements is confined within the boundaries or property lines of the property described in this report and that there is no encroachment or trespass unless noted and addressed in this report.

The opinion of value contained in this report is an expression of opinion only and no warranty is made or implied that the property will sell for the appraised value as outlined.

The appraiser assumes there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable.  The appraiser assumes no responsibility for such conditions, or for engineering which might be required to discover such factors.  No tests have been done on the stability of the soil, it is assumed for the purpose of this report to be stable.

The appraiser is not an expert in regards to electrical, plumbing, HVAC., paint, appliances, cranes, compressors, signage, roofing, siding, windows, foundations or the structural stability of any improvements located on the property.  A visual inspection of the property has been done and the assumption has been made that these, and any other such items, are in acceptable condition unless otherwise stated.  This appraisal, along with the value reported, in no sense guarantees the condition of life of any physical improvement.  The appraiser assumes no responsibility for such conditions, or for engineering which might be required to discover such factors.

Disclosure of the contents of the appraisal report is governed by the Bylaws and Regulations of the professional organizations with which the appraiser is affiliated.  The contents of this report are considered confidential and will not be released to anyone other than the client.

Neither all, nor any part of the content of this report, or copy thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, reference to any professional appraisal organizations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client specified in the report, the borrower if appraisal fee paid by same, the mortgage or its successors and assigns, mortgage insurers, consultants, professional appraisal organizations, any state or federally approved financial institution, any department, agency, or instrumentality of the United States or any state or the District of Columbia, without the previous written consent of the Appraiser; nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent and approval of the appraiser.

No liability is assumed for the legal character of influences affecting the property.  The appraiser does not render any opinion as to the title, which is assumed to be good and marketable.  The property is appraised as through under responsible ownership.

The appraiser shall not be required to give testimony, or appear in court by reason of this appraisal, with reference to the property described herein, unless prior written arrangements have been made.

No change of any item in the appraisal report shall be made by anyone other than the appraiser, and the appraiser shall have no responsibility for any such unauthorized change.

The floor plans and/or diagrams set forth in this report are to aid the reader in visualizing the subject and are not drawn to scale.

Any distribution of the valuation in this report between the land and improvements applies only under the existing program of utilization.  The separate valuations for land and building(s) must not be used in conjunction with any other appraisal and are invalid if so used.

On all appraisals, subject to satisfactory completion, repairs, or alterations, the appraisal report and value conclusion are contingent upon completion of the improvements
**Upon acceptance of this report, the client agrees that the appraiser may use the physical information held in this file for future reference. This may include information that would be considered confidential under USPAP guidelines for possible comparable sales analysis. This information may be published in future appraisal reports.**

## ENVIRONMENTAL DISCLAIMER

The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the property that would negatively affect its value.  Adverse conditions were not observed at the time of inspection. If there is any question regarding any contamination possibilities a Phase I environmental inspection is advised.

## THE AMERICAN DISABILITIES ACT

The American Disabilities Act, (ADA) was put into effect on January 26, 1992.  The subject property consists of a vacant parcel of land and would not have any requirements regarding to this act.

## INTENDED USER AND USE OF THE APPRAISAL

The appraiser has been contracted to perform this appraisal per the request of Mr. Steven Hastings, acting in behalf of Equitrans, LP.

This primary intended use of this report is to estimate the just compensation of the proposed high pressure line easement containing 0.56 +/- acres. It is further understood that it is possible that this report could also be used for litigation and condemnation purposes. The primary intender user of this report is Equitrans, LP and their representatives.

This appraisal is developed consistent with the scope specified by the Client and was agreed upon by the appraiser for real estate collateral valuation. One electronic copy has been supplied to the client.

## PROPERTY RIGHTS APPRAISED

The appraisal is made with the understanding the present ownership of the subject property includes all rights that may be lawfully owned and is, therefore, title in *fee simple*.  By definition, fee simple assumes the real property is without limitations to any particular class of heirs or restrictions, but subject only to the limitations of eminent domain, escheat, police power, and taxation, an inheritable estate.

## IDENTIFICATION OF APPRAISED PROPERTY

The appraised property is not currently addressed:

### RUSH RUN
### FAIRVIEW, WEST VIRGINIA
### 26570

It is more particularly described as:

Being part of those certain lots or parcel of real estate, lying and being in the Paw Paw District outside the city limits of Fairview, WV, Marion County, West Virginia. The property is described as 83.604 AC Rush Run.

All those certain lots or parcel of real estate, lying and being in the Paw Paw District outside the city limits of the City of Fairview, Marion County, West Virginia, being known as Rush Run.  A copy of the deed is recorded in Deed Book 902, page 894.

## STATEMENT OF OWNERSHIP

The subject property is currently listed in the name of Moore, John & Sandra. A copy of the deed can be found in Deed Book 902, page 894 in the Clerk's Office of the Marion County Court House, situate in Fairmont, West Virginia.

## SALES HISTORY/OFFERINGS/CONTRACTS

None of the parcels have had any sales or transfers in the last 5 years or have been listed or optioned for sale in the last year. A copy of the deed can be found in Deed Book 902, page 894 and in the Clerk's Office of the Marion County Court House, situate in Fairmont, West Virginia.

# REAL ESTATE TAXES AND ASSESSMENTS
## 2014

**MOORE, JOHN & SANDRA J**
555 Blue Goose Road
Fairview, WV 26570

| | | | |
|---|---|---|---|
| **District** | Paw Paw | **Tax Map** | 9 |
| **Legal Description** | 83.604 AC RUSH RUN | **Parcel** | 0040.0000 |
| **Class** | 3 | | |

| | | | |
|---|---|---|---|
| **Assessments** | | **½ Year Tax** | $ 58.21 |
| **Land** | $6,900.00 | **Full Year** | $ 116.42 |
| **Building** | $2,520.00 | | |
| **Total** | **$9,420.00** | | |

## REAL ESTATE TAX TOTALS

| PARCEL | ANNUAL TAX |
|---|---|
| 0040.0000.0000 | $ 116.42 |
| | |
| **TOTAL** | **$ 116.42** |

Marion County offers a 2 ½% discount for early payment of taxes.

# SITE DATA

**LOCATION:**  Rush Run (CR 17/1)

**COUNTY:** Marion

**DISTRICT:** Paw Paw

**CITY:** Fairview

**STATE:** West Virginia

**ZIP CODE:** 26570

**STREET:** Access to the property is by Rush Run.

**MAINTENANCE:** Public

**CURBS:** None                              **SIDEWALKS:** None

**STREET LIGHTS:** None

**WATER:** Available                         **SEWER:**  None

**GAS:** Public Utility                       **ELECTRIC:** Public utility

**FLOOD ZONE:** Zone X        Map 54049C0101D    Date 6/19/2012

**SHAPE:** Irregular shaped parcel.

**SIZE:** 83.604 +/- acres

**UTILITY:** The subject property slopes up from the road with rolling meadows to a wooded area and continues to slope upward. No adverse changes in topography.

**PROXIMITY:** Access to schools, shopping, employment centers and public transportation is average.

## DESCRIPTION OF PROPOSED TAKE AND/OR EASEMENTS

Further described below on the next page the proposed fee take area is an irregular shaped area that is off County Route 17/1 (Rush Run). The appraiser did not enter onto the subject property and aerial maps and topography maps were utilized to inspect the subject property.

The proposed site is along the western property boundary in what appears to be near a cleared area with existing easements.

After review of the plans for the proposed take the appraiser has determined that there would not be any damage to the residue after the take.

## SUBJECT PHOTOGRAPH VIEWS

The appraiser was not permitted access onto the property. Aerial maps and topography maps were utilized to inspect the property.

## DESCRIPTION OF SURVEY



PROFESSIONAL ENERGY CONSULTANTS

A DIVISION OF SMITH LAND SURVEYING, INC.

Description of Survey

for

Equitrans, L.P.

An area defined as lying 25 feet on each side of an existing 16-inch natural gas pipeline as marked with pinflags by EQT Midstream personnel on June 6, 2013 and located along the western boundary and inside a tract or parcel of land owned by J. John Moore (assessed as 83.604) acres located near the town of Fairview generally situate north of Marion County Route 17 and east of West Virginia Route 218 on the ridge between Rush Run and Bennefield Prong of Paw Paw Creek in **Paw Paw District, Marion County, West Virginia** more particularly described as follows:

Beginning at a point in the line of J. John Moore and a tract referred to as 2.5 acres (previously owned by Tobias Haught but current owner undetermined), said point being located 25 feet west of and perpendicular to the 16-inch pipeline referenced above from which a ¾-inch by 30-inch Reinforcing Rod with a yellow plastic cap stamped "SLS MONUMENT 462-5634" hereinafter referred to as a "Rebar" set during a survey of the pipeline in June 2013, thence through the Moore tract running 25 feet west of and parallel to said pipeline for two (2) lines;

N 16-43-10 W 49.97 feet to a point, thence;

N 22-23-50 W 45.30 feet to a point, in the line of Moore and Stanley Haught, Jr., thence with Haught;

N 10-22-30 W  118.14 feet to a Rebar previously set, thence with Haught and passing a corner of Haught with John T. and James F. Hlusko;

N 16-52-30 W 511.50 feet to a fence corner post found for a White Oak (gone) a Rebar set as a marker, corner to Hlusko and Al McPherson, thence with McPherson;

N 11-37-30 E  77.07 feet to a point located 25 feet west of and perpendicular to said 16-inch pipeline, thence through the Moore tract for the next nineteen (19) lines, the first line running 25 feet west of and parallel to said pipeline;

N 20-36-00 E 20.92 feet to a point, thence crossing said pipeline;

S 69-24-00 E  50.00 feet to a point located 25 feet on the east side of and perpendicular to said pipeline, thence running along the east side of said pipeline 25 feet east of and parallel to said pipeline for seventeen (17) lines;

S 20-36-00 W 79.67 feet to a point, thence;

S 00-32-00 W 22.29 feet to a point, thence;

S 05-32-40 E 44.29 feet to a point, thence;

S 07-33-10 W 19.74 feet to a point, thence;

S 00-41-40 W 21.10 feet to a point, thence;

S 14-29-20 E 67.63 feet to a point, thence;

S 21-09-10 E 91.15 feet to a point, thence;

P.O. Box 150, 12 Vanhorn Drive, Glenville, WV 26351
T: (304)-462-5634   F: (304) 462-5655

56065 Dilles Bottom Road, Shadyside, OH 43947
T: (740)-671-9911

## DESCRIPTION OF SURVEY

S 23-11-20 E 29.50 feet to a point, thence;

S 18-31-30 E 25.46 feet to a point, thence;

S 22-09-40 E 54.08 feet to a point, thence;

S 21-59-50 E 51.41 feet to a point, thence;

S 20-20-00 E 24.14 feet to a point, thence;

S 17-18-30 E 53.05 feet to a point, thence;

S 18-01-40 E 69.84 feet to a point, thence;

S 22-47-20 E 41.12 feet to a point, thence;

S 22-23-50 E 53.63 feet to a point, thence;

S 16-43-10 E 78.76 feet to a point in the line of said Moore and the former Tobias Haught tract, thence crossing said pipeline diagonally with said boundary line;

N 78-58-00 W  56.50 feet to the place of beginning containing 0.56 acre, more or less, as surveyed in June 2013 by Smith Land Surveying, Inc. and as shown on a Plat of Survey dated April 8, 2015 attached hereto and made a part of the description.

Being a portion of the same tract or parcel of land conveyed from John R. Moore and Dorothy G. Moore to J. John Moore and Sandra J. Moore by a deed dated the 10th day of June, 1990 and recorded in Deed Book 902 at Page 894 in the Office of the County Clerk of Marion County, West Virginia.

Smith Land Surveying, Inc.
P.O. Box 150
Glenville, WV 26351

C. Victor Moyers
PS No. 849

CVM/jas

P. @xxn\Shived\Survey Document\Descriptions\B80 DFSC.

P.O. Box 150, 12 Vanhorn Drive, Glenville, WV 26351          56065 Dilles Bottom Road, Shadyside, OH 43947
T: (304)-462-5634   F: (304)-462-5656                                      T: (740)-671-9951

2

**PROPOSED SITE PLAN**



# LOCATION MAP



## LOCATION MAP



## LOCATION MAP



**TAX MAP**



*Paw Paw District Map 9, Parcel 40*

**AERIAL MAP**



# FLOOD MAP



**Flood Zones**

| | |
|---|---|
| Areas inundated by 500-year flooding | Floodway areas |
| Areas outside of the 100- and 500-year flood plains | Floodway areas with velocity hazard |
| Areas inundated by 100-year flooding | Areas of undetermined but possible flood hazards |
| Areas inundated by 100-year flooding with velocity hazard | Areas not mapped on any published FIRM |

**Flood Zone Determination**

**Latitude:** 39.601589
**Longitude:** -80.232413
**Community Name:**
UNINCORPORATED AREA
**Community:** 540097
**SFHA (Flood Zone):** No
**Within 250 ft. of multiple flood zones:** No
**Zone:** X          **Map #:** 54049C0101D
**Panel:** 0101D     **Panel Date:** 06/19/2012
**FIPS Code:** 54049 **Census Tract:** 216

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when accessing this product. No third party is authorized to use or rely on this Report for any purpose. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT, ACCURACY OR COMPLETENESS OF THIS REPORT, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

# NEIGHBORHOOD ANALYSIS

A neighborhood is a group of complementary land uses. There are three major topics to be considered in neighborhood analysis. They are

    1)     Purpose

    2)     Boundaries

    3) State of Change

The purpose of neighborhood analysis is to identify an area and the degree to which the economic, social, governmental and environmental (physical) forces impact the subject property and all the other properties alike. In other words, once one or more of the four great forces vary in impact from the subject to other properties in the area, a boundary of the subject neighborhood has been crossed. Consequently, the boundaries of a neighborhood must be identified so that the appraiser can properly select comparable data for utilization in both highest and best use analysis and the appropriate approaches to value.

Even though the economic, social, and governmental forces can set neighborhood boundaries, physical boundaries are typically utilized in discussion. These boundaries may coincide with changes in prevailing land use, occupant characteristics, or physical characteristics such as structures, street patterns, and terrain, vegetation, and lot sizes. Because changes in natural or physical features often coincide with changes in land use, transportation arteries (e.g., highways, major streets, and railroads), bodies of water (e.g., rivers, lakes, and streams), and changes in elevation (e.g., hills, mountains, cliffs, and valleys) often represent significant boundaries.

Neighborhoods are always changing even though short-term changes are generally not obvious. The stages in the life cycle which all neighborhoods go through are growth, stability, decline, and revitalization. It is extremely important for an appraiser to accurately determine the stages that the subject neighborhood is in as this is the basis for an estimate of remaining economic life (REL) for use in highest and best use analysis and application of the appropriate approaches.

The subject property is located in an older residential area outside the City of Fairview. Fairview is located 1.5 miles south of the Monongalia County line. The neighborhood is bound to the North and East to the county line and to the South and West to US 250. The market area would be the Greater Marion County area. The neighborhood would be considered as stable.

## PERTINENT MARKET AREA DATA

| | |
|---|---|
| **LOCATION:** | Suburban |
| **BUILD UP:** | 65%  + |
| **GROWTH RATE:** | Stable |
| **PROPERTY VALUES:** | Stable |
| **SINGLE FAMILY PRICES:** | $ 30,000.00 - $ 500,000.00 |
| **PREDOMINATE VALUE:** | $ 100,000.00 |
| **PREDOMINATE AGE:** | New to 60+ years |
| **PRESENT LAND USES:** | 5% commercial<br>60% residential<br>35% other |
| **SUPPLY AND DEMAND:** | In balance |
| **MARKETING TIME RESIDENTIAL:** | 3 to 6 months |
| **MARKETING TIME COMMERCIAL:** | 300 days |
| **PREDOMINATE OCCUPANCY:** | Owner |
| **VACANCY RATE:** | 1 - 2% |
| **EMPLOYMENT STABILITY:** | Average |
| **CONVENIENCE TO EMPLOYMENT:** | Average |
| **CONVENIENCE TO SHOPPING:** | Average |
| **CONVENIENCE TO SCHOOLS:** | Average |
| **ADEQUACY OF PUBLIC TRANSPORT:** | Average |
| **RECREATIONAL FACILITIES:** | Average |
| **ADEQUACY OF UTILITIES:** | Average |

**PROPERTY COMPATIBILITY:**                    Average

**PROTECTION FROM DETRIMENTAL CONDITIONS:**    Average

**GENERAL APPEARANCE OF PROPERTIES:**          Average

**APPEAL TO MARKET:**                          Average

## MARION COUNTY MARKET DATA

Marion County is located in the north-central part of West Virginia. This area has a hilly terrain with the Monongahela River flowing northward dividing the town of Fairmont into two parts. The region that is now known is Fairmont was donated by Boaz Fleming who wanted to eliminate long trips to Morgantown or Clarksburg, West Virginia, in 1819. The General Assembly of Virginia created this town on January 19, 1820. At this time it was named Middletown because of the fact that it was in the middle of Morgantown and Clarksburg. When creating the county seat for this area, the name was changed to avoid confusion with a Middletown, Va. that already existed in Frederick County. The name Fairmont was chosen because of the positive outlook it gave. This incorporation of Fairmont happened on February 18, 1843.

The county received its name in honor of General Francis Marion, from the Revolutionary War who inspired patriotism. The name Marion can also be created from the names of the counties to the north and south, Monongalia and Harrison. During the Civil War many settlers in this area favored the North. One of these supporters was Francis Harrison Pierpont, an important attorney and businessman, who became governors to the Restored Government of Virginia. His efforts formed West Virginia as the thirty-fifth state.

Marion County attracted many new settlers after the French and Indian War (1758-63). Living in this area was hard, due to the fact of limited supplies and the Indian raids of 1774. Many of the settlers would abandon their homes and gathered at the settlement of Jacob Prickett, where there was a large stockade like fort built. This is now known as Prickett's Fort State Park. These settlers had plenty of wild animals ranging from rabbits to buffalo. The West Fork and Tygart Valley rivers also supported this area with all kinds of fish such as salmon, catfish, bass and perch. This land which is located had many appealing features. When the settlers built their own homes they were built out of logs from the wooded areas that would become the fertile soil for farmlands of this region.

Many changes have shaped this area, the same year that Fairmont was incorporated the area's first post office was opened on the east side of the Monongahela River. Shortly after came the first jail in 1842 and then the first courthouse which was completed in 1844. In 1852, Fairmont had two major additions to the city were the building of the suspension bridge crossing the Monongahela River and the introduction of the Baltimore and Ohio Railroad (B&O). These to additions brought new industries to this area. This city was also reconstructed due to many disastrous fires like the one in 1876 that were found to be a blessing in disguise. The coal industry was a big contributor to the growth for the city of Fairmont along with the railroad to move the product.

## LOCATION

Fairmont, West Virginia is located 88 miles south of Pittsburgh, Pa., 214 miles southeast of Columbus, Ohio, 225 miles northeast of Washington, D.C., 280 miles northwest of Richmond and 225 miles west of Baltimore, Maryland.

**POPULATION PROFILE**

**FAIRMONT**

| | |
|---|---|
| 1960 | 27,447 |
| 1970 | 26,093 |
| 1980 | 23,863 |
| 1985 | 25,250 |
| 1990 | 20,210 |
| 1996 | 20,627 |
| 2000 | 19,097 |
| 2010 | 18,704 |

**MARION COUNTY**

| | |
|---|---|
| 1960 | 63,717 |
| 1970 | 61,356 |
| 1980 | 55,789 |
| 1985 | 67,619 |
| 1990 | 57,249 |
| 1996 | 57,521 |
| 2000 | 56,598 |
| 2010 | 56,418 |

**POPULATION**

| Total Population | 1980 | 1990 | 2000 | 2010 | % Change 1980-1990 | % Change 1990-2000 | % Change |
|---|---|---|---|---|---|---|---|
| Fairmont | 23,863 | 20,210 | 19,097 | 18,704 | - 15.3% | -5.5% | -2.1% |
| Bridgeport | 6,606 | 6,739 | 7,306 | 8,149 | 2.0% | 8.4% | + 11.5% |
| Clarksburg | 24,864 | 22,433 | 18,059 | 16,578 | -9.8% | -19.5% | -1.0% |
| Morgantown | 29,431 | 27,605 | 25,879 | 29,668 | -6.2% | -6.3% | + 10.6 % |
| Marion County | 65,789 | 57,249 | 56,598 | 56,418 | -13.1% | -1.2% | -0.3% |

**MEDIAN AGE**

| Median Age | 1990 | 2000 | 2010 |
|---|---|---|---|
| Fairmont | 38.3 | 39.3 | 36.8 |
| Pleasant Valley | 37.9 | 38.4 | |
| Bridgeport | 38.5 | 42.8 | 44.7 |
| Clarksburg | 40.6 | 40.5 | 39.5 |
| Morgantown | 22.8 | 23.1 | 22.6 |
| Marion County | 37.3 | 39.9 | 41.0 |

## MEDIAN AGE



## AVERAGE HOUSEHOLD SIZE

| Average Household Size | 1980 | 1990 | 2000 | 2010 | % Change 1980-1990 | % Change 1990-2000 | |
|---|---|---|---|---|---|---|---|
| Fairmont | 2.45 | 2.23 | 2.16 | 2.30 | -3.1 | -3.1 | + 6.5% |
| Pleasant Valley | 2.42 | 2.25 | 2.29 | | -9.0 | +1.8% | |
| Bridgeport | 2.72 | 2.53 | 2.41 | 2.46 | -4.7 | -4.7 | + 2.1% |
| Clarksburg | 2.39 | 2.27 | 2.20 | 2.39 | -3.2 | -3.2 | + 8.6% |
| Morgantown | 2.85 | 2.70 | 2.08 | 2.28 | -23.0 | -23.0 | + 9.6% |

## AVERAGE HOUSEHOLD SIZE



**TRANSPORTATION**

**HIGHWAYS**

I-79, I-68, US ROUTE 250, US ROUTE 19, US ROUTE 73, WV ROUTE 218, WV ROUTE 310

**MOTOR FREIGHT**

8 Motor Freight Carriers

**TRANSIT**

Fairmont-Marion County Transit Authority and Greyhound Bus Lines

**WATER**

13.3 Miles of Nine-foot Channel Dept on Monongahela River with an annual capacity of 850,000 gallons

**AIR**

| | |
|---|---|
| *Harrison -Marion Airport:* | located in Bridgeport, West Virginia, 14 miles south of I-79. Daily flights to Pittsburgh International Airport and Washington, D.C. |
| *Morgantown Municipal Airport:* | located in Morgantown, West Virginia, 18, miles north of Morgantown, West Virginia, daily flights to Pittsburgh International Airport and Washington, D.C. |
| *Pittsburgh International Airport:* | located in Pittsburgh, Pennsylvania, 90 miles north on I-79. |

**UTILITIES**

| | |
|---|---|
| **TELEPHONE** | Frontier Communications |
| **GARBAGE** | Browning-Ferris Industries<br>Smaller Carriers |
| **WATER** | City of Fairmont Capacity: 12 million gallons<br>City of Fairmont Daily Consumption:<br>4.08 Million Gallons<br>Services also provided by local Public Service Districts |

*345-15*                                               - 33 -

| | |
|---|---|
| **SEWER** | City of Fairmont Daily Capacity: 6 million gallons<br>Service also provided by local Public Service Districts |
| **NATURAL GAS** | Equitable Gas, Dominion Hope Gas |
| **ELECTRICITY** | Allegheny Power |

## GOVERNMENT SERVICES AND FACILITIES

### *GOVERNOR'S GUARANTEED WORKFORCE PROGRAM*

- ❖ provides grant funds to assist employers in training
- ❖ program coordination among state agencies, training providers, and the employer
- ❖ employee recruitment, including pre-employment training
- ❖ work place development focusing on empowerment, leadership, and team development, mentor/coach training, and business improvement skills
- ❖ structured on-the-job training development
- ❖ Work Place Education Program, including basic skills training

| | |
|---|---|
| *Local Government*: | Mayor/Council/City Manager<br>City Planner - full-time<br>City Engineer - full-time |
| *Fire Department:* | 47 full-time personnel<br>4 stations, 14 vehicles |
| *Fire Rating*: | Class 6 - City |
| *Fire/Rescue Communication*: | Countries wide central alarm agency for all fire/rescue services. |
| *Police Department*: | 59 full-time personnel<br>17 cars |
| *County Police Department:* | 89 full-time personnel<br>18 cars |
| *Public Library*: | Main Library with two branch libraries; contains 91,461 volumes |
| *Post Offices:* | 16 Local offices |

The Region Six Planning and Development Council - which coordinates all planning and development activities in Marion County and Five surrounding counties, has its central office in the Whitehall area.

**COMMUNITY FACILITIES**

### *FAIRMONT GENERAL HOSPITAL*
- ❖ Medical-surgical hospital
- ❖ 268 beds
- ❖ Outpatients services
- ❖ Addition Recovery
- ❖ Cardiovascular
- ❖ Radiology
- ❖ Community Education and Outreach

### *MARION HEALTH CARE HOSPITAL*
Nursing home with 41 Beds and also Addition Recovery Services

### *FAIRMONT CLINIC/MVA*
Provides a wide variety of health care services in a clinic setting, MVA Home Health Care provides skilled home health care

### *MANCHIN CLINIC*
Clinic based Health care facility in Farmington, West Virginia

### *MEDPOINTE*
Urgent Care facility providing services including Rehab & Sports Medicine,

Occupational Therapy, and Diagnostic Procedures

### *MARION COUNTY RESCUE SQUAD*
Medical Emergency and Rescue Services

## COMMUNICATIONS

| AM RADIO | FM RADIO | TELEVISION |
|----------|----------|------------|
| WMMN | WRLF | WBOY |
| WTCS | WKKW | WDTV |
| | WTUS | WNPB |

| | |
|---|---|
| *CABLE TELEVISION* | Time Warner Cable, Adelphia |
| *NEWSPAPERS* | Times West Virginian, Dominion Post |

**RECREATION**

*MOTELS*

    10 motels/hotels with a total of 509 rooms

*MOVIE THEATERS*

    10 cinemas

*CHURCHES*

    151 Clergy representing 36 Denominations in 87 churches
        Protestant           48
        Catholic             11
        Jewish               1
        Non-denominational  27

*BOWLING*

    2 Bowling Alleys with 56 lanes total

*SWIMMING POOLS*

    2 Public Pools, 1 Wave Pool

*COMMUNITY PARKS*

    7 Community Parks for 925 Acres

*STATE PARKS*

    Valley Falls State Park
    Prickett's Fort State Park

*MUSEUMS*

    West Augusts Historical Society Round Barn and Museum
    Marion County Museum
    Historical Society
    Job Prickett House
    Prickett's Fort

## EMPLOYMENT

Unemployment has continued to drop faster than national averages. This has held true for Monongalia, Marion and Harrison Counties which have remained stable over the last five years.

Employment along the I-79 corridor in Northern West Virginia is supported by West Virginia University and West Virginia University Hospitals to the north in Monongalia County; the FBI National Fingerprint Identification Facility to the south in Harrison County; and the I-79 Technology Park in Marion County along with all of the associated businesses in all three counties have supported the local labor markets and all have continued to expand in the last 10 years.

## EDUCATION

### HIGHER EDUCATION

### Fairmont State University

Located in Fairmont, West Virginia, is a state university that offers 120 program areas for four-year bachelors and associate degrees. Enrollment of record being 7,450 students with a 17:1 student to faculty ratio.

### Pierpont Community & Technical College

Located in Fairmont, West Virginia and associated with Fairmont State University this technical college offers, among others, enhanced education studies in Business, Culinary Arts, Engineering, Health sciences, Legal and Science Technology. Enrollment was 2,646 with 1,575 full time and 1,071 part time students.

### West Virginia University

Located in Morgantown, West Virginia, is the largest institution for higher education in West Virginia.  The university offers 170 bachelors, masters, doctoral and professional degree programs.

| | |
|---|---|
| Enrollment for Fall 2008 | 28,300 |
| Enrollment for Fall 2010 | 29,306 |
| Enrollment for Fall 2011 | 29,400 |
| Enrolment for Fall 2012 | 29,460 |
| Enrolment for Fall 2013 | 29,740 |

North Central (WV) OIC, International Academy of Design and Technology (IADT), and the Marion County Technical Center offer training programs in a wide variety of professional fields.

## EDUCATIONAL ATTAINMENT

| Educational Attainment | High School Grad or Higher 2010 | Bachelor's Degree or Higher 2010 |
|---|---|---|
| Fairmont | 88.2% | 25.6% |
| Bridgeport | 94.7% | 36.7% |
| Clarksburg | 82.8% | 15.7% |
| Morgantown | 90.3% | 45.8% |
| Marion County | 86.4% | 19.2% |
| Monongalia County | 87.2% | 35.8% |
| Harrison County | 84.1% | 17.6% |

## INCOME

### MEDIAN HOUSEHOLD INCOME

| Median Household Income | 1980 $ | 1990 $ | 2000 $ | 2010 $ | % Change 1980-1990 | % Change 1990-2000 | % Change 2000-2010 |
|---|---|---|---|---|---|---|---|
| Fairmont | 13,047 | 18,370 | 25,628 | 33,110 | 40.8% | 39.5% | 29.2% |
| Bridgeport | 22,099 | 34,114 | 49,310 | 66,318 | 54.4% | 44.5% | 34.5% |
| Clarksburg | 12,406 | 17,884 | 27,722 | 32,078 | 44.2% | 55.0% | 15.7% |
| Morgantown | 10,994 | 18,022 | 20,649 | 25,495 | 63.9% | 14.6% | 23.5% |
| Marion County | 14,418 | 20,386 | 28,626 | 38,115 | 41.4% | 20.4% | 33.1% |

### MEDIAN HOUSEHOLD INCOME



***Conclusion & Summary:*** As the area continues to expand and develop, the subject property should be located to benefit from all aspects. In summary, it is my opinion that the immediate subject

neighborhood would be classified as a stable and projected to remain stable over the next several years. The balance of growth and supply/demand factors would characterize the Monongalia, Marion and Harrison County economy at the present time. Furthermore, the prospects appear good for continued favorable growth within the county over the next several years.

## HIGHEST AND BEST USE ANALYSIS

*Highest and Best Use is that reasonable and probable use that supports the highest present value, as defined, as of the effective date of the appraisal. The basic concept is based on the highest and best use of the land. The highest and best use for this report is based on a time frame from the inspection date to the date the report has been completed.*

Alternatively, that use, from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible, and which results in highest and land value. It should also be understood that the site may have several alternative or competitive uses that may be legal and supportive of the site, but a site can only have one highest and best use at any given time. Forces outside as well as within the confines of the property may indeed change and have an impact on the highest and best use of any site.

In each appraisal assignment it is the responsibility of the appraiser to consider the highest and best use of the property as vacant and then as improved. The appraiser must give consideration to the following four items:

❖ **POSSIBLE USE**- What uses are physically possible on the subject site or in the subject improvements, given the physical characteristics revealed by property analysis?

❖ **PERMISSIBLE USE**-What uses are permitted under existing zoning and other land use regulations and controls, and under existing deed restrictions, for the subject property?

❖ **FEASIBLE USE**-Among legally permitted and physically possible uses for the subject property, which are appropriate, given the characteristics revealed by market, neighborhood, and property analysis? Which uses produce any net return to the owner, or a positive net present value?

❖ **HIGHEST AND BEST USE**- Among appropriate or feasible uses for the subject property, which will produce the highest present value?

The Highest and Best Use (or most probable use), of the subject property is determined after the following points are considered pertaining to the four mentioned definitions.

1. The use must be legal.

2. The use is probable, not conjectural or speculative.

3.      The property is physically adaptable to the use.

4.      There is a demand for such use and that demand is expected to increase in the future.

5.      The use is profitable, providing the highest return to the land over a period of time.

The Highest and Best Use of the subject property as Vacant is always the first step regardless whether the site is improved. The appraiser must be qualified to make this determination by being qualified to measure and consider several important factors. The appraiser must have:

- A thorough knowledge of the property.
- Knowledge of the community and its history.
- Knowledge of the principles of land utilization and property utilization.

In applying these basic factors to the subject property, it is found that:

**1.)** The **_Permissible Use_** of the property would be for residential or recreational land use.  Deed restrictions were not noted. The property is not zoned.

**2.)** The subject site is an unimproved parcel. The **_Feasible Use_** of the property would be for its existing use as residential or recreational lands.

**3.)** Site utility of the subject is estimated at 100% and the subject provides an adequate building site. The site is **_Physically Adaptable_** for the existing use as residential or recreational lands.

**4.)** Location of the subject is in an area that offers access to nearby employment and recreation. There is adequate shopping, medical centers and educational facilities nearby.

**5.)** The use of the subject for residential or recreational lands would create the highest yield from any other alternative program. There would not be any other uses at this time that would be a legal use that would allow any other alternative program.

It is my opinion that the **_Highest and Best Use_** of the subject property, as **_Vacant_** would be:

### RESIDENTIAL OR RECREATIONAL LAND USE

The **_Highest and Best Use as Improved_** examines the optimum use of the property as it presently exists. The report has examined the value of the site, as if vacant. Since it is not improved any legal use would be allowed. The likely use would be for recreational lands or residential home site.

Examining the highest and best use of the site considers the following items of the property:

**TOPOGRAPHY**

The site has a upward slope from Rush Run and offers natural drainage. There would not be any adverse site conditions affecting the use of the building or site. The topography of the site does not hamper development. Site utility is considered to be 100%

**APPEAL**

The site offers good appeal for residential or recreational land use.  It is in average proximity to major traffic arteries and support facilities.

**MARKET AREA**

The market area of the subject is considered to be that area immediately surrounding the property which will influence the character and development potential of this ownership. The market area for the subject is considered to be the Northern Marion County market areas.

**MARKETING TIME**

180 -300 days

**SUPPLY/DEMAND**

Supply levels appear to be in line with demand.  Vacant sites are limited in the area which has caused property conversion due to existing build-up as well as the limited amount of land that could be developed but is restricted due to topography, sewer, or location.

In conclusion, the highest and best use of the subject, as vacant, appears to be for residential or recreational land use.

# THE VALUATION PROCESS

As defined by **REAL ESTATE APPRAISAL TERMINOLOGY**, Fifth Edition, 2010, page 205, the Valuation Process is a systematic procedure used in the valuation of real property. Valuation is further defined as the process of estimating the market value, insurable value, investment value, or some other type of value of an identified interest or interests in a specific parcel or parcels of real estate as of a given date. *Valuation* is a term used interchangeably with *appraisal*.

The process consists of an orderly program by which the problem is defined, the work is necessary to solve the problem as planned, and the data involved are acquired, classified, analyzed, and interpreted into a final opinion or conclusion.

Upon gathering sufficient data covering all aspects of the appraised property, three approaches to value are employed to achieve a single value estimate. The three approaches, Cost, Sales Comparison and Income are based upon different conditions, assumptions and theories. All three of the approaches indicate a value estimate. After the different techniques are applied to the property a final value estimate is attained.

In any value estimate,  local market data is sought for such factors as sales and offerings of properties and tracts of vacant land similar to the subject, current prices of construction materials and labor, rentals of similar properties and their operating expenses, current rates of return on similar real estate investments, market demand, and general economic conditions.

The local market data is used to develop a value of the subject site and its improvements. Local market activity is first examined in order to reflect the prices paid for similar, competitive sites. Both vacant and improved sites area examined to arrive at a unit of comparison for the subject site. Improved sites are used only when that site was purchased and the buildings or improvements were razed or when the improvements do not reflect, or reflect so little, of a contributory value that that value may be estimated or discounted.

The **COST APPROACH** is the current cost of reproducing or replacing a property less the loss in value from depreciation which is physical, functional and external obsolescence's. After the depreciated value of the property is found the site improvements, additional amenities, if any, and finally the estimated site value is added to arrive at an indication of value. The land is valued as if vacant in use with this approach. This approach further implies that a potential purchaser is not likely to pay more for an existing structure than it would cost to buy vacant land and construct similar improvements offering similar utility. It is particularly applicable when the property being appraised involves relatively new improvements which represent the highest and best use of the land or when relatively unique or specialized improvements are located on the site and for which there exist no comparable properties in the market.

The **SALES COMPARISON APPROACH** indicates a value through adjustments of similar type property conveyances. By comparing comparable properties with one another, a value correlation is

attainable through an adjustment process. This approach is based on the Principle of Substitution which states an informed purchaser will pay no more for a particular property than it would cost to buy another property offering the same or similar amenities. The sales comparison approach is a direct measure of market activity, and when reliable sales data is available, is perhaps the best measure of property value in a particular market. The sales comparison approach is relatively unreliable in an inactive market or in estimating the value of properties for which no real comparable sales data are available. It is also questionable when sales data cannot be verified with principals of the transaction.

The **INCOME APPROACH** takes an investment value or income indication from the property's ability to produce as well as maintain a net income stream. This estimated net income is capitalized in accordance with prevailing rates of return on similar property or investments of comparable risk, to indicate the price which a knowledgeable investor would be justified in paying for ownership. This approach is typically used at best since prudent investors consider this aspect in purchasing real property.

Despite varying investigations involved with the separate approaches, the interdependence and interrelationship of each approach must be recognized. Basically, each approach is influenced by sociological, economic, governmental and physical forces in the same manner as the final value estimate is influenced by reliability and availability of information in each approach, the value indicated is only as good as the data found during the market analysis.

## Approaches Developed

**Cost Approach:**    Not developed; The subject is a vacant parcel of land. For this reason this approach was not processed for this assignment.

**Sales Comparison Approach:**    Fully developed; The market was examined in the greater Marion, Marion County area which offered adequate sales data to develop market reaction fort this type of property. The sales found were reduced to a unit price per acre which was applied to the subject property. After determining the unit price per acre for the whole, the unit price was then applied to the proposed easement area to determine the Just Compensation of the proposed take.

**Income Approach:**    Not developed; The subject property is a vacant parcel of land and does not have an anticipated income stream and for this reason it was not necessary to develop this approach.

# SITE VALUATION
## 83.604 ACRES

Site is defined as "Land that is improved so that it is ready to be used for a specific purpose" <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, 2010, page 182.

Provided sufficient sales data is available, the most effective approach to site valuation is the comparison of the appraised parcel with known sales of similar unimproved parcels.  This method, as is the Sales Comparison Approach, is derived from the Principle of Substitution which affirms that a prudent investor will not pay more for a particular property than it would cost to purchase a comparable substitute site.  Land is valued as if vacant and available for development to its highest and best use; that most likely legal use which will yield the highest present worth.  That use must be acceptable to the market and must conform to the existing zoning or land use regulations.

There are six methods recognized to determine land value, they are:

### COMPARISON

Based on the sales price of similar vacant land, adjusted for variations to reflect a value indication.

### RESIDUAL

Capitalization or residual income which might be produced by a proper new building improvement of the land, after deducting the portion of the income required for the building.

### ALLOCATION

Segregation of the amount which the improvements contribute to the known sales price of a property.

### DEVELOPMENT

Present worth of the amounts, which might be obtained from the sale of improved lots, after the deduction of the costs for development, sales and investment or entrepreneur allowances.

### GROUND RENTAL

Capitalizing ground rental or lease income into an indication of value.

*EXTRACTION METHOD*

The sales price of a property minus the market extracted value of the improvements with the residual being the indicated land value.

## ADJUSTMENT CONSIDERATIONS

**FINANCING TERMS:**  The sales used, unless otherwise noted, were considered to be cash or its equivalent with the seller not providing any primary or secondary financing at below market rates or terms.  It also considers any outside financial influence that may have been given by the seller to conclude the sale.  In this case these conditions were not found thus warranting no adjustments for this particular item based upon my research and analysis of the sales used.

**CONDITIONS OF SALE:**  This adjustment usually reflects the motivation of buyers and sellers.  In all of the cases used the sales are considered to be arms-length transactions with the parties being unrelated, not under duress and acting in a prudent manner with no adjustments being warranted based on my research and analysis.

**TIME/MARKET CONDITIONS:**  Time is not the cause of the adjustment nor does it create the adjustment.  It is the shift in the market over that time that creates the adjustment.

**PROPERTY RIGHTS:**  Probably one of the most important items to be adjusted, when necessary.  In this case, as in most all cases in this market, fee simple title is conveyed.  All of the sales used in this report would have been Fee Simple Estates or Leased Fee Estates encumbered by relatively short-term lease agreements with no discernible property rights adjustment in comparison to the proposed/existing property use as described in the highest and best use analysis.

**LOCATION:**  This adjustment relates to the suitability of the site within a particular neighborhood for a specific use.  This is essentially the concept of balance, or the extent to which the use characteristics of nearby properties contribute to the desirability of the area for a particular use.

**SIZE:**  Adjustment for size is typically warranted when comparing larger sites to smaller sites as it is typical that smaller sites will demand a higher unit value than a larger site.  This item has been adjusted when warranted and deemed necessary.

**UTILITY:**  Utility on the site, in this case, considers the amount of that area that is usable for development.  For instance, a 10,000 square foot site with 3,000 square feet having an extremely steep grade would suggest only a 70% utility.  This can also be examined before the base unit price of the sale is used and discounted before adjustments.  If this is done it will be explained in the resume of the sale in this report.

**UTILITIES:**  Utilities include electric, gas, water, and sewer in most markets in this area.  The availability of these services is, for the most part, essential in both residential and commercial development.  The lack of sewer regulates density of development and in many cases restricts development.

**PHYSICAL CHARACTERISTICS:** This adjustment includes several remaining items that may become an issue during comparison of the site.  This may include site configuration, topography and possible other physical characteristics that may become apparent during the analysis.  If adjustments, for any of these items is required a comment as to the reasoning will be found in this report.

Sales conveying real estate that could be used in determining a per acre price of the 83.604 acres were examined. A total of three comparable sales were found in the market and were adjusted to arrive at the indicated unit price per acre.

**Comparable Data**

| | |
|---|---|
| **Highest and Best Use Type:** | 50+ acres – Residential / Recreational Lands |
| **Location:** | Greater Marion County, WV market was adequate |
| **Activity:** | Moderate |
| **Comparison Unit:** | Price per acre |

**Verification:**  Marion County Court House, physical inspections and appraiser sources/files.

A per acre price of $1,200.00 appears to be reasonable. The following is the valuation of the subject property:

**Total Site**
83.604 +/- acres X $1,200.00 P/ACRE                = $ 100,324.80

**Fee Take Area**
0.56 +/- acres X $1,200.00 P/ACRE                = $ 672.00

<div align="center">

**TOTAL JUST COMPENSATION**

**ROUNDED…………$700.00**

**SEVEN HUNDRED DOLLARS**

</div>

*345-15*                                - 47 -

A 3% time adjustment was made for all three comparable sales. Comparable sale one offered water and sewer and an adjustment was made for utilities. Comparable sale three is much larger than the subject property and an adjustment was made for size. The adjusted land sales range from $977 to $1,345 with an average of $1,213. A price per acre of $1,200 appears reasonable at this time for this type of property.

### LAND SALES ANALYSIS

**UNADJUSTED VALUES PER ACRE**

| | | |
|---|---|---|
| SALE 1 | $ | 991.38 |
| SALE 2 | $ | 1,180.89 |
| SALE 3 | $ | 1,162.28 |
| AVG | $ | 1,111.52 |

### LAND SALES ADJUSTMENT

| | UPRICE | FINANCE | TIME | SIZE | LOC | WATER SEWER | UTILITY | ACCESS | TOPO | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SALE 1 | $ 991.38 | 1.00 | 1.0950 | 1.00 | 1.00 | 0.90 | 1.00 | 1.00 | 1.00 | $ | 977.00 |
| SALE 2 | $ 1,180.89 | 1.00 | 1.1150 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | $ | 1,316.69 |
| SALE 3 | $ 1,162.28 | 1.00 | 1.0525 | 1.10 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | $ | 1,345.63 |
| MEAN | | | | | | | | | | $ | 1,213.11 |

A brief summary of the sales used in this analysis can be found on the following pages.

## COMPARABLE SALE ONE

| | |
|---|---|
| **GRANTOR:** | Moran Estate |
| **GRANTEE:** | Underwood |
| **LOCATION:** | Parker Run |
| | Paw Paw District |
| | Marion County |
| | Rivesville, West Virginia |
| **SALE DATE:** | April 2, 2012 |
| **SALE PRICE:** | $ 57,500.00 |
| **VERIFICATION:** | Realtor |
| **TAX MAP:** | 36,  parcel 7 |
| **SITE SIZE:** | 58.00 acres |
| **ZONING:** | None |
| **UTILITIES/TOPOGRAPHY:** | City Water, City Sewer |
| **UNIT PRICE:** | $ 991.37 per acre |

## COMPARABLE SALE TWO

| | |
|---|---|
| **GRANTOR:** | Paula & Denzil Hamilton |
| **GRANTEE:** | Gandy |
| **LOCATION:** | Robinson Run<br>Paw Paw District<br>Marion County<br>Rivesville, West Virginia |
| **SALE DATE:** | August 17, 2011 |
| **SALE PRICE:** | $ 110,000.00 |
| **VERIFICATION:** | Realtor |
| **TAX MAP:** | 13 parcel 52 |
| **SITE SIZE:** | 93.15 acres |
| **ZONING:** | None |
| **UTILITIES/TOPOGRAPHY:** | Well |
| **UNIT PRICE:** | $ 1,180.89 per acre |

## COMPARABLE SALE THREE

**GRANTOR:**                        Stan & Margery Harper

**GRANTEE:**                        Edward & Karen Strosnider

**LOCATION:**                       Robinson Run Road
                                    Paw Paw District
                                    Marion County
                                    Rivesville, West Virginia

**SALE DATE:**                      September 23, 2013

**SALE PRICE:**                     $ 265,000.00

**VERIFICATION:**                   Realtor

**TAX MAP:**                        14 & 25 parcel 8 & 5

**SITE SIZE:**                      228.00 acres

**ZONING:**                         None

**UTILITIES/TOPOGRAPHY:**           None

**UNIT PRICE:**                     $ 1,162.28 per acre

# COST APPROACH

The Cost Approach to value consists of the estimated cost of the improvements new, less accrued depreciation from all causes, to which the value of the land is added. Construction costs are based on the replacement cost of the improvement with consideration given to the typical type of construction in the area and not reproduction cost which estimate the actual reproduction of the subject.

Typically, the square foot cost method published by the "Marshall Swift Valuation Service" of Los Angeles, California was used. This service reduces national construction cost indications to locational and regional levels through competent construction firms. Upon achieving the reasonable new value, accrued depreciation must be obtained. Depreciation is the difference between the cost of replacement new of the improvements, as of the date of the appraisal, and their present value.

The three types of accrued depreciation are physical, functional, and external. The first two types may be further classified as either curable or incurable. It should be emphasized, however, the term "incurable physical deterioration" or "incurable functional obsolescence" does not refer to the impossibility of affecting a cure, but rather to the fact it is not economically sound to cure the difficulty as of the day of the appraisal. It is obvious almost without exception any part of the structure may be torn out and replaced, provided no consideration is given to the amount of prudence or the expenditures.  On the other hand, external obsolescence arises from factors extrinsic to the real estate and is seldom, if ever, curable. An explanation and breakdown of cost new less depreciable items are included.

The base rate used for this report includes all hard and soft construction costs in addition to the following:

* The actual costs used are final costs to the owner and will include average architects' and engineers' fees. These fees include plans, building permits and surveys to establish building lines and grades.

* Normal interest on building funds during the period of construction and processing fee or service charges.

* Sales taxes on all materials.

* Normal site preparation including excavation for the foundation and backfill.

* Contractor overhead and profit including job supervision, workmen's compensation, fire and liability insurance, and unemployment insurance.

The cost approach was not used for this assignment. The subject is a vacant, unimproved site and there would not be any items to examine for cost. For this reason this approach was not an applicable method for the valuation of the property.

*345-15*                                           - 52 -

## THE SALES COMPARISON APPROACH

In the sales comparison approach, the appraiser develops an opinion of value by analyzing similar type properties and comparing these properties with the subject property. The comparative techniques of analysis applied in the sales comparison approach are fundamental to the valuation process. Estimates of market rent, expense, land value, cost, depreciation, and other parameters may be derived in the other approaches to value using similar comparative techniques. Similarly, conclusions derived in the other approaches are often analyzed in the sales comparison approach to estimate the adjustments to be made to the sale prices of comparable properties.

The Sales Comparison Approach is defined as a set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have sold recently, then applying appropriate units of comparison and making adjustments to the sale prices of the comparables based on the elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as vacant; it is the most common and preferred method of land valuation when an adequate supply of comparable sales is available.

Traditionally, an appraisal procedure in market value estimate is predicated upon prices paid in actual market transactions and current listings, the former fixing a lower limit of value in a static or advancing market (dollar wise), and fixing a higher limit in any market. It is a process of analyzing sales of similar recently sold properties in order to derive an indication for the most probable sales price of the property being appraised. The reliability of this technique is dependent upon (a) the availability of comparable sales data, (b) the verification of sales data, (c) the degree of comparability of the extent of adjustment necessary for time differences, and (d) the absence of non-typical conditions affecting the sales price.

This approach is also based upon the proposition that an informed purchaser would pay no more for a property than the cost to him of acquiring an existing property with the same utility. This approach is applicable when an active market provides sufficient quantities of reliable sales comparison data which can be verified from authoritative sources. This direct sales comparison approach is relatively unreliable in an inactive market or in estimating the value of properties for which no real comparable sales data is available.

After the data is obtained, adjustments are made for time, financing arrangements, location, size, age and other differences to arrive at an adjusted value for each of the sales used. When three or more sales are used a range will be developed showing different indications of value. Weight is then given to those sales which best reflect the value of the subject.

Comparative analysis of properties and transactions focuses on similarities and differences that affect value, which may include variations of the following:

❖ Property rights appraised
❖ The motivation of buyers and sellers
❖ Financing terms

*345-15*                                          - 53 -

- ❖ Market conditions at the time of sale
- ❖ Expenditures made immediately after purchase
- ❖ Size
- ❖ Location
- ❖ Physical Features
- ❖ Land values
- ❖ Economic characteristics, if the properties produce income
- ❖ None realty components of value

In most cases the elements of comparison cover all of the significant factors to be considered, but on occasion additional actors may be relevant. Other possible elements of comparison include governmental restrictions such as conservation or preservation easements and off-site improvements required for the development of a vacant site.

The sales comparison approach is the basis for the site valuation. In this case, the site is not improved so the comparison of other unimproved land sales were examined and adjusted to a price per acre which was applied to the subject. These amounts were then adjusted and applied to the subject parcel. The results in all cases appear satisfactory and reasonable at this time.

## THE INCOME APPROACH

This approach in the appraisal analysis converts anticipated benefits (dollar income or amenities) to be derived from the ownership of property into a value estimate. The income approach is widely applied in appraising income-producing properties. Anticipated future income and/or reversions are discounted to present figures through the capitalization process.

The Income Approach involves a detailed analysis of market attitudes and indications. Initially, rent schedules of the subject property, past and present, are compared with similar schedules within the area. Evaluation of this information for trends and favorable or unfavorable components of comparison are extracted to achieve an estimate of potential gross income expectancy.

Rent schedules and occupancy data of the subject property and similar competitive properties are analyzed to project economic rent and vacancy and collections loss rates. Respectively, supply and demand figures, along with physical characteristics, location, and functional utility provide the perimeters for a market rent structure. Upon ascertaining a gross annual income, the vacancy and collection loss factor is subtracted to achieve the Effective Annual Gross Income.

Fixed expenses, real estate taxes, city fire protection and insurance are investigated for the subject as well as the comparables for consistency. A stabilized operating statement is formed reflecting the potential net income of the property. This net income is then used in different methods of capitalization.

This approach is a basic tool for the valuation of income producing real estate. The future benefits consist of some pattern of net income for a projection period plus a reversion at the end of the period. Reversion consists of the net proceeds associated with the resale at the end of the projected period. This projected period may represent the economic life for the improvements, a term of a lease, or a projected holding period to the resale of the property. This approach causes the appraiser to do extensive research not only for income but for expensed items based on a particular type of property in a typical and similar market. The gathering of this data includes:

1.) Obtaining a rent schedule for the subject property and for comparable properties in the market area. Both the current year and several past years are attempted to be examined. From this data, gross rental data and trends are extracted to develop the potential gross data.

2.) The occupancy data of the subject property and the comparables in the market area must be analyzed, and, in light of supply and demand, projecting a vacancy and credit loss deduction from the estimated potential gross income to derive an effective gross income.

3.) The operating expenses for the subject property and for the comparable properties are analyzed considering the trends and deducting a projected operating expense estimate from the effective gross income to derive a net operating income.

4.) The probable duration of the projected income or the probable period of ownership and income stream pattern are then estimated.

5.) An appropriate capitalization technique or techniques are then selected.

6.) At this time a capitalization rate must either be selected or developed along with an appropriate rate of return which would be necessary to attract the capital for investment.

7.) Finally, using all of the selected and developed data, the necessary computations are completed to derive an indication of value.

The subject property does not have any present or anticipated income stream which can be examined. Without an income stream this approach is not a valid method in the appraisal process.

# CORRELATION

Correlation may be defined as the bringing together of certain parts into a proper order. In this appraisal the parts are the three approaches to value. Each of these parts, play an important factor in arriving at a final indication of value. The following is the conclusions of the three approaches:

| | |
|---|---|
| **THE COST APPROACH** | *Not Processed* |
| **THE SALES COMPARISON**<br>**(Value of the Whole)** | *$ 100,000.00* |
| **THE INCOME APPROACH** | *Not Processed* |

## JUST COMPENSATION

### $ 700.00

The Cost Approach examines the cost of constructing the improvements new, less any applicable depreciation. The land value is then added along with any site improvements or additional items not included in the cost of the building. The subject property is a vacant parcel of land. There would not be any items that would require this approach to be processed. This approach is not used for this an analysis.

The Sales Comparison Approach reflects what typical buyers will pay for a certain property by comparing that property to others which have sold offering similar amenities. This approach reflected adequate sales data to arrive at an indicated value by developing an adjusted price per acre and applying it to the subject property in order to estimate the value of the property as a whole. The unit value of $1,200 per acre has been estimated and then applied to the value of the take, the permanent easement and the temporary construction easement. The appraiser did not note any damages to the residue lands that would be created by the proposed easements/take.  This approach was the only applicable approach for this assignment.

The Income Approach is best used as an investor is more interested in monetary returns than of enjoyment from amenities reflected in the cost or sales comparison approaches. This approach supports an anticipated income stream produced by the subject and capitalizes that income into a value estimate. The subject is considered as a vacant site and does not have any present anticipated income that could be used for this analysis.

# CERTIFICATION

I, Douglas C. Wise, certify to the best of my knowledge and belief:

I have made a personal inspection of the property that is the subject of this report.

The information contained in this report was gathered from seemingly reliable sources, but is in no sense guaranteed.  The statements of fact in this report are true and correct.  The appraiser has not knowingly withheld any significant information.

The appraiser has no present or future contemplated interest in the real estate that is the subject of this report and does not have any personal interest or bias with respect to the parties involved.  The appraiser has had no personal contact with respect to the parties involved unless otherwise noted in the scope of the appraisal.

 It should be understood that compensation for appraisal services is in no way contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal report, but is dependent only upon delivery of this report.

No one other than the undersigned prepared the analysis, conclusions, and opinions concerning the real estate that is set forth in this appraisal report.  The reported analyses, opinions, and conclusions are limited only by the reported assumption and limiting conditions, and is my personal, impartial, unbiased professional analyses, opinions, and conclusions.

My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

The Estimate of Market Value in the appraisal report is not based in whole or in part upon the race, color or national origin of the prospective owners or occupants of the property appraised, or upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property appraised.

The appraiser has not performed a prior appraisal or any other related services on this property in the last 3 years.


Douglas C. Wise                              Date Signed: June 1, 2015
West Virginia Certified General
Real Estate Appraiser  CG053

*345-15*                                      - 58 -

## CERTIFICATION

I, Brandon M. Wise, certify to the best of my knowledge and belief:

I have made a personal inspection of the property that is the subject of this report.

The information contained in this report was gathered from seemingly reliable sources, but is in no sense guaranteed.  The statements of fact in this report are true and correct.  The appraiser has not knowingly withheld any significant information.

The appraiser has no present or future contemplated interest in the real estate that is the subject of this report and does not have any personal interest or bias with respect to the parties involved. The appraiser has had no personal contact with respect to the parties involved unless otherwise noted in the scope of the appraisal.

It should be understood that compensation for appraisal services is in no way contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal report, but is dependent only upon delivery of this report.

No one other than the undersigned prepared the analysis, conclusions, and opinions concerning the real estate that is set forth in this appraisal report.  The reported analyses, opinions, and conclusions are limited only by the reported assumption and limiting conditions, and is my personal, impartial, unbiased professional analyses, opinions, and conclusions.

My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

The Estimate of Market Value in the appraisal report is not based in whole or in part upon the race, color or national origin of the prospective owners or occupants of the property appraised, or upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property appraised.

The appraiser has not performed a prior appraisal or any other related services on this property in the last 3 years.

*BMWise*

Brandon M. Wise                                    Date Signed: June 1, 2015
West Virginia Licensed Real Estate Appraiser
LR 1094- WV

# **EXHIBITS**

**QUALIFICATIONS OF APPRAISER**

# QUALIFICATIONS
## OF
## DOUGLAS C. WISE

## GENERAL EXPERIENCE INFORMATION

President and owner Professional Appraisal Corporation, November 1979 to present
Certified General Real Estate Appraiser CG053, November, 1991 to present, State of West Virginia
Certified General Real Estate Appraiser, State of Maryland #31453
Certified General Real Estate Appraiser, State of Pennsylvania GA004000
Licensed Real Estate Broker, State of West Virginia, June 1978 to present
Licensed Real Estate Broker, State of Pennsylvania, 2012
Licensed Real Estate Broker, State of North Carolina, December 1982 to 1996
Licensed Real Estate Salesman, Fred C. Wise, REALTOR, State of West Virginia, June 1974 to 1978.
Total 37 years appraisal experience
Broker, Premier Commercial Real Estate Services, Morgantown, West Virginia, February 2011 to present
Real Estate Appraiser, Fred C. Wise, REALTOR, June 1975 to January 1981.
President and Owner, Douglas C. Wise, Broker
Homebuilder, T.E. Lewis Construction Company, April 1973 to June 1975.
Commissioner, City of Fairmont Planning and Zoning Commission, 1986-1989 appointed term, re-appointed 1989 -1992; 1992 - 1995; 1995 - 1998
Co-Chairman, City of Fairmont Planning and Zoning, 1990
Chairman, City of Fairmont Planning and Zoning Commission, 1991, 1992, 1993, 1994, 1995, 1996, 1997 and 1998
Chairman/President, City of Pleasant Valley Planning and Zoning Commission, 2008 to February, 2011

## PROFESSIONAL AFFILIATIONS AND EDUCATION

**AFFILIATIONS**

Member National Association of REALTORS, 1974 to present.
Member West Virginia Association of REALTORS, 1974 to present.
Member Fairmont Board of REALTORS, 1974 to 1997, 1998 to present.
Member Weston-Buckhannon Board of REALTORS, 1998-1999
Member National Association of Real Estate Appraisers, CREA  designation, 1987 to 1990
Member National Association of Independent Fee Appraisers, IFA  designation 1979 to 1982, #2971.

Affiliate Member, Eastern Panhandle Board of REALTORS, 1986 to present
Approved Appraiser, Federal Resolution Trust Corp., 1990
HUD approved appraiser, 1987, #2065
West Virginia Housing Fund approved appraiser, 1980
Marion County Bond approved appraiser, 1979
FNMA approved appraiser, #1143600

## EDUCATION-Partial List

MAI Course 1-A, American Institute of Real Estate Appraisers, University of Maryland, exam,
      passed 10/14/1977
Appraisal Institute, Appraising One-To-Four Family Income Properties, Charleston, WV, 9/8/95
Appraisal Institute, The Form Report as a Communication Tool, Charleston, WV, 7 hour course,
      9/9/95
Appraisal Institute, Rates, Ratios and Reasonableness, Charleston, WV, 7 hour course, 7/22/97
Appraisal Institute, Analyzing Operating Expenses, Charleston, WV, 7 hour course, 9/19/97
Appraisal Institute, Real Estate Finance, Statistics, and Valuation Modeling, 14 hour course,
      Pittsburgh, PA 7/24-25 2013
NAIFA Residential Course, exam, passed 9/1979
NAIFA Residential Exam, passed 9/1979
NAIFA Residential Narrative, passed 11/1979
NAIFA Concepts, Terminology and Techniques Course, 3 day with exam, Charleston, West
      Virginia, exam, passed, June 1991.
NAIFA Institutional Regulations of Real Estate Appraisal, Bridgeport, WV, 4/23/1993
NAIFA 4.5 The New Uniform Residential Appraisal Report (URAR), Bridgeport, WV,
      12/3/1993
NAIFA 5.0B Limited Scope Appraisals and the Uniform Standards of Professional Appraisal
Practice, Bridgeport, WV 7/1994
IFA 5.0 Standards of Professional Practice, Bridgeport, WV
      7/16 1998, 15 hrs
SREA Course 101, Charleston, WV, exam, passed 1/1987
SREA Course 102, Charleston, WV, exam, passed 5/1988
SREA Underwriting Seminar, Pittsburgh, PA, 1/1988
SREA Report Writing Course, Charleston, WV, 1/1989
SREA Course, 440, Professional Practice, Charleston, WV, exam, passed 6/1990
West Virginia Department of Transportation, "Valuation of Partial Acquisitions" -Section 1A,
      Charleston, WV, 8/1992
Department of Housing and Urban Development Seminars, Morgantown, WV, 1987, 1988
(URAR Course). Charleston, WV, 1989, 1990, 1991, 1992, 1993 and 1994
West Virginia Real Estate Appraiser Licensing and Certification Board, 7 hour workshop,
      Flatwoods, WV, 6/1/1992
West Virginia Real Estate Appraiser Licensing and Certification Board, Appraisal Exam Review
Course, Charleston, WV, May 29-31, 1991 Regression Analysis: The Appraisal Approach of the
Future, Clarksburg, WV, 10 hours, 3/27/96

West Virginia Housing Fund Seminar, Morgantown, WV 1983
West Virginia Housing Fund Seminar, Morgantown, WV 1985
Fairmont State College, 2 years, general business studies.
Various other courses with 14 hour minimum hours per year since 1991.

## COMMITTEES AND OFFICES HELD

President, Fairmont Board of REALTORS, 1986
President Fairmont Multiple Listing Service, Inc., 1988, 1990, 1991, 1992
Vice President, Fairmont Board of REALTORS, 1985
Second Vice President, Fairmont Board of REALTORS, 1982 & 1985
Secretary, Fairmont Board of REALTORS, 1981
Assistant Secretary, Fairmont Board of REALTORS, 1980
Treasurer, Fairmont Board of REALTORS, 1979
Assistant Treasurer, Fairmont Board of REALTORS, 1978
Board of Directors, Fairmont Board of REALTORS, 1978-1982 and 1985-1988.
Member Ethics Committee, FBR, 1983
Membership Committee Chairman, FBR, 1980 and 1984
Professional Standards Committee, FBR, 1981 and 1986
Legislative Committee, FBR, 1979
Chairman, Education Committee, FBR, 1979,1981 and 1987
Multiple Listing Service Chairman, FBR, 1988 - 1990, 1991-1992, and 1992-1993
Member Energy Committee, West Virginia Association of REALTORS,   1981.
Member Professional Standards Committee, National Association of Independent Fee
Appraisers, Clarksburg Chapter, 1979.
Member Upgrade and Review Committee, NAIFA, Clarksburg Chapter 1979-1980
1978 REALTOR Associate of the year, Fairmont Board
1986 REALTOR of the year, Fairmont Board

## PARTIAL LIST OF CLIENTS

Huntington Banks, WV, Fairmont, Morgantown, Martinsburg, WV
Centra Bank, Morgantown, Martinsburg, WV
Fairmont Federal Credit Union, Fairmont, West Virginia
Jefferson Security Bank, Martinsburg, Shepherdstown, Charles Town, WV
Bank of Charles Town, Charles Town, WV
Thistle Financial Group
United Bank, Martinsburg, WV
First United Bank, Morgantown, WV
BC Bank, Philippi, Fairmont, WV
Bank One, Clarksburg and Charles Town, WV
BB&T, Martinsburg, West Virginia
BB&T, Morgantown, West Virginia
BB&T, Fairmont, West Virginia

BB&T, Clarksburg, West Virginia
BB&T, Winston Salem, North Carolina
WESBANCO, Bridgeport, Fairmont and Morgantown, WV
Freedom Bank, Bridgeport, Belington, West Virginia
Home Federal Savings Bank, Hagerstown, Maryland
First Exchange Bank of Mannington, Mannington, Fairmont, WV
Bridgeport Bank, Bridgeport, West Virginia
MCA Mortgage, Martinsburg, WV
Farmers & Merchants Bank, Hagerstown, Maryland
Fed One, Wheeling, West Virginia
Navy Federal Credit Union, Merrifield, VA
Coldwell Banker Mortgage One, Harrisburg, PA
Clark Financial, Washington, DC
First Federal S&L of Morgantown, Morgantown, WV
ERA Regional Real Estate Offices, Brentwood, Tennessee
First Energy
Dominion Hope Gas Company
City of Fairmont, West Virginia
City of New Martinsville, WV
City of Fairview, West Virginia
City of Monongah, West Virginia
City of Morgantown, West Virginia
City of Shinnston, West Virginia
City of Martinsburg, West Virginia
City of Charles Town, West Virginia
Marion County Parks and Recreation
Region Six Planning and Development, Fairmont, WV
Monongalia County Commission, Morgantown, WV
Allstate Enterprises Mortgage Corp., Deerfield, Illinois
Small Business Administration, Clarksburg, WV
US Bankruptcy Court, Clarksburg, WV
Colfax Public Service Commission, Fairmont, WV
Kingmill Valley Public Service Commission, Fairmont, WV
Scott's Run, PSD, Morgantown, WV
Pea Ridge, PSD, Huntington, WV
Canyon Public Service Commission
PSD #1, Preston County, West Virginia
Merrill Lynch Relocation Management, Atlanta, Georgia
Owens-Illinois Relocation Company, Toledo, Ohio
Howard Relocation Group, Livingston, NJ
Homeequity Relocation Company
M.I.C.A., Durham, North Carolina
Marion County Board of Education
Marion County Chamber of Commerce

Berkeley County Board of Education
Marion County Board of Education
Monongalia County Board of Education
Jefferson County Board of Education

Various other lending institutions, investors, relocation companies and attorneys not listed, (names furnished upon request).

## MAJOR ASSIGNMENTS

Market study analysis of land sales for TrailCo (Allegheny Energy) for construction of a 208 mile power line right of way. Study include analysis of vacant land sales back four years for Monongalia, Marion, Taylor, Preston, Hardy and Grant Counties in West Virginia.

Preliminary market studies for various sewer and water line projects. Studies include average land sales in particular market areas for the construction of sewer and water line rights of ways.

Appraisal of Stonewall Jackson Memorial Hospital, a 70 bed acute care hospital and Physician facilities, Weston, West Virginia for bond loan on new annex.

12,000 acres timber, surface and coal properties, Braxton County, West Virginia for MICA of Durham, North Carolina.

2,000 acre surface, timber, strip and deep mine coal operations, Boone County, West Virginia for SBRR Development Corporation of Dunbar, West Virginia.

Appraisal of The Woods Resort which included motel units, restaurant/conference center, fitness center, developed and undeveloped lots, eighteen hole professional golf course with pro shop, townhomes, single family homes and the sewer and water systems for Potomac Valley Properties, Inc.

Appraisal of city block in New Martinsville, West Virginia for condemnation of all land and buildings for location of new city/county building and community college, for the City of New Martinsville.

Appraisal of 13 parcels along Ohio River for condemnation for the expansion of Hannibal Locks and Dam conversion to a hydro-electric facility, for the City of New Martinsville.

Appraisal of strip shopping centers, Morgantown, Bridgeport, Fairmont, Inwood, Martinsburg, Charles Town, Wheeling and Mannington West Virginia.

Appraisals of Motels in Fairmont, Clarksburg, White Hal, Martinsburg, Morgantown, Keyser, Charles Town and Spring Mills, West Virginia

Appraisal of new developments for single family homes, business parks and townhouse development, Fairmont, Clarksburg, Morgantown, Ranson, Farmington, Inwood, Hedgesville, Charles Town and Martinsburg, West Virginia.

Medical clinic appraisal, Morgantown, West Virginia for OTO Associates.

Appraisal of the Charles Town Race Track, a thoroughbred racing facility in Charles Town, West Virginia.

Appraisal of mobile home parks, proposed and existing, Bridgeport, Fairmont, Martinsburg, Elkins, Harman, Berkeley Springs, Kearneysville and Charles Town, West Virginia.

Appraisal of the Weston State Hospital Facility. A 500,000 square foot mental health hospital on 250 acres located in Weston, West Virginia.

Appraisals of a 12 mile railroad corridor from Fairmont to Shinnston, WV. Appraisal of a 51 mile railroad corridor from Fairmont, WV to Point Marion, PA and from Morgantown, WV to Reedsville, WV.

Appraisal of corporate offices for Equitrans, Clarksburg, WV

Appraisal of Division Headquarters facility for Dominion Gas, Charleston, WV

Appraisal of the Phillips Lighting facilities plant in Fairmont, West Virginia for Phillips Lighting

Other various industrial related properties located in Fairmont, Morgantown, Clarksburg, Martinsburg and Charles Town, West Virginia

**COURT EXPERIENCE**

Considered as in expert witness in Marion, Taylor, Harrison, Preston, Wetzel, Jefferson, Berkeley, Hardy, Barbour and Monongalia Counties in West Virginia.

Expert witness testimony for the Small Business Administration in Federal Court, Clarksburg, West Virginia.

Expert witness for the US Bankruptcy proceedings, Clarksburg, Wheeling and Martinsburg, West Virginia.

## QUALIFICATIONS
## OF
## BRANDON M. WISE

## GENERAL EXPERIENCE INFORMATION

**APPRENTICE APPRAISER,** PROFESSIONAL APPRAISAL CORPORATION 2007-2013
West Virginia Apprentice Permit A10555 WV

Practiced under Douglas C. Wise (West Virginia Certified General Real Estate Appraiser
CG053-WV) from 2005-Present assisting in property inspections, report preparation and building
sketches.

**LICENSED REAL ESTATE APPRAISER,** PROFESSIONAL APPRAISAL CORP 2013-
State Licensed Real Estate Appraiser LR1094 WV

## EDUCATION – PARTIAL LIST

**EAST FAIRMONT HIGH SCHOOL**, FAIRMONT, WEST VIRGINIA - Graduated 2005

**LINCOLN GRADUATE CENTER**, CHARLESTON/PARKERSBURG, WEST VIRGINIA
VARIOUS COMPLETION DATES

Practice of Real Estate Appraisal (L-1) (2005) 15 Hours
Appraisal of Residential Property (L-2) (2005) 30 Hours
National USPAP Course (L-3) (2005) 15 Hours
Writing The Narrative Appraisal Report (O-S) (2005) 15 Hours
Commercial Investment Appraisal (C-1) (2007) 15 Hours
Financial Analysis of Income Property (C-1) (2007) 15 Hours

**APPRAISAL INSTITUTE**
General Appraiser Income 2   (2014) 0 Hours

**CHICO REAL ESTATE APPRAISAL SERVICES**, MORGANTOWN, WEST VIRGINIA
VARIOUS COMPLETION DATES
Advanced Techniques for Valuation of Mixed-Use Properties (2007) 15 Hours
Mathematics, Statistics and Income Approach Techniques (2007) 15 Hours
National USPAP Course (2007) 7 Hours
Fannie Mae Announcement and Market Conditions Addendum Form 1004MC (2009) 7 hours
7 Hour National USPAP Update Course (2010) 7 Hours
Basic Litigation and Mock Trial for Appraisers (2010) 7 Hours

**LARRY MCDANIEL REAL ESTATE APPRAISAL SEMINARS**, PARKERSBURG, WV
The Sales Comparison Approach To Value (2006) 15 Hours

**JL ASSOCIATES**, MARTINSBURG, WEST VIRGINIA
VARIOUS COMPLETION DATES
Small Residential Income Report (QE) (2007) 15 Hours
Small Residential Income Report (CE) (2007) 14 Hours

**APPRAISAL EDUCATION SERVICE**, MARTINSBURG, WEST VIRGINIA
VARIOUS COMPLETION DATES
Residential Site Valuation & Cost Approach Course (2007) 15 Hours
2007-2008 National USPAP Course (2008) 7 Hours
Valuation by Comparison (2008) 7 Hours
Statics, Modeling & Finance (2013) 14 Hours

**MCKISSOCK APPRAISAL SERVICES**, BRIDGEPORT, WEST VIRGINIA
VARIOUS COMPLETION DATES
Appraising FHA Today (2009) 7 Hours
USPAP 2014-2015 Update (2014) 7 hours

**MAJOR ASSIGNMENTS**
Appraisal of new developments for single family homes, business parks and townhouse
development, Fairmont, Clarksburg, Bridgeport and Morgantown, West Virginia.

Other various commercial related properties located in Fairmont, Morgantown, Clarksburg,
Bridgeport, Martinsburg and Charles Town, West Virginia

Preliminary market studies for various sewer and water line projects. Studies include average
land sales in particular market areas for the construction of sewer and water line rights of ways
including:

Shinnston Sewer Line Project
Rivesville/Baxter/Grant Town Water/Sewer Line Project
Preston County Water Line Project
Monongah Water Line Project
Charles Town Utility Board Sewer Line Project
Barbour County Sewer Line Project
Greater Harrison County PSD Water/Sewer Line Project
Canyon PSD Water/Sewer Line Project
Jane Lew PSD Water Line Project

Market study analysis of land sales for TrailCo (Allegheny Energy) for construction of a 208 mile
power line right of way. Study include analysis of vacant land sales back four years for
Monongalia, Marion, Taylor, Preston, Hardy and Grant Counties in West Virginia.

Market Data Books for the proposed project:  ATEX Express Pipeline Project located in Brooke
and Hancock Counties in West Virginia.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EQUITRANS, L.P.,
a Pennsylvania Limited Partnership,

        Plaintiff,

v.                               Civil Action No. _____1:15-CV-106_____

0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA;
JEFFERY J. MOORE; and, SANDRA J. MOORE,

        Defendants.

### NOTICE OF CONDEMNATION

TO:    **Jeffery J. Moore and Sandra J. Moore**
        **555 Blue Goose Road**
        **Fairview, West Virginia 26570**

1.      You are hereby notified that, pursuant to Rule 71.1 of the Federal Rules of Civil Procedure, a Complaint in Condemnation has been filed by Plaintiff Equitrans, L.P. ("Equitrans") in the office of the clerk of the above-named court in an action to condemn the property described herein.

2.      You have or claim an interest in the property to be taken.

3.      The property to be taken is 0.56 acres more or less for a permanent right-of-way as is specifically identified in the Plat of Survey and Description of Survey attached hereto respectively as Exh. A and B, together with the right of ingress and egress to and from said easement/right-of-way by way of the right-of-way for all purposes necessary to maintain, repair, replace and/or operate the H-557 pipeline and related equipment.  Equitrans further requests that this Court direct that Defendants shall not construct nor permit to exist any house, structure or

obstruction on or over, or within a distance of 25 feet on either side of the pipeline or that will interfere with the laying, maintenance, operation, replacement or removal of said pipeline or appurtenances installed in connection with the same.

      4.      The authority for the taking is the Natural Gas Act, 15 U.S.C. § 717 *et seq*.

      5.      Equitrans is the holder of a certificate of public convenience and necessity for the operation of the pipeline known as the H-557 pipeline issued by the Federal Energy Regulatory Commission (the "FERC") pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq*.  Sections of the H-557 pipeline are placed on the subsurface of your property.

      6.      The property is to be used to maintain and continue the operation of a natural gas pipeline known as the H-557 pipeline that is necessary for Equitrans' transmission of natural gas in interstate commerce, sections of which are placed on the subsurface of your property.

      7.      If you want to object or present any defense to the taking, you must serve an answer on the Plaintiff's attorney within 21 days after being served with this Notice.  Send your answer to Plaintiffs' counsel at this address: David K. Hendrickson, Hendrickson & Long, PLLC, 214 Capital St., Charleston, West Virginia, 25301.

      8.      Your answer must identify the property in which you claim an interest, state the nature and extent of that interest, and state all your objections and defenses to the taking. Objections and defenses not stated in the answer are waived.

      9.      If you fail to answer, you consent to the taking and the court will enter a judgment that takes your described property interest and proceed with the action and fix the compensation to be paid for the taking.

      10.      Instead of answering, you may serve on the Plaintiff's attorney a notice of appearance that designates the property in which you claim an interest. You will then receive a

notice of any proceedings that affect you. Whether or not you have previously appeared or answered, you may present evidence at a trial to determine compensation for the property and share in the overall award.

**EQUITRANS, L.P.,**
**By Counsel.**


*/s/ David K. Hendrickson            06/18/2015*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (fax)
daveh@handl.com

3

*EXHIBIT A*



# PLAT OF SURVEY
# FOR
# EQUITRANS, L.P.

SITUATE NORTH OF MARION COUNTY ROUTE 17 AND EAST OF WEST VIRGINIA ROUTE 218 ON THE RIDGE BETWEEN RUSH RUN AND BENNEFIELD PRONG OF PAW PAW CREEK IN PAW PAW DISTRICT, MARION COUNTY, WEST VIRGINIA.

SHOWING AN AREA DEFINED AS LYING 25 FEET ON EACH SIDE OF AN EXISTING 16 INCH NATURAL GAS PIPELINE AS MARKED WITH PIN FLAGS BY EQT MIDSTREAM PERSONNEL ON JUNE 6, 2013. THIS SURVEY EXCLUDES AND DOES NOT INCLUDE ANY AREA LYING WEST PORTION OF THE WESTERN BOUNDARY, SAID MARKED AREA BEING A PORTION OF THE SAME TRACT OR PARCEL OF LAND CONVEYED FROM JOHN R. MOORE AND DOROTHY G. MOORE TO J. JOHN MOORE AND SANDRA J. MOORE BY A DEED DATED THE 10TH DAY OF JUNE, 1990 AND RECORDED IN DEED BOOK 902 AT PAGE 894 IN THE OFFICE OF THE COUNTY CLERK OF MARION COUNTY, WEST VIRGINIA.

## NOTES ON SURVEY

1. SEE DESCRIPTION OF SURVEY FOR MORE DETAILED INFORMATION ON CORNERS AND REFERENCES THERETO.

2. EASEMENTS AND/OR RIGHT-OF-WAYS WERE NOT ADDRESSED DURING THIS SURVEY OTHER THAN SHOWN HEREON.

3. NUMBERS CIRCLED IN RED INDICATE LOCATIONS OF PHOTOGRAPHS TAKEN AND INCORPORATED INTO SURVEY DATED JUNE 19, 2013 (PHOTOS OMITTED).

### LINE TABLE FOR BOUNDARY

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N 16°43'10" W | 49.97' |
| L2 | N 22°23'50" W | 45.30' |
| L3 | N 10°22'30" W | 118.14' |
| L4 | N 11°37'30" E | 77.07' |
| L5 | N 20°58'00" E | 20.92' |
| L6 | S 69°24'00" E | 50.00' |
| L7 | S 00°23'00" W | 22.29' |
| L8 | S 05°33'40" E | 44.29' |
| L9 | S 07°33'10" W | 19.74' |
| L10 | S 00°41'40" W | 21.10' |
| L11 | S 23°11'20" E | 29.50' |
| L12 | S 18°31'30" E | 25.46' |
| L13 | S 22°09'40" E | 54.08' |
| L14 | S 21°59'50" E | 51.41' |
| L15 | S 20°20'00" E | 24.14' |
| L16 | S 17°18'30" E | 53.05' |
| L17 | S 18°01'40" E | 69.84' |
| L18 | S 22°47'20" E | 41.12' |
| L19 | S 22°23'50" E | 53.63' |
| L20 | S 16°43'10" E | 78.76' |
| L21 | N 78°58'00" W | 56.50' |

AI McPHERSON
DB 923/524
TM 09-2
37.008 ACRES±

NORTH MERIDIAN FOR THIS SURVEY IS GRID NORTH OF THE WEST VIRGINIA COORDINATE SYSTEM OF 1983 NORTH ZONE

APPROXIMATE DECLINATION 8°53' WEST BASED ON INFORMATION OBTAINED FROM THE NATIONAL GEOPHYSICAL DATA CENTER.

0.56 Acres±

J. JOHN MOORE AND
SANDRA J. MOORE
DB 902 PG 894
TM 9 PAR 40
121 ACRES± (LESS EXCEPTIONS)
83.604 (ASSESSED)

2.5 ACRES± TRACT
FORMERLY TOBIAS HAUGHT
(PREVIOUS OWNER OF NEELY PROPERTY)

FENCE
CORNER POST
(FOUND)

S 78°58'00" E
357.07' (TIE LINE)

STANLEY HAUGHT, JR ET UX
TM 09-14.1
20.0 ACRES±
19.16 ACRES± (ASSESSED)

JOHN J. AND JAMES F. HLUSKO
DB 1004/938
TM 09-13
25.4 ACRES±
24.065 ACRES (ASSESSED)

FENCE CORNER POST (FOUND)
FOR WHITE OAK (GONE)
RBS AS MARKER

N 16°52'30" W
511.90'

S 21°09'20" E
67.63'

S 14°29'20" E

N 16°52'30" W
91.15'

GATE

RBS

S 10°22'30" E
88.11' (TIE LINE)

N 78°58'00" W
16.07' (TIE LINE)

FRANK R. HOLLIS ET UX
DB 787/1
TM 09-15.1
PO 2.5 ACRES±
15 ACRES±

BEGINNING OF DESCRIPTION

GATE

FENCE CORNER POST (FOUND)

## LEGEND

| | |
|---|---|
| ⊙——⊙ SURVEYED LINE | |
| — — — NONSURVEYED LINE | |
| —R/W— RIGHT OF WAY LINE | |
| ✕——✕ FENCE | |
| GAS PIPELINE | |
| △ REBAR, PREVIOUSLY SET | |
| ● PIN FLAG LOCATIONS | |
| CALCULATED SURVEY POINT | |
| DB 000/000 DEED BOOK/PAGE | |
| T.M. 00 — PAR. 00 TAX MAP–PARCEL | |

## SCALE
### 1 INCH = 100 FEET
0'    100'    200'    300'

PROJECT SURVEYOR: C. VICTOR MOYERS, P.S. #849
DRAFTED BY: KEN SIMMONS 06/19/13
FIELD SURVEY: JUNE, 2013
SLS CADD FILE #: 8060–R2.dwg

PS#849

0908

04/08/2015

C. Victor Moyers

C. VICTOR MOYERS
LICENSED
No. 849
STATE OF WEST VIRGINIA
PROFESSIONAL SURVEYOR

Professional Energy Consultants
SLS

GN
MN

# *EXHIBIT B*

**PROFESSIONAL ENERGY CONSULTANTS**

A DIVISION OF SMITH LAND SURVEYING, INC.

# Description of Survey

for

# Equitrans, L.P.

An area defined as lying 25 feet on each side of an existing 16-inch natural gas pipeline as marked with pinflags by EQT Midstream personnel on June 6, 2013 and located along the western boundary and inside a tract or parcel of land owned by J. John Moore (assessed as 83.604) acres located near the town of Fairview generally situate north of Marion County Route 17 and east of West Virginia Route 218 on the ridge between Rush Run and Bennefield Prong of Paw Paw Creek in **Paw Paw District, Marion County, West Virginia** more particularly described as follows:

Beginning at a point in the line of J. John Moore and a tract referred to as 2.5 acres (previously owned by Tobias Haught but current owner undetermined), said point being located 25 feet west of and perpendicular to the 16-inch pipeline referenced above from which a ¾-inch by 30-inch Reinforcing Rod with a yellow plastic cap stamped "SLS MONUMENT 462-5634" hereinafter referred to as a "Rebar" set during a survey of the pipeline in June 2013, thence through the Moore tract running 25 feet west of and parallel to said pipeline for two (2) lines;

N 16-43-10 W 49.97 feet to a point, thence;

N 22-23-50 W 45.30 feet to a point, in the line of Moore and Stanley Haught, Jr., thence with Haught;

N 10-22-30 W 118.14 feet to a Rebar previously set, thence with Haught and passing a corner of Haught with John T. and James F. Hlusko;

N 16-52-30 W 511.50 feet to a fence corner post found for a White Oak (gone) a Rebar set as a marker, corner to Hlusko and Al McPherson, thence with McPherson;

N 11-37-30 E 77.07 feet to a point located 25 feet west of and perpendicular to said 16-inch pipeline, thence through the Moore tract for the next nineteen (19) lines, the first line running 25 feet west of and parallel to said pipeline;

N 20-36-00 E 20.92 feet to a point, thence crossing said pipeline;

S 69-24-00 E 50.00 feet to a point located 25 feet on the east side of and perpendicular to said pipeline, thence running along the east side of said pipeline 25 feet east of and parallel to said pipeline for seventeen (17) lines;

S 20-36-00 W 79.67 feet to a point, thence;

S 00-32-00 W 22.29 feet to a point, thence;

S 05-32-40 E 44.29 feet to a point, thence;

S 07-33-10 W 19.74 feet to a point, thence;

S 00-41-40 W 21.10 feet to a point, thence;

S 14-29-20 E 67.63 feet to a point, thence;

S 21-09-10 E 91.15 feet to a point, thence;

P.O. Box 150, 12 Vanhorn Drive, Glenville, WV 26351
T: (304) 462-5634   F: (304) 462-5656

56065 Dilles Bottom Road, Shadyside, OH 43947
T: (740) 671-9911

S 23-11-20 E 29.50 feet to a point, thence;

S 18-31-30 E 25.46 feet to a point, thence;

S 22-09-40 E 54.08 feet to a point, thence;

S 21-59-50 E 51.41 feet to a point, thence;

S 20-20-00 E 24.14 feet to a point, thence;

S 17-18-30 E 53.05 feet to a point, thence;

S 18-01-40 E 69.84 feet to a point, thence;

S 22-47-20 E 41.12 feet to a point, thence;

S 22-23-50 E 53.63 feet to a point, thence;

S 16-43-10 E 78.76 feet to a point in the line of said Moore and the former Tobias Haught tract, thence crossing said pipeline diagonally with said boundary line;

N 78-58-00 W 56.50 feet to the place of beginning containing 0.56 acre, more or less, as surveyed in June 2013 by Smith Land Surveying, Inc. and as shown on a Plat of Survey dated April 8, 2015 attached hereto and made a part of the description.

Being a portion of the same tract or parcel of land conveyed from John R. Moore and Dorothy G. Moore to J. John Moore and Sandra J. Moore by a deed dated the 10th day of June, 1990 and recorded in Deed Book 902 at Page 894 in the Office of the County Clerk of Marion County, West Virginia.

Smith Land Surveying, Inc.
P.O. Box 150
Glenville, WV 26351

C. Victor Moyers
PS No. 849

CVM/jas



R:\Data\Shared\Survey Documents\Descriptions\8060 DESC

P.O. Box 150, 12 Vanhorn Drive, Glenville, WV 26351        56065 Dilles Bottom Road, Shadyside, OH 43947
T: (304) 462-5634   F: (304) 462-5656                      T: (740) 671-9911

2



**EXHIBIT
1**

**EXHIBIT 2**

BOOK 318 PAGE 288                                                                23093

IN CONSIDERATION of the sum of  Two Hundred Ninety-Four and no/100

( $294.00 ) DOLLARS to us this day in hand paid, being the true and full consideration, receipt of which is hereby acknowledged,

We  John R. Moore and Dorothy G. Moore, his wife,

their heirs, successors or assigns, of  Fairview, West Virginia
hereinafter called the Grantor, do hereby grant with covenant of general warranty to EQUITABLE GAS COMPANY, a corporation, having its principal place of business in Pittsburgh, Pennsylvania, its successors or assigns, hereinafter called the Grantee, a right of way upon which to lay, maintain, operate, replace and remove a pipe line, not to exceed ____ inches in diameter, together with the necessary gates, drips, meters, regulators and other equipment, with their housing, for the conveyance of gas, oil or water and/or their constituents or products similar thereto, and to erect, maintain, operate, replace and remove communication lines and appurtenant equipment substantially parallel with said pipe line on, over and through that certain tract of land situate in the District of  Paw Paw , County of  Marion , and State of  West Virginia , bounded by lands now or formerly of  Ronald Bailey, Billingsley Heirs, Geo. Burline, John Moore, et. al.

The said pipe line to be laid approximately along the route laid out and marked for same, entering from the land of Ronald Bailey on the South; thence N 0° 40' W 216 feet to the line of the lands of Billingsley Heirs on the Northwest.

Also a right of way entering from the land of Billingsley Heirs on the Southwest; thence N 22° 05' E 147 feet to a point; thence N 4° 30' E 49 feet to a point; thence N 19° 00' W 421 feet to the line of the lands of Billingsley Heirs on the Northwest.

Also a right of way entering from the land of Geo. Burline on the Southwest; thence N 16° 35' E 8 feet to a point; thence N 27° 55' E 300 feet to a point; thence N 9° 47' E 268 feet to a point; thence N 17° 30' E 202 feet to the line of the lands of John Moore et al. on the North.

Total Distance:  1,611 feet, more or less.

only   TOGETHER with the right of ingress and egress to and from said right of way by routes most convenient to Grantee for the purposes granted herein. It is further agreed that the Grantee shall have the right to make such changes in the location of said right of way as may be necessary or advisable owing to road construction or relocations, ground slips or other causes beyond the control of the Grantee; to maintain the pipe and equipment above ground or upon trestles where the same may cross ravines or streams upon said premises; and to use the right-of way herein granted for the purpose of transporting pipe and other equipment to and from neighboring lands in and about the laying, maintenance, operation, replacement and removal of the pipe and other equipment installed hereunder.

The said pipe shall be buried upon the cultivated portions of said land so that it will not interfere with the cultivation of the same, and if laid at stream crossings shall not obstruct the proper flow of the water.

Without in anywise limiting or impairing by the enumeration of the same the scope and intent of the foregoing or of any general description, the said Grantor shall not construct nor permit to exist any house, structure or obstruction on or over, or within a distance of 25 feet on either side of said pipe line, or that will interfere with the laying, maintenance, operation, replacement or removal of said pipe line or appurtenances installed hereunder, and will not change the grade of such pipe line right of way by placing fill thereon or removing earth therefrom, nor permit the inundation by water of said pipe line and/or right of way. The said Grantor is to use the said premises, except for the purposes granted herein.

It is further provided that the Grantee, in addition to the consideration paid this day, shall pay the Grantor for any damage or injury to growing crops, trees and fences upon said land which shall be caused by entry thereon to lay the said pipe line or other equipment and for any damage or injury to growing crops and fences which shall be caused by entry thereon to maintain, replace or remove the said pipe line or other equipment; said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the said Grantor, one by the Grantee, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive.

TO HAVE and TO HOLD the said easement so long as the same may be useful or necessary for the purposes of the Grantee.

All the terms and conditions of this right of way grant shall extend to and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto.

WITNESS the hands  and seals  of the said Grantors  this  27th
day of  January , A.D. 19 60 .

WITNESS: *Edward Davis*                    { *John R Moore* (SEAL)
                                            { *Dorothy G Moore* (SEAL)
                                            _____ (SEAL)
                                            _____ (SEAL)

#5                                          _____ (SEAL)
                                            _____ (SEAL)
                                            _____ (SEAL)

Credit TED -$294.00
Charge to E.O. 5043 a/c 351.23-2
Audit No. 826-2

#15

EQUITRANS-MOORE-000002

"DECLARATION OF CONSIDERATION OF VALUE"   BOOK 618 PAGE 289

Under the penalties of fine and imprisonment as provided by law the undersigned grantee hereby declares the total consideration of the property transferred by the document to which this declaration is appended is $ 294.00

Given under my hand this 11th day of February, 19 60

EQUITABLE GAS COMPANY
By Regis J Donnell
Land and Real Estate Department
420 Boulevard of the Allies
Pittsburgh 19, Pennsylvania

In witness whereof, I hereunto set my

My Commission expires...........................................

(West Virginia Acknowledgment — Individual)                 Title of Officer

STATE OF WEST VIRGINIA
COUNTY OF.......Monongalia.................., to wit:

I,.......T. Edward Davis..........., a Notary Public.......of said County of.....Monongalia......

do certify that......John R. Moore and Dorothy G. Moore, his wife,.....................

whose names are ...................signed to the writing hereto annexed bearing date the....27th......

day of.......January..........., 19 60, have this day acknowledged the same before me, in my said County.

Given under my hand.........................this 27th day of.....January....., 19 60

My Commission expires....June 5, 1961.......       T Edward Davis

(Pennsylvania Acknowledgment — Corporation)

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF.............................................. } ss.

On this, the...........day of..........................., 19......., before me................................

the undersigned officer, personally appeared.............................................................., who acknowledged himself

to be.......................................of.............................................., a corporation,

WEST VIRGINIA, TO-Wit:

Be it remembered that on the....1st day of....March......, 19 60 the

foregoing instrument of writing, bearing date the 27 day of....January...., 19 60

with....Fifty One Cents in................Revenue Stamps, and

....One Dollar of Ten Cents in................... Property

Transfer Stamps, all duly cancelled, was presented to me, Maria H. Clark, Clerk of the County

Court of Marion County, in Marion County, in my office and, together with the certificate

thereto annexed was admitted to record at....9:43....o'clock...M

Teste:     Maria H Clark     Clerk.

Form 41

284

BOOK 618 PAGE 284

EXHIBIT
3

IN CONSIDERATION of the sum of Nine and no/100

$9.00      DOLLARS to us this day in hand paid, receipt of which is hereby acknowledged,

We    Geo. M. Burline and Mary P. Burline, his wife,

Their   heirs, successors or assigns, of Fairview, West Virginia

hereinafter called the Grantor, do hereby grant with covenant of general warranty to EQUITABLE GAS COMPANY, a corporation, having its principal place of business in Pittsburgh, Pennsylvania, its successors or assigns, hereinafter called the Grantee, the right of way upon which to lay, maintain, operate, replace and remove a pipe line, not to exceed       inches in diameter, together with the necessary gates, drips, meters, regulators, and other equipment, with their housing, for the conveyance of gas, oil or water and/or their constituents or products similar thereto, and to erect, maintain, operate, replace and remove communication lines substantially parallel with said pipe line on, over and through that certain tract of land situate in the District of   Paw Paw    , County of    Marion    , and State of    West Virginia    , bounded by lands now or formerly of   Keith Coffman, John Moore

The said pipe line to be laid approximately along the route laid out and marked for same, entering from the land of   Keith Coffman   on the Southeast; thence N 3° 20' W 27 feet to a point; thence N 16° 35' E 16 feet to the line of the lands of   John Moore   on the Northeast.

Total Distance:   43 feet, more or less.

TOGETHER with the right of ingress and egress to and from said right of way by routes most convenient to the Grantee for the purposes granted herein. It is further agreed that the Grantee shall have the right to make such changes in the location of said right of way as from time to time may be necessary or advisable owing to road construction or relocations, ground slips or other causes beyond the control of the Grantee; to maintain the pipe and equipment above ground or upon trestles where the same may cross ravines or streams upon said premises; and to use the right of way herein granted for the purpose of transporting pipe and other equipment to and from neighboring lands in and about the laying, maintenance, operation, replacement and removal of the pipe and other equipment installed hereunder.

The said pipe shall be buried upon the cultivated portions of said land so that it will not interfere with the cultivation of the same, and if laid at stream crossings shall not obstruct the proper flow of the water.

Without in anywise limiting or impairing by this enumeration of the same the scope and intent of the foregoing or of any general description, the said Grantor shall not construct nor permit to exist any house, structure or obstruction on or over, or within a distance of 25 feet on either side of said pipe line, or that will interfere with the laying, maintenance, operation, replacement or removal of said pipe line or appurtenances installed hereunder, and will not change the grade of such pipe line right of way by placing fill thereon or removing earth therefrom, nor permit the inundation by water of said pipe line and/or right of way. The said Grantor is to use and enjoy the said premises, except for the purposes granted herein.

It is further provided that the Grantee, in addition to the consideration paid this day, shall pay the Grantor for any damage or injury to growing crops, trees and fences upon said land which shall be caused by entry thereon to lay the said pipe line or other equipment and for any damage or injury to growing crops and fences which shall be caused by entry thereon to maintain, replace or remove the said pipe line or other equipments said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the said Grantor, one by the Grantee, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive.

TO HAVE and TO HOLD the said easement so long as the same may be useful or necessary for the purposes of the Grantee.

All the terms and conditions of this right of way grant shall extend to and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties herein.

WITNESS the hand S    and seal S    of the said Grantor S    , this    21st

day of    January    , A.D. 19 60 .

WITNESS: T. Edward Harris          Geo. M. Burline          (SEAL)
                                    Mary P. Burline          (SEAL)
                                                             (SEAL)
#5                                                           (SEAL)
                                                             (SEAL)
                                                             (SEAL)
Credit TED - $9.00                                           (SEAL)
Charge to E.O. 5043 a/c 351.23-2                             (SEAL)
Audit No.   226-2                                            #17

Deeds Vol. 618

"DECLARATION ON CONSIDERATION OF VALUE"   BOOK 618 PAGE 285

Under the penalties of fine and imprisonment as provided by law the undersigned grantee hereby declares the total consideration of the property transferred by the document to which this declaration is appended is $ 9.00

Given under my hand this 11th day of February, 1960

EQUITABLE GAS COMPANY
By _____
Land and Real Estate Department
420 Boulevard of the Allies
Pittsburgh 19, Pennsylvania

In witness whereof, I hereunto set my hand and official seal.

My Commission expires_____

(West Virginia Acknowledgment – Individual)                        Title of Officer

STATE OF WEST VIRGINIA

COUNTY OF Marion _____, to wit:

I, T. Edward Davis _____, a Notary Public of said County of Marion,

do certify that Geo. M. Burline and Mary P. Burline, his wife,

whose names are _____ signed to the writing hereto annexed bearing date the 21st

day of January, 19 60, have this day acknowledged the same before me, in my said County.

Given under my hand _____ this 21st day of JANUARY, 1960

My Commission expires June 5, 1961.   _____

(Pennsylvania Acknowledgment – Corporation)

COMMONWEALTH OF PENNSYLVANIA,

WEST VIRGINIA, TO-Wit:

Be it remembered that on the 1 day of March, 1960, the

foregoing instrument of writing, bearing date the 21 day of January, 1960

with _____ Revenue-Stamps, and

_____ Property

Transfer-Stamps, all duly cancelled, was presented to me, Maria H. Clark, Clerk of the County

Court of Marion County, in Marion County, in my office and together with the certificate

thereto annexed was admitted to record at 8:43 o'clock, A. M.

Teste: _____, Clerk.

EDGE 41

do certify that _____ who signed the writing hereto annexed, bearing date the _____

day of _____, 19 ____ for _____ has this day

in my said County, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand _____ this ____ day of _____, 19 ____

My Commission expires _____

Deeds Vol. 618

EXHIBIT
4

286

BOOK 618 PAGE 266

28094

IN CONSIDERATION of the sum of ___Thirty-Six and no/100_____
(___$36.00___) DOLLARS to us this day in hand paid, being the true and full consideration, receipt of which is hereby acknowledged,

We, __Keith Coffman and Bessie Coffman, his wife,_____

___their___ heirs, successors or assigns, of ___Fairview, West Virginia_____
hereinafter called the Grantor, do hereby grant with covenant of general warranty to EQUITABLE GAS COMPANY, a corporation, having its principal place of business in Pittsburgh, Pennsylvania, its successors or assigns, hereinafter called the Grantee, a right of way upon which to lay, maintain, operate, replace and remove a pipe line, not to exceed _____ inches in diameter, together with the necessary gates, drips, meters, regulators, and other equipment, with their housing, for the conveyance of gas, oil or water and/or their constituents or products similar thereto, and to erect, maintain, operate, replace and remove communication lines and appurtenant equipment substantially parallel with said pipe line on, over and through that certain

tract of land situate in the District of __Paw Paw____ County of __Marion____, and State of __West Virginia____
bounded by lands now or formerly of __Billingsley Heirs, Geo. M. Burling_____

The said pipe line to be laid approximately along the route laid out and marked for same, entering from the land of __Billingsley Heirs__ on the South; thence N 19° 00' W 137 feet to a point; thence N 3° 20' W 57 feet to the line of the lands of Geo. M. Burling on the North.

Total Distance: 194 feet, more or less.

TOGETHER with the right of ingress and egress to and from said right of way by routes most convenient to the Grantee for the purposes granted herein. It is further agreed that the Grantee shall have the right to make such changes in the location of said right of way as from time to time may be necessary or advisable owing to road construction or relocations, ground slips or other causes beyond the control of the Grantee; to maintain the pipe and equipment above ground or upon trestles where the same may cross ravines or streams upon said premises; and to use the right of way herein granted for the purposes of transporting pipe and other equipment to and from neighboring lands in and about the laying, maintenance, operation, replacement and removal of the pipe and other equipment installed hereunder.

The said pipe line shall be buried upon the cultivated portions of said land so that it will not interfere with the cultivation of the same, and if laid at stream crossings shall not obstruct the proper flow of the water.

Without in anywise limiting or impairing by the enumeration of the same the scope and intent of the foregoing or of any general description, the said Grantee shall not construct nor permit to exist any house, structure or obstruction on or over, or within a distance of 25 feet on either side of said pipe line, or that will interfere with the laying, maintenance, operation, replacement or removal of said pipe line or appurtenances installed hereunder, and will not change the grade of such pipe line right of way by placing fill thereon or removing earth therefrom, nor permit the foundation by water of said pipe line and/or right of way. The said Grantor is to use and enjoy the said premises, except for the purposes granted herein.

It is further provided that the Grantee, in addition to the consideration paid this day, shall pay the Grantor for any damage or injury to growing crops, trees and fences upon said land which shall be caused by entry thereon to lay the said pipe line or other equipment and for any damage or injury to growing crops and fences which shall be caused by entry thereon to maintain, replace or remove the said pipe line or other equipment; said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the said Grantor, one by the Grantee, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive.

TO HAVE and TO HOLD the said easement so long as the same may be useful or necessary for the purposes of the Grantee.

All the terms and conditions of this right of way grant shall extend to and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto.

WITNESS the hand_s_ and seal_s_ of the said Grantor_s_ this __22nd__
day of __January__, A.D., 19 60.

WITNESS:

_Edward Lewis_                          {  _Keith Coffman_  (SEAL)
                                            _Bessie Coffman_  (SEAL)
                                                                (SEAL)
                                                                (SEAL)
                                                                (SEAL)
#5                                                              (SEAL)
                                                                (SEAL)
Credit FND – $36.00                                             (SEAL)

Charge to R.O. 5043 s/o 251.23-2

4 mile VA.        226-2

Deeds Vol.618

"DECLARATION OF CONSIDERATION OF VALUE" BOOK 618 PAGE 897

Under the penalties of fine and imprisonment as provided by law the undersigned grantee hereby declares the total consideration of the property transferred by the document to which this declaration is appended is $ 36.00

·Given under my hand this 11th day of February , 19 69

EQUITABLE GAS COMPANY
By
Land and Real Estate Department
420 Boulevard of the Allies
Pittsburgh 19, Pennsylvania

In witness whereof, I hereunto set my hand and official seal.

My Commission expires

(West Virginia Acknowledgment — Individual)

Title of Officer

STATE OF WEST VIRGINIA

COUNTY OF Marion , to wit:

I, T. Edward Davis , Notary Public of said County of Marion

do certify that Keith Coffman and Bessie Coffman, his wife,

whose name s are signed to the writing hereto annexed bearing date the 22nd

day of January , 19 60 , ha ve this day acknowledged the same before me, in my said County.

Given under my hand this 22nd day of January , 19 60 ,

My Commission expires June 5, 1961

(Pennsylvania Acknowledgment — Corporation)

COMMONWEALTH

COUNTY WEST VIRGINIA, TO·Wit:

Be it remembered that on the 1 day of March , 19 60 the

foregoing instrument of writing, bearing date the 22 day of January 19 60

with Revenue Stamps, and

Property

Transfer Stamps, all duly cancelled, was presented to me, Maria H. Clark, Clerk of the County

Court of Marion County, in Marion County, in my office and together with the certificate

thereto annexed was admitted to record at 9 4 o'clock A M.

Teste: H Clark Clerk.

No. 41

do certify that , who signed the writing hereto annexed, bearing date the

day of , 19 , for , has this day

in my said County, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand , this day of , 19

My Commission expires

Recorded in D...? at P...

Pipe Line Right of Way Grant

FROM

Keith Coffman, et ux.

TO

EQUITABLE GAS COMPANY

Deeds Vol.618

4-27-92 ret. Jeffrey Moore Rt 2 Box 242 Fairview 26570

BOOK 902 PAGE 894          BOOK 1019 PAGE 555

**EXHIBIT 5**

002
555
19

THIS DEED, made and entered into this 10th day of June, 1990, by and between JOHN R. MOORE and DOROTHY G. MOORE, husband and wife, parties of the first part, Grantors, and J. JOHN MOORE and SANDRA J. MOORE, husband and wife, parties of the second part, Grantees.

WITNESSETH, that for and in consideration of the sum of Ten dollars ($10.00), cash in hand paid, and other good and valuable considerations the receipt and sufficiency of all of which is hereby expressly acknowledged, the said parties of the first part John R. Moore and Dorothy G. Moore, husband and wife, do hereby grant and convey with the second part J. John Moore and Sandra J. Moore, husband and wife, jointly and equally together with rights of survivorship as provided for by statute by the State of West Virginia, the following described tract of land or parcel of real estate situated, lying and being on the waters of Rush Run about one mile northeast of the Town of Fairview, Marion County, West Virginia, bounded and described as follows:



BEGINNING at a gum and pointers by said run corner for land of the heirs fo Tobias Haught, deceased, (now corner of J. R. and Naome M. Bailey, Marion County Deed Book No. 467, at page 51, and Patricia Hansen, Marion County Deed Book No. 784, at page 474) and with two of their lines, South 12⁰ West 20 1/2 rods to a stone, and South 24⁰ West 10 1/2 rods to a stone, corner to Rebecca E. Tennant and husband, and with line of same (now William R. Frank, Jr., Marion County Deed Book No. 796), South 61 1/2⁰ East 55.6 rods to a beech and ash, thence South 65⁰ East 49 rods to an ironwood on ridge, corner for land of Perry Lough and with his lines (Virginia Pauline Lough, Marion County Deed Book No. 770, at page 575), North 28⁰ 45' East 66 rods to a white ash (not found), thence North 02⁰ West 34.7 rods to pointers, corner made in partition with Nimrod Haught, and with the lines surveyed by the commissioners who made said



BOOK 902 PAGE 896          BOOK 1019 PAGE 557

feet to a stake; thence with the same, South 34° 28' West 312.18
feet to a stake; and thence with the same North 65° 46' West
480.30 feet to the beginning, containing 3.336 acre, more or
less."

The second parcel excepted from this conveyance was
conveyed by John R. Moore and Dorothy G. Moore, husband and
wife, to Wilbert Wendell Moore and Patricia Ann Moore, husband
and wife, by deed bearing date the 11th day of October, 1968,
and of record in the office of the Clerk of the County
Commission of Marion County, West Virginia, in Deed Book No.
734, at page 236, and described as follows:

"BEGINNING At an 'X' on a stone in the line of the
real estate herein conveyed and the line of other real estate of
John R. Moore; thence North 61° 35' West 130.59 feet to a stake;
thence from said stake, North 28° 25' East 202.80 feet to a
point in the line of other real estate of John R. Moore; thence
with said line, South 67° 00' East 194.42 feet to a point in the
center of the road (Marion County Route No.17/1); West 224.05
feet to another point in the center of said road; thence from
said point in the center of the said road, North 61° 35' West
feet to the place of beginning, containing one acre, more or
less."

There is excepted from the operation of this
conveyance all of the oil and gas within and underlying the
herein described tract of real estate, together with the usual
and necessary drilling and operating rights, including the right
to go upon the herein conveyed premises for the purpose of
operating for oil and gas, or either of them, and the right to
lay pipe lines, erect storage tanks, place and operate drilling
equipment on said tract, but not to operate said drilling
equipment within 200 feet from the residence now erected on said
tract and all other reasonable and necessary rights which may be

BOOK **1019** PAGE **558**          BOOK **902** PAGE **897**

required for the proper operation for oil and gas; or either of them.

This conveyance is subject to the exception of the Pittsburgh Coal seam as conveyed by the Grantors predecessors in title, and to any other such conveyances, rights-of-ways, easements and other matters of record in the offices of the Clerk of The County Commission of Marion County, West Virginia.

The property hereby conveyed is entered for assessment for the year of 1989 on the Land Books in Paw Paw Tax District, Marion County as follows:

MOORE, John R. and Dorothy G.

Map 9, Parcel 40

113.76 acres, Rush Run

DECLARATION OF CONSIDERATION OF VALUE The undersigned hereby declare that this conveyance is exempt from the excise tax on the transfer of real estate property described in Article 22, of Chapter 11, of the Code of West Virginia, inasmuch as this conveyance is from parents to a child and his spouse.

WITNESS The following signatures and seals:

_John R Moore_ (SEAL)

JOHN R. MOORE

_Dorothy G Moore_ (SEAL)

DOROTHY G. MOORE

STATE OF WEST VIRGINIA,

COUNTY OF MONONGALIA, To-Wit:

I, _Kelli Wilson_, a Notary Public in and for said County, hereby Certify that JOHN R. MOORE and DOROTHY

BOOK 902 PAGE 898          BOOK 1019 PAGE 559

G. MOORE, husband and wife, whose names are affixed to the above

instrument, appeared before me this 21st day of November

1990, and acknowledged.

My Commission expires: March 15, 1993 .

_Kelli D. Wilson_
NOTARY PUBLIC

This instrument was prepared by:
William K. Bunner, Attorney
818 Monongahela Building
235 High Street
Morgantown, West Virginia 26505.

STATE OF WEST VIRGINIA,
MONONGALIA COUNTY, TO-WIT:
    I, THELMA J. GIBSON, Clerk of the County Commission of the County aforesaid, do certify that the
aforesaid writing together with the certificates and $ ————————Cancelled State and County Excise Stamps,
thereto attached was this day presented to me in my office, and was admitted to record therein, at 10:17
o'clock A M. Given under my hand this 21 day of November , 19 90

_Thelma J. Gibson_ , Clerk

821
RECEIVED 4.50
RECORDING FEE
STAMPS
APR 23  3 42 PM '92

STATE OF WEST VIRGINIA, County of Marion, To-Wit:

    I, Janice Cosco, Clerk of the County Commission of said County, do
hereby certify that the foregoing writing, with certificate thereto annexed,
was this day produced to me in my office and duly admitted to record.
    Witness my hand.

C4010     _Janice Cosco_ Clerk

EXHIBIT
6

# EquitranS

INTERNAL CORRESPONDENCE

To:      J. T. Egler                                    August 11, 1994

From:    W. M. Hostutler, Jr.

Subject: Main Line Renewal, 272-94-027

The attached proposal to renew 17,361' of 16" steel with 17,361' of 16" wrapped steel is submitted for your approval. This renewal is located on sections of the H-557 line in various Districts and Counties, West Virginia.

## Reasons for the necessity of this project:

*   This is the most important transmission and storage line in West Virginia and has an operating pressure of 1000#. The line transports gas between Pratt Station and the Comet, Maple Lake, Curtisville, Hayes and Mobley Storage Pools.

*   The line was installed in 1959 prior to the installation of rectifiers and as a result pitting is present in some areas.

*   An instrumented pig was run on the H-557 line in June of 1993, the interpretation of the test results displays that these sections of line contains pipe with pits in excess of 50% of the pipe wall.

*   The integrity, dependability and maximum operating pressure of this line must be maintained in order for Equitrans to utilize its full storage potential.

## Capital Budget criteria used to evaluate the proposal:

IV.   Regulatory Compliance

This project will be renewed under the 1994 Capital Improvement Budget, Class 03, Sub-Class 0302, Project No. 94-23WV-0302-3101, and the funds for the project shall be transferred from the 1994 Capital Improvement Budget, Class 02, Sub-Class 0202 Project No. 94-23PA-0202-2001.

W. M. Hostutler, Jr.
Area Manager
Northern West Virginia

WMH/TMR/tmr

EXHIBIT
7

IN THE CIRCUIT COURT OF MARION COUNTY, WEST VIRGINIA

JEFFERY J. MOORE and SANDRA J. MOORE,

      Plaintiffs,

v.                              Civil Action No. 12-C- 232

EQT PRODUCTION CORPORATION,
a Pennsylvania corporation; and
EQT CORPORATION,
a Pennsylvania corporation

      Defendants.

## COMPLAINT

      Comes now Plaintiffs, Jeffery J. Moore and Sandra J. Moore, by counsel, and for their Complaint unto this Honorable Court states as follows:

### Nature of Action

      1.     This is an action for breach of contract, ejectment and trespass.  Plaintiffs seeks to have Defendants' natural gas transmission pipeline removed from their real property and Plaintiffs also seeks damages for Defendants' trespass.

### The Parties

      2.     Plaintiffs, Jeffery J. Moore and Sandra J. Moore, are residents of Fairview, Marion County, West Virginia.

      3.     Defendant, EQT Production Company ("EQT Production"), is a Pennsylvania Corporation authorized to conduct business in the State of West Virginia.

4.     Defendant, EQT Corporation ("EQT"), is a Pennsylvania Corporation authorized to conduct business in the State of West Virginia.

### Jurisdiction and Venue

5.     Jurisdiction and venue in this action are appropriate in the Circuit Court of Marion County, West Virginia.

### Operative Facts

6.     In or around January 27, 1960, John Moore and Dorothy Moore, granted Equitable Gas Company a 1,611 feet, more or less, right of way to lay, maintain, operate, replace, and remove a 16 inch pipeline along a defined route expressly designated in a right of way agreement.  (See Deed Book No. 618, Page 288, a copy of which is attached hereto collectively and identified as Exhibit A).

7.     Defendants, EQT and EQT Production, are successors in interest to Equitable Gas Company.

8.     Jeffery J. Moore and Sandra J. Moore (hereinafter collectively referred to as "the Moore's") are successors in interest to the land described in the right of way agreement.

9.     Since sometime in or around 1980, Defendants initially constructed and then replaced their 16 inch natural gas transmission pipeline on and through the Moore's property.

10.     Upon information and belief, the Moore's are informed, believes and therefore avers that during the initial construction and later replacement of their 16 inch natural

2

gas transmission pipeline, the Defendants constructed approximately 700 lineal feet of the pipeline off of the defined route expressly designated in the right of way agreement and on the Moore's property.

11.   No slips, road construction or other causes beyond Defendants' control occurred to justify Defendants' initial construction and replacement of their pipeline onto the Moore's property.

12.   Recently, the Moore's discovered that the Defendants initially constructed and later replaced approximately 700 lineal feet of their 16 inch natural gas transmission pipeline off of the defined route expressly designated in the right of way agreement and on the Moore's property.

13.   Defendants' actions have interfered with the Moore's use and enjoyment of their property.

15.   Defendants' actions have violated the terms of the right away agreement.

16.   Defendants' actions have directly, proximately and foreseeably damaged the Moore's in an amount in excess of the jurisdictional limits of this Court.

**Count I - Breach of Right of Way Agreement**

17.   The Moore's re-alleges each of the allegations set out in paragraphs 1 through 16 of this Complaint as if set out fully herein.

18.   The January 27, 1960 right of way agreement expressly designates a defined route for the pipeline right of way across the Moore's property.

3

19.     After the execution of the right of way agreement, the Defendants constructed the initial pipeline and then replaced the initial pipeline so that approximately 700 lineal feet of the pipeline was placed off of the defined route expressly designated in the right of way agreement and on the Moore's property.

20.     The Defendants conduct constitutes a breach of the right of way agreement.

21.     Defendants' breach of the right of way agreement has damaged the Moore's.

22.     As a result of the Defendants' unlawful conduct, the Moore's have been directly, proximately and foreseeably damaged in an amount in excess of the jurisdictional limits of this Court.

## Count II - Ejectment

23.     The Moore's re-alleges each of the allegations set out in paragraphs 1 through 22 of this Complaint as if set out fully herein.

24.     The Moore's seek ejectment of Defendants' pipeline from their property pursuant to West Virginia Code § 55-4-1, *et seq.*, and requests that this Court require that Defendants immediately remove the pipeline and pay for any damages caused in said removal.

## Count III - Trespass

25.     The Moore's re-alleges each of the allegations set out in paragraphs 1 through 24 of this Complaint as if set out fully herein.

4

26.    Defendants have wrongfully occupied the Moore's property by placing its pipeline in an unauthorized location without authority or consent from the Moore's.

27.    Defendants' actions and omissions have damaged the Moore's in that they are unable to use the portion of their property in which the pipeline exists.

28.    Defendants knew or should have known that they laid the pipeline in an unauthorized location without the authority and consent of the Moore's.

29.    Defendants' actions were a deliberate and continuous physical invasion of the Moore's property and the Moore's right of possession.

30.    Defendants' actions have substantially and unreasonably interfered with the Moore's private use, enjoyment and general possession of their property.

31.    The Moore's have suffered damages as a direct and proximate result of Defendants' intentional intrusion and continuous trespass on the Moore's property.

WHEREFORE, plaintiffs, Jeffery J. Moore and Sandra J. Moore, pray for judgment against defendants, EQT Corporation and EQT Production Corporation, as follows:

(a)    An award of damages for breach of the right of way agreement;

(b)    An Ejectment Order pursuant to West Virginia Code § 55-4-1, *et seq.*, instructing Defendants to immediately remove the pipeline from the property, together with any other appropriate equitable relief this Court deems proper;

(c)    An award of compensatory damages to the Moore's related to any damage occurring to his property from the Defendant's removal of the pipeline;

5

(d)    An award of compensatory damages to the Moore's related to Defendant's trespass and unlawful possession of his property;

(e)    Award to the Moore's the costs related to the prosecution of this matter, including, without limitation, the Moore's attorneys' fees; and

(f)    Such relief as this Court may deem proper.

JEFFERY J. MOORE and SANDRA J. MOORE,

By Counsel,

Kenneth E. Webb, Jr., Esq. (WVSB #5560)
Patrick C. Timony, Esq. (WVSB #11717)
BOWLES RICE McDAVID GRAFF & LOVE, LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25325-1386
(304) 347-1100

6

4456434.1

# CIVIL CASE INFORMATION STATEMENT
## In the Circuit Court of Marion County, West Virginia

I.  CASE STYLE:

Case #:

Plaintiff:                                    Judge:

JEFFREY J. MOORE
SANDRA J. MOORE


v.


| Defendant: | Days to Answer | Type of Service |
|---|---|---|
| EQT PRODUCTION CORPORATION | 30 | Secretary of State |
| EQT CORPORATION | 30 | Secretary of State |


Original and 3 copies of complaint furnished herewith.

PLAINTIFF:        JEFFREY J. MOORE AND SANDRA J. MOORE

                                    CIVIL ACTION NO.: _____

DEFENDANT:        EQT PRODUCTION CORPORATION AND EQT CORPORATION

II.  TYPE OF CASE:

| TORTS | OTHER | CIVIL |
|---|---|---|
| Asbestos | Adoption | Appeal from Magistrate |
| Professional Malpractice | Contract/Collection | Petition for Modification of Magistrate Sentence |
| Personal Injury | Real Property | Miscellaneous Civil |
| Product Liability | Mental Health | Other: |
| Other Tort | Appeal of Administrative Agency | |

III.    JURY DEMAND:    Yes

        CASE WILL BE READY FOR TRIAL BY (Month/Year):    3 — 14 — 12

IV.     DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE
        SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE? ☐ YES **X NO**

        IF YES, PLEASE SPECIFY:

        ☐     Wheelchair accessible hearing room and other facilities
        ☐     Interpreter of another auxiliary aid for the hearing impaired
        ☐     Reader or other auxiliary aid for the visually impaired
        ☐     Spokesperson or other auxiliary aid for the speech impaired
        ☐     Other: _____

Attorney Name:    Kenneth E. Webb, Jr. (WVSB 5560)      Representing: Plaintiffs
Firm:             Bowles Rice McDavid Graff & Love LLP
Address:          P. O. Box 1386, Charleston, West Virginia  25325-1386

                        Date:  June 19, 2012

                        Kenneth E. Webb, Jr., Esq. (WVSB # 5560)

4486357.1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**EXHIBIT**
**8**

JEFFERY J. MOORE and
SANDRA J. MOORE,

      **Plaintiffs,**

v.

EQT PRODUCTION CORPORATION,
A Pennsylvania corporation; and
EQT CORPORATION,
A Pennsylvania Corporation

      **Defendants.**

Civil Action No. 1:12-CV-123 _____

JUDGE KEELEY
Electronically Filed 7/27/2012

### NOTICE OF REMOVAL

NOW COME Defendants, EQT PRODUCTION COMPANY, Improperly named as EQT PRODUCTION CORPORATION (hereinafter "EPC") and EQT CORPORATION (hereinafter referred to as "EQT Corp.")(collectively referred to as "Removing Defendants"), by and through their attorneys of record and herewith remove this action from the Circuit Court of Marion County, West Virginia to the United States District for the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1441(a) and 1446. This action is removable based upon diversity of citizenship under the provisions of 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy is in excess of the jurisdictional threshold of $75,000.00, exclusive of interests and costs. Accordingly, the case is removable pursuant to 28 U.S.C. § 1332. In further support of removal, the Removing Defendants aver as follows:

**I.    PLEADINGS AND SERVICE**

    1.    On or about June 26, 2012, Plaintiffs Jeffery J. Moore and Sandra D. Moore filed a Complaint in the Circuit Court of Marion County, West Virginia, which is captioned

*Jeffery J. Moore, et ux v. EQT Production Corporation, et al.*  The Complaint is identified by Civil Action No. 12-C-222.

2.      In their Complaint, Plaintiffs seek compensatory damages and an ejectment order directing Removing Defendants to remove a 16 inch pipeline from Plaintiffs' property, allegedly related to a January 27,1960 Right-of-Way Agreement.  A true and exact copy of the entire record from the Circuit Court of Marion County, West Virginia, including the Summons and Complaint, are attached hereto as "Exhibit A" pursuant to 28 U.S.C. § 1446(a).

3.      On June 27, 2012, Plaintiffs caused the Complaint and Summons to be served on Removing Defendants through the West Virginia Secretary of State as their designated statutory agent for service of process.

4.      On June 28, 2012 the West Virginia Secretary of State caused the Summons and Complaint to be delivered by certified mail upon Removing Defendants' designated agent for service of process.

5.      This Notice of Removal is timely filed pursuant to 28 U.S.C. §1446(b) because it is filed within thirty (30) days of the date on which Removing Defendants were served with or had notice of the filing of the Complaint.

6.      This is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Accordingly, this action may be removed to this Court under the provisions of 28 U.S.C. §§ 1441(a) as the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## II.    DIVERSITY OF CITIZENSHIP

7.      Plaintiffs are residents of Marion County, West Virginia.  Complaint ¶ 1.

8.     EPC is a Pennsylvania Corporation authorized to conduct business in the State of West Virginia. Complaint ¶ 2. EPC's principal place of business is Pittsburgh, Pennsylvania.

9.     EQT Corp. is a Pennsylvania Corporation authorized to conduct business in the State of West Virginia. Complaint ¶ 2. EQT Corp.'s principal place of business is Pittsburgh, Pennsylvania.

## III. AMOUNT IN CONTROVERSY

10.     The amount in controversy is determined under the provisions of 28 U.S.C. §1446(c)(2), as amended

> **(2)**     If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
> **(A)**     the notice of removal may assert the amount in controversy if the initial pleading seeks--
> **(i)**     nonmonetary relief; or
> **(ii)**     a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
> **(B)**     removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

11.     Under West Virginia law, Plaintiffs were not required to demand a specific sum. At the same time, West Virginia law permits recovery of damages in excess of the amount rendered. In this case, Plaintiffs did not demand a sum certain. Accordingly, the Notice of Removal may assert the amount in controversy.

12.     The amount in controversy for diversity jurisdiction is met if the removing party can establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *See also* 28 U.S.C § 1446(c)(2)(B); *Evans v. CDX Servs.,* 528 F. Supp.2d 599, 606 (S.D. W.Va. 2007) (applying preponderance standard).

13.     Allegations in the Complaint provide a sufficient predicate for removal.

14.     In actions seeking declaratory or injunctive relief, such as in the case at bar seeking equitable relief and an ejectment order, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (citing cases). In determining the value of the object of litigation, the Fourth Circuit ... "has employed the 'either party approach,' examining the potential pecuniary effect that a judgment would have on either party to the litigation." *Lee v. Citimorgage, Inc.,* 739 F.Supp.2d 940, 946 (E.D. Va. 2010) (citing *Gov't Emps. Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964) and *Liberty Mut. Fire Ins. Co. v. Hayes,* 122 F.3d 1061 (4th Cir. 1997)). "Under this 'value' test, the jurisdictional amount in controversy requirement is met if either the 'direct pecuniary value' of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000." *Lee School Lofts, L.L.C. v. Amtax Holdings, 106 LLC,* No. 3:08cv427, 2008 WL 4936479, at *3 (E.D.Va. Oct. 29, 2008) (citations omitted).   As the Fourth Circuit recently put it: "[w]e ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures:  the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002).  The issue then is whether

either number "exceeds the jurisdictional amount." *Id.* "In applying this test, courts are required to look to the underlying rights and obligations of the litigants to 'calculate the potential pecuniary impact of [a] judgment to either party.' " *Lee v. Citimortgage*, 739 F.Supp.2d at 946 (citations and quotations omitted).

15.     Plaintiffs seek damages for breach of the Right-of-Way agreement, trespass and an ejectment order requiring Defendants to "immediately remove the pipeline from the property, together with any other appropriate equitable relief this Court deems proper;

16.     If the pipeline were ordered to be removed, there would be a substantial expense to Removing Defendants. Likewise, there would be a loss of ability to transport natural gas.[1]   The costs of removal and value of such lost rights are far in excess of $75,000. *See Exhibit B*.

17.     Based on the foregoing, this action may be removed because this Court has original jurisdiction under 28 US.C. § 1332 based on the complete diversity of the parties and because the amount in controversy is in excess of $75,000.00.

18.     The pleadings attached hereto as "Exhibit A" constitute all of the process, pleadings and orders served upon Removing Defendants in this action to date as required under 28 U.S.C. § 1446 and contain the pleadings contained in the files of the Circuit Court of Marion County, West Virginia.

---

[1] Removing Defendants assert that neither party is the proper party to this action as the pipeline at issue is owned and/or operated by Equitrans, L.P., a Pennsylvania limited partnership. Removing Defendants will work with Plaintiffs to correct this misnomer following removal, but asserts that the damages to the proper party are far in excess of $75,000 and complete diversity will not be destroyed by the substitution of Equitrans, L.P.

19.     Venue is proper in this district pursuant to 28 U.S.C. §1441(a) because this district embraces the county in which the removed action has been pending.

20.     Defendant will promptly serve Plaintiff with this Notice of Removal and will promptly file a Notice of Filing of Notice of Removal with the Clerk of the Circuit Court of Marion County, West Virginia, as required under 28 U.S.C. §1446(d), a copy of which is attached hereto as "Exhibit C."

WHEREFORE, EQT Production Company and EQT Corporation pray that the Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Marion County, West Virginia to the United States District Court for the Northern District of West Virginia.

**EQT PRODUCTION COMPANY**
**and EQT CORPORATION,**

**By Counsel.**

 */s/ Stephen E. Hastings        7/27/2012*
R. Scott Long, Esquire (# 2238)
Stephen E. Hastings, Esquire (#9065)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
Telephone:  304-346-5500
Fax:    304-346-5515
scott@handl.com
shastings@handl.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFERY J. MOORE and
SANDRA J. MOORE,

        **Plaintiffs,**

v.                           Civil Action No. 1:12-CV-123

                                     Judge Keeley

EQT PRODUCTION CORPORATION,
A Pennsylvania corporation; and
EQT CORPORATION,
A Pennsylvania Corporation

        **Defendants.**

## CERTIFICATE OF SERVICE

I, Stephen E. Hastings, do hereby certify that on this **27th day of July, 2012,** I have

served a true and exact copy of the foregoing **"Notice of Removal"** upon Plaintiff, by

depositing a true and exact copy thereof in the United States Mail, First-Class, postage

pre-paid, to counsel of record:

> Kenneth E. Webb, Jr., Esquire
> Patrick C. Timothy, Esquire
> Bowles Rice McDavid Graff & Loff, LLP
> 600 Quarrier Street
> P.O. Box 1386
> Charleston, West Virginia 25325-1386
> *Counsel for Plaintiffs*

>   */s/ Stephen E. Hastings*    *7/27/2012*
> R. Scott Long, Esquire (# 2238)
> Stephen E. Hastings, Esquire (#9065)
> **HENDRICKSON & LONG, PLLC**
> 214 Capitol Street (zip 25301)
> P.O. Box 11070
> Charleston, West Virginia 25339
> Telephone: 304-346-5500
> Fax:   304-346-5515
> scott@handl.com
> shastings@handl.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

<div style="float:right; border:2px solid black; border-radius:15px; padding:5px;">

**EXHIBIT
9**

</div>

JEFFERY J. MOORE and
SANDRA J. MOORE,

          **Plaintiffs,**

**v.**

                                         **Civil Action No. 1:12-cv-00123**
                                         **(Hon. Frederick P. Stamp, Jr.)**

EQT PRODUCTION CORPORATION,
A Pennsylvania corporation; and
EQT CORPORATION,
A Pennsylvania Corporation

          **Defendants.**

## ANSWER AND AFFIRMATIVE DEFENSES

      Comes Now Defendant, EQUITRANS, L.P. (hereinafter "Equitrans"), improperly sued as EQT PRODUCTION COMPANY, Improperly named as EQT PRODUCTION CORPORATION and EQT CORPORATION[1], by and through its attorneys and for its responsive pleading to the Complaint filed in this matter, denies that Plaintiffs are entitled to the relief requested therein and submits its Answer, Affirmative and Other Defenses herein as follows:

### Nature of Action

      1.    The allegations set forth in Paragraph 1 call for a conclusion of law to which no response is required, but Equitrans denies that Plaintiffs are entitled to any relief requested in the Complaint.

---

[1] Equitrans has filed a Motion to Substitute Parties and submitted an Agreed Order therewith substituting Equitrans in the stead of EQT Production Corporation and EQT Corporation. Equitrans is responding to the Complaint as if all allegations are directed to it rather than the two, improperly named defendants. In the event the Court deems the substitution improper or if it necessary for the Named Defendants to file a responsive pleading to the complaint, the Named Defendants reserve the right to do so.

### The Parties

2.     Upon information and belief, Equitrans admits the allegations set forth in Paragraph 2 of the Complaint.

3.     Equitrans admits the allegations set forth in Paragraph 3 of the Complaint, but denies EQT Production Company is a proper party to this matter.

4.     Equitrans admits the allegations set forth in Paragraph 4 of the Complaint, but denies EQT Corporation is a proper party to this matter.

### Jurisdiction and Venue

5.     Equitrans denies the allegations set forth in Paragraph 5 of the Complaint and states that jurisdiction and venue are proper in the United States District Court for the Northern District of West Virginia.

### Operative Facts

6.     Equitrans admits the allegations set forth in Paragraph 6 and further state that such document speaks for itself.

7.     Equitrans denies that EQT Production Company and EQT Corporation are successors in interest to Equitable Gas Company with respect to the pipeline at issue in this case and states that Equitrans is the successor in interest to Equitable Gas Company with respect to said pipeline.

8.     Upon information and belief, Equitrans admits the allegations set forth in Paragraph 8 of the Complaint.

9.     Equitrans denies the allegations set forth in Paragraph 9 with respect to the timing of the original construction and replacement of the 16 inch natural gas pipeline at issue,

but admits that it has constructed and replaced, at least a section of a natural gas pipeline through the Moore property.

  10. Equitrans denies the allegations set forth in Paragraph 10.

  11. Equitrans denies the allegations set forth in Paragraph 11.

  12. Equitrans denies the allegations set forth in Paragraph 12.

  13. Equitrans denies the allegations set forth in Paragraph 13.

  14. There is no Paragraph 14 in the Complaint and therefore no response is required.

  15. Equitrans denies the allegations set forth in Paragraph 15.

  16. Equitrans denies the allegations set forth in Paragraph 16.

## Count I – Breach of Right of Way Agreement

  17. Equitrans re-asserts it statements and responses to the allegations set forth in Paragraphs 1 through 16 as if set forth specifically herein.

  18. Equitrans admits only that the January 27, 1960 right of way agreement designates an approximate route for the pipeline right of way which said document speaks for itself and denies the remaining allegations set forth in Paragraph 18 of the Complaint.

  19. Equitrans denies the allegations set forth in Paragraph 19.

  20. Equitrans denies the allegations set forth in Paragraph 20.

  21. Equitrans denies the allegations set forth in Paragraph 21.

  22. Equitrans denies the allegations set forth in Paragraph 22.

### Count II – Ejectment

23.     Equitrans re-asserts it statements and responses to the allegations set forth in Paragraphs 1 through 22 as if set forth specifically herein.

24.     The allegations set forth in Paragraph 24 call for a conclusion of law to which no response is required, but Equitrans denies that Plaintiffs are entitled to any relief requested in the Complaint.

### Count III – Trespass

25.     Equitrans re-asserts it statements and responses to the allegations set forth in Paragraphs 1 through 24 as if set forth specifically herein.

26.     Equitrans denies the allegations set forth in Paragraph 26.

27.     Equitrans denies the allegations set forth in Paragraph 27.

28.     Equitrans denies the allegations set forth in Paragraph 28.

29.     Equitrans denies the allegations set forth in Paragraph 29.

30.     Equitrans denies the allegations set forth in Paragraph 30.

31.     Equitrans denies the allegations set forth in Paragraph 31.

32.     EQT denies that Plaintiffs are entitled to the relief requested in the *ad damnum* clause or "Wherefore" paragraph, including sub-paragraphs (a) through (f) which follows immediately after Paragraph 31 of the Complaint.

33.     EQT denies any allegation not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Having responded to the Complaint, Equitrans asserts the following affirmative and additional defenses.

1.     The Complaint fails to state a claim upon which relief may be granted against Equitrans.

2.     To the extent that discovery reflects the same, Equitrans reserves the following affirmative defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure:

        a.   accord and satisfaction;

        b.   estoppel;

        c.   laches;

        d.   license;

        e.   payment;

        f.   release;

        g.   statute of limitations;

        h.   waiver; and

        i.   any other matter constituting an avoidance or affirmative defense.

3.     To the extent that discovery reflects the same, Equitrans reserves the defenses of ratification; course of performance; course of dealings; and custom and usage.

4.     Equitrans did not commit any act or omission which was a proximate cause of claimed injuries or damages of Plaintiffs.

5.     Equitrans denies that it breached any duty owed to Plaintiff.

6.    If Equitrans breached any duty of care to Plaintiff, which is expressly denied, such a breach was not the proximate or contributing cause of the injuries and damages alleged by Plaintiff.

7.    Equitrans denies that it breached any implied or express covenants of the right of way at issue.

8.    Equitrans asserts that documents on record and public records referenced to in the Complaint speak on their own merits as the best evidence of the terms provided and any characterization or description thereof is denied.

9.    Equitrans relies upon the language set forth in the applicable right of way.

10.    Equitrans has paid, and Plaintiff has accepted, rental payments to hold the lease.

11.    An ejectment order would not be appropriate equitable relief in this matter.

12.    Attorney fees and costs are not recoverable in this action.

13.    Equitrans reserves the right to amend its Answer and defenses if investigation, discovery and further information should warrant such amendment, and, further, to assert any applicable matters of law during the pendency of this action.

**WHEREFORE**, Defendant Equitrans demands that Plaintiffs' Complaint be dismissed and that it recover its costs incurred in connection therewith, including costs and reasonable attorneys' fees.

A Jury Trial is Demanded.

EQUITRANS, L.P., improperly sued as
EQT PRODUCTION CORPORATION
and EQT CORPORATION,

By Counsel.


 /s/ Stephen E. Hastings         8/3/2012
R. Scott Long, Esquire (# 2238)
Stephen E. Hastings, Esquire (#9065)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
Telephone:  304-346-5500
Fax:    304-346-5515
scott@handl.com
shastings@handl.com

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFERY J. MOORE and
SANDRA J. MOORE,

          Plaintiffs,

v.                                 **Civil Action No. 1:12-cv-00123**
                                 **(Hon. Frederick P. Stamp, Jr.)**

EQT PRODUCTION CORPORATION,
A Pennsylvania corporation; and
EQT CORPORATION,
A Pennsylvania Corporation

          Defendants.

### CERTIFICATE OF SERVICE

I, Stephen E. Hastings, do hereby certify that on this **3rd day of August, 2012**, I have served the foregoing **"Answer and Affirmative Defenses"** upon Plaintiffs, through the Court's CM/ECF filing system which will deliver a true and exact electronic copy of the same to the following counsel of record:

> Kenneth E. Webb, Jr., Esquire
> Patrick C. Timothy, Esquire
> Bowles Rice McDavid Graff & Loff, LLP
> 600 Quarrier Street
> P.O. Box 1386
> Charleston, West Virginia 25325-1386

>   */s/ Stephen E. Hastings*    *8/3/2012*
> R. Scott Long, Esquire (# 2238)
> Stephen E. Hastings, Esquire (#9065)
> **HENDRICKSON & LONG, PLLC**
> 214 Capitol Street (zip 25301)
> P.O. Box 11070
> Charleston, West Virginia 25339
> Telephone: 304-346-5500
> Fax:   304-346-5515
> scott@handl.com
> shastings@handl.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JEFFERY J. MOORE and
SANDRA J. MOORE,

          Plaintiffs,

v.

EQUITRANS, L.P.,
A Pennsylvania Limited Partnership,

          Defendant.

Civil Action No. 1:12-cv-00123
(Hon. Frederick P. Stamp, Jr.)

> **EXHIBIT
> 12**

**EQUITRANS, L.P.'S MOTION FOR LEAVE TO
FILE COUNTER-CLAIM FOR PRESCRIPTIVE EASEMENT**

      Now comes Equitrans, L.P. (hereinafter "Equitrans") by and through counsel, and pursuant to the Scheduling Order in this matter, hereby respectfully moves this Honorable Court for leave to file the proposed Counter-Claim for Prescriptive Easement attached hereto as Exhibit A. In support of its motion, Equitrans states as follows:

      1.     On or June 27, 2012, Jeffrey J. Moore and Sandra J. Moore (hereinafter "Plaintiffs") filed their Complaint against EQT Production Corporation and EQT Corporation related to the location of a pipeline on Plaintiffs' Property. By Order dated August 7, 2012, Equitrans, L.P. (hereinafter "Equitrans") was substituted in as the sole defendant and real party-in-interest to the pipeline at issue.

      2.     Plaintiffs' Complaint alleges three causes of action: (1) Breach of Right of Way Agreement; (2) Ejectment; and (3) Trespass. The crux of Plaintiffs' case is that the pipeline at issue is not in the location specifically set forth in the right-of-way agreement applicable to the pipeline.

3.     Equitrans denies all allegations in the Complaint and has steadfastly maintained that the pipeline at issue is laid in its proper location and is subject to a valid and lawful right-of-way agreement.  However, Plaintiffs have repeatedly suggested that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement and such has been the case for a period of more than ten (10) years.  It is undisputed that the actual pipeline location has been known by Plaintiffs and Plaintiffs' predecessor.  Stated simply, either the pipeline is in the correct location or Equitrans is entitled to a prescriptive easement.

4.     Equitrans' proposed Counter-Claim for Prescriptive Easement does not alter the discovery necessary for preparation of this matter for trial or change the Parties' respective positions as to liability.

5.     Because the Court has afforded the Parties an opportunity to consider the claims and defenses in this case and to file motions such as the instant motion and there will be no additional discovery which would otherwise take place, good cause exists to permit the filing of the proposed Counter-Claim for Prescriptive Easement.

6.     Plaintiffs are not prejudiced by the filing of the proposed Counter-Claim for Prescriptive Easement.

**WHEREFORE**, EQUITRANS, L.P. respectfully requests this Honorable Court to GRANT this Motion and ORDER that the proposed Counter-Claim for Prescriptive Easement be filed and to award any further and general relief as the Court deems proper and appropriate under the circumstances.

Respectfully submitted,

EQUITRANS, L.P.,

By Counsel.


 /s/ Stephen E. Hastings        5/ 31 /2013
R. Scott Long, Esquire (# 2238)
Stephen E. Hastings, Esquire (#9065)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
Telephone:  304-346-5500
Fax:    304-346-5515
scott@handl.com
shastings@handl.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEFFERY J. MOORE** and
**SANDRA J. MOORE,**

      **Plaintiffs,**

**v.**                                       Civil Action No. 1:12-cv-00123
                                          (Hon. Frederick P. Stamp, Jr.)

**EQUITRANS, L.P.,**
**A Pennsylvania Limited Partnership,**

      **Defendant.**

## CERTIFICATE OF SERVICE

    I, Stephen E. Hastings, do hereby certify that on this **31ˢᵗ day of May, 2013**, I have
served the foregoing **"Equitrans, L.P.'s Motion for Leave to File Counter-Claim for
Prescriptive Easement** upon Plaintiffs, through the Court's CM/ECF filing system
which will deliver a true and exact electronic copy of the same to the following counsel
of record:

                Kenneth E. Webb, Jr., Esquire
                Patrick C. Timothy, Esquire
                Bowles Rice McDavid Graff & Loff, LLP
                600 Quarrier Street
                P.O. Box 1386
                Charleston, West Virginia 25325-1386


                     _/s/ Stephen E. Hastings_     _5/31/2013_
                    R. Scott Long, Esquire (# 2238)
                    Stephen E. Hastings, Esquire (#9065)
                    **HENDRICKSON & LONG, PLLC**
                    214 Capitol Street (zip 25301)
                    P.O. Box 11070
                    Charleston, West Virginia 25339
                    Telephone: 304-346-5500
                    Fax:   304-346-5515
                    scott@handl.com
                    shastings@handl.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEFFERY J. MOORE and**
**SANDRA J. MOORE,**

            **Plaintiffs,**

**v.**

                                     **Civil Action No. 1:12-cv-00123**
                                     **(Hon. Frederick P. Stamp, Jr.)**

**EQUITRANS, L.P.,**
**A Pennsylvania Limited Partnership,**

             **Defendant.**

### COUNTER-CLAIM FOR PRESCRIPTIVE EASEMENT

For it Counter-Claim against Plaintiffs, Defendant, Equitrans, L.P. states as follows:

### FACTS

1.      On or June 27, 2012, Jeffrey J. Moore and Sandra J. Moore (hereinafter "Plaintiffs") filed their Complaint against EQT Production Corporation and EQT Corporation related to the location of a pipeline on Plaintiffs' Property.

2.      By Order dated August 7, 2012, Equitrans, L.P. (hereinafter "Equitrans") was substituted in as the sole defendant and real party-in-interest to the pipeline at issue. Equitrans adopts and incorporates all averments and defenses made in it Answer to the Complaint.

3.      Plaintiffs' Complaint alleges three causes of action: (1) Breach of Right of Way Agreement; (2) Ejectment; and (3) Trespass.  The crux of Plaintiffs' case is that the pipeline at issue is not in the location specifically set forth in the right-of-way agreement applicable to the pipeline.

4.      Equitrans denies all allegations in the Complaint and has steadfastly maintained that the pipeline at issue is laid in its proper location and is subject to a valid and lawful right-of-way agreement.  However to the extent that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement, Equitrans is entitled to a prescriptive easement.

### COUNT I - Prescriptive Easement

5.      To the extent that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement, Equitrans' use of Plaintiffs' land with respect to the pipeline at issue has been adverse.

6.      To the extent that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement, Equitrans' adverse use of Plaintiffs' land has been continuous and uninterrupted for at least ten years.

7.      To the extent that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement, Equitrans' adverse use of Plaintiffs' land was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use.

8.      To the extent that the pipeline is not laid in the location as set forth in the applicable right-of-way agreement, there is a reasonably identified starting point, ending point, line, and width of the land that was adversely used by Equitrans, and the manner or purpose for which the land was adversely used.

9.      To the extent it is determined that the pipeline at issue is not laid in the location set forth in the applicable right-of-way agreement, Equitrans is entitled to a prescriptive easement for the pipeline at issue.

WHEREFORE, to the extent that the pipeline at issue is not laid in the location set forth in the applicable right-of-way agreement, Equitrans, L.P. respectfully requests judgment from and against Jeffrey J. Moore and Sandra J. Moore for a prescriptive easement and for any further and general relief this Court deems proper and appropriate under the circumstances.

**A TRIAL BY JURY IS REQUESTED.**

**EQUITRANS, L.P.,**

**By Counsel.**

*/s/ Stephen E. Hastings*       *5/31/2013*
R. Scott Long, Esquire (# 2238)
Stephen E. Hastings, Esquire (#9065)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
Telephone:  304-346-5500
Fax:    304-346-5515
scott@handl.com
shastings@handl.com



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

> **EXHIBIT**
> **15**

JEFFERY J. MOORE and
SANDRA J. MOORE,

        **Plaintiffs,**

v.                             Civil Action No. 1:12-cv-00123
                                    (Hon. Frederick p. Stamp, Jr.)

EQUITRANS, L.P.,
A Pennsylvania Limited Partnership,

        **Defendant.**

### MEMORANDUM OF LAW IN SUPPORT OF
### EQUITRANS L.P.'s MOTION FOR SUMMARY JUDGMENT

Now comes Equitrans, L.P. (hereinafter "Equitrans"), by and through counsel, and hereby submits this Memorandum of Law in Support of Equitrans, L.P.'s Motion for Summary Judgment ("Motion").[1] Equitrans is entitled to summary judgment because the pipeline at issue is located within the original right-of-way. Alternatively, to the extent this Court concludes Equitrans' pipeline is outside the original right-of-way, Equitrans is entitled to a prescriptive easement. In either event, Plaintiffs' claims are barred by the applicable statute of limitations. Moreover, Plaintiffs have suffered no damages and their claim for ejectment is not appropriate, especially where, as here, Equitrans has the right to condemn the area under 15 U.S.C. § 717, *et seq.* (the "Natural Gas Act"). Therefore, summary judgment is appropriate and this matter should be dismissed as a matter of law.

### FACTS

The facts in this case are undisputed which makes it appropriate for summary judgment. On or around January 27, 1960, John Moore and Dorothy Moore (Plaintiff, Jeffrey Moore's

---

[1] All Exhibits referenced herein have been attached to the Motion as required by the Rules of this Court.

parents) granted Equitable Gas Company (Equitrans' predecessor-in-title) a 1,611-foot right-of-way to lay, maintain, operate, replace, and remove a 16-inch pipeline (known as H-557) along a defined route expressly designated in a right-of-way agreement. *See* Complaint (Doc. 1-1) and Right of Way Agreement ("1960 ROW") attached hereto as Exhibit A. According to Plaintiff's Complaint, Equitable Gas Company originally constructed and later replaced 700 feet of natural gas transmission pipeline off the defined route that was expressly designated right-of-way agreed to in 1960.[2] The replacement work was completed by Equitrans in approximately 1995-96. *See* Deposition Testimony of Revelee "Henry" Allen dated August 15, 201,3 attached to the Motion as Exhibit E, at p. 9.

Mr. Allen, a former Equitrans employee, confirmed that he was the Equitrans operational employee in charge of the replacement work. *See* Exhibit E at pp. 9-10. Mr. Allen originally testified that all replacement sections were placed in the exact location of the sections being replaced. *See* Exhibit E at pp. 11-12. However, following his deposition, Mr. Allen believed he was mistaken and reviewed the construction folder for this project. *See* Deposition Testimony of Revelee "Henry" Allen dated December 5, 2013, attached to the Motion Exhibit G at pp. 4-5. Mr. Allen executed an errata sheet providing clarification and was re-deposed on November 26, 2013, regarding this clarification. *See* Exhibit F. With respect to the H-557 pipeline on the Moore property two sections were replaced in the mid-1990s. Mr. Allen testified that one

---

[2] The H-557 pipeline was owned and operated by Equitable Gas Company until 1988, when Equitable Gas Company transferred the pipeline, and EGC's other natural gas production, gathering, transmission, storage and wholesale facilities and properties, to Equitable Transmission Company. The transfer was authorized by the Federal Energy Regulatory Commission ("FERC") on January 20, 1988. *See* Order dated January 20, 1988 attached hereto as Exhibit B. Shortly thereafter, Equitable Transmission Company changed its name to Equitrans, Inc. *See* Exhibit C. On October 20, 1998, FERC approved the transfer of all of Equitrans, Inc.'s jurisdictional facilities, including the H-557 pipeline, to Equitrans, L.P. *See* Exhibit D. Since that time, Equitrans, L.P. has owned and operated the H-557 pipeline.

section (the area from No. 1 to No. 3 as depicted on Exhibit H) was not replaced in the exact location, but "exactly right beside it." *See* Exhibit G at pp. 7-8. Mr. Allen testified that the other replaced section (in the area around No. 4 as depicted on Exhibit H) was placed in the exact location as the original pipeline. *See* Exhibit G at pp. 12-13. Since the replacement of the two sections in 1996, Equitrans has operated the H-557 pipeline without interruption.

In this case, the Parties met and located the buried H-557 pipeline and Equitrans performed a survey of the located pipeline, the description of the 1960 ROW and the various boundary lines of the properties at issue. The 1960 ROW describes an approximate route within which the pipeline was to be laid. *See* Exhibit A. Equitrans' survey revealed that the H-557 pipeline at issue is approximately in the area of the right-of-way as described in the 1960 ROW. *See* survey of Smith Land Surveying attached hereto as Exhibit H. In fact, for the overwhelming majority of the length of the pipeline, it is located in the *exact* location as described in the 1960 ROW. There are small portions of the H-557 pipeline that are very close to the exact location of the plotted description set forth in the 1960 ROW. Plaintiffs have not produced a survey.

Equitrans asserts that the H-557 was originally laid and replaced according to the 1960 ROW. In the alternative, and assuming, *arguendo*, this Court determines that the original or replaced sections of the H-557 pipeline are not within the area described by the 1960 ROW, summary judgment is still appropriate because: (1) Plaintiffs' claims are time barred; (2) Equitrans is entitled to a prescriptive easement; (3) Plaintiffs have suffered no damages; and (4) ejectment is not a proper remedy in this case. Finally, should this Court disagree with all of the

3

above, Equitrans respectfully requests this Court to permit it to amend thep leadings in this case

to assert a claim for condemnation under 15 U.S.C. §717 *et seq.* (the "Natural Gas Act").[3]

## STANDARD OF REVIEW

As the Court is well aware, a party is entitled to summary judgment "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. p. 56(c).  A genuine issue of material fact exits if, in viewing the record and all reasonable

inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-

finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  The facts and

inferences must be viewed in the light most favorable to the nonmoving party on motion for

summary judgment and the nonmoving party must offer some concrete evidence from which

reasonable juror could return verdict in his or her favor." *Collard v. Smith Newspapers, Inc.,* 915

F. Supp. 805 (1996).  Moreover, "[i]n determining whether substantial issue of fact is presented

as between parties to motion for summary judgment, there may be conflicting statements of fact

which, while raising substantial issues under one legal theory, are immaterial under another."

*Kanawha Valley Bank v. Nello L. Teer Co.,* 128 F.Supp. 325 (D.C.W.Va. 1955), aff'd 227 F.2d

306 (1955).  When considering the facts of this matter, it is clear that there is no genuine issue of

material fact in Plaintiff's Complaint of alleging breach of contract and trespass.  There is also

no genuine issue of material fact that Equitrans has obtained a prescriptive easement.  Moreover,

---

[3] Equitrans could file a separate action seeking condemnation, but states that the interest of judicial economy warrant the same to be considered in this case should this Court determine a condemnation action is necessary.

4

because Equitrans is afforded the right of condemnation under the Natural Gas Act, Plaintiffs have no remedy.

## ARGUMENT

In their Complaint, Plaintiffs seek compensation from Equitrans for trespass and breach of contract as well as ejectment of Equitrans' 16" natural gas pipeline from their property. *See* Complaint (Doc. No. 1-1). Despite the allegations in the Complaint, Plaintiffs have repeated that they are not seeking actual damages. In fact, Mr. Moore testified that Plaintiffs have suffered no monetary damages. *See* Deposition Testimony of Jeffrey Moore attached hereto as Exhibit J at p. 80, line 12 through p. 81, line 6. The reality is that the buried H-557 pipeline is within the area provided for in the 1960 ROW. Plaintiffs brought this action in an attempt to convince this Court to ignore the language of the 1960 RO. Plaintiffs offer no expert opinions and have not suffered any damages.

Plaintiffs brought this case out in retaliation for the actions and unrelated work of an affiliated company of Equitrans. *See* Exhibit J at p. 105, line 24 through p. 106, line 24. Plaintiffs are seeking ejectment and relocation of the H-557 pipeline to the extent it is not exactly in the area described in the 1960 ROW as well as any damages incurred to the property as a result of any relocation which may be ordered by this Court. It is obvious that Plaintiffs are seeking an ejectment order solely in hopes that Equitrans would pay a substantial settlement in lieu of actually relocating the H-557 pipeline.

Summary judgment is appropriate because: (1) the H-557 Pipeline was laid and replaced properly; (2) Plaintiffs' claims are time barred; (3) Equitrans is entitled to a prescriptive easement; (4) Plaintiffs have suffered no damages; and (5) ejectment is not a proper remedy in this case. Finally, should this Court disagree with all of the above, Equitrans respectfully

requests this Court to permit it to amend the pleadings in this case to assert a claim for condemnation under the Natural Gas Act.

### A.     The H-557 Pipeline was laid and replaced properly.

The H-557 Pipeline was originally installed in the early 1960s.  With respect to the Moore property, two sections were replaced in approximately 1995 or 1996.  The H-557 was properly installed and replaced in accordance with the 1960 ROW.  The 1960 ROW provides an approximate route rather than an exact location for the 16-inch pipeline:

> "The said pipeline to be laid approximately along the route laid and marked for same, from the land of Ronald Bailey on the South; thence N 0° 40' W 216 feet to the line of the lands of Billingsley Heirs on the Northwest.
>
> Also a right of way entering from the land of Billingsley Heirs on the Southwest; thence N 22° E 147 feet to a point; thence N 4° 30' E 49 feet to a point; thence N 19° 00' W 421 feet to the line of the land of the Billingsley heirs on the Northwest.
>
> Also a right of way entering from the land of Geo. Burline on the Southwest; thence N 16° 35' E 8 feet to a point; thence N 27° 55' E 300 feet to a point; thence N 9° 47' E 268 feet to a point; thence N 17°  30' E 202 feet to the line of the lands of John Moore, et al, on the North.
>
> Total distance: 1,611 more or less."

*See* Exhibit A.  Plaintiffs' position in this case is that the above description mandates that the pipeline be laid *exactly* along the line as described.  While there is a metes and bounds description in the 1960 ROW, the plain language of the granting instrument identifies the metes and bounds description as an *approximate* route.  Plaintiffs have admitted that there is a difference between an exact line and an approximate route:

> Q.     I understand that.  But you also understand that approximate doesn't mean exact, don't you.
>
> A.     Yes, I know the difference between approximate and exact.
>
> Q.     Exact means if there's a line from point A to point B, you go from point A to point B, correct?

A.    Yes.

Q.    And approximate means if there is a point A and a point B, it doesn't have to follow that exact line, but approximately, correct, not exactly?

A.    Rephrase your question and take out the words doesn't have to follow.

Q.    There's a difference between an exact line and approximate route, correct?

A.    I know the definition of the two words, yes.

*See* Exhibit J at p. 31, line 21 through p. 32, line 13.  Plaintiffs' position that the H-557 pipeline must be located in an *exact* location ignores their own admission as to the difference of the word "*approximate*" and the word "*exact*."  This Court must consider this case by applying the clear meaning to the plain language of the words used in the 1960 ROW, not words that Plaintiffs are attempting to have this Court add into the instrument.  It is unambiguous that the pipeline route was to be laid along an *approximate* route rather than an *exact* line.

Plaintiffs have not provided a survey in this case.  Nor have Plaintiffs obtained any independent location of the buried H-557 pipeline.  On the other hand, Equitrans located (in the presence of Mr. Moore and Plaintiffs' counsel) the pipeline and obtained an independent survey. The survey depicts the location of the original approximate right-of-way, the located pipeline in its current location and relevant boundary lines.  *See* Ehxibit H.  Plaintiffs have agreed to utilize the survey performed on behalf of Equitrans by Smith Land Surveying.  Therefore, the only evidence before the Court regarding the 1960s location and the replaced sections is that which has been provided by Equitrans.

The undisputed evidence as set forth in the survey and report is that the overwhelming majority of the 1,611 foot right-of-way is in the *exact* location as described in the 1960 ROW. There are small sections of the pipeline which are arguably just off of the *exact* metes and

bounds description of contained within the 1960 ROW, but are still within the *approximate* route

provided for in the 1960 ROW.  Because of this, Vic Moyers, PS of Smith Land Surveying has

opined that the subject pipeline is in its correct location.  *See* Report of Survey attached hereto as

Exhibit I.

Even if the Court were to consider Plaintiffs' arguments that the replaced sections of the

pipeline are not *exactly* in the described locations, which the 1960 ROW does not require,

summary judgment is still appropriate because the The 1960 ROW also provides:

> "…that the Grantee [Equitrans, as successor] shall have the right to make such changes
> in the location of said right of way as from time to time may be necessary or advisable
> owing to road constructions or relocations, ground slips or other causes beyond the
> control of the Grantee…."

*See* Exhibit A.

The 1960 ROW provides that the H-557 pipeline be laid in an approximate location.

Much of the pipeline is in the exact location and the remaining sections are approximately in the

exact location. Equitrans' expert opined that the H-557 pipeline is in its correct location.  There

is no genuine issue of material fact as to whether the H-557 pipeline is in its correct location.

Accordingly, there can be no trespass or breach of contract.  Therefore, the evidence in this case

is that the H-557 pipeline is in its correct location and Equitrans is entitled to summary judgment

and an order dismissing Plaintiffs' Complaint.

**B.      Plaintiffs' claims are time-barred.**

The Court does not even need to consider whether the H-557 was initially installed or

later replaced in the appropriate location because Plaintiffs claims are barred by the applicable

statute of limitations.  Plaintiffs have pled both tort and contract and a full analysis of whether a

two-year statute of limitation (tort) or a ten-year statute of limitations (breach of contract, entry

to recover upon lands) applies is not warranted because the Complaint was filed fifteen years

following the replacement of the pipeline.  The pipeline was replaced in approximately 1995-96 and Plaintiffs were clearly aware of activities in the replacement of the pipeline.  The lawsuit was filed in 2012.

Plaintiffs obtained the property from Mr. Moore's father.  Mr. Moore testified that he read the 1960 ROW prior to the replacement being done in 1995 or 1996:

> Q.    Now you were telling me your understanding of the right-of-way agreement from your father prior to the replacement in 1995 or '96 and you said at some point in time before that you had read Deposition Exhibit No. 1, the right-of-way agreement.
>
> A.    Yes.

*See* Exhibit J at p. 24, lines 6-12.

> Q.    Prior to 1995 or '96, you had an understanding where the pipeline should have been laid based upon the right-of-way agreement; is that correct?
>
> A.    Prior to '95 and '96 was when the line was replaced.  I would have had an understand (sic) by reading this (indicating)[1960 ROW] and knowing where the boundary lines exist.

*See* Exhibit J at p. 41, lines 6-13.  There can be no dispute that Mr. Moore had knowledge of where the pipeline *should* have been located.  Mr. Moore testified that he knew when the pipeline was replaced:

> Q.    You're talking about 1995 and '96, correct?
>
> A.    When it was replaced.  I'm aware of when the line was replaced.

*See* Exhibit J at p. 25, lines 16-18.  Mr. Moore also testified that he knew what sections were replaced:

> Q.    Looking back, you know they replaced at least sections of the line correct?
>
> A.    I know exactly how far they went.  Where they stopped at anyhow.

*See* Exhibit J at p. 45, lines 17-20.  Mr. Moore proceeded to describe the nature and location of

the sections being replaced.  *See* Exhibit J at p. 45-49.  Mr. Moore testified that he gained this

knowledge because he walked to the area to observe the construction related to the replacement:

> A.      … So did I walk exactly up along the line?  I would say no.  I remember walking
> in and looking – walking up on the hill and looking at the construction.
>
> Q.      That the question I want to know.  You walked in or close to the clear-cut area to
> see where the construction was going on; is that fair?
>
> A.      The disturbance of my ground or the construction, yes.
>
> Q.      And that would have been in '95 or '96?
>
> A.      Yes.

*See* Exhibit J at p. 45, lines 17-20.  Mr. Moore also testified that he returned to the area following

the construction:

> Q.      At some point in time, they got finished with the replacement, correct?
>
> A.      Yes.
>
> Q.      Did you go up to the clear-cut area and look where they replaced the pipe?
>
> A.      I would have taken my fence down, so I assume I would have, yes.
>
> Q.      Being observant of your property –
>
> A.      Yeah.  But to recall me going on that hill, I can't recall the time that I did.  But
> somebody took the fence down and it would have been me.
>
> Q.      Do you know about how long after the pipeline was finished that you went back
> up to the clear-cut area to look at it?
>
> A.      No.
>
> Q.      Do you ever recall seeing the freshly disturbed dirt I'll call it from the pipeline
> replacement after it was done.
>
> A.      Yes, I recall the area.  I can't recall it.  I'll say I assumed I recalled it because of
> my awareness.

But I can't picture being up there and the ground specific date that I did that. But I would have – yeah, I would have it. I would have seen it mulched because I took my fence down. Yes, I would have seen that.

*See* Exhibit J at p. 55 line 16 through p. 56 line 18. Although Mr. Moore couldn't recall the exact date he went back up to the construction site, it was obviously shortly thereafter and likely sometime in 1997. Mr. Moore admitted that to the extent there was a breach of contract, that it would have happened prior to 1997:

Q.    I'm not asking you what makes you think that now. But to the extent there was a breach, it would have happened prior to 1997.

A.    Yes.

*See* Exhibit J at p. 83, lines 14-17.

This Court does not need to consider what Plaintiffs' predecessor-in-title (Mr. Moore's father) may have known going back to 1960. This Court does not need to even consider what Plaintiffs should have known because Mr. Moore *actually knew* what was being replaced, where it was being replaced, when it was being replaced all while it was being replaced. Mr. Moore knew this in 1996 and confirmed it again sometime shortly thereafter. Plaintiffs waited until 2012 to file their Complaint for causes of actions which accrued at least as late as 1996 or 1997. Any potential statute of limitations ran long before the filing of the Complaint. Therefore, the claims are time-barred and summary judgment is appropriate.

**C.    If the pipeline is not in the agreed upon location, Equitrans is entitled to a prescriptive easement.**

The location of the H-557 meets the plain language of the 1960 ROW. Equitrans has shown that the H-557 pipeline is in its correct location through expert testimony. Nevertheless, Plaintiffs argue, without real support, that there are sections of the pipeline that are not laid pursuant to the 1960 ROW. Of course, as stated above, this argument is based upon language

11

that is contradictory to the plain language of the instrument. Nevertheless, to the extent this Court would determine that any portion of the H-557 pipeline is outside the 1960 ROW, Equitrans is entitled to summary judgment on its counterclaim for prescriptive easement.

In order to have a valid claim of a prescriptive easement the party claiming the easement must show the following elements: (1) the use of land was adverse; (2) the adverse use was continuous and uninterrupted for 10 years; (3) the adverse use was known to the actual landowner, or so open, notorious and visible that a reasonable land owner would have notice; and (4) the reasonably identified starting point, ending point, line, and width of the land adversely used, and the manner for which the land was adversely used. *O'Dell v. Stegall,* 226 W.Va. 590, at 608, 703 S.E.2d 561, at 579 (2010). Further, in order to show an actual prescriptive easement, the party claiming the easement must establish all the factors of the easement by clear and convincing evidence. Syllabus Point 2 of *Beckley Nat. Exchange v. Lilly*, 116 W.Va. 608, 182 S.E. 767 (1935).

The Supreme Court of Appeals of West Virginia has defined 'adverse' as generally the "use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one." *O'Dell v. Stegall*, 226 W.Va. at 611, 703 S.E.2d 582 (2010) (citing *Malnati v. Ramstead,* 50 Wash.2d 105, 108, 309P.2d 754 (1957). Adverse possession of the land by claimant can be summed as an instance when the claimant asserts individual right to the land rather than merely using the land while recognizing that they are subordinate in title to the actual land owner. Additionally, the Court has said that if the claimant has otherwise proven the remaining elements of the prescriptive easement doctrine then the Court would assume that the claimant had adversely possessed the land unless the landowner could prove otherwise. *Id.* at

610.  If Equitrans can show that the remaining elements, it would be up to the Plaintiff to show that Equitrans' use has not been adverse.

In order for a claimant to have continuous and uninterrupted adverse use of the land, they must show that their use was consistent to which the claimant is currently using the land, or use for which they are claiming the easement, as well as uninterrupted by parties unrelated to the claimant for no less than ten (10) years. *Id.* at 616.  Equitrans has been continuously using the land since it given the right to the lay pipeline on the Moore's land in 1960.  Equitrans used  the land continuously and uninterrupted since 1960.  The only actions affecting the pipeline since that time took place in approximately 1995-96 when the pipeline was replaced in the same location.  Therefore, Equitrans has satisfied the continuous and uninterrupted element because the land has been used uninterrupted from 1960 to the present or at least from 1995-96 to present.

A landowner must be aware that his land is being used adversely, or use must be so open and notorious that a reasonable land owner would have notice. *Id.* at 618.  Equitrans has used the land in question land since 1960 when it constructed its pipeline.  The pipeline was constructed in 1960 when Mr. Moore's parents and predecessors owned the property.  They obviously knew exactly where the hole was dug and the pipe was laid.  Mr. Moore admitted he knew where the pipeline was supposed to be and where it was being replaced in 1995 or 1996.  *See* Exhibit J at p. 41, lines 6-13; p. 45, lines 17-20; and p. 55 line 16  through p. 56 line 18.  To the extent the pipeline was not where it was supposed to be, Plaintiffs had actual notice of the adverse use of their land by Defendant.  It can only be said that this use was open and notorious.

The final element to satisfy a prescriptive easement is that there is a reasonably identified starting point, ending point, line, and width of the land adversely used, and the manner for which

the land was adversely used. *Id.* at 620. "The precise location of an easement sought to be established should be described either by metes and bounds or in some other definite way." Syllabus Point 1, in part, *Nutter v. Kerby,* 120 W.Va. 532, 199 S.E.455 (1938). Additionally, the use of the easement, if granted, cannot exceed the scope of use during the 10 years that gave rise to the easement. *O'Dell v. Stegall,* 226 W.Va. at 619, 703 S.E.2d at 591. Simply put, an easement given in the current situation can only be given if the claimant were to use the land to lay a pipeline for the transportation of natural gas through the pipeline. There is a definite identifiable starting point, ending point, line and width measurement that can be determined. Also, Equitrans intends to continue to the use the land to transport natural gas through the pipeline that was constructed and buried in 1960 and replaced in approximately 1995-96.

With respect to the replacement sections, Mr. Moore testified that he knew where Equitrans started and ended:

Q.      And you saw where the replacement started, correct?

A.      It started way down on 218 is where it started where it entered my property at, yes.

Q.      Let me rephrase.  You saw where it started on .1 [point 1] on Deposition Exhibit 2 [survey]; is that correct?

A.      I seen where the – I would have knowed (sic) where it entered my property.  I'll put it that a way.  I would have known where it entered my property, yes.

Q.      And you knew, because you told me you knew, where the section stopped, correct?

A.      Yeah.

*See* Exhibit J at p. 56, line 19 through p. 57, line 7.  As stated in Section B above, Mr. Moore was clearly aware of the location of the pipeline.

14

If any portion of the pipeline is not in its intended location, Equitrans is entitled to a prescriptive easement by law to use the land for the sole purpose of laying a pipeline and transporting natural gas as it has done for more than 50 years. To the extent any section is outside of the 1960 ROW, Equitrans has adversely possessed it. Plaintiff actually knew, or should have known, about the position of the pipeline. To the extent there is any argument that Mr. Moore was unaware of the location of every section of the H-557 pipeline, Plaintiffs' predecessor (Mr. Moore's father) should have known of the exact location and use of the property because he was present during the original construction of the pipeline. In fact, Mr. Moore (only 11 years old at the time) testified that he helped his father haul logs away the site. *See* Exhibit J at p. 13. Mr. Moore testified that his father would have been very observant over the project. *See* Exhibit J at p. 29.

Equitran's use of the land was continuous and uninterrupted for at least ten years prior to this action, and there is an identifiable starting and ending point, line and width of measurement that can be accurately determined, and use of the land will be the same as it was during the time of prescription. To the extent the pipeline at issue is not in intended location there is no genuine issue of material fact that Equitrans is entitled to summary judgment on its claim for a prescriptive easement.

### D. Plaintiffs have suffered no damages and ejectment is not a reasonable remedy.

Plaintiffs have offered no proof of any damages resulting from an alleged trespass or breach of contract. In fact, Plaintiffs concede they have suffered no monetary damage (regardless of whether the H-557 pipeline is in the correct location).

Q.     So as you sit here today, you are not or have not been out any money damage, $1, for this pipeline being under your property regardless of whether it's trespassing or not; am I correct?

15

A.      That now [not] what my lawsuit was about.  My lawsuit is about trespass.  So if I would have had damage resulting from it, then I should filed a lawsuit for damage.

Q.      You did file a lawsuit for damage for trespass.

A.      Damage if and when the line is put back in its correct place.

Q.      And that's what I'm trying to get to, sir.  And I'm not trying to argue with you.  I don't think you have been damaged for anything up to this point in time and I just want you to agree with me.  If you don't agree with me, I'm gonna ask you to explain it.

A.      All right.  I'm gonna agree with you.

*See* Exhibit J at p. 80, line 12 through p. 81, line 6.  When pressed for clarification, Mr. Moore confirmed that Plaintiffs were only seeking an ejectment and any damages related to the relocation of the pipeline if ejectment is ordered:

Q.      Look lawyers draft documents.  I get that.  Okay.  But he's representing your interest and I want to know your understanding of what your claim is, what you're going to go in and ask the jury to give you.  Okay.  And I'm entitled to know that today.

A.      I'm going to ask you to remove the line.

Q.      You're not asking us to pay you for anything else unless we cause damage in the removal –

A.      Right.

Q.      -- other than that; is that correct?

A.      Yes.

*See* Exhibit J at p. 85, line 20 through p. 86, line 8. Plaintiffs' counsel confirmed that the only damage claim being made relates to any damages incurred as a result of any removal or relocation of the pipeline after the requested ejectment:

Mr. Webb:      I drafted the complaint and I will tell you what I meant for that to mean.  If an ejectment order it (sic) is awarded and you have to remove the pipeline and relocate it, damages related to that ejectment.  Actually the physical relocation of the line.

*See* Exhibit J at p. 66, line 6-11.   Plaintiffs also admit they are not making a claim for any

dimunition of the value of Plaintiffs' property;

> Q.      That's my understanding.  I mean you haven't hired an appraiser to come out and
> value your property to tell me how it's devalued or increased value from this property
> [pipeline] being on there, so you're not making those claims, correct?

> A.      It's my property.  I'll determine what my claim is, but I'm not making that.

*See* Exhibit J at p. 81, lines 14-20.

Plaintiffs have admitted that they are not making a claim for any damage for trespass or

breach of contract.  The reason is that Plaintiffs have not been damaged.  The lack of damages is

compounded by the fact that in the same general area as the right-of-way at issue, there are two

additional buried natural gas pipelines.  *See* Exhibit J at p. 14.   Plaintiffs have not been damaged

nor has the property been devalued.  Without damages, Plaintiffs' cannot maintain their claims

for trespass or breach of contract.  Accordingly, this Court should enter summary judgment in

favor of Equitrans.

### E.      Ejectment is not a proper remedy on the merits.

Plaintiffs are asking this Court to ignore the plain language of the 1960 ROW and order

Equitrans to dig up a high pressure 16" natural gas transmission line that has been in place over

fifty years, dig new holes in certain places right beside the current location and place the pipeline

in the new hole.  This is absurd.  It is obvious that Plaintiffs are seeking an ejectment order solely

in hopes that Equitrans would pay a substantial settlement in lieu of actually relocating the H-

557 pipeline.

Plaintiffs brought this case in retaliation for unrelated work of an affiliated company of

Equitrans. Mr. Moore admitted that the reason he began to focus on the pipeline issue is because

of the way EQT Production Company allegedly treated him during the construction and drilling

of Marcellus Shale wells. *See* Exhibit J at p. 103, lines 1-15. When asked specifically about it, Mr. Moore testified that this case the drilling of the wells had "everything to do with the lawsuit, but will have no monetary value because of the Marcellus well" and while Mr. Moore wouldn't use the word "payback" he admitted that he finally did something about the pipeline to put a "Band-Aid" on the wounds caused by the drilling of the wells. See Exhibit J at p. 105, line 24 through p. 106, line 24.

Revenge is not a reason to file a lawsuit and this lawsuit is against a different company than the company that Plaintiffs' true complaint. Plaintiffs have no actual damage. Their property has not been devalued. Ejectment could only be considered if there is trespass or breach of contract. As stated above, there has been no trespass or breach of contract. Moreover, to the extent there ever was, the statute of limitations expired at least five years ago and Equitrans would have acquired a prescriptive easement. Plaintiffs truly do not want the H-557 pipeline moved. They hope this Court will ignore the undisputed evidence and order an ejectment.

Ejectment is not an appropriate remedy on the merits of this action. Therefore, the Court should grant summary judgment in favor of Equitrans.

F.     **Ejectment is not a property remedy because Equitrans has the right to condemn the property at issue pursuant to Natural Gas Act.**

In addition to the fact set forth above that Plaintiffs cannot meet or maintain the merits of any of their claims to warrant ejectment, Equitrans has the right to condemn the property in dispute pursuant to 15 U.S.C. § 717, *et seq*. (the "Natural Gas Act") Natural Gas Act which makes ejectment an inappropriate remedy. In order to condemn under the Natural Gas Act, Equitrans must establish three elements: "(a) it is a holder of a certificate of public convenience and necessity; (b) it needs to acquire an easement, right-of-way, land or other property necessary

18

to the operation of its pipeline system; and (c) it has been unable to acquire the necessary property interests from the owner." 15 U.S.C. 717(h).

In this case, Equitrans is a holder of a certificate of public convenience and necessity. *See* Exhibits B, C and D. Equitrans has yet to file an action for condemnation under the Natural Gas Act because, as stated herein, it has a valid easement for the current location of the pipeline. If this Court were to disagree or perhaps a jury were to find otherwise, then Equitrans would need to acquire an easement or right-of-way for the operation of the H-557 pipeline. With respect to the third element, Equitrans attempted to mediate this matter with Plaintiffs and has been unable to reasonably resolve this matter. Equitrans can easily meet the elements necessary to warrant condemnation. The only remaining matter for this Court to consider would be the amount of just compensation which might be paid to Plaintiffs for the condemnation. With respect to a partial taking, the proper measure of damages is dimunition of value. *See Hardy Storage Co., LLC v. Property Interests Necessary to Conduct Storage Operations in the Oriskany Sandstone Subterranean Geological Formation*, No. 2:07CV5, 2009 WL 689054 at *5 (N.D. W.Va. Mar. 9, 2009). And, in this particular instance, Plaintiffs have admitted there has been no dimunition of value. *See* Exhibit J at p. 81, lines 14-20.

Therefore, to the extent that this Court is inclined to deny Equitrans' motion for summary judgment, Equitrans asks this Court to grant it leave to file a counterclaim for condemnation.[4] In any event, ejectment is not a remedy available to Plaintiffs for the H-557 pipeline because of the right to condemn afforded to Equitrans under the Natural Gas Act and this Court should enter summary judgment as to Plaintiffs' claim for ejectment.

---

[4] Equitrans could file a separate action seeking condemnation, but states that the interest of judicial economy warrant the same to be considered in this case should this Court decide to deny Equitrans the relief otherwise requested in the Motion and determine a condemnation action is necessary.

## CONCLUSION

The H-557 Pipeline was laid and replaced properly and the same is supported by the plain language of the 1960 ROW as well as expert testimony.  Alternatively, Plaintiffs' claims are time barred because Plaintiffs failed to take any action for fifteen year after they actually knew of the location of the buried pipeline.  As an additional alternative claim, there is clear and convincing evidence that Equitrans has met the requirements for a prescriptive easement.

Plaintiffs have admitted they have suffered no damages and confirmed they are not making a damages claim (other than any damage which may be incurred as a result of a relocation of the pipeline).  Ejectment simply is an improper remedy:  (1) there has been no trespass or breach of contract; (2) the statute of limitations has run; or (3) Equitrans has acquired a prescriptive easement.  Ejectment is further unwarranted because Equitrans is afforded the right to condemn the property pursuant to the Natural Gas Act.  If the Court is inclined to consider whether a condemnation action is necessary, Equitrans asks this Court to grant it leave to amend its pleadings to assert the same in this action.

For the reasons set forth herein, no genuine issue of material fact exists as to each and every one of Plaintiffs' claims.  Therefore, this Court should enter summary judgment in favor of Equitrans and dismiss all of Plaintiffs' claims as a matter of law.

**WHEREFORE,** Equitrans, L.P., respectfully requests this Honorable Court to grant summary judgment in its favor and to award any further and general relief as this Court deems appropriate, including reasonable attorney's fees and costs associated in defending this action.

Respectfully Submitted,

EQUITRANS, L.P.,

By Counsel

 /s/ Stephen E. Hastings   12/18/13
Stephen E. Hastings, Esquire (#9065)
EQT Corporation
1710 Pennsylvania Avenue
Charleston, WV 25302
Phone: 304-348-7614
Fax: 304-344-0363
shastings@eqt.com
-and-
David K. Hendrickson, Esquire (#1678)
HENDRICKSON & LONG, PLLC
P.O. Box 11070
Charleston, West Virginia 25339
Telephone: 304-346-5500
Fax:    304-346-5515
daveh@handl.com
*Counsel for Equitrans, L.P.*

21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFERY J. MOORE and
SANDRA J. MOORE,

        Plaintiffs,

v.                                    Civil Action No. 1:12-cv-00123
                                      (Hon. Frederick P. Stamp, Jr.)

EQUITRANS, L.P.,
a Pennsylvania Limited Partnership,

        Defendant.

## CERTIFICATE OF SERVICE

    I, Stephen E. Hastings, counsel for Equitrans, L.P., do hereby certify that on the 18th day of December, 2013, that I served a true and exact copy of the foregoing **"MEMORANDUM OF LAW IN SUPPORT OF EQUITRANS L.P.'s MOTION FOR SUMMARY JUDGMENT"** by filing the same with the Court's CM/ECF system which will provide notification of the filing of the same to the following counsel of record:

        Kenneth E. Webb, Jr., Esquire
        Patrick C. Timothy, Esquire
        **Bowles Rice McDavid Graff & Love, LLP**
        P.O. Box 1386
        Charleston, West Virginia 25325-1386
        Telephone: 304-347-1100
        Fax:  304-347-1756
        kwebb@bowlesrice.com
        ptimony@bowlesrice.com
        *Counsel for Plaintiffs*

        */s/ Stephen E. Hastings   12/18/13*
        **Stephen E. Hastings (#9065)**

FILED

MAR 25 2015

IN THE UNITED STATES DISTRICT COURT   U.S. DISTRICT COURT-WVND
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA   CLARKSBURG, WV 26301

JEFFREY J. MOORE and
SANDRA J. MOORE,

      Plaintiffs,

v.                                    Civil Action No. 1:12CV123
                                                (STAMP)
EQUITRANS, L.P.,
a Pennsylvania limited
partnership,

      Defendant.

**EXHIBIT**

**16**

<u>**V E R D I C T**</u>

1.   Do you find by a preponderance of the evidence that
Equitrans, L.P.'s <u>initial</u> placement of Pipeline H-557, at or near
point 4 on the survey, violated the terms of the 1960 right-of-way
agreement or constituted a trespass?

Yes ☑   No ☐

Proceed to Question 2.

2.   Do you find by a preponderance of the evidence that
Equitrans, L.P.'s <u>replacement</u> of Pipeline H-557, at or near point
1 to point 3 on the survey, violated the terms of the 1960 right-
of-way agreement or constituted a trespass?

Yes ☑   No ☐

If you answered "Yes" to <u>either</u> Question 1 or 2, proceed to
Question 3.  If you answered "No" to <u>both</u> Questions 1 and 2, have
your foreperson sign and date the verdict form and tell the Court
Security Officer you are ready to report.  This will constitute a
verdict for defendant Equitrans, L.P.

3.    Do you find by a preponderance of the evidence that the plaintiffs filed their breach of contract claim within ten years after they knew, or should have known, of the breach of the right-of-way agreement cause of action, described in Questions 1 and 2?

      A. *Initial Placement of the Pipeline* (From Question 1)

          ☑ Yes
          ☐ No

      B. *Relocation of the Pipeline* (From Question 2)

          ☑ Yes
          ☐ No

Proceed to Question 4.


4.    Do you find by a preponderance of the evidence that the plaintiffs filed their trespass cause of action within two years after they knew, or should have known, of the trespass cause of action?

      A. *Initial Placement of the Pipeline* (From Question 1)

          ☑ Yes
          ☐ No

      B. *Relocation of the Pipeline* (From Question 2)

          ☑ Yes
          ☐ No

Please have your foreperson sign and date the verdict form and tell the Court Security Officer you are ready to report.

3/25/15
DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFREY J. MOORE and
SANDRA J. MOORE,

      Plaintiffs,

v.

EQUITRANS, L.P.,
a Pennsylvania limited
partnership,

      Defendant.

Civil Action No. 1:12CV123
(STAMP)

```
┌─────────────────┐
│    EXHIBIT      │
│      17         │
└─────────────────┘
```

## JUDGMENT

This action came to trial on March 24, 2015, before this Court and a jury, the undersigned judge, presiding. The issues have been duly tried, and the jury on March 25, 2015, has rendered a verdict, accurately set forth in this judgment.

On March 24, 2015, at the conclusion of the defendant's evidence and pursuant to a prior stipulation of the parties, the parties orally moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Prior to this Court's ruling, the defendant withdrew its counterclaim against the plaintiffs for prescriptive easement. With this concession by the defendant, this Court, upon consideration of these motions, DENIED the parties' cross-motions for judgment as a matter of law.

On March 25, 2015, the jury, having heard all the evidence, the closing arguments of counsel, and the instructions of this Court, retired to the jury room to consider their verdict. Thereafter, the defendant, under Rule 59 of the Federal Rules of

Civil Procedure, moved for a mistrial, which this Court DENIED.  On

the afternoon of March 25, 2015, the jury returned to the Court and

upon their oaths did say:


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFREY J. MOORE and
SANDRA J. MOORE,

          Plaintiffs,

v.                                    Civil Action No. 1:12CV123
                                                      (STAMP)
EQUITRANS, L.P.,
a Pennsylvania limited
partnership,

          Defendant.

### V E R D I C T

1.  Do you find by a preponderance of the evidence that

Equitrans, L.P.'s <u>initial</u> placement of Pipeline H-557, at or near

point 4 on the survey, violated the terms of the 1960 right-of-way

agreement or constituted a trespass?

Yes ✓    No ☐

Proceed to Question 2.


2.  Do you find by a preponderance of the evidence that

Equitrans, L.P.'s <u>replacement</u> of Pipeline H-557, at or near point

1 to point 3 on the survey, violated the terms of the 1960 right-

of-way agreement or constituted a trespass?

Yes ✓    No ☐

If you answered "Yes" to <u>either</u> Question 1 or 2, proceed to Question 3.  If you answered "No" to <u>both</u> Questions 1 and 2, have your foreperson sign and date the verdict form and tell the Court Security Officer you are ready to report.  This will constitute a verdict for defendant Equitrans, L.P.

3.   Do you find by a preponderance of the evidence that the plaintiffs filed their breach of contract claim within ten years after they knew, or should have known, of the breach of the right-of-way agreement cause of action, described in Questions 1 and 2?

A. *Initial Placement of the Pipeline* (From Question 1)

✓ Yes
☐ No

B. *Relocation of the Pipeline* (From Question 2)

✓ Yes
☐ No

Proceed to Question 4.

4.   Do you find by a preponderance of the evidence that the plaintiffs filed their trespass cause of action within two years after they knew, or should have known, of the trespass cause of action?

A. *Initial Placement of the Pipeline* (From Question 1)

✓ Yes
☐ No

B. *Relocation of the Pipeline* (From Question 2)

✓ Yes
☐ No

Please have your foreperson sign and date the verdict form and tell the Court Security Officer you are ready to report.

_____03/25/15_____    _____
DATE                      FOREPERSON


This Court ascertained that this was the true and correct verdict of the seven jurors. The verdict was received and accepted by this Court and the jury was discharged from further consideration of this case.

Therefore, this Court hereby ORDERS, ADJUDGES, and DECREES the following:

1.   Equitrans, L.P.'s ("Equitrans") initial placement of Pipeline H-557 constituted either (A) a breach of the January 27, 1960 Pipe Line Right of Way Grant of John R. And Dorothy G. Moore ("Moore Pipe Line Right of Way Grant") or (B) a trespass at or near point 4 of the survey.[1]

2.   Equitrans' replacement of Pipeline H-557 either (A) breached the Moore Pipe Line Right of Way Grant or (B) constituted a trespass at or near points 1 through 3 of the Survey.

3.   The plaintiffs timely filed their breach of contract claim against Equitrans within ten years from when the plaintiffs knew, or should have known, of Equitrans' breach of the Moore Pipe Line Right of Way Grant through Equitrans' initial placement of Pipeline H-557 at or near point 4 of the Survey and relocation of Pipeline H-557 at or near points 1 through 3 of the Survey.

_____

[1]The Survey was entered as joint Exhibit 8 during the testimony of Revelee Henry Allen.

4.  The plaintiffs timely filed their trespass claim against Equitrans within two years from when the plaintiffs knew, or should have known, of Equitrans' trespass through its initial placement of Pipeline H-557 at or near point 4 of the Survey and relocation of Pipeline H-557 at or near points 1 through 3 of the Survey.

5.  The plaintiffs' complaint requested the equitable remedy of ejectment pursuant to West Virginia Code § 55-4-1, et seq.

6.  "Ejectment is an action for the protection of one with good legal title to the land who is entitled to immediate possession." Marthens v. B & O R. Co., 289 S.E.2d 706, 712 (W. Va. 1982).

7.  Ejectment is available as a "proper equitable remedy, where it is possible that the plaintiff could recover a money judgment, but that he would not be afforded complete relief by such recovery." Moore v. Equitrans, L.P., Civ. Action No. 1:12cv123, 2014 WL 4802039 at *15 (N.D. W. Va. Sept. 23, 2014) (citing Tate v. United Fuel Gas Co., 71 S.E.2d 65, 70 (1952)).

8.  By a preponderance of the evidence and as reflected in Questions 1 and 2 of the Verdict Form, the jury found that Equitrans either breached the Moore Pipeline Right of Way Grant or trespassed on the plaintiffs' property at or near points 1 to 3 and at or near points 4 on the Survey. The jury made no specific finding of whether a breach of the Moore Pipeline Right of Way Grant or trespass by Equitrans occurred.

9.  The jury provided no findings that the plaintiffs are entitled to ejectment as a remedy rather than a money judgment.

This Court, too, has yet to find ejectment as an equitable remedy rather than money judgment. Any conclusions as to the properness of ejectment have yet to be determined, as evidence has not been heard that a money judgment would not afford complete relief in lieu of ejectment.

10. This Court has previously recognized that, if the plaintiffs prevailed in this matter, Equitrans may "be able to raise condemnation if this Court found that the defendant trespassed, and the only relief available was to eject the defendant from the plaintiffs' property." Moore, 2014 WL 4802039 at *16.

This Court ORDERS, ADJUDGES, and DECREES that the placement of Pipeline H-557 at or near points 1 to 3 and at or near point 4 on the Survey constituted either a breach of the Moore Pipe Line Right of Way Grant or a trespass.

The objections and exceptions of the parties are noted.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:     May 6, 2015


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EXHIBIT
18

JEFFREY J. MOORE and
SANDRA J. MOORE,

      Plaintiffs,

v.                          Civil Action No. 1:12CV123
                                       (STAMP)

EQUITRANS, L.P.,
a Pennsylvania limited
partnership,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION TO STAY,
### GRANTING AS FRAMED DEFENDANT'S MOTION TO SCHEDULE
### STATUS AND SCHEDULING CONFERENCE AND
### SCHEDULING STATUS AND SCHEDULING CONFERENCE
### AND HEARING ON BOND AMOUNT

I.  Procedural History

The plaintiffs, Jeffrey J. Moore and Sandra J. Moore ("the Moores"), initially brought this action in the Circuit Court of Marion County, West Virginia, against the defendant, Equitrans, L.P. ("Equitrans"). The defendant subsequently removed this action to this Court based on diversity jurisdiction. This case was tried by jury and the jury, by its verdict, found in favor of the plaintiffs, specifically that the defendant either committed a trespass upon the plaintiffs' property or breached its contract with the plaintiffs.

This verdict led the defendant to file a motion to stay execution and motion for status and scheduling conference. Those motions are now fully briefed. Further, both parties have

submitted their version of proposed judgments and the parties have made objections thereto. Prior to entering this order, this Court has entered a separate judgment.

## II.  Facts

At trial, the plaintiffs alleged that predecessors of the defendant and the plaintiffs entered into a valid right-of-way agreement to place a 16-inch pipeline (what the parties call the "H-557 pipeline") on the plaintiffs' property.  However, the plaintiffs claimed that the defendant breached that contract and trespassed by constructing approximately 700 feet of pipeline off of the designated route in the right-of-way agreement.  The jury found that the defendant had either breached the right-of-way agreement or trespassed.  By way of relief, the plaintiffs now seek an ejectment order for the removal of the pipeline from their property.

The defendant is now seeking a stay so that it has the opportunity to file a condemnation action relating to the subject property pursuant to the Natural Gas Act.  Natural Gas Act, §§ 1 et seq.; 15 U.S.C. §§ 717 et seq.  The defendant argues that all of the elements required to condemn are met as (1) the defendant is a holder of a certificate of public convenience and necessity, (2) the defendant now needs to acquire an easement right-of-way agreement to maintain the pipeline (given the jury's verdict), and (3) the defendant has been unable to acquire the right-of-way

agreement as the plaintiffs' current monetary demand for the property is unreasonable. The defendant thus argues that the plaintiffs' claim for ejectment will be mooted by a finding in the defendant's condemnation action and a stay should be granted. Further, the defendant argues that a stay will avoid irreparable injury to the defendant and the public at large. Finally, the defendant indicates that it believes that ejectment is not an appropriate remedy but that the Court need not make such a determination at this time.

In its separate motion for a status and scheduling conference, the defendant seeks a conference for the purpose of issuing an order staying the execution of judgment and to address any other issues regarding the stay.

In response, the plaintiffs argue that the defendant's motion to stay is premature because (1) a judgment requiring ejectment has not been entered and (2) the defendant has not posted or proposed security. Further, the plaintiffs assert that the defendant has failed to carry its burden of proving that a stay is required.

First, the plaintiffs contend that the defendant cannot show it would be successful in a condemnation action because (1) the defendant already has an express right-of-way agreement; (2) the defendant's wrongful conduct, failing to negotiate a right-of-way agreement with the plaintiffs and/or initiate condemnation proceedings before relocating the pipeline, defeats the defendant's

3

current claim of condemnation; and (3) the condemnation would violate the plaintiffs' due process rights. Next, the plaintiffs assert that there is no evidence of irreparable harm to the defendant that justifies a stay which is evidenced by the defendant's previous repairs done in 1996 that did not lead to significant service interruptions. Further, the plaintiffs contend that public policy favors following the law rather than trespassing and ejectment would not detrimentally affect service. Finally, the plaintiffs argue that a stay would unfairly harm the plaintiffs given the time and expense that has already been expended litigating this case.

As to the motion for a status and scheduling conference, the plaintiffs argue that a conference is unnecessary as it presumes that the Court will deny the motion to stay.

In its reply, the defendant asserts that the motion to stay is not premature as the jury found a breach of contract or trespass. Thus, the defendant argues that this Court may still consider the fact that monetary damages would provide the plaintiffs with complete relief and avoid the significant costs associated with ejectment. Further, the defendant asserts that a stay at this time is more efficient because a successful condemnation action would require the plaintiffs to forego any ejectment request. Additionally, the defendant contends that ejectment at this point would cause significant monetary losses and costs to the defendant

whereas the plaintiffs cannot show any unfair prejudice if the stay is granted. The defendant supports this contention by arguing that the portions of the pipeline that the plaintiffs are seeking to eject have been there since 1996, are buried underground, and do not obstruct or interfere with the plaintiffs' day-to-day activities.

For the reasons that follow, this Court finds that a judgement as framed should be entered, the defendant's motion to stay should be granted, and that the defendant's motion for a status and scheduling conference should be granted as framed.

### III. Applicable Law

It is well settled law that federal district courts possess the ability to, under their discretion, stay proceedings before them when the interests of equity so require. Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 125 (4th Cir. 1983). While no such power has been expressly promulgated by statute or by the Federal Rules of Civil Procedure, it is inherent within the courts' "general equity powers and in the efficient management of their dockets to grant relief." Id. Still, this power is not unfettered. A party seeking a stay must sustain the heavy burden of justifying it by showing that clear and convincing circumstances support a stay. Landis v. North American Co., 299 U.S. 248, 254-55 (1936). Further, the Court must weigh the equities when deciding whether to grant a stay, and must also consider the interests of

judicial economy and the desire for "the orderly and expeditious disposition of cases." See Link v. Wabash R. Co., 370 U.S. 626, 630 (1962).

## IV.  Discussion

A.  Applicability of Rule 62(b)

The plaintiffs argue that the defendant's motion is premature as a judgment has not been entered.  This Court, prior to entering this order, has entered a judgment.  As such, this argument is without merit.

The plaintiffs also assert that because the defendant has not posted or proposed security under Federal Rule of Civil Procedure 62(b), that its motion to stay should be denied.

Rule 62(b)(2) states the following:

> On appropriate terms for the opposing party's security, the court may stay the execution of a judgment--or any proceedings to enforce it--pending disposition of [a motion]. . . under Rule 52(b), to amend the findings or for additional findings . . . .

Further, "Rule 62 taken in its entirety, indicates a policy against any unsecured stay of execution after the expiration of the time for filing a motion for a new trial." Int'l Wood Processors v. Power Dry, Inc., 102 F.R.D. 212, 214 (D. S.C. 1984) (citing Marcelletti & Sons Construction Co. v. Millcreek Township Sewer Authority, 313 F. Supp. 920, 928 (W.D. Pa. 1970); Van Huss v. Landsberg, 262 F. Supp. 867, 870 (W.D. Mo. 1967).  Otherwise, "the burden is on [the] defendant[ ] to demonstrate affirmatively that

6

posting a bond or providing adequate security is impossible or impractical." Id. (citations omitted).

This Court finds that a bond must be posted if a stay is granted and before any stay can take effect. This Court also finds that the defendant's motion may still be granted despite the fact that the defendant has not posted a bond or provided adequate security. To the contrary, this Court finds that because the defendant has not demonstrated that posting a bond or providing security would be impossible or impractical, the defendant has conceded that a bond must be posted.

Moreover, this Court finds that it must construe the defendant's motion to stay as a dual motion for a stay and a motion pursuant to Rule 52(b), to amend findings or for additional findings. The defendant requests in its motion that additional findings be made regarding condemnation. Absent the plaintiff's arguments above as to prematurity, both parties agree that Rule 62(b) should apply and, accordingly, this Court finds that it does apply. This Court must therefore determine what an appropriate bond amount would be in this case if it determines that a stay should be granted within this Court's discretion.

B.    Interests of the Parties

The plaintiffs assert that the four-part test from Long v. Robinson, 432 F.2d 979 (4th Cir. 1970), is applicable in this case. However, that test is applicable when a party is seeking a stay of

the execution of a judgment while the case is being appealed.  <u>Id.</u> at 979.  The defendant is not seeking such a stay and is not, at this time, appealing the judgment.  Rather, the defendant is seeking a stay of the execution of a judgment while further proceedings and findings are made regarding the outcome of the jury trial, namely to allow the defendant to initiate an appropriate condemnation action regarding the subject property.  Thus, the four-part test set out in <u>Robinson</u> is not applicable to this case. Rather, this Court must consider and weigh the interests of the parties and the interest of judicial economy.  <u>Williford</u>, 715 F.2d at 125.

The defendant argues that it now meets the three requirements for condemnation under the Natural Gas Act: (1) it is a holder of a certificate of public convenience and necessity (the defendant provided proof through its exhibits); (2) it needs to acquire an easement, right-of-way, land, or other property necessary to the operation of its pipeline system; and (3) it has been unable to acquire those interest from the owner.[1]  This Court previously held

---

[1]Title 15, United States Code, Section 717f(h), "Right of eminent domain for construction of pipelines, etc." states as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the

that this issue would not arise until the defendant was found to have trespassed and/or breached the right-of-way agreement, as only then the defendant would no longer have an agreement with the plaintiffs and thus would qualify for condemnation under the Natural Gas Act. ECF No. 55. Given the judgment, this Court has now entered, this Court finds that its previous finding in its order denying the parties' motions for summary judgments now applies. This Court further made such a finding in light of the United States District Court for the District of Kansas's findings in Humphries v. Williams Natural Gas Co., 48 F. Supp. 2d 1276, 1282 (D. Kan. 1999), which the plaintiffs raise in their attempt to block the motion to stay. In considering that case, this Court still found that "the defendant would be unable to use § 717f(h) at this time, but would rather only be able to raise condemnation if this Court found that the defendant trespassed, and the only relief

---

location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h).

available was to eject the defendant from the plaintiffs' property." ECF No. 55 at 35. Thus, the defendant has an interest in pursuing condemnation proceedings given the judgment that has been entered.

Moreover, this Court has an interest in staying the judgment pending a finding regarding condemnation. This Court would be required to consider further questions regarding ejectment and would have to determine whether ejectment was a proper remedy versus monetary damages. Ejectment has been held to be a proper equitable remedy where it is possible that the plaintiff could recover a money judgment, but that he would not be afforded complete relief by such a recovery. Tate v. United Fuel Gas Co., 71 S.E.2d 65, 70 (W. Va. 1952). This finding was not made by the jury nor has such a finding been made by this Court. Thus, this Court would be required to consider such an issue whereas a condemnation proceeding may dispose of such an issue.

Further, the plaintiffs have not provided any reason why ejectment is the best remedy in this action. The plaintiffs only recently learned that the pipeline had been misplaced and had been living with the pipeline in its current location since 1996. Thus, this Court cannot find that the plaintiffs' interest in the remedy of ejectment outweighs the other interests cited above. Accordingly, this Court finds that a stay must be granted.

C.   Motion for a Status and Scheduling Conference

The defendant has also requested a status and scheduling conference regarding its motion to stay.  This Court finds that it would be beneficial to hold a hearing regarding the bond amount and the defendant's plans regarding condemnation proceedings.  As such, the defendant's motion for a status and scheduling conference will be granted as framed.

V.   Conclusion

Based on the analysis above, the defendant's motion to stay is GRANTED.  The judgment of this Court is therefore STAYED.  Further, the defendant's motion to schedule a status and scheduling conference is GRANTED AS FRAMED.

The parties are further DIRECTED to appear by counsel for a status and scheduling conference and hearing on bond amount on **May 18, 2015 at 11:15 a.m.** in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003.  The parties are DIRECTED to meet and confer prior to this hearing to discuss a proper bond amount and the defendant's plans regarding condemnation proceedings.  The stay will not take effect until a suitable bond has been given by the defendant.

Further, the Court will permit those out-of-town attorneys having their offices further than forty (40) miles from the Wheeling point of holding court to participate in the conference by telephone.  However, any such attorney shall advise the Court as

11

soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel of his or her appearance by telephone; (2) confer with other out-of-town attorneys to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys appearing by telephone; and (4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled conference. If the attorneys cannot reach agreement as to the initiator of the call, the Court will make that determination.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     May 6, 2015


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EQUITRANS, L.P.,
a Pennsylvania Limited Partnership,

        Plaintiff,

v.                                                    Civil Action No. 1:15-CV-106
                                                      (Hon. Frederick P. Stamp, Jr.)

.056 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA;
JEFFERY J. MOORE; and SANDRA J. MOORE,

        Defendants.

# Answer and Counterclaim on behalf of Defendants

      Defendants, .056 acres more or less of permanent easement located in Marion County, West Virginia, Jeffery J. Moore and Sandra J. Moore ("the Moores") (collectively "Defendants"), by counsel, respectfully respond to the Complaint in Condemnation filed by Plaintiff, Equitrans L.P. ("Equitrans"). Pursuant to Rule 71.1(e)(2)(A)-(B) of the Federal Rules of Civil Procedure, the Moores claim an ownership interest in the property pursuant to their deed dated June 10, 1990 ("Property"). [*See*, June 10, 1990, Deed, attached hereto as Ex. 1.]

### First Defense

      Equitrans' Complaint in Condemnation fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

### Second Defense

      In response to the specific averments and allegations in Equitrans' Complaint in Condemnation, Defendants state as follows:

1.      Paragraph 1 of Equitrans' Complaint in Condemnation states legal conclusions to which no responsive pleading is required.  To the extent an answer is deemed necessary, Defendants deny the allegations in paragraph 1 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

2.      Defendants admit only that the Moores possess an interest in the Property at issue.  Defendants deny the remaining allegations stated in Paragraph 2 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

3.      Defendants deny the allegations stated in Paragraph 3 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

4.      Defendants admit only that sections of Pipeline H-557 illegally remain on the Moores' Property.  Defendants deny the remaining allegations stated in Paragraph 4 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

5.      Defendants deny the allegations stated in Paragraph 5 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

6.      Defendants deny the allegations stated in Paragraph 6 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

7.      Defendants deny the allegations stated in Paragraph 7 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

8.      Paragraph 8 of Equitrans' Complaint in Condemnation states legal conclusions to which no responsive pleading is required.  To the extent an answer is deemed

necessary, Defendants deny the allegations in paragraph 8 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

9.     Paragraph 9 of Equitrans' Complaint in Condemnation states legal conclusions to which no responsive pleading is required.   To the extent an answer is deemed necessary, Defendants deny the allegations in paragraph 9 of Equitrans' Complaint in Condemnation and demand strict proof thereof.

### Third Defense

Equitrans' Complaint in Condemnation is barred, in whole or in part, based on Equitrans' failure to adhere to the prerequisites of the Natural Gas Act.

### Fourth Defense

Equitrans' Complaint in Condemnation is barred, in whole or in part, based on its misconduct with respect to the Moores and, therefore, no right exists to condemn under the Natural Gas Act.

### Fifth Defense

Equitrans' Complaint in Condemnation is barred, in whole or in part, based on Equitrans' failure to raise condemnation as a compulsory counterclaim in Civil Action No. 1:12-CV-123.

### Sixth Defense

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the doctrine of judicial estoppel.

3

**Seventh Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the United States Constitution, because Equitrans attempts to take for purely private reasons.

**Eighth Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the United States Constitution, because Equitrans attempts to take property in excess of any need.

**Ninth Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the doctrine of unclean hands.

**Tenth Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the doctrine of waiver.

**Eleventh Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, under the equitable doctrine of latches.

**Twelfth Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, pursuant to the applicable statute of limitations.

**Thirteenth Defense**

Equitrans' Complaint in Condemnation is barred, in whole or in part, based on Equitrans' failure to satisfactorily prove the amount-in-controversy to invoke federal jurisdiction under the Natural Gas Act.

**Fourteenth Defense**

Defendants reserve the right to plead and assert defenses listed under Rule 8(c) of the Federal Rules of Civil Procedure, or any other matter constituting an avoidance or affirmative defense, if such is warranted because of discovery or otherwise.

WHEREFORE, Defendants respectfully request that this Court issue an Order denying the relief requested by Equitrans, dismissing Equitrans' Complaint in Condemnation with prejudice, awarding the Moores their costs and expenses, including reasonable attorneys' fees in connection with this action, and any other further relief that this Court deems appropriate.

**DEFENDANTS DEMAND A JURY TRIAL.**

## Counterclaim against Equitrans, L.P.

1.      This is a Counterclaim against Plaintiff, Equitrans, L.P., for attorneys' fees and, alternatively, trespass damages.

**Parties**

2.      Defendants, the Moores, are West Virginia residents residing in Marion County, West Virginia.

3.      Equitrans, L.P. ("Equitrans") is a Pennsylvania limited partnership with its principal place of business located in Pittsburgh, Pennsylvania.

## **Jurisdiction**

4.      To the extent this Court possesses jurisdiction over Equitrans' Complaint in Condemnation, this Court also possesses jurisdiction over the Moores' Counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure.

5.      To the extent this Court does not possess jurisdiction over Equitrans' Complaint in Condemnation, this Court still has federal jurisdiction, because the Counterclaim involves complete diversity and claims are in excess of Seventy-Five Thousand Dollars ($75,000.00).  28 U.S.C. § 1332.

## **Operative Facts**

6.      Sometime prior to February 11, 1960, Equitable Gas Company planned to construct a 16-inch high pressure gas transmission line -- designated Line 557 ("Pipeline H-557").

7.      Equitable Gas Company chose the route for Pipeline H-557.

8.       The proposed location of Pipeline H-557 entered onto and crossed over property owned by John R. and Dorothy G. Moore ("Property").

9.      The proposed location of Pipeline H-557 entered onto and crossed over property owned by Geo. M and Mary P. Burline ("the Burlines").

10.     The proposed location of Pipeline H-557 entered onto and crossed over property owned by Keith and Bessie Coffman ("the Coffmans").

11.     On January 27, 1960, Equitable Gas Company obtained a Pipe Line Right of Way Grant from the Moores.

12.     On January 21, 1960, Equitable Gas Company obtained a Pipe Line Right of Way Grant from the Burlines.

13.     On January 22, 1960, Equitable Gas Company obtained a Pipe Line Right of Way Grant from the Coffmans.

14.     Sometime in 1960 or 1961, Equitable Gas Company constructed Pipeline H-557 off of the Burlines' Pipe Line Right of Way Grant and onto John R. and Dorothy G. Moores' Property.

15.     The Moores' Pipe Line Right of Way Grant did not give Equitable Gas Company the right to construct that portion of Pipeline H-557 meant for the Burlines' property onto the Moores' Property.

16.     No one from Equitable Gas Company asked John R. and Dorothy G. Moore for their permission to place that portion of Pipeline H-557 meant for the Burlines' property onto the Moores' Property.

17.     Equitrans is a successor to Equitable Gas Company.

18.     On or around June 10, 1990, the Moores acquired their property interest from John R. and Dorothy G. Moore.

19.     Sometime prior to 1994, Equitrans learned of corrosion and pitting in Pipeline H-557.

20.     Between 1995 and 1997, Equitrans undertook repair operations on Pipeline H-557 ("Equitrans' Pipeline Repair Operations").

21.     A portion of Equitrans' Pipeline Repair Operations occurred on the Moores' Property.

22.     During Equitrans' Pipeline Repair Operations, Equitrans moved and/or relocated Pipeline H-557 on the Moores' Property.

23.     During Equitrans Repair Pipeline Operations, Equitrans never asked the Moores for their permission to move and/or relocate Pipeline-557 off of the Moores' Pipe Line Right of Way Grant.

24.     On or around March 2012, Jeffery J. Moore questioned Equitrans concerning the location of Pipeline H-557.

25.     In March 2012, EQT Production Company and Equitrans' personnel, Jeff Wright, David Spatafore and Joseph Garrett, located Pipeline H-557 on the Moores' Property.

26.     After locating Pipeline H-557, representatives of Equitrans assured Jeffery J. Moore that Pipeline H-557 complied with the Moores' Pipe Line Right of Way Grant.

27.     Equitrans made this representation without anyone reviewing the Moores' Pipe Line Right of Way Grant or surveying the route of the pipeline described therein.

8

28.     On June 26, 2012, the Moores filed a Complaint against EQT Production Company and EQT Corporation in Marion County, West Virginia.

29.     The Moores' Complaint alleged three (3) causes of action: (i) breach of the right of way agreement; (ii) ejectment; and (iii) trespass.

30.     The Moores' Complaint prayed for relief in the form of an Ejectment Order pursuant to West Virginia Code 55-4-1, *et seq.*

31.     On July 27, 2012, EQT Production Company and EQT Corporation, on behalf of Equitrans, removed the Moores' Complaint to the Northern District of West Virginia based on diversity jurisdiction.

32.     In support of federal jurisdiction, EQT Production Company and EQT Corporation asserted that "[i]f the pipeline were ordered to be removed, there would be a substantial expense to [Equitrans].  Likewise, there would be a loss of ability to transport natural gas."

33.     Ultimately, Equitrans substituted as defendant for EQT Production Company and EQT Corporation.

34.     On August 3, 2012, Equitrans answered the Moores' Complaint and denied any and all allegations that it trespassed and/or breached the Moores' Pipe Line Right of Way Grant ("Equitrans' Answer").

35.     Equitrans' Answer asserted no counterclaims against the Moores.

36.     On May 31, 2013, Equitrans requested leave to file a counterclaim for a prescriptive easement.

37.     On July 3, 2013, this Court granted Equitrans' counterclaim for a prescriptive easement.

38.     Following the exchange of discovery, depositions and a survey of the Moores' Property, on December 18, 2013, Equitrans moved for summary judgment ("Equitrans' Motion for Summary Judgment").[1]

39.     In Equitrans' Motion for Summary Judgment, it argued, among other things, that it never breached the Moores' Pipe Line Right of Way Grant, and that Pipeline H-557 lawfully occupied the Moores' Property.

40.     In Equitrans' Motion for Summary Judgment, Equitrans argued, for the first time, that it possessed a right to condemn under the Natural Gas Act.

41.     In Equitrans' Motion for Summary Judgment, Equitrans indicated that "to the extent that this Court is inclined to deny Equitrans' motion for summary judgment, Equitrans asks this Court to grant it leave to file a counterclaim for condemnation."

42.     On September 22, 2014, the Court denied Equitrans' Motion for Summary Judgment.

43.     Following this denial, Equitrans never requested leave or filed a counterclaim for condemnation.

---

[1] Equitrans' Motion for Summary Judgment refers to both the motion and Memorandum of Law in Support.

44. Instead, the Moores and Equitrans proceeded to a jury trial on the factual issues of whether Equitrans breached the Moores' Pipe Line Right of Way Grant and/or trespassed on the Moores' Property for the purpose of seeking an ejectment of the trespassing portions of Pipeline H-557.

45. On March 23, 2015, a jury found in favor of the Moores.

46. The jury found that Equitrans' location of Pipeline H-557 in the mid-1990s breached the Moores' Pipe Line Right of Way Grant or trespassed.

47. The jury found that at Equitrans' initial construction of portions of Pipeline H-557 off of the Burlines' property and onto the Moores' Property breached the Moores' Pipe Line Right of Way Grant or trespassed.

48. The jury found that the Moores timely filed their claims against Equitrans.

49. On June 18, 2015, Equitrans filed its Complaint in Condemnation.

50. On June 26, 2015, Equitrans personally served the Moores with the Complaint in Condemnation.

## Count I - Attorneys' Fees for Bad Faith, Vexatious, Wanton or Oppressive Conduct

51. The Moores re-allege each and every allegation set out in paragraphs 1 through 50 of this Counterclaim as if set out fully herein.

52. From March 2012 to the present, Equitrans has acted with bad faith, vexatiousness, wantonness and/or oppressively to the Moores by forcing the Moores to litigate the location of Pipeline H-557 for three (3) years prior to filing the Complaint in Condemnation.

53. Since March 2012, Equitrans knew, or should have known, that Pipeline H-557 breached the Pipe Line Right of Way Grant and/or trespassed on the Moores' Property.

54. Despite this knowledge, Equitrans proceeded to unlawfully increase the Moores' attorneys' fees through improper litigation on the location of Pipeline H-557.

55. If Equitrans had admitted that Pipeline H-557 unlawfully occupied portions of the Moores' Property in response to the Moores' Complaint and/or immediately sought to condemn, the Moores would have avoided significant attorneys' fees.

56. Equitrans' conduct foreseeably and proximately caused the Moores to sustain unnecessary attorneys' fees in excess of Seventy-Five Thousand Dollars ($75,000.00).

57. As a matter of equity, Equitrans' conduct constituted bad faith, vexatious, wanton and/or oppressive conduct to award the Moores their attorneys' fees.

**In the Alternative, Count II - Trespass**

58. The Moores re-allege each and every allegation set out in paragraphs 1 through 57 of this Counterclaim as if set out fully herein.

59. In the event that this Court does not eject the trespassing portions of Pipeline H-557 and permits Equitrans to take title to portions of the Moores' Property through condemnation, the Moores should be permitted to receive trespass damages.

60. Since on or around January 1, 1961, portions of Pipeline H-557 have unlawfully occupied the Moores' Property.

61.     Since on or around 1995 through 1997, portions of Pipeline H-557 have unlawfully occupied the Moores' Property.

62.     This Court's award of title to Equitrans through the Natural Gas Act does not compensate the Moores for Pipeline H-557's unlawful occupation of the Moores' Property since 1961.

63.     In the trial of Civil Action No. 1:12-CV-123, the Moores elected to proceed on the equitable relief of ejectment, rather than compensatory damages through trespass and/or breach of contract.

64.     On March 25, 2015, the jury found for the Moores on all counts.

65.     To date, the Court has stayed Civil Action No. 1:12-CV-123 and has not ordered an ejectment of the trespassing portions of Pipeline H-557.

66.     Equitrans knew, or should have known, that it and its predecessor laid Pipeline H-557 off of the Moores' Pipe Line Right of Way grant and without lawful authority or consent of the Moores.

67.     Equitrans' actions were deliberate and continuous physical invasion of the Moores' Property and the Moores' right of possession.

68.     Equitrans' actions have substantially and unreasonably interfered with the Moores' private use, enjoyment and general possession of their Property.

69.     In the alternative, in the event that this Court does not eject the trespassing portions of Pipeline H-557 and permits Equitrans to take title to portions of the Moores' Property

through condemnation, the Moores are entitled to collect damages as a consequence of Equitrans' trespass.

WHEREFORE, Defendants, Jeffery J. Moore and Sandra J. Moore, pray for judgment against Equitrans, as follows:

(a)     An award of attorneys' fees expended from June 19, 2012 through the present;

(b)     In the alternative, in the event Equitrans is awarded condemnation, an award of compensatory damages to the Moores related to Equitrans' unlawful occupation of the Moores' Property;

(c)     In the alternative, an award of pre- and post-judgment interest on any compensatory damages awarded to the Moores; and

(d)     Such relief as this Court may deem proper.

**THE MOORES DEMAND A JURY TRIAL.**

.056 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA
JEFFERY J. MOORE and SANDRA J.
MOORE,

By Counsel,

/s/ Kenneth E. Webb, Jr.
Kenneth E. Webb, Jr. (WVSB #5560)
Patrick C. Timony (WVSB #11717)
BOWLES RICE LLP
Post Office Box 1386
Charleston, West Virginia   25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 347-1756
Email: kwebb@bowlesrice.com
Email: ptimony@bowlesrice.com
*Counsel for Defendants.*

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,**
**a Pennsylvania Limited Partnership**

        **Plaintiff,**

**v.**
                        **Civil Action No. 1:15-CV-106**
                        **(Hon. Frederick P. Stamp, Jr.)**

**.056 ACRES MORE OR LESS OF**
**PERMANENT EASEMENT LOCATED IN**
**MARION COUNTY, WEST VIRGINIA;**
**JEFFERY J. MOORE; and SANDRA J. MOORE,**

        **Defendants.**

<u>**CERTIFICATE OF SERVICE**</u>

      I, Kenneth E. Webb, Jr., hereby certify that the foregoing *Answer and Counterclaims on Behalf of Defendants* has been served this **15th day of July, 2015**, via the CM/ECF system:

                David K. Hendrickson, Esquire
                (WVSB #1678)
                HENDRICKSON & LONG, PLLC
                Post Office Box 11070
                Charleston, West Virginia   25339
                *Counsel for Defendant*

                /s/ Kenneth E. Webb, Jr.
                Kenneth E. Webb, Jr. (WVSB #5560)

EXHIBIT
1

4-27-92 ret. Jeffrey Moore Rt 2 Box 242 Fairview 26570

BOOK 902 PAGE 894     BOOK 1019 PAGE 555

00 2 555
19 June, 1990, by and between JOHN R. MOORE and DOROTHY G. MOORE, husband and wife, parties of the first part, Grantors, and J. JOHN MOORE and SANDRA J. MOORE, husband and wife, parties of the second part, Grantees.

THIS DEED, made and entered into this 10th day of



WITNESSETH, that for and in consideration of the sum of Ten dollars ($10.00), cash in hand paid, and other good and valuable considerations the receipt and sufficiency of all of which is hereby expressly acknowledged, the said parties of the first part John R. Moore and Dorothy G. Moore, husband and wife, do hereby grant and convey with the second part J. John Moore and Sandra J. Moore, husband and wife, jointly and equally together with rights of survivorship as provided for by statute by the State of West Virginia, the following described tract of land or parcel of real estate situated, lying and being on the waters of Rush Run about one mile northeast of the Town of Fairview, Marion County, West Virginia, bounded and described as follows:



BEGINNING at a gum and pointers by said run corner for land of the heirs fo Tobias Haught, deceased, (now corner of J. R. and Naome M. Bailey, Marion County Deed Book No. 467, at page 51, and Patricia Hansen, Marion County Deed Book No. 784, at page 474) and with two of their lines, South 120 West 20 1/2 rods to a stone, and South 240 West 10 1/2 rods to a stone, corner to Rebecca E. Tennant and husband, and with line of same (now William R. Frank, Jr., Marion County Deed Book No. 796), South 61 1/20 East 55.6 rods to a beech and ash, thence South 650 East 49 rods to an ironwood on ridge, corner for land of Perry Lough and with his lines (Virginia Pauline Lough, Marion County Deed Book No. 770, at page 575), North 280 45' East 66 rods to a white ash (not found), thence North 020 West 34.7 rods to pointers, corner made in partition with Nimrod Haught, and with the lines surveyed by the commissioners who made said



feet to a stake; thence with the same, South 34⁰ 28' West 312.18 feet to a stake; and thence with the same North 65⁰ 46' West 480.30 feet to the beginning, containing 3.336 acre, more or less."

The second parcel excepted from this conveyance was conveyed by John R. Moore and Dorothy G. Moore, husband and wife, to Wilbert Wendell Moore and Patricia Ann Moore, husband and wife, by deed bearing date the 11th day of October, 1968, and of record in the office of the Clerk of the County Commission of Marion County, West Virginia, in Deed Book No. 734, at page 236, and described as follows:

"BEGINNING At an 'X' on a stone in the line of the real estate herein conveyed and the line of other real estate of John R. Moore; thence North 61⁰ 35' West 130.59 feet to a stake; thence from said stake, North 28⁰ 25' East 202.80 feet to a point in the line of other real estate of John R. Moore; thence with said line, South 67⁰ 00' East 194.42 feet to a point in the center of the road (Marion County Route No.17/1); West 224.05 feet to another point in the center of said road; thence from said point in the center of the said road, North 61⁰ 35' West feet to the place of beginning, containing one acre, more or less."

There is excepted from the operation of this conveyance all of the oil and gas within and underlying the herein described tract of real estate, together with the usual and necessary drilling and operating rights, including the right to go upon the herein conveyed premises for the purpose of operating for oil and gas, or either of them, and the right to lay pipe lines, erect storage tanks, place and operate drilling equipment on said tract, but not to operate said drilling equipment within 200 feet from the residence now erected on said tract and all other reasonable and necessary rights which may be

BOOK **1019** PAGE **558**          BOOK **902** PAGE **897**

required for the proper operation for oil and gas; or either of them.

This conveyance is subject to the exception of the Pittsburgh Coal seam as conveyed by the Grantors predecessors in title, and to any other such conveyances, rights-of-ways, easements and other matters of record in the offices of the Clerk of The County Commission of Marion County, West Virginia.

The property hereby conveyed is entered for assessment for the year of 1989 on the Land Books in Paw Paw Tax District, Marion County as follows:

MOORE, John R. and Dorothy G.
Map 9, Parcel 40
113.76 acres, Rush Run

DECLARATION OF CONSIDERATION OF VALUE The undersigned hereby declare that this conveyance is exempt from the excise tax on the transfer of real estate property described in Article 22, of Chapter 11, of the Code of West Virginia, inasmuch as this conveyance is from parents to a child and his spouse.

WITNESS The following signatures and seals:

*John R Moore* (SEAL)
JOHN R. MOORE

*Dorothy G Moore* (SEAL)
DOROTHY G. MOORE

STATE OF WEST VIRGINIA,

COUNTY OF MONONGALIA, To-Wit:

I, *Kelli Wilson*, a Notary Public in and for said County, hereby Certify that JOHN R. MOORE and DOROTHY

BOOK 902 PAGE 898          BOOK 1019 PAGE 559

G. MOORE, husband and wife, whose names are affixed to the above instrument, appeared before me this _21st_ day of _November_ 1990, and acknowledged.

My Commission expires: _March 15, 1993_ .

_Kelli D. Wilson_
NOTARY PUBLIC

This instrument was prepared by:
William K. Bunner, Attorney
818 Monongahela Building
235 High Street
Morgantown, West Virginia 26505.

STATE OF WEST VIRGINIA,
MONONGALIA COUNTY, TO-WIT,
    I, THELMA J. GIBSON, Clerk of the County Commission of the County aforesaid, do certify that the aforesaid writing together with the certificates and $ ———————cancelled State and County Excise Stamps, thereto attached was this day presented to me in my office, and was admitted to record therein, at _10:17_ o'clock _A_ M.  Given under my hand this _21_ day of _November_, 19 _90_
                                                                _Thelma J. Gibson_, Clerk

_821_
RECEIVED _4.50_
RECORDING FEE ————
STAMPS ————————
Apr 23  3 42 PM '92

STATE OF WEST VIRGINIA, County of Marion, To-Wit:
    I, Janice Cosco, Clerk of the County Commission of said County, do hereby certify that the foregoing writing, with certificate thereto annexed, was this day produced to me in my office and duly admitted to record.
    Witness my hand.

C4010    _Janice Cosco_ Clerk

1

1               IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2

3     _____

    RANDAL L. VAN SCYOC, ET AL.,
4

5               PLAINTIFFS

6          VS.            CIVIL ACTION NO. 13-1735

7    EQUITRANS, L.P.,

8              DEFENDANT

9     _____

**EXHIBIT A**

10               PROCEEDINGS

11       Transcript of ORAL ARGUMENT, commencing on TUESDAY,
    JANUARY 21, 2014, 1:30 P.M., in the United States District
12    Court, Sixth Floor, U. S. Post Office and Courthouse Building,
    Pittsburgh, Pennsylvania, before the HONORABLE MARK R. HORNAK,
13    UNITED STATES DISTRICT COURT JUDGE.

14

15    APPEARANCES:

16    For the Plaintiffs: By:   James Pfeifer, Esquire
                          Pepper Hamilton
17                          500 Grant Street, Suite 5000
                          Pittsburgh, Pennsylvania 15219
18

19    For the Defendant:  By:   Nicolle Snyder Bagnell, Esquire
                          Lucas Liben, Esquire
20                          Reed Smith
                          225 Fifth Avenue
21                          Pittsburgh, Pennsylvania 15222

22    Reported by:          Sandra Wenger, FCRR, RMR
                          Official Court Reporter
23                          Fifth Floor, U.S. Courthouse
                          Pittsburgh, Pennsylvania 15219
24                          412.261.6254

25    Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.

Case 1:15-cv-00106-FPS   Document 12-1   Filed 08/04/15   Page 2 of 4   PageID #: 341
Case 2:13-cv-01735-MRH   Document 39   Filed 02/03/14   Page 22 of 35

22

1          THE COURT:  So, is part of your argument,

2     Mr. Pfeifer, I am sorry for asking all these questions, but

3     this case has got a lot more interesting the more we worked

4     on it.  Not that it wasn't interesting and important to your

5     clients, but the legal issues twists and turns.

6          MR. PFEIFER:  I understand, Your Honor.

7          THE COURT:  Okay.  I think I get it.  Okay.  The

8     floor is yours.  You may have had other things you want to

9     tell me.

10         MR. PFEIFER:  Just one final thing I would like to

11    state.  The position urged by Equitrans, it incentivizes bad

12    behavior.  The approach that Equitrans would prefer and which

13    has been played out in Greene County in several matters that

14    I'm involved in is Equitrans has continued to operate these

15    gas storage fields in Greene County for decades.

16         In at least two matters that are now pending in this

17    Court for condemnation proceeding, no condemnation proceeding

18    was initiated until after the plaintiffs filed a claim, a

19    separate declaratory judgment claim, separate claims for

20    trespass only.

21         In those, Equitrans finally decided to seek to

22    condemn the property and expend the monetary and societal

23    costs that goes along with, with such a proceeding.  Equitrans

24    has taken --

25         THE COURT:  Were those other cases removed,

Case 1:15-cv-00106-FPS   Document 12-1   Filed 08/04/15   Page 3 of 4   PageID #: 342
Case 2:13-cv-01735-MRH   Document 39   Filed 02/03/14   Page 30 of 35

30

1    Didn't think it was worth less.  Slept at night.  Didn't feel
2    bad.  But your clients had the advantage of using the
3    property, and I'm picking a number out of the air, forty-six
4    years, just because Mr. Pfeifer said it was a real long time.
5    Is that what Congress intended?  And maybe it is.  And if
6    Congress did, then Mr. Pfeifer's remedy is to call Mr. Van
7    Scyoc's Congress person up and tell him go do something about
8    it.

9              MS. BAGNELL:  Your Honor, I mean, I think that it
10   was, certainly, it was the intention of the, it was the
11   intention that condemnation proceedings be commenced prior
12   to, to any actual access.  But the fact that there is such a
13   procedure such as inverse condemnation has been accepted by
14   the Supreme Court means that this is the appropriate way of
15   doing things.

16             THE COURT:  Clearly, under the Fifth Amendment, if
17   the City of Pittsburgh, or the U.S. Department of the Army
18   Corps of Engineers, or NASA, wants to build a space shuttle
19   launching pad, take Mr. Van Scyoc's property, no question.
20   And they don't go to condemn it first.  They first start
21   putting rockets there.  He can go do something about it, but
22   that's because the Constitution says that.

23             The Ninth Circuit in Transwestern says your rights
24   are granted solely by statute.  Therefore, they're strictly
25   construed against the grantee of those rights.  And if you

Case 1:15-cv-00106-FPS   Document 12-1   Filed 08/04/15   Page 4 of 4   PageID #: 343
Case 2:13-cv-01735-MRH   Document 39   Filed 02/03/14   Page 31 of 35

31

1  want them, you got to follow the rules.

2           MS. BAGNELL:  Your Honor, though, I think the

3  distinction there, I do have to tell you, I need to go back,

4  read the Ninth Circuit case again closely, now that you have

5  asked me all these questions about it.

6           But in this case, the natural gas storage is subject

7  to a FERC certificate.  So, the federal government has already

8  given Equitrans the authority to proceed under the Natural Gas

9  Act.  So, in this case, it's not as though it were myself

10  going on to the property and doing something, someone who

11  doesn't have a FERC certificate or the ability to get one

12  here.  Although, there is this procedure, we have all the

13  powers we need to go forward with the condemnation.

14           THE COURT:  Not to make light of it, but from your

15  perspective, the fact that the better late than never rule

16  doesn't get in your way.  In fact, it supports your position.

17           MS. BAGNELL:  And, Your Honor, one other point I

18  wanted to make is you mentioned the questions that I might ask

19  to prove that the just compensation is due and owing to the

20  plaintiff in this case.  Or the many plaintiffs in this case.

21  I think, likewise, would be the same questions asked even if

22  this claim were called a trespass or an unjust enrichment,

23  because his damages at just compensation are exactly the same

24  as the damages would be if this were just called a trespass

25  claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

RANDAL L. VAN SCYOC and CHARLENE
S. VAN SCYOC, husband and wife, CAREN
COLLEEN LEMLEY, ELIZABETH CAROL
MEIGHEN, ALEXANDER STEPHEN
PATRICK ABEL and RACHEL MARIE
ABEL, husband and wife, LARRY S.
BEARDSLEE, MARIAH DAWN PATLA and
JASON PATLA, husband and wife, BETTY B.
MARKOWSKI and PHILIP K.
MARKOWSKI, husband and wife,
RAYMOND C. GRABLE, JR. and NORMA J.
GRABLE, husband and wife, LARRY L.
GRABLE and JANICE O. GRABLE, husband
and wife, DAVID R. GRABLE and LORETTA
DAUGHTRY GRABLE, husband and wife,
FREDERIC J. GRABLE, SUE CAROL
GRABLE, JOSEPH P. GRABLE and LINDA
HAUSER GRABLE, husband and wife,
STEPHEN B. GRABLE and MELISSA
GRABLE, husband and wife, CINDY J.
GRABLE, TIMOTHY L. KING and
MICHELLE SKELTON KING, husband and
wife, KELLEY SKELTON GARRETT,
WILLIAM SKELTON, KEVIN LESINSKI and
KIMBERLEY SKELTON LESINSKI, husband
and wife, BRIDGETT TINSLEY SUTPHIN
and WILLIAM J. SUTPHIN, husband and
wife, and VANTAGE ENERGY
APPALACHIA, LLC,

      Plaintiffs,

      v.

EQUITRANS, L.P., EQT PRODUCTION
COMPANY, and LAWRENCE H. MILLER
and ELEANOR S. MILLER, husband and wife,

      Defendants.

Civil Action No. 2:13-cv-01735

Electronically Filed

EXHIBIT
B

## DEFENDANT EQUITRANS, L.P.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM/CROSSCLAIM TO PLAINTIFFS' COMPLAINT

Defendant Equitrans, L.P. ("Equitrans") files the following Answer, Affirmative

Defenses, and Counterclaim/Crossclaim to the Plaintiffs' Complaint.

1.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

2.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

3.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

4.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

5.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

6.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

7.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

8.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

9.      Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

10.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

11.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

12.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

13.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

14.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

15.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

16.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

17.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

18.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

19.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

20.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

21.     This Paragraph does not contain an allegation, and thus no response is required.  It is denied that any of the "Property Owners" own the rights to the oil and gas underlying the Property.

22.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

23.     Admitted.

24.     Admitted in part and denied in part.  EQT Production Company ("EQT") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and its principal offices are located at 625 Liberty Avenue, Suite 1200, Pittsburgh, Pennsylvania 15222. The remainder of this Paragraph is not an allegation, and thus requires no response.

25.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

26.     Denied.

27.     Denied.

28.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

29.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

30.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

31.     Admitted in part and denied in part.  It is admitted the Property Owners own the Property.  It is denied the Property Owners own the oil and gas rights underneath the Property.

32.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

33.     Equitrans lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph.

34.     No response to this Paragraph is necessary, as Equitrans is not a party to the Lease.  Further, this Paragraph contains conclusions of law to which no response is necessary.

35.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

36.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

37.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

38.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

39.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

40.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

41.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

42.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

43.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

44.  No response to this Paragraph is necessary, as Equitrans is not a party to the Lease. Further, this Paragraph contains conclusions of law to which no response is necessary.

45.  Admitted.

46.  Admitted.

47.  Admitted.

48.     It is admitted that Equitrans stored natural gas on the Property.  Any inference that Equitrans intentionally trespassed, or intentionally caused any alleged damage to Plaintiffs, is denied.

### Count I – Declaratory Judgment (Against EQT)

49.     Count I is directed to parties other than Equitrans, and thus no response is required.

50.     Count I is directed to parties other than Equitrans, and thus no response is required.

51.     Count I is directed to parties other than Equitrans, and thus no response is required.

52.     Count I is directed to parties other than Equitrans, and thus no response is required.

53.     Count I is directed to parties other than Equitrans, and thus no response is required.

### Count II – Trespass (Against Equitrans)

54.     Equitrans incorporates its responses to Paragraphs 1-53 of the Complaint as if set forth in full herein.

55.     This Paragraph contains legal conclusions, and thus no response is required.

56.     It is admitted that Equitrans has stored natural gas on the Property.  It is denied that the Property Owners have an exclusive right to the Property, as there is a valid and existing oil and gas lease on the Property.

57.     It is admitted that Equitrans stored natural gas on the Property. Any inference that Equitrans intentionally trespassed, or intentionally caused any alleged damage to Plaintiffs, is denied.

58.     It is admitted that the Property Owners have a right to just compensation for storage of natural gas beneath their property.

59.     It is admitted that the Property Owners have a right to just compensation for storage of natural gas beneath their property. Such compensation, however, must be arrived at by the condemnation procedures initiated in Equitrans' Counterclaim/Crossclaim below.

WHEREFORE, Equitrans requests that it be granted possession of the Property, as further elaborated upon in its Counterclaim/Crossclaim below.

### Count III – Unjust Enrichment (Against Equitrans)

60.     Equitrans incorporates its responses to Paragraphs 1-59 of the Complaint as if set forth in full herein.

61.     It is admitted that the Property Owners have a right to just compensation for storage of natural gas beneath their property. It is denied that Equitrans has been unjustly enriched.

62.     Admitted. By way of further response, any inference that Equitrans intentionally caused any alleged damage to Plaintiffs is denied.

63.     Admitted.

64.     Admitted. By way of further response, any inference that Equitrans intentionally caused any alleged damage to Plaintiffs is denied.

- 7 -

65. Denied. By way of further response, it is admitted that the Property Owners have a right to just compensation for storage of natural gas beneath their property. Any inference that Equitrans intentionally caused any alleged damage to Plaintiffs is denied.

66. Denied.

WHEREFORE, Equitrans requests that it be granted possession of the Property, as further elaborated upon in its Counterclaim/Crossclaim below.

## AFFIRMATIVE DEFENSES

1. Any allegation in the Complaint that is not expressly admitted above in Equitrans' Answer is denied.

2. Plaintiffs' claims are preempted by the Natural Gas Act, 15 U.S.C. §§ 717-717(z), and Fed. R. Civ. P. 71.1. Therefore, Plaintiffs' claims are for inverse condemnation, and the claims of trespass and unjust enrichment are not proper.

3. The Complaint fails to state a claim upon which relief may be granted.

4. The Complaint is barred in whole or in part by the statute of limitations, repose, and/or other such similar statutes.

5. The Complaint is barred in whole or in part by waiver, laches, consent, ratification, and/or estoppel.

6. Equitrans reserves the right to add to, or amend, its Affirmative Defenses as this matter continues.

## COUNTERCLAIM/CROSSCLAIM

*(Equitrans, L.P. v. Property Interests Necessary to Conduct Gas Storage Operations in the Lower Mississippian Big Injun and Lower Devonian Fifty Foot Sandstone Subterranean Geological Formations Beneath Property Located in Greene County Owned by Randal L. van Scyoc and Charlene S. van Scyoc, Caren Colleen Lemley, Elizabeth Carol Meighen, Alexander Stephen Patrick Abel and Rachel Marie Abel, Larry S. Beardslee, Mariah Dawn Patla and Jason Patla, Betty B. Markowski and Philip K. Markowski, Raymond C. Grable, Jr. and Norma J. Grable, Larry L. Grable and Janice O. Grable, David R. Grable and Loretta Daughtry Grable, Frederic J. Grable, Sue Carol Grable, Joseph P. Grable and Linda Hauser Grable, Stephen B. Grable and Melissa Grable, Cindy J. Grable, Timothy L. King and Michelle Skelton King, Kelley Skelton Garrett, William Skelton, Kevin Lesinski and Kimberley Skelton Lesinski, Bridgett Tinsley Sutphin and William J. Sutphin, and Lawrence H. Miller and Eleanor S. Miller)*

Pursuant to the Natural Gas Act, 15 U.S.C. §§ 717-717(z) and Federal Rule of Civil Procedure 71.1, Counterclaim/Crossclaim Plaintiff Equitrans, L.P. ("Equitrans") files this Counterclaim/Crossclaim to condemn property interests necessary to conduct natural gas storage operations in the Hunter's Cave and Swarts Storage Fields. The Federal Energy Regulatory Commission ("FERC") has determined that Equitrans' operation of this underground storage field is a matter of public convenience and necessity in order to meet the public's need to have natural gas efficiently and economically stored near markets in the eastern United States. Operation of the storage field as certified by FERC requires Equitrans to obtain ownership of the rights necessary to store gas in the Lower Mississippian Big Injun and Lower Devonian Fifty Foot sandstone formations. Equitrans has obtained most of these rights through negotiation since the fields' conversion to storage in 1943 (Hunter's Cave) and 1949 (Swarts), but it was recently brought to Equitrans' attention that it does not have agreements with the Counterclaim/Crossclaim Defendants allowing it to store gas under the relevant properties. Upon information and belief, Equitrans has been unable to acquire these agreements through negotiation, and therefore files this action to acquire the rights needed. In support of its Counterclaim/Crossclaim, Equitrans states as follows:

- 9 -

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction over this action pursuant to the condemnation authority in Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h) and Federal Question jurisdiction, 28 U.S.C. § 1331.

2.      Upon information and belief, the Counterclaim/Crossclaim Defendants contend that the value of the Property exceeds $3,000.00.

3.      Upon information and belief, Equitrans has made offers to acquire the property interests to be condemned, but has been unable to acquire those property interests through negotiation.

4.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because the property to be condemned is located in this district.

### The Authority to Condemn

5.      Equitrans, a limited partnership organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania, is a "natural gas company" within the meaning of Section 2(6) of the Natural Gas Act, 15 U.S.C. § 717a(6). Equitrans' ultimate corporate parent is EQT Corporation, whose principal place of business is in Pennsylvania.

6.      By the Order most recently dated June 21, 2007, and attached here as Exhibit A, FERC approved Equitrans' application for authorization of its certificate of public convenience and necessity for the Hunter's Cave Storage Field.

7.      By the Order most recently dated June 21, 2007, and attached here as Exhibit A, FERC approved Equitrans' application for authorization of its certificate of public convenience and necessity for the Swarts Storage Field.

8.     The location of the Hunter's Cave and Swarts Storage Fields are depicted on a map on file with FERC.  The property to be condemned is within the boundary of the Hunter's Cave and Swarts Storage Fields as depicted on the map on file at FERC.

9.     Pursuant to Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), Equitrans has the right to condemn the property interests described below in order to conduct gas storage operations.

### The Property Interests to be Taken

10.     The Hunter's Cave Storage Field is designed to store gas in the Lower Mississippian Big Injun sandstone formation, about 2,172 feet below the surface.  The Lower Mississippian Big Injun sandstone formation is that stratigraphic interval encompassed between a point -830 feet below sea-level down to a point -1070 feet below sea-level, including repeated or faulted sections, when and where present.  Gas will be stored in the same geologic strata from which native gas was originally produced between 1901 and 1943.

11.     The Swarts Storage Field is designed to store gas in the Lower Devonian Fifty Foot sandstone formation, about 2,550 feet below the surface.  The Lower Devonian Fifty Foot sandstone formation is that stratigraphic interval encompassed between a point -1600 feet below sea-level down to a point -1642 feet below sea-level, including repeated or faulted sections, when and where present.  Gas will be stored in the same geologic strata from which native gas was originally produced between 1901 and 1943.

12.     In order to operate the Hunter's Cave and Swarts Storage Fields, Equitrans must obtain the exclusive easement to store gas in the relevant formations underneath all of the properties within the boundaries of the storage reservoir.

13.     A map of the property to be condemned is attached as Exhibit B.  As to the

property identified in the attached Exhibit B, Equitrans condemns the exclusive easement to use the relevant formations for the injection, storage, and removal of natural gas and protection of stored natural gas. The exclusive easement condemned here precludes the owners from: (1) using the relevant formations for storage of gas; (2) producing any gas or minerals from the relevant formations; and (3) any other activities inconsistent with Equitrans' storage operations.

14. The boundaries of the property to be condemned are described in the Oil and Gas Lease attached to the original Complaint in this civil action as Exhibit A. Those boundaries are of that certain lot of land situate in the Township of Morris, County of Greene, and State of Pennsylvania, bounded and described as: On the North by lands of David Hopkins, on the East by lands of J. Johnson and Gus Hill, on the South by lands of Bush Castor, Wm. B. Houton, and J.S. Ingrham, and on the West by lands of Lydia Phillips and J.B. Laughman.

<div align="center">

**The Property Owners**

</div>

15. Pursuant to the Complaint, the persons having or claiming interests in the land subject to the easements to be condemned are identified in the caption above.

<div align="center">

**Others Who May Claim an Interest**

</div>

16. There may be other persons who may claim an interest in the properties to be condemned whose names are unknown to Equitrans. These persons have been made parties to this action as permitted by Rule 71.1 of the Federal Rules of Civil Procedure.

WHEREFORE, Equitrans requests that it be granted possession of the property interests described above.

REED SMITH LLP

/s/ Nicolle R. Snyder Bagnell
Nicolle R. Snyder Bagnell
Pa. ID No. 87936

Lucas Liben
Pa. ID No. 309527

225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131

Counsel for Defendants Equitrans, L.P. and
EQT Production Company

Dated: January 10, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served via the Court's ECF system upon the following:

Justin G. Weber
PEPPER HAMILTON LLP
Suite 200
100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181

James W. Pfeifer
PEPPER HAMILTON LLP
Suite 5000
500 Grant Street
Pittsburgh, PA 15219-2507

And by U.S. First Class Mail to –

John W. Carroll
PEPPER HAMILTON LLP
Suite 200
100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181

*Counsel for the Plaintiffs*

Stephen D. Marriner, Jr.
MARRINER, JONES & FITCH
800 Washington Trust Building
30 East Beau Street
Washington, PA 15301

*Counsel for Defendants Lawrence H. Miller and Eleanor S. Miller*

Dated: January 10, 2014                     /s/ Nicolle R. Snyder Bagnell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EQUITRANS, L.P.,
a Pennsylvania
limited partnership,

       Plaintiff,

v.                                    Civil Action No. 1:15CV106
                                                (STAMP)

0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA,
JEFFERY J. MOORE and
SANDRA J. MOORE,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**
**AND GRANTING PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS**

This is a condemnation case arising from a prior civil action between defendants, Jeffery and Sandra Moore ("the Moores"), and the plaintiff, Equitrans L.P. ("Equitrans"). In that underlying civil action, Equitrans held a right-of-way over the Moores' property to construct and maintain a natural gas pipeline. The Moores sued Equitrans, claiming that it built and maintained portions of the pipeline outside of the right-of-way, thereby breaching the right-of-way agreement and trespassing on the Moores' property. After a trial, a jury found that two portions of the pipeline violated the right-of-way agreement or were trespassing. This Court stayed a determination on whether to enter an ejectment order.

Equitrans then filed this action under 15 U.S.C. § 717f(h) to condemn a right-of-way through the portions of the Moores' property it was trespassing on.  The Moores filed an answer, counterclaims, and a motion to dismiss the complaint for failure to state a claim. Equitrans then filed a motion to dismiss the counterclaims.  For the following reasons, this Court denies the Moores' motion to dismiss the complaint and grants Equitrans' motion to dismiss the counterclaims.

I.  Background

In 1960, Equitrans entered into a right-of-way agreement with the Moores to build a pipeline under a portion of their property ("the 1960 right-of-way").  In 2012, the Moores sued Equitrans claiming that approximately 700 feet of the pipeline was built outside of the 1960 right-of-way (hereinafter referred to as "the underlying civil action").  Equitrans maintained that it constructed all portions of the pipeline within the 1960 right-of-way.  Following a trial, a jury found that Equitrans' placement of two portions of the pipeline either violated the 1960 right-of-way agreement or trespassed on the Moores' property.  The Moores did not claim monetary damages and sought only ejectment.  This Court stayed execution of the judgment so that Equitrans could seek condemnation of a right-of-way through the property upon which it was found to be trespassing ("the Property").  The Property

2

consists of two portions of the Moores' property through which the pipeline runs, totaling approximately 0.56 acres.

Equitrans attempted to settle the underlying civil action before and after trial, but the Moores refused and countered with other demands. Equitrans then filed this condemnation action under 15 U.S.C. § 717f(h) to obtain a right-of-way through the Property ("the condemnation right-of-way"). The Moores filed a motion to dismiss the complaint for failure to state a claim, and an answer with counterclaims alleging vexatious litigation and trespass by Equitrans. Equitrans then filed a motion to dismiss the counterclaims.

## II.  Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires a party to articulate facts that, when accepted as true, demonstrate that the party has stated a claim that makes it plausible that the party is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.  <u>Discussion</u>

A.  <u>Motion to Dismiss the Complaint</u>

To state a claim for condemnation under § 717f(h), the plaintiff must plead that: (1) it is a "holder of a certificate of public convenience and necessity"; (2) the right-of-way will be used for the construction, operation, or maintenance of a pipeline; and (3) it was unable to "acquire [the right-of-way] by contract, or [was] unable to agree with the owner of [the] property [as] to . . . compensation."  15 U.S.C. § 717f(h).

Equitrans' complaint facially states a claim for condemnation under § 717f(h).  It alleges that Equitrans holds a certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission, for the creation of the pipeline running through the Moores' property.  Equitrans states that the Property will be used to maintain and operate the pipeline, which is necessary for its transmission of natural gas in interstate commerce.  Finally, Equitrans plead that it "has attempted, but been unable, to acquire the [condemnation] right-of-way through negotiation with [the Moores]."  ECF No. 1 at 3.  It also attached email correspondence between the parties' counsel, showing that Equitrans offered to settle the underlying civil action before and after trial, but the Moores countered with other demands.

Equitrans' complaint clearly pleads all that is necessary for its condemnation claim to survive a motion to dismiss.  However,

4

the Moores argue that Equitrans' claim fails for several other reasons: (1) Equitrans failed to comply with the Natural Gas Act; (2) condemnation was a compulsory counterclaim in the underlying civil action; (3) Equitrans should be judicially estopped from claiming that it did not comply with the 1960 right-of-way agreement; and (4) condemnation here would violate the Fifth Amendment's Takings Clause.

1.   <u>Compliance With the Natural Gas Act</u>

The Moores argue that Equitrans' condemnation claim must be dismissed because it failed to comply with the Natural Gas Act in building the pipeline and in seeking condemnation.  Specifically, the Moores argue that the 1960 right-of-way agreement precludes condemnation of the Property under § 717f(h), and that Equitrans unlawfully entered the Property before seeking a right-of-way or condemnation.

a.   <u>Existence of a Contract</u>

The Moores argue that Equitrans obtained the necessary right-of-way from their predecessors in title in 1960, and thus Equitrans was able to "acquire by contract" the necessary right-of-way. However, the Property is not part of the 1960 right-of-way.   <u>See</u> 1:12-cv-123, ECF 102 at 4.   The jury specifically found that, regarding the Property, the pipeline is not within the 1960 right-of-way or is trespassing.   Moreover, the Moores seek to eject Equitrans from the Property, which would essentially force it to

5

dig up the existing pipeline and move it to a location within the 1960 right-of-way.  While Equitrans does have the 1960 right-of-way, it also has the right to choose the route of the pipeline. See <u>Williams v. Transcontinental Gas Pipe Line Corp.</u>, 89 F. Supp. 485, 489 (W.D.S.C. 1950) ("A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line[,] or location of the proposed work or improvement . . . ." (internal quotation marks omitted)).  Because the 1960 right-of-way has been determined by the jury in the underlying civil action not to cover the Property, that contract should not be deemed to cover Equitrans' desired condemnation right-of-way.

> b.   <u>Pre-Condemnation Occupation of Property</u>

The Moores argue that Equitrans failed to comply with § 717f(h) because it entered and used the Property without first seeking a right-of-way agreement or condemnation.  Thus, the Moores argue that Equitrans acted in bad faith and did not attempt to obtain the right-of-way before entering the Property.

First, this Court cannot conclude that Equitrans seeks condemnation in bad faith.[1]  This Court must take the allegations

---

[1]Courts are split on whether § 717f(h) requires good faith negotiations.  The Ninth Circuit requires proof that the plaintiff engaged in good faith negotiations, <u>Transwestern Pipeline Co. v. 17.19 Acres</u>, 550 F.3d 770, 776 (9th Cir. 2008), while the First Circuit has refused to require a showing of good faith, <u>Maritimes</u>

6

in Equitrans' complaint as true.  Based on the complaint, Equitrans attempted to obtain by contract the condemnation right-of-way several times, but the Moores refused and countered with other demands.  Taking these allegations in Equitrans' best light, this Court must conclude that Equitrans attempted in good faith to obtain the condemnation right-of-way by contract and that the Moores rejected those offers.

Second, § 717f(h) does not require the condemnor to seek condemnation before entering the property.  The prior unauthorized occupation of property to be condemned does not preclude condemnation.  See Searl v. Sch. Dist. No. 2, of Lake Cnty., 133 U.S. 553, 564-65 (1890) ("[P]rior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use." (quoting Secombe v. Milwaukee & St. Paul Ry. Co., 90 U.S. 108, 118 (1874)). This is especially true here because Equitrans maintained throughout the underlying civil action that it built the pipeline within the 1960 right-of-way and, therefore, did not unlawfully enter the Property.  Moreover, Equitrans sought to contract for the

---

& Ne. Pipeline, L.L.C. v. Decoulos, 146 F. App'x 495, 497-98 (1st Cir. 2005) (unpublished).  In an unpublished opinion, this Court has refused to require a showing of good faith.  Hardy Storage Co., LLC v. Property Interests Necessary to Conduct Gas Storage Operations, No. 2:07CV5, 2009 WL 689054, *5 (N.D. W. Va. Mar. 9, 2009).  Regardless of whether good faith is required, Equitrans has sufficiently plead that it made good faith offers to contract for the condemnation right-of-way.

condemnation right-of-way before and after the verdict in the underlying civil action.

The Moores argue that this case is analogous to Humphries v. Williams Natural Gas Co., 48 F. Supp. 2d 1276 (D. Kan. 1999), and Van Scyoc v. Equitrans, L.P., No. 2:13-cv-01735, 2015 WL 1346872 (W.D. Pa. Mar. 23, 2015), requiring strict compliance with the Natural Gas Act. However, those cases do not hold that a condemnor must seek condemnation before entering the property. Rather, both cases deal with the question of whether a condemnation claim preempts state law claims (like trespass) that arose before the condemnor sought condemnation. See Humphries, 48 F. Supp. 2d at 1279 ("The court finds that WNG's condemnation action does not preempt Humphries' claims that existed prior to the date that WNG filed its condemnation action."); Van Scyoc, 2015 WL 1346872, *3 ("The primary issue facing the Court is whether the Plaintiff landowners['] . . . state law claims . . . *must* be construed as inverse condemnation claims, which would be preempted by the [NGA] . . . . [T]he Court concludes that the Plaintiffs' claims are not preempted by the NGA." (emphasis in original)). Neither of the courts in these cases concluded that the condemnors' failure to seek condemnation before entering the property precluded them from seeking condemnation under § 717f(h). Rather, the courts assumed that the condemnation actions could continue in the face of the unlawful prior entries. See Humphries, 48 F. Supp. 2d at 1279 n.3

8

(considering when "the damages may cease to accumulate on Humphries' state law claims," and "assum[ing] without deciding that Humphries' damages on his state law claims will stop accumulating on the date that this court grants, if ever, the relief sought in WNG's condemnation action.").

    2.  <u>Compulsory Counterclaim</u>

The Moores argue that Equitrans waived its condemnation claim because it constituted a compulsory counterclaim in the underlying civil action that Equitrans failed to file.

Federal Rule of Civil Procedure 13(a) requires a party to file as a counterclaim any claim that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim[,] . . . does not require adding another party over whom the court cannot acquire jurisdiction," and that exists "at the time of its service." Fed. R. Civ. P. 13(a). A counterclaim is compulsory only if it is mature, meaning that all the elements for the counterclaim are present before the answer is served. <u>See</u> <u>Pace v. Timmermann's Ranch & Saddle Shop Inc.</u>, 795 F.3d 748, 757-58 (7th Cir. 2015) (concluding that former employee's abuse of process claim against employer matured when all the elements were present before the employer sued her for conversion breach of fiduciary duty, fraud, and unjust enrichment, and it therefore became a compulsory counterclaim); <u>Steel v. Morris</u>, 608 F. Supp. 274, 275-76 (S.D. W. Va. 1985) (concluding that cause of

action for abuse of process had not accrued before the defendant served the answer, and therefore was not a compulsory counterclaim).

Here, Equitrans' condemnation claim became mature after it served its answer in the underlying civil action. Equitrans maintained throughout the underlying civil action that its pipeline was within the 1960 right-of-way. The core factual and legal issue in that case was whether Equitrans had a contractual right to a right-of-way over the Property. Section 717f(h)'s requirement that Equitrans be unable to contract for the condemnation right-of-way was logically dependent upon the resolution of the underlying civil action. If Equitrans was within the 1960 right-of-way, it would have had a contract for the necessary right-of-way and condemnation would not be available. Therefore, Equitrans' condemnation claim could not have matured until after the pipeline was found to be outside the 1960 right-of-way.

Even so, Equitrans' condemnation claim was not a compulsory counterclaim in the underlying civil action. To determine whether a counterclaim is compulsory, this Court must consider: (1) whether "the issues of fact and law" raised by the claim and the counterclaim are "largely the same"; (2) whether res judicata would bar a subsequent suit on the . . . counterclaim"; (3) whether "substantially the same evidence" supports or refutes both the claim and the counterclaim; and (4) whether any "logical

relationship" exists between the claim and the counterclaim. Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988).

The facts and law applicable to this condemnation claim, as well as the evidence required to support it, are very different from those required in the Moores' trespass and breach of contract claims in the underlying civil action.  Res judicata would not bar this condemnation action because the underlying civil action did not resolve any factual issues pertinent to this case other than a determination that the relevant portions of the pipeline are outside the 1960 right-of-way or are trespassing.[2]  Finally, Equitrans' condemnation claim is logically dependent on the underlying claim only to the extent that it could not seek condemnation until it was determined that the relevant portions of the pipeline are outside the 1960 right-of-way.  Thus, none of these factors weigh in favor of finding that the condemnation claim was a compulsory counterclaim in the underlying civil action.

3.  Judicial Estoppel

Although the jury found in the underlying civil action that Equitrans did not comply with the 1960 right-of-way or was trespassing on the Property, the Moores argue that judicial

---

[2]"For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."  Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004).

estoppel should apply to hold Equitrans to its losing position: that Equitrans complied with the 1960 right-of-way.

Judicial estoppel applies only if: (1) "the party sought to be estopped . . . [is] seeking to adopt a position that is inconsistent with a stance taken in prior litigation"; (2) "the prior inconsistent position . . . [was] accepted by the court"; and (3) "the party against whom judicial estoppel is to be applied . . . intentionally misled the court to gain unfair advantage." Zirkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) (internal quotation marks omitted). Furthermore, "[t]he position at issue must be one of fact as opposed to one of law or legal theory," and the "bad faith requirement is the 'determinative factor.'" Id.

The Moores argue that in the underlying civil action, Equitrans took the position that it complied with the 1960 right-of-way, but now says that it did not comply with the 1960 right-of-way in regard to the property. However, the jury verdict in the underlying civil action provides that Equitrans in fact did not comply with the 1960 right-of-way regarding the property. The Moores are essentially asking this court to hold Equitrans to its losing position in the underlying civil action, which is factually inconsistent with the verdict. But judicial estoppel applies only where the party to be estopped took a prior position that was "accepted by the court," Zirkand, 478 F.3d at 638, and this Court did not accept Equitrans' position that it complied with the 1960

12

right-of-way.   Moreover, there is no indication that Equitrans intended to intentionally mislead this Court in defending itself in the underlying civil action.

    4.   Unconstitutional Taking

The Moores argue that condemnation here would violate the Fifth Amendment's Takings Clause.   Specifically, they argue that Equitrans lacks a public purpose in condemning the property and that the taking would be excessive.

The Fifth Amendment to the United States Constitution permits the taking of private property only "for public use" and with "just compensation."   U.S. Const. amend. V.   To satisfy the public use requirement, a taking need only be "rationally related to a conceivable public purpose."   Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 245 (1984).   Public use is not necessarily established whenever a legislative body acts, as "[t]here is, of course a role for courts to play in reviewing a legislature's judgment of what constitutes a public use," but so long as the legislative act is not meant "to benefit a particular class of identifiable individuals but to [further] . . . a legitimate public purpose," the act does not violate the Fifth Amendment.   Id. at 240, 245.

First, Equitrans has a public purpose in condemning the property under the Natural Gas Act.   In passing the Natural Gas Act, Congress concluded that "the business of transporting and selling natural gas for ultimate distribution to the public is

13

affected with a public interest, and that federal regulation in matters relating to the transportation [and sale] of natural gas . . . is necessary in the public interest." 15 U.S.C. § 717(a). The Natural Gas Act is a valid exercise of Congress' power to regulate interstate commerce, <u>Fed. Power Comm'n v. Natural Gas Pipeline Co. of Am.</u>, 315 U.S. 575, 582-83 (1942), and Congress constitutionally delegated the right to condemn to private licensees under § 717f(h). <u>See</u> <u>Thatcher v. Tenn. Gas Transmission Co.</u>, 180 F.2d 644, 648 (5th Cir.) ("[T]he grant of the power of eminent domain provided by the Natural Gas Act is a regulation of interstate commerce by Congress and not the equivalent of [a taking for a private purpose] . . . ."), <u>cert. denied</u>, 340 U.S. 829 (1950); <u>Williams v. Transcontinental Gas Pipe Line Corp.</u>, 89 F. Supp. 485, 487 (D.S.C. 1950) ("Congress [may] constitutionally bestow the right of condemnation upon such private licensees as have been charged with the development of the national policy as to the interstate movement of natural gas."). By enacting § 717f(h), Congress concluded that the taking of rights-of-way to build natural gas pipelines is a public use, as it furthers the public interest in "the business of transporting and selling natural gas for the ultimate distribution to the public." 15 U.S.C. § 717(a). Section 717f(h)'s delegation of condemnation power furthers a legitimate public interest and does not violate the Fifth Amendment.

It therefore follows that Equitrans' condemnation claim does not violate the Fifth Amendment if its pleadings are sufficient to state a condemnation claim under § 717f(h).  Equitrans sufficiently plead its condemnation claim and, therefore, has a public purpose in condemning the property under § 717f(h).

Second, the Moores argue that condemnation of the property would constitute an excessive taking because it is not strictly necessary for Equitrans to maintain the pipeline and provide gas to its customers.  The Moores rely on City of Cincinnati v. Vester, 281 U.S. 439 (1930), to argue that "the taking of more land than is needed to be occupied by the improvement directly in contemplation" violates the Fifth Amendment.  Id. at 440.  However, in that case the Supreme Court was applying the excess condemnation provision in the Ohio constitution, not the Fifth Amendment.  See id. at 441 (citing Ohio Const. art. 18, § 10).  Under the Fifth Amendment, a taking is valid so long as it is for a public purpose and for just compensation.  U.S. Const. amend. V.  Thus, because Equitrans' complaint is sufficient to state a condemnation claim under § 717f(h) and that section satisfies the Fifth Amendment, Equitrans' claim does not facially violate the Fifth Amendment.

B.   Equitrans' Motion to Dismiss the Moores' Counterclaims

Equitrans argues that this Court should dismiss the Moores' counterclaim because it is barred under Federal Rule of Civil Procedure 71.1(e)(3).  Equitrans argues that the only responsive

15

pleading allowed under Rule 71.1(e)(3) is an answer and not a counterclaim.   The Moores argue that a counterclaim is not a pleading and therefore is not barred under that Rule.

Rule 71.1(e)(3) provides that

A defendant waives all objections and defenses not stated
in its answer.  No other pleading or motion asserting an
additional objection or defense is allowed.  But at the
trial on compensation, a defendant--whether or not it has
previously appeared or answered--may present evidence on
the amount of compensation to be paid and may share in
the award.

Fed R. Civ. P. 71.1(e)(3).   After extensive research into this matter, this Court concludes that a counterclaim is not a pleading, but is nevertheless barred under Rule 71.1(e) because it is not an objection or defense to the condemnation claim.

First, a counterclaim is not a pleading, but is a claim for relief that may be stated in a pleading.  Federal Rule of Civil Procedure 7(a) provides an exhaustive definition of "pleading" as used in the Rules.  Rule 7(a) states that "[o]nly these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim . . . ; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) . . . a reply to an answer."  Fed. R. Civ. P. 7(a).  But Rule 7(a) does not list counterclaims as a permissible pleading. Rule 13 refers to counterclaims as claims for relief.  <u>See</u> Fed. R. Civ. P. 13 ("A pleading must state as a counterclaim any <u>claim</u> . . . ." (emphasis added)).  Similarly, Rule 12(a)(1)(B) suggests that

16

a counterclaim is a claim for relief stated in an answer.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim . . . within 21 days after being served with the <u>pleading that states</u> the counterclaim . . . ." (emphasis added)). Therefore, this Court concludes that a counterclaim is a claim for relief that may be stated in a pleading, but is not a pleading itself.  <u>See</u> <u>Columbia Gas Transmission LLC v. Crawford</u>, 267 F.R.D. 227, 228–29 (N. D. Ohio 2010) (concluding that a counterclaim is not a pleading).[3]  Thus, Rule 71.1(e)(3) does not categorically bar counterclaims as unauthorized pleadings.

Second, as a "claim for relief" that may be stated in a pleading, a counterclaim is barred by Rule 71.1(e) because it is not an objection or defense to the condemnation claim.  Rule 71.1(e) expressly "prescribes what matters the answer should set forth."  Fed. R. Civ. P. 71.1 advisory committee's notes to 1951 Addition, Note to Subdivision (e).  Rule 71.1(e) provides that if a defendant "has an objection or defense to the taking," he may serve an answer, and "the answer must: (A) identify the property in which the defendant claims an interest; (B) state the nature and extent of the interest; and (C) state all the defendant's

---

[3]Although the <u>Crawford</u> court correctly concluded that counterclaims are not pleadings, this Court believes that the <u>Crawford</u> court incorrectly concluded that Rule 71.1(e) therefore did not bar counterclaims.  267 F.R.D. at 228–29.  As discussed below, Rule 71.1(e) bars counterclaims because it provides that an answer may only contain objections and defenses to condemnation, not claims for relief.

objections and defenses to the taking." Fed. R. Civ. P. 71.1(e)(2). Nowhere does the rule state that the defendant may plead any claims for relief. Moreover, Rule 71.1(a) expressly states that the other Federal Rules of Civil Procedure do not apply to condemnation proceedings unless Rule 71.1 provides otherwise, and Rule 71.1 does not invoke the application of other rules regarding what may be plead in an answer. This makes sense because Rule 71.1 provides for the narrow adjudication of only the condemnation claim by requiring "[o]ne pleading to raise all objections and defenses to the taking and one hearing to dispose of them . . ., not successive pleadings and successive hearings spanning a much longer period of time." Atl. Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 458 (4th Cir. 1963) (emphasis added). Because a counterclaim is a claim for relief, it is not an objection or defense to a condemnation claim. Therefore, this Court concludes that Rule 71.1(e) allows a defendant to file an answer containing only defenses and objections to the condemnation claim, but not a counterclaim. See United States v. Certain Land Situated in City of Detroit, 361 F.3d 305, 308 (6th Cir. 2004) ("The Rule evidences that district courts only have jurisdiction to hear defenses and objections from defendants in condemnation cases.").

Equitrans cites various authorities for the proposition that Rule 71.1(e)(3) categorically bars counterclaims as unauthorized

18

pleadings.  But, after thoroughly reviewing these authorities and the body of case law on this matter, this Court finds no credible authority to support Equitrans' position.  Rather, the district courts that have concluded that Rule 71.1(e)(3) categorically bars counterclaims as unauthorized pleadings seem, to this Court, to have misinterpreted Circuit Court precedent regarding sovereign immunity and subject matter jurisdiction over claims under the Tucker Act (repealed and codified in scattered sections of 28 U.S.C.).

Equitrans cites a footnote in <u>Washington Metropolitan Area Transit Authority v. Precision Small Engines</u>, 227 F.3d 224 (4th Cir. 2000), claiming that it shows "well established precedent in the Fourth Circuit" that counterclaims are barred under Rule 71.1. ECF No. 11 at 6.  However, the footnote Equitrans cites is dicta, as the Fourth Circuit concluded that the defendants failed to preserve their arguments on the counterclaim issue.  <u>Id.</u> at 228. The court went on to note that even if the issue were preserved, the counterclaim would have been barred because the defendant "failed to file an answer altogether to [the] notice of the taking, . . . it effectively waived the substance of its 'Counter Claim.'" <u>Id.</u> at 228 n.2.  Thus, the Fourth Circuit did not state that counterclaims are barred categorically, but only that a defendant cannot file a counterclaim almost a year after it failed to file a timely answer to a condemnation claim.  <u>Id.</u> at 226, 228 n.2.

19

Equitrans also relies on <u>Columbia Gas Transmission, LLC v. 14.96 Acres</u>, No. 2:14-cv-27773, 2015 WL 3756710 (S.D. W. Va. June 16, 2015), an unpublished opinion from the Southern District of West Virginia wherein the court concluded that Rule 71.1(e)(3) bars counterclaims as pleadings.   The court relied upon <u>Washington Metro</u>, <u>United States v. 191.07 Acres of Land</u>, 482 F.3d 1132 (9th Cir. 2007), <u>United States v. 3,317.39 Acres of Land</u>, 443 F.2d 104, 106 (8th Cir. 1971), and various district court decisions relying on those cases.   However, none of those cases stand for the proposition that counterclaims are categorically barred as unauthorized pleadings under Rule 71.1(e).   Instead, it seems that district courts may have confused early sovereign immunity based reasoning for an interpretation of Rule 71.1(e) and its predecessor Rule 71A(e).   All of the Circuit Court cases on this issue deal with condemnation claims brought by the United States, and those courts concluded that they lacked subject matter jurisdiction to hear a counterclaim against the United States in a condemnation action under the doctrine of sovereign immunity and the Tucker Act. <u>See</u> <u>United States v. Certain Land Situated in City of Detroit</u>, 361 F.3d 305, 307-08 (6th Cir. 2004) (concluding that the court lacked subject matter jurisdiction to hear an intervening party's counterclaim against the United States in condemnation); <u>United States v. Banisadr Bldg. Joint Venture</u>, 65 F.3d 374, 380 (4th Cir. 1995) (concluding that the court lacked subject matter jurisdiction

20

to hear a counterclaim because the claim must be "in a separate action filed under the Tucker Act"); <u>United States v. 79.20 Acres</u>, 710 F.2d 1352, 1356 n.5 (8th Cir. 1983) (concluding that the court had no jurisdiction to hear a counterclaim because "[t]he United States, as sovereign, is immune from suit"); <u>United States v. 38.60 Acres of Land</u>, 625 F.2d 196, 199 (8th Cir. 1980) (concluding that the court lacked subject matter jurisdiction to hear counterclaims against the United States under sovereign immunity and the Tucker Act); <u>United States v. 6,321 Acres of Land More or Less in Suffolk Cnty.</u>, 479 F.2d 404, 406-07 (1st Cir. 1973) (concluding that the counterclaim "may only be heard in the Court of Claims" under the Tucker Act, and that Rule 71A (Rule 71.1's predecessor) "did not effect a waiver of the government's immunity"); <u>United States v. 3,317.39 Acres of Land</u>, 443 F.2d 104, 106 (8th Cir. 1971) (concluding that the court lacked subject matter jurisdiction on sovereign immunity grounds).  The closest a Circuit Court has come to concluding that counterclaims are categorically barred under Rule 71.1(e) was in <u>United States v. 191.07 Acres of Land</u>, 482 F.3d 1132 (9th Cir. 2007), wherein the Ninth Circuit concluded that "[a] property owner cannot file a counterclaim in a direct condemnation action." <u>Id.</u> at 1140.  However, that case also involved a counterclaim against the United States.  In making its conclusion the court cited <u>United States v. 40.60 Acres</u>, 483 F.2d 927 (9th Cir. 1973), in which the Ninth Circuit noted in dicta a split as to

"whether Tucker Act claims can ever be brought as counterclaims." Id. at 928 n.1. Thus, it appears that there is no Circuit Court authority supporting the proposition that a counterclaim is categorically barred under Rule 71.1(e) as an impermissible pleading.

The Columbia Gas court also relied on various district court decisions, which all seem to this Court to misinterpret the above discussed authority and conclude that counterclaims are categorically barred under Rule 71.1(e). The court cited Kansas Pipeline Co. v. A 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253 (D. Kan. 2002), wherein the United States District Court for the District of Kansas relied on Washington Metro and Wright on Federal Practice and Procedure in concluding that counterclaims are not permitted. Id. at 1258. However Washington Metro, as discussed above, does not provide authority for that conclusion and Wright simply cites the sovereign immunity based decisions discussed above. See 12 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 3048 n.5 (3d ed. 2014). The Columbia Gas court also cited United States v. 1.58 Acres of Land, 523 F. Supp. 120, 122 (D. Mass. 1981), which relied on United States v. 6,321 Acres of Land More or Less in Suffolk Cnty., 479 F.2d 404, 406-07 (1st Cir.), wherein the First Circuit concluded that the defendants' counterclaim "may only be heard in the Court of Claims"

22

under the Tucker Act.   Id. at 406-07.   The other unpublished district court opinions the Columbia Gas court cited similarly rely on decisions dealing with sovereign immunity.   See Constitution Pipeline Co., LLC v. A Permanent Easement for 2.40 Acres, 3:14-CV-2046, 2015 WL 1726223, *1 (N.D.N.Y. Apr. 14, 2015) (relying on the Circuit Court cases discussed above and various district court cases); New West v. City of Joliet, Nos. 05C1743, 07C7214, 11C5305, 2012 WL 366733, *6 (N.D. Ill. Jan. 30, 2012) (same);   N. Natural Gas Co. v. Approximately 9117.53 Acres, No. 10-1232-WEB, 2011 WL 2118642, *4 (D. Kan. May 27, 2011) (citing no authority).   Because this Court finds that counterclaims are not pleadings and that there is no authority supporting Equitrans' position, this Court concludes that Rule 71.1(e)(3) does not categorically bar a counterclaim as an unauthorized pleading.   Rather, Rule 71.1(e) bars counterclaims because they are not objections or defenses to condemnation.

## IV.   Conclusion

The plaintiff's complaint sufficiently pleads its condemnation claim, and the defendants' counterclaims are barred under Rule 71.1(e).   Accordingly, the defendants' motion to dismiss the complaint (ECF No. 6) is DENIED, and the plaintiff's motion to dismiss the counterclaims (ECF No. 10) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     November 18, 2015


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,**
**a Pennsylvania Limited Partnership,**

       **Plaintiff,**

**v.**                                                  **Civil Action No. 1:15-CV-106**
                                                          **(Hon. Frederick P. Stamp, Jr.)**

**.056 ACRES MORE OR LESS OF**
**PERMANENT EASEMENT LOCATED IN**
**MARION COUNTY, WEST VIRGINIA;**
**JEFFERY J. MOORE; and SANDRA J. MOORE,**

       **Defendants.**

# Stipulation concerning Equitrans' Right to Condemn under the Natural Gas Act

Plaintiffs, Equitrans, L.P. ("Equitrans"), by counsel, and Defendants, Jeffery J. and Sandra Moore ("the Moores"), by counsel, (collectively "the Parties") pursuant to Local Rule 7.01 of the Rules of Civil Procedure STIPULATE and AGREE that following extensive briefing, this Court found Equitrans possessed a right to condemn under the Natural Gas Act in its November 18, 2015 Memorandum Opinion and Order Denying Defendants' Motion to Dismiss the Complaint and Granting Plaintiff's Motion to Dismiss the Counterclaim ("Order") and, therefore, no further need exists to adjudicate in this Court whether the Natural Gas Act affords Equitrans a right to condemn the Moores' Property.

The Parties further STIPULATE and AGREE that this Stipulation does not, in any way, impact or affect the Moores' previous objections and exceptions to the Order. Those objections and exceptions are expressly preserved for appeal after a final adjudication of this matter.

Respectfully Jointly Submitted By:


EQUITRANS, L.P.                          JEFFERY & SANDRA MOORE


/s/ David K. Hendrickson                 /s/ Patrick C. Timony
David K. Hendrickson (WVSB #1678)        Kenneth E. Webb, Jr. (WVSB #5560)
HENDRICKSON & LONG, PLLC                 Patrick C. Timony (WVSB #11717)
Post Office Box 11070                    BOWLES RICE LLP
Charleston, West Virginia   25339        600 Quarrier Street
Telephone: (304) 346-5500                Post Office Box 1386
Facsimile: (304) 346-5515                Charleston, West Virginia   25325-1386
Email: daveh@handl.com                   Telephone: (304) 347-1100
                                         Facsimile: (304) 347-1756
                                         Email: kwebb@bowlesrice.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,
a Pennsylvania Limited Partnership,**

       **Plaintiff,**

**v.**                                  **Civil Action No. 1:15-CV-106
(Hon. Frederick P. Stamp, Jr.)**

**.056 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA;
JEFFERY J. MOORE; and SANDRA J. MOORE,**

       **Defendants.**

## CERTIFICATE OF SERVICE

       I, Patrick C. Timony, hereby certify that the foregoing *Stipulation concerning Equitrans' Right to Condemn under the Natural Gas Act* has been served this **20th day of July, 2016**, via the CM/ECF system:

               David K. Hendrickson, Esquire
               (WVSB #1678)
               HENDRICKSON & LONG, PLLC
               Post Office Box 11070
               Charleston, West Virginia   25339
               *Counsel for Defendant*

               /s/ Patrick C. Timony           
               Patrick C. Timony (WVSB #11717)

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAN 1 8 2017

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

EQUITRANS, L.P., a Pennsylvania
limited partnership,

      Plaintiff,

v.

0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA,
JEFFREY J. MOORE and
SANDRA J. MOORE,

      Defendants.

Civil Action No. 1:15CV106
(STAMP)

**V E R D I C T**

What amount of just compensation do you find should be paid to the landowners, Jeffrey J. Moore and Sandra J. Moore, for the taking of the approximate 0.56 acres in this proceeding?

$ _5,000.00 %xx_

_1-18-17_
DATE

JURY FOREPERSON

AO450 (Rev. 5/85)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

NORTHERN ———— DISTRICT OF ———— WEST VIRGINIA

EQUITRANS, L.P.

Plaintiff,

v.

0.56 Acres, more or less, Et al,
Defendants.

**JUDGMENT IN A CIVIL CASE**

Case Number:        1:15-CV-106

X **Jury Verdict.**   Certain issues have been tried and the jury has rendered its verdict. (January 18, 2017)

**Decision by Court.**

IT IS ORDERED AND ADJUDGED

the jury having rendered its verdict in favor of the Defendants, Jeffrey J. Moore and Sandra J. Moore, and against the Plaintiff,  Equitrans, L.P., that said defendants shall recover FIVE THOUSAND ($5,000.00) DOLLARS from said Plaintiff.  And it is further

   ORDERED that defendants shall recover post-judgment interest at the rate of 0.82 percent per annum from January 18, 2017, until paid in accordance with 28 U.S.C. § 1961.  And it is further

   ORDERED that as no claims remain pending in this case, said civil action is DISMISSED and STRICKEN form the active docket of this Court.

January 19, 2017
Date

CHERYL DEAN RILEY
Clerk

_M Hare_
(By) Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,
a Pennsylvania Limited Partnership,**

       **Plaintiff,**

**v.**                             **Civil Action No. 1:15-CV-106
(Hon. Frederick P. Stamp, Jr.)**

**.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA,
JEFFERY J. MOORE, and SANDRA J. MOORE,**

       **Defendants.**

# Defendants' Motion to Amend the January 19, 2017 Judgment

Defendants, Jeffery J. Moore and Sandra J. Moore ("the Moores"), by counsel, respectfully move, pursuant to Rule 59 of the Federal Rules of Civil Procedure, to amend the January 19, 2017 Judgment ("Motion to Amend").  In support, the Moores state as follows:

1.        On January 18, 2015, a jury award the Moores Five Thousand Dollars ($5,000.00) as the fair market value for the property taken by Plaintiff, Equitrans, L.P. ("Equitrans").  [Doc. No. 116.]

2.        Prior to awarding this amount, this Court instructed the jury that "[t]he law requires that the Moores receive interest upon their award in this condemnation proceeding.  You do not award interest.  The Court will order appropriate interest to be paid upon your award.  Therefore, you shall not consider the matter of interest in arriving at your verdict."  [Doc. No. 79 at p. 12]; [Doc. No. 85 at p. 11.]

3.      On January 19, 2017, the Clerk entered Judgment for the Moores for Five

Thousand Dollars plus post judgment interest at a rate of .82 percent per annum.  [Doc. No. 117.]

4.      This Judgment never awarded the Moores their prejudgment interest

required under West Virginia Code §§ 54-2-12 through 54-2-18.

5.      Therefore, the Moores request that this Court amend the Judgment to

include an award of prejudgment interest from June 18, 2015 through January 18, 2017.

For the reasons set forth in this Motion to Amend, the Moores respectfully request

that this Court amend the January 19, 2017 Judgment to include an award of prejudgment

interest.

.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA
JEFFERY J. MOORE and SANDRA J.
MOORE,

By Counsel,

/s/ Patrick C. Timony
Kenneth E. Webb, Jr. (WVSB #5560)
Patrick C. Timony (WVSB #11717)
BOWLES RICE LLP
Post Office Box 1386
Charleston, West Virginia   25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 347-1756
Email: kwebb@bowlesrice.com
Email: ptimony@bowlesrice.com
*Counsel for Defendants*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EQUITRANS, L.P.,**
**a Pennsylvania Limited Partnership**

      **Plaintiff,**

**v.**                                                         **Civil Action No. 1:15-CV-106**
                                                         **(Hon. Frederick P. Stamp, Jr.)**

**.56 ACRES MORE OR LESS OF**
**PERMANENT EASEMENT LOCATED IN**
**MARION COUNTY, WEST VIRGINIA,**
**JEFFERY J. MOORE, and SANDRA J. MOORE,**

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

       I, Patrick C. Timony, hereby certify that the foregoing ***Defendants' Motion to Amend January 19, 2017 Judgment*** has been served this **9th day of February, 2017**, via the CM/ECF system:

               David K. Hendrickson, Esquire
               HENDRICKSON & LONG, PLLC
               Post Office Box 11070
               Charleston, West Virginia   25339
               *Counsel for Defendant*

               /s/ Patrick C. Timony
               Patrick C. Timony (WVSB #11717)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EQUITRANS, L.P.,
a Pennsylvania
limited partnership,

      Plaintiff,

v.                                        Civil Action No. 1:15CV106
                                                        (STAMP)
0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA,
JEFFERY J. MOORE and
SANDRA J. MOORE,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO AMEND**
**THE JUDGMENT AND AMENDING JUDGMENT**

I.  <u>Procedural History</u>

This is a condemnation action brought under the Natural Gas
Act, 15 U.S.C. § 171f(h).  After a trial on the issue of just
compensation owed to the defendants ("the Moores"), the jury
returned a verdict of $5,000.  The Moores then filed a motion under
Federal Rule of Civil Procedure 59(e) to amend the judgment.  ECF
No. 118.  Specifically, the Moores request the addition of
prejudgment interest to the amount of the judgment.  The plaintiff,
Equitrans, L.P. ("Equitrans"), filed a response in which it agrees
that the Moores should receive prejudgment interest at a rate of 7%
per annum.  For the following reasons, the Moores' motion is
granted and the judgment is amended.

## II.   Discussion

Where a cause of action arises out of federal law, federal law governs the potential remedies, including the availability and rate of prejudgment interest.  Monessen Sw. Ry. Co. v. Morgan, 486 U.S. 330, 335 (1988); see also Carpenters Dist. Counsel of New Orleans & Vicinity v. Dillard, 15 F.3d 1275, 1288 (5th Cir. 1994).   The general federal interest statute does not provide for prejudgment interest.   See 28 U.S.C. § 1961.   Thus, to determine whether prejudgment interest should be awarded, courts must determine whether the federal statute creating the cause of action precludes prejudgment interest.  Morgan, 486 U.S. at 336-39; Dillard, 15 F.3d at 1288.  If prejudgment interest is not precluded by statute, then the court must consider whether prejudgment interest will further the congressional policies underlying the statute.   Dillard, 15 F.3d at 1288.   If so, then the court has discretion to award prejudgment interest.   Id.

This condemnation arises under the Natural Gas Act, 15 U.S.C. § 717-717w.   The Natural Gas Act's condemnation provision, 15 U.S.C. § 717f(h), does not expressly permit or prohibit an award of prejudgment interest.   Congress originally intended for courts to apply the practice and procedure for condemnation action of the state in which the property sits.  This mandate has been abrogated by the addition of Rule 71.1 (formerly 71A) in the Federal Rules of Civil Procedure.   However, the substantive law of the state in

2

which the property sits still applies to determine the just compensation owed.  See Bison Pipeline, LLC v. 102.84 Acres of Land, 560 F. App'x 690, 695-96 (10th Cir. 2013); Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1195-99 (6th Cir. 1992).  West Virginia's eminent domain law provides for the award of prejudgment interest as part of just compensation.  W. Va. Code § 54-2-12.  Similarly, federal law in direct condemnation actions provides for an award of prejudgment interest as part of just compensation.  See United States v. Eltzroth, 124 F.3d 632 (4th Cir. 1997).  Further, this Court has previously awarded prejudgment interest in condemnation actions brought under the Natural Gas Act.  See Hardy Storage Co., LLC v. Prop. Interests Necessary to Conduct Gas Storage Operations in Oriskany Sandstone Subterranean Geological Formation Beneath, No. 2:00CV5, 2009 WL 689054 (N.D. W. Va. Mar. 9, 2009).  Thus, this Court finds that prejudgment interest should be awarded to fully compensate the Moores for the taking of their property.  Further, this Court finds that it is appropriate to apply West Virginia's prejudgment interest provisions.

West Virginia Code § 56-6-31(b) provides that the prejudgment interest rate is "three percentage points above the Fifth Federal Reserve District secondary discount rate in effect on the second day of January of the year in which the judgment . . . is entered" but that the rate "shall not exceed eleven percent per annum or be

less than seven percent per annum." W. Va. Code § 56-6-31(b). The West Virginia Supreme Court of Appeals annually determines the applicable interest rate for judgments entered during each calendar year. Id. For 2017, the West Virginia Supreme Court of Appeals set the interest rate at 7% per annum. See Administrative Order (W. Va. Jan. 5, 2017), available at http://www.courtswv.gov/legal-community/pdfs/interest2017.pdf. The date of condemnation was June 18, 2015 and the judgment in this civil action was effective on January 18, 2017. Thus, interest shall have accrued for 580 days at a rate of 7% per annum. Accordingly, the Moores are entitled to $556.16 in accrued prejudgment interest.[1] The Clerk is DIRECTED to enter an amended judgment in the amount of $5,556.16.

## III. Conclusion

For the above reasons, the Moores' motion to amend the judgment under Rule 59(e) (ECF No. 118) is GRANTED. Accordingly, the Clerk is DIRECTED to enter an amended judgment in the amount of $5,556.16.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of

---

[1]This Court applied the following calculation: 5,000 x (0.07/365) x 580 = 556.16. In its response, Equitrans calculated the amount of interest owed as 556.80. That calculation appears to be incorrect.

4

the United States Court of Appeals for the Fourth Circuit regarding

the Moores' notice of appeal filed in this civil action on February

17, 2017 (ECF No. 119).  The Clerk is further DIRECTED to prepare

an amended judgment in accordance with this memorandum and order.

     DATED:   April 21, 2017


                     /s/ Frederick P. Stamp, Jr.
                     FREDERICK P. STAMP, JR.
                     UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

for the
## Northern District of West Virginia

EQUITRANS, L.P.
a Pennsylvania Limited Partnership
_____

*Plaintiff(s)*
v.

.56 ACRES MORE OR LESS OF PERMANENT
EASTEMENT LOCATION IN MARION COUNTY,WV,
JEFFERY J. MOORE, and SANDRA J. MOORE
_____

*Defendant(s)*

Civil Action No.   1:15-CV-106

AMENDED
## JUDGMENT IN A CIVIL ACTION

The court has ordered that:

☒ Judgment award     ☐ Judgment costs     ☐ Other

the defendant(s) *(name)* Jeffery J. Moore and Sandra J. Moore _____ recover from the
plaintiff(s) *(name)* Equitrans, L.P _____ the amount of
 Five Thousand, Five Hundred, Fifty-Six Dollars and sixteen cents _____
dollars ($ 5.556.16          ), which includes prejudgment interest at the rate of __7___ %, plus post judgment interest
at the rate of _.82_% per annum, from January 18, 2017, until paid in accordance with 28 U.S.C.§1961.  And it is
further ORDERED that as no claims remain pending in this case, said civil action is DISMISSED and
STRICKEN from the active docket of this Court.

This action was:

☒ tried by jury     ☐ tried by judge     ☐ decided  by judge

tried by a jury with Judge   Frederick P. Stamp, Jr.                            presiding, and the jury has rendered a verdict.

Date:     April 21, 2017

*CLERK OF COURT*

Cheryl Dean Riley /

s/ J. Schoonover
_____
*Signature of Clerk or Deputy Clerk*